1  DONGXIAO YUE
   2777 ALVARADO ST., SUITE C
2  SAN LEANDRO, CA 94577
3  Telephone:     (510) 396-0012
   Facsimile:      (510) 291-2237
4  E-Mail:         ydx@netbula.com

5  *Pro Se*

6

7

8

9                    UNITED STATES DISTRICT COURT

                     NORTHERN DISTRICT OF CALIFORNIA

10 DONGXIAO YUE,                              Case No.

11              Plaintiff,                    COMPLAINT FOR COMPENSATORY
12                                            DAMAGES, DISGORGEMENT OF
        v.                                    PROFITS, INJUNCTIVE RELIEF AND
13                                            ATTORNEYS' FEES AND COSTS FOR:
14 CHORDIANT SOFTWARE, INC., a                Direct, Contributory, and Vicarious
   Delaware corporation; Derek P. Witte, an  Copyright Infringement Under 17 U.S.C.
15 individual; Steven R. Springsteel, an      Section 101 *et seq.*
   individual; Oliver Wilson, an individual; and
16 DOES 1-1000, inclusive,                    DEMAND FOR JURY TRIAL

17

18              Defendants.

19
                            **COMPLAINT**
20

21
            Plaintiff Dongxiao Yue ("Yue" or "Plaintiff") complains and alleges against
22
   defendants CHORDIANT SOFTWARE, INC. ("CSI"), a Delaware corporation; Derek P. Witte
23
   ("Witte"), an individual; Steven R. Springsteel ("Springsteel"), an individual; Oliver Wilson
24
   ("Wilson"), an individual; and DOES 1-1000 (collectively, "Defendants") as follows:
25
                            **INTRODUCTION**
26

27
                                       -1-
28
   Case No.                                                           COMPLAINT

1.    Since 1994, Plaintiff had been developing software he later named "PowerRPC." In July 1996, Plaintiff founded a Delaware Limited Liability Company named "Netbula, LLC" ("Netbula") to market the PowerRPC software. Defendants have willfully infringed Plaintiff's copyrights in the software by making and distributing unauthorized copies of the software, creating and distributing unauthorized derivative works, and other direct and indirect infringing activities.

2.    The copyrights infringed by Defendants in the instant action are: "NETBULA POWERRPC 2K4" registered on December 15, 2006 with U.S. registration number TX 6-491-697, a copy of which is attached as Exhibit A to this complaint; and the copyrights in unpublished works Plaintiff created before July 1996, with pending copyright registration at the U.S. Copyright Office.

## JURISDICTION

3.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises out of the laws of the United States of America. More specifically, the claims for copyright infringement founded upon the Copyright Act at 17 U.S.C. § 101 *et seq*.

4.    This Court has personal jurisdiction over Defendants in this action and venue is proper in this judicial district under 28 U.S.C. § 1391(b) because, as alleged below: (a) at least one of the Defendants resides in the State of California and in this judicial district; (b) Defendants, and each of them, have intentionally engaged in substantial business and related communications within this forum, amounting to sufficient minimum contacts - including, but not limited to, the sale of their offending products and/or services into California and, on information and belief, into this judicial district; (c) the harm caused to Plaintiff by the acts of Defendants was targeted by Defendants at Plaintiff and designed to impact Plaintiff, which is located in this judicial district; and (d) a substantial part of the acts giving rise to the asserted claims occurred or had effects in this judicial district. Furthermore, on information and belief, Defendants have infringed Plaintiff's

-2-

Case No.                                                                                            COMPLAINT

1  copyrights via the Internet and otherwise, in every jurisdiction of the United States, including this
2  judicial district.

3  **INTRADISTRICT ASSIGNMENT**

4  5.      Because this action is an Intellectual Property Action as specified in Northern
5  District of California Civil L.R. 3-2(c), it is to be assigned on a district-wide basis.
6

7  **THE PARTIES**
   6.      Plaintiff Dongxiao Yue ("Yue" or "Plaintiff"), is an individual residing in Alameda
8  County, California, within this judicial district. Plaintiff is the sole owner of the exclusive
9  copyrights in dispute and has been assigned all past and future claims arising from infringement of
10 the copyrights.
11
   7.      On information and belief, defendant Chordiant Software, Inc. ("CSI") is a
12 Delaware corporation with its principal place of business located at 20400 Stevens Creek Blvd,
13 STE 400, Cupertino, CA 95014. CSI is a publicly traded company listed on the NASDAQ market
14 with the ticker symbol "CHRD".
15

16 8.      On information and belief, Derek P. Witte ("Witte") is the Vice President, General
17 Counsel and Secretary of CSI. Steven R. Springsteel ("Springsteel") is the Chairman, President
18 and CEO of CSI. Oliver Wilson ("Wilson") is the program manager for the "Marketing Director
19 Product Suite". On information and belief, Witte, Springsteel and Wilson directly infringed, or
20 knowingly and materially contributed, caused, induced, supported, facilitated, aided or abetted the
21 infringement of Plaintiff's copyrights, or have an obvious financial interest in the infringing
22 actions and have the right and capability to control them.

23 9.      Plaintiff does not know the true names and capacities, whether individual,
24 corporate, associate, or otherwise, of defendant DOES 1 through 1000, inclusive. Plaintiff is
25 informed and believes, and based upon such information and belief alleges, that each DOE
26 defendant was in some way responsible for, participated in, or contributed to the matters and
27 things of which Plaintiff complains herein, and in some fashion, has legal responsibility therefore.
28                                         -3-

1  Certain of defendant DOES 1 through 1000 are resellers, service providers, customers and/or
2  potential customers of the other named Defendants.  When the exact nature and identity of such
3  fictitious defendants and their responsibility for participation and contribution to the matters and
4  things herein alleged is ascertained by Plaintiff, Plaintiff will amend this Complaint to set forth the
5  same.

### FACTUAL DETAILS

### *PLAINTIFF"S COPYRIGHTED SOFTWARE*

9      10.    From 1994 to July 1996, as an individual, Plaintiff had been developing a software
10  technology which he later named as "PowerRPC". PowerRPC was a remote procedure call
11  ("RPC") technology that enabled a program on a computer to execute a command on a remote
12  computer over a network and get results back. PowerRPC was initially developed for UNIX,
13  Microsoft Windows NT and Windows 95 platforms.  Plaintiff also developed software called
14  ONC RPC for Microsoft Windows NT/95, which incorporated most of the program files and
15  modules in PowerRPC.

16      11.    In July 1996, Plaintiff founded Netbula, LLC, a Delaware Limited Liability
17  Company, to market the aforementioned RPC software that he was developing at the time.

18      12.    Plaintiff did not assign or transfer the copyrights in his earlier works created before
19  July 24, 1996 to Netbula, LLC. The PowerRPC software products were derivative works of these
20  earlier unpublished works.

21      13.    On September 26, 2007, Netbula executed a written copyright assignment,
22  transferring all exclusive rights in all PowerRPC and ONC RPC for Windows software created
23  before January 1, 2007 back to Dr. Dongxiao Yue -- Plaintiff. The copyright assignment further
24  assigned all past and future claims of infringement to Plaintiff. A copy of the assignment is
25  attached as Exhibit B.

26
27
28                                      -4-

Case No.                                                        COMPLAINT

1    14.    In the following, Plaintiff will use "PowerRPC" to refer to both "PowerRPC
2  software" and "ONC RPC for Windows software". Both were written by Plaintiff, and both had
3  the same program modules with one exception -- they used different Interface Description
4  Language ("IDL") compilers.

5    15.    The PowerRPC software contained two parts: (1) the "Software Development Kit"
6  ("SDK") that consists of the software tools which allow programmers to create applications based
7  on PowerRPC technology, including the "powerrpc.h", "pwrpcapi.h", "pwrpc32.lib",
8  "pwrpc32.dll", "powerrpc.exe", "pmapsvc.exe", "rpcgen.exe" and other files; and (2) the "runtime
9  software" that consists of files providing the core remote call functionality to applications
10 developed with PowerRPC , including the "pwrpc32.dll", "pmapsvc.exe", "portmap.exe" and
11 other program files. The pwrpc32.dll is a binary file that contains the computer instructions for
12 PowerRPC. The "pwrpc" in "pwrpc32.dll" is an abbreviation of "PowerRPC". The "pwrpc32.dll",
13 "pmapsvc.exe" and other PowerRPC program files are unique and original copyrighted software
14 written by Plaintiff.

15    16.    A purchaser of PowerRPC software must buy one type of license (an "SDK"
16 license) for each computer programmer who will use the "powerrpc.h", "rpcgen.exe",
17 "pwrpc32.lib", "pwrpc32.dll" and/or other PowerRPC files to develop RPC applications.  A
18 purchaser must also buy a separate server or client license for the right to copy the runtime
19 software files, also including the "pwrpc32.dll" file.

20
21    17.    The license for the right to copy the PowerRPC runtime software to a single
22 computer is called a "server runtime license" or a "client runtime license," depending on whether
23 the runtime software is used for a server application or a client application.  A server application is
24 one that provides services to many users or clients. A client application is usually used by one
25 end-user on a PC or workstation. Netbula listed its prices for server and client runtime licenses on
26 its online shopping system. Based on Netbula's sales records, in April 2004, a server runtime
27 license cost about $800 per server machine. The client runtime licenses were sold in "packs" of

28                                        -5-

Case No.                                                              COMPLAINT

1  different sizes. A 20-pack client runtime license, which granted a customer the right to use the

2  runtime software for client application on twenty (20) computers, cost about $1000. The

3  PowerRPC portmapper program – pmapsvc.exe -- was sometimes licensed at standalone basis at

4  the price of $100 per copy. A vendor of a competing RPC product had a similar pricing structure

5  on server runtime licenses and client runtime licenses, with a server runtime license costing many

6  times of a client runtime license on a per machine basis.

7    18.    Each SDK license and runtime license (server or client) is only granted for a single

8  computer and might only be granted for use in one specific operating system environment, for

9  example, "Windows Server 2003" but not "Windows Vista", depending upon the specific license

10  grant.

### *DEFENDANTS' ACCESS TO PLAINTIFF'S WORKS*

11

12

13    19.    In April 2004, a British company named Chordiant Software Intl Ltd

14  ("ChordiantUK") sent a signed purchase order to Netbula to purchase one (1) SDK license and

15  1000 client runtime licenses for Microsoft Windows NT, Windows 2000, Windows XP and

16  Windows Server 2003. Windows Server 2003 is the name of a Microsoft operating system, which

17  is often used as a workstation platform.

18    20.    Soon after, Plaintiff created customized copies of the SDK and runtime software

19  and sent them to ChordiantUK at its address in Brentford, United Kingdom. The SDK software

20  delivered to ChordiantUK contained and would display the text "one developer license (s10303)"

21  or "developer license, non-distributable" when started; the runtime software components (such as

22  pmapsvc.exe) delivered to ChordiantUK would display the text "1000 machine client license

23  (s10303)".

24    21.    Plaintiff was not aware of the existence of defendant Chordiant Software, Inc.

25  ("CSI") until sometime in 2007.

### *COPYRIGHT INFRINGEMENT FACTS*

26

27

28                                              -6-

Case No.                                                                          COMPLAINT

1    22.    On April 13, 2007, Oliver Wilson, the Program Manager for the Marketing

2 Director Product Suite at CSI sent an email to sales@netbula.com asking a technical question for

3 Windows Vista. Mr. Wilson indicated that CSI had successfully used PowerRPC in its products

4 for many years. He later stated that he had successfully developed software for Windows Vista

5 using PowerRPC.

6    23.    In May 2007, a person emailed Netbula about PowerRPC's "pmapsvc.exe"

7 program for software named "Chordiant Marketing Director" ("CMD"). For the first time,

8 Plaintiff learnt that PowerRPC was used in the CMD software. Based on online research, Plaintiff

9 suspected that CMD consisted of both PowerRPC server and client applications, which would

10 require both server and client runtime licenses.

11    24.    In August 2007, Plaintiff communicated with Mr. Wilson in an attempt to obtain

12 information about CSI's usage of the PowerRPC software, in particular, whether CSI used

13 PowerRPC in server applications. Mr. Wilson stated that CSI used PowerRPC for a VB.NET

14 client application but did not fully answer Plaintiff's further questions (VB.NET is the name of a

15 Microsoft technology). On August 29, 2007, Plaintiff sent Mr. Wilson another email requesting a

16 detailed software usage report for PowerRPC, including date of installation, operating system

17 type, usage type (client or server) and number of copies. Plaintiff also telephoned Mr. Wilson and

18 requested the software usage information via voice-to-voice communication. Mr. Wilson stated

19 that he had requested that a usage report to be prepared and CSI would provide it soon.

20
21    25.    On September 17, 2007, Derek Witte, Vice President of CSI, emailed Plaintiff and
asked Plaintiff for a signed license agreement Plaintiff had with CSI.
22

23    26.    On October 1, 2007, Mr. Witte sent an email to Plaintiff, stating that the

24 PowerRPC software CD in his possession contained a license file with blanks to be filled. Mr.

25 Witte wrote about the license file: "It is unsigned, and does not refer to or purport to govern or be

26 accepted by Chordiant." Mr. Witte further wrote: "The unsigned form also does not prevent

27 Chordiant from distributing its products for all Windows platforms. It does refer to limited

28    -7-

1 platforms for use under the development license, but the distribution license contains no

2 limitation."

3      27.      The same day, October 1, 2007, Plaintiff emailed Mr. Witte the purchase order sent

4 by ChordiantUK and requested Mr. Witte to provide a copy of the PowerRPC software CD he had

5 in his possession. After realizing that CSI is a different company with its headquarters in

6 California, Plaintiff sent a letter to Steven R. Springsteel, President and CEO of CSI, again

7 requesting the software usage information.

8      28.      On October 5, 2007, Mr. Witte sent another email to Plaintiff. Mr. Witte wrote, in

9 part:

10

11          Therefore I ask you again:  please show me what agreement
            you claim requires anything of the sort you're requesting, or
12          please acknowledge that there is no such requirement.

13
            I also asked you below to give me any information or
14          documentation that you claim indicates that when Chordiant
            purchased its licenses, it accepted any of the purported
15          restrictions that you are now relying on.  I assume that you're
            acknowledging now that there was no click wrap agreement.
16          So I ask you again:  if you have any record of Chordiant's
            acceptance of any particular terms, including anything that
17          suggests that Chordiant agreed to limitation on which versions
            of windows operations systems it could distribute its products,
18          please show me.

19

20      29.      On the same day, Plaintiff replied to Mr. Witte's email:

21          My question to Chordiant is this: did Chordiant agree to and
            abide by Netbula's license terms?
22
            Please answer that question by 4:00PM today. I have given
23          your company plenty of time to reflect your positions.

24      30.      CSI did not respond to Plaintiff's question above, nor did CSI provide a usage

25 report as requested in August 2007 and subsequent communications. Plaintiff requested Mr. Witte

26

27

28                                          -8-

1  to provide a copy of the PowerRPC software CD in CSI's possession, CSI ignored Plaintiff's
2  request.

3      31.      On information and belief, CSI copied and continue to copy PowerRPC software
4  into its CMD products and potentially other software products by including "pmapsvc.exe",
5  "pwrpc32.dll" and other files and by incorporating the program code developed with the
6  PowerRPC SDK.

7      32.      CSI's use of PowerRPC in its CMD products includes both RPC server and RPC
8  client applications. A CMD server listens to and processes incoming computerized requests from
9  CMD clients. Users of the CMD client application connect to a CMD server to perform sales and
10  marketing activities.
11

12     33.      For one CMD server, there are many clients. In a typical setup, a customer of the
13  CMD product puts the setup files of the client application (which contains "pwrpc32.dll" and other
14  PowerRPC code) on a web server, and allows unrestricted download and installation of the client
15  application by others. Alternatively, a customer may copy and install the CMD client application
16  from a CD-ROM. Typical CMD client application users are: local retail channel managers,
17  branches, dealers, agents, relationship managers, financial advisors, brokers, contact centers and
18  other marketers.

19     34.      At least in some versions of CMD products, the RPC server application program is
20  named "v_rpcangelproc", which uses PowerRPC technology to accept commands from any
21  number of clients running on end-user computers, such as PCes and workstations. The CMD RPC
22  server requires the "pwrpc32.dll" and "pmapsvc.exe" files and the code generated by "rpcgen.exe"
23  and other SDK files. According to CSI's product literature, the CMD RPC Server creates service
24  names starting with "MarketingDirectorRPC_".

25     35.      The client application in CMD is used by individual PC or workstation users to
26  communicate with the RPC servers. Such communications between CMD clients and CMD
27  servers are performed by executing program code created by the "rpcgen.exe" and other

28                                          -9-

1  PowerRPC SDK components (such as header files and pwrpc32.lib library) and the code in the
2  "pwrpc32.dll" runtime library.

3      36.     Both the RPC server application and the client application in the CMD products
4  rely on the PowerRPC Portmapper program ("pmapsvc.exe") for establishing the communication
5  channel between them.

6      37.     On information and belief, the CMD products are key to the business of CSI.
7  Numerous third parties, most of them large corporations, acquired various versions of the CMD
8  products (both server and client) and copied these products (which included the "pwrpc32.dll" and
9  "pmapsvc.exe" files) without server and client runtime licenses for PowerRPC. CSI received
10 substantial amount of revenue from selling the CMD products and related services.

11

12     38.     With CMD products and services acting as promotional tools, CSI also sells other
13 products and related services to customers who acquired the CMD products.

14     39.     On further information and belief, CSI continued to sell the CMD products
15 containing Plaintiff's software after receiving Plaintiff's license inquiries which put CSI on notice
16 of its infringement. Instead of immediately stopping the infringement upon Plaintiff's initial
17 notice, Mr. Witte and Mr. Wilson engaged in activities to conceal, continue and further the
18 infringement by CSI and its customers. On information and belief, Mr. Witte supported,
19 encouraged and guided CSI's continuing infringement, while evading Plaintiff's inquiries on
20 software usage.

21     40.     Mr. Springsteel was informed about CSI's infringing actions, but did not stop the
22 infringement. Mr. Springsteel owns large quantity of shares of CSI stocks and derivative
23 securities, the value of which closely depends on the revenues received from infringing software,
24 such as the CMD products.

25                            **CLAIMS FOR RELIEF**
26                         **COPYRIGHT INFRINGEMENT**
27                **(DIRECT, CONTRIBUTORY, AND VICARIOUS)**
28                                    -10-

(17 U.S.C. § 101 et seq.)

41.    Plaintiff has invested substantial time, effort, intellectual labor and resources in the creation and public distribution of his PowerRPC software, based in part upon the opportunity to recover his investment from the copyrighted content, and to obtain the revenues and business advantages the copyrighted content provides in connection with Plaintiff's offering of computer software programs and licenses to the public.

42.    Defendants' CMD and other products contain copies of significant material portions of the content of Plaintiff's technology and products, including Plaintiff's "pwrpc32.dll", "pmapsvc.exe", "powerrpc.h" and other files and the code generated by "rpcgen.exe". Defendants' CMD products are derivative works of Plaintiff's software.

43.    Defendants intentionally reproduced, displayed, adapted, exhibited, and/or publicly distributed Plaintiff's software and other copyrighted content in Defendants' CMD and other products without Plaintiff's authorization, consent and without license.

44.    On further information and belief, Defendants have also each knowingly and systematically participated in, facilitated, supported, materially contributed to, and/or encouraged the unauthorized copying, reproducing, displaying, adapting, exhibiting, and/or public distributing of Plaintiff's copyrighted software by each other and by third parties, with actual and constructive knowledge of the infringements committed by and through each other and the third parties. On further information and belief, at all relevant times, each of the Defendants had the right, ability, and opportunity to halt and/or control the unlawful conduct of each of the other Defendants and third parties as alleged herein.

45.    On information and belief, each of the Defendants, through: (a) their active participation in the infringing conduct of each other and of third parties; (b) their assistance of and material contribution to each other and third parties in the infringing conduct; (c) their supervision of and ability to control or halt the infringing conduct of each other and third parties; and (d) the

-11-

1 substantial, direct financial benefits that each of the Defendants has derived and continues to

2 derive from all of the aforesaid acts, all with full knowledge of their unlawfulness, is

3 contributorily and vicariously liable for the unlawful infringing conduct of each of the other

4 Defendants and each third party as alleged hereinabove.

5   46.   Plaintiff is informed and believes, and on that basis alleges, that Defendants' acts of

6 infringements as alleged herein were committed knowingly, intentionally, maliciously, willfully,

7 and in blatant disregard of, and indifference to, the rights and property of Plaintiff.

8   47.   By means of the unauthorized conduct alleged herein, Defendants have deprived

9 and will continue to deprive Plaintiff of gains, revenues, royalties, business advantages, and/or the

10 opportunity to recover his investment in his intellectual creation, both direct and indirect. As

11 such, Defendants have created and continue to create a disincentive for similar investments in the

12 arts. On information and belief, Defendants have also derived substantial financial benefit from

13 their unlawful conduct with respect to Plaintiff's copyrighted materials, as well as from the

14 unlawful and infringing conduct of each other and of third parties.

15
16   48.   Each infringing act of copying, reproducing, displaying, adapting, exhibiting,

17 and/or distributing the content of Plaintiff's RPC technology (including the "pwrpc32.dll",

18 "powerrpc.h" and "pmapsvc.exe" files), as well as the continuing threat of the same, constitutes a

19 separate claim against Defendants, and each of them, under the Copyright Act.

20   49.   Each post, copy, reproduction, adaptation, exhibition, display, and/or distribution of

21 Plaintiff's copyrighted materials on and through Defendants' products, or by any other means,

22 constitutes a separate and distinct act of infringement, whether committed by individual

23 Defendants or combinations of them, and including acts of third parties for which Defendants are

24 contributorily and/or vicariously liable.

25   50.   Defendants have realized unlawful and unjust profits from the unauthorized and

26 illegal copying, reproduction, adaptation, exhibition, and/or displaying of the above-referenced

27 content of Plaintiff's copyrighted works. As a result of Defendants' acts of intentional direct,

28                                          -12-

Case No.                                                                    COMPLAINT

1  contributory, and/or vicarious infringement, Plaintiff is without an adequate remedy at law, in that

2  actual damages are difficult to ascertain.  Accordingly, Plaintiff requests that this Court grant the

3  injunctive relief prayed for herein.

4    51.    Plaintiff is entitled to recover from Defendants the damages he has sustained and

5  will sustain, and any gains, profits, and advantages obtained by Defendants as a result of

6  Defendants' acts of infringement alleged above, be they direct or indirect.  At present, the amount

7  of such damages to Plaintiff and the gains, profits, and advantages Defendants have obtained by

8  reason of the unlawful conduct described herein cannot be fully ascertained by Plaintiff, but are

9  likely to exceed $20,000,000.

10    52.    Furthermore, Plaintiff has no adequate remedy at law.  Unless Defendants are

11  preliminarily and permanently enjoined from committing the unlawful acts described herein,

12  Plaintiff will continue to suffer irreparable harm.  Plaintiff's harm is irreparable because

13  Defendants are in possession of Plaintiff's software and it is extremely difficult control their

14  copying and distribution unless they are enjoined by a court from doing so.  Plaintiff is entitled,

15  pursuant to 17 U.S.C. § 502, to injunctive relief in the form of a temporary restraining order, a

16  preliminary injunction, and/or a permanent injunction restraining Defendants and all persons

17  acting in concert with them, from engaging in any further such acts in violation of the Copyright

18  Act and from distributing Defendants' products which are the unlawful fruits of their unlawful

19  conduct.

20

21    53.    On information and belief, Defendants' unlawful conduct includes but not limited

22  to the acts of infringement described below.

23  **COUNT I: COPYRIGHT INFRINGEMENT BY MAKING UNAUTHORIZED COPIES
OF THE POWERRPC SDK**

24  *(Against All Defendants.  For Damages and Profits, and Injunctive Relief)*

25    54.    Plaintiff re-alleges and incorporates herein by reference the allegations of

26  paragraphs 1 through 53, inclusive, of this Complaint.

27

28  -13-

1    55.    In April 2004, ChordiantUK purchased one PowerRPC SDK developer license for

2  Windows NT, Windows 2000, Windows XP or Windows Server 2003. The license only granted

3  one user of ChordiantUK to use the POWERRPC SDK on one computer. The SDK license was

4  not transferable.

5    56.    On information and belief, multiple employees of CSI, including Oliver Wilson,

6  made numerous copies of the SDK onto many computers without licenses, in violation of

7  Plaintiff's copyright in the SDK.

8    57.    Each unauthorized copy of the SDK made by Defendants is a separate act of

9  infringement.

10
## COUNT II: COPYRIGHT INFRINGEMENT BY MAKING UNAUTHORIZED
11 ## DERIVATIVE WORKS OF THE POWERRPC SDK
*(Against All Defendants.  For Damages and Profits, and Injunctive Relief)*
12

13    58.    Plaintiff re-alleges and incorporates herein by reference the allegations of

14  paragraphs 1 through 57, inclusive, of this Complaint.

15    59.    On information and belief, defendants developed Chordiant Marketing Director

16  ("CMD") and other software with unauthorized copies of the POWERRPC SDK.

17    60.    On further information and belief, the CMD products incorporated header files,

18  "pwrpc32.dll" runtime library, "pmapsvc.exe" program and other software written by Plaintiff.

19    61.    The CMD products developed with unauthorized copies of the SDK were thus

20  infringing derivative works of Plaintiff's copyrighted software.

21
      62.    On further information and belief, numerous third parties also used infringing
22
    CMD products to create further derivative works without authorization.
23

24 ## COUNT III: COPYRIGHT INFRINGEMENT BY CREATING UNAUTHORIZED
## DERIVATIVE WORKS FOR WINDOWS VISTA
25 *(Against All Defendants.  For Damages and Profits, and Injunctive Relief)*

26    63.    Plaintiff re-alleges and incorporates herein by reference the allegations of

27  paragraphs 1 through 62, inclusive, of this Complaint.

28
                                          -14-

Case No.                                                              COMPLAINT

1    64.    The PowerRPC software licensed to ChordiantUK was restricted to Windows

2    NT/2000/XP/Server 2003.

3    65.    But, Defendants developed software for Windows Vista using PowerRPC and

4    without any PowerRPC license.

5    **COUNT IV: COPYRIGHT INFRINGEMENT BY DISTRIBUTING OR COPYING**

6    **INFRINGING DERIVATIVE WORKS OF THE SDK**
     *(Against All Defendants. For Damages and Profits, and Injunctive Relief)*

7

8    66.    Plaintiff re-alleges and incorporates herein by reference the allegations of

9    paragraphs 1 through 65, inclusive, of this Complaint.

10    67.    On information and belief, Defendants, and each of them, made, offered to sell,

11    sold, and/or distributed copies of the infringing derivative works of the SDK, or contributed to

12    these activities.

13    68.    Each copy, each distribution of the infringing derivative works and each

14    authorization to do the same constitutes a separate act of infringement.

15    **COUNT V: COPYRIGHT INFRINGEMENT BY COPYING AND/OR**

16    **DISTRIBUTING THE RUNTIME SOFTWARE FOR CLIENT APPLICATION**
     *(Against All Defendants. For Damages and Profits, and Injunctive Relief)*

17

18    69.    Plaintiff re-alleges and incorporates herein by reference the allegations of

19    paragraphs 1 through 68, inclusive, of this Complaint.

20    70.    CSI violated Plaintiff's copyright by distributing Plaintiff's software programs or

21    components (including "pwrpc32.dll") for client application without purchasing client runtime

22    licenses.

23    71.    Defendants thus further violated Plaintiff's copyright by willfully failing to monitor

24    the copying of Plaintiff's software and willfully permitting others to make unauthorized copies.

25    72.    Each copy, each distribution of the runtime software for client application and each

26    authorization to do the same constitutes a separate act of infringement.

27

28    -15-

1

2

**COUNT VI: COPYRIGHT INFRINGEMENT BY COPYING AND/OR
DISTRIBUTING THE RUNTIME SOFTWARE FOR SERVER APPLICATION**
*(Against All Defendants. For Damages and Profits, and Injunctive Relief)*

3

4

5

73.    Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 72, inclusive, of this Complaint.

6

7

8

74.    CSI violated Plaintiff's copyright by copying and/or distributing Plaintiff's software programs or components (including "pwrpc32.dll" and "pmapsvc.exe") for use in server applications without purchasing server runtime licenses.

9

10

75.    Defendants further violated Plaintiff's copyright by willfully failing to monitor the copying of Plaintiff's software and willfully permitting others to make unauthorized copies.

11

12

76.    Each copy, each distribution of the runtime software for server application and each authorization to do the same constitutes a separate act of infringement.

13

14

15

**COUNT VII: COPYRIGHT INFRINGEMENT BY AUTHORIZING UNLIMITED
DOWNLOAD, COPYING AND INSTALLATION OF CMD CLIENT SOFTWARE**
*(Against All Defendants. For Damages and Profits, and Injunctive Relief)*

16

17

77.    Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 76, inclusive, of this Complaint.

18

19

78.    CSI permitted their customers to make unlimited downloading and installations of the CMD client software (which contains "pwrpc32.dll" and other PowerRPC code).

20

21

22

79.    CSI further permitted their customers to make unrestricted copying and installation of the CMD client software via CD-ROM.

23

24

80.    Defendants knew that each copy of Plaintiff's software required a license. Each unauthorized copying and downloading is a separate act of infringement.

25

**PRAYER FOR RELIEF**

26

27

WHEREFORE, Plaintiff prays for judgment to be entered against Defendants as follows:

28

-16-

Case No.                                                                                    COMPLAINT

1.     That Defendants, and each of them, for each Count listed above, be held liable for direct, contributory, and/or vicarious infringement of Plaintiff's copyrights in violation of the federal Copyright Act, 17 U.S.C. § 501 *et seq.*, as alleged herein;

2.     That the Court find a substantial likelihood that Defendants will continue to infringe, or contribute to or vicariously support the infringement of, Plaintiff's copyrights in the content of Plaintiff's RPC technology and products, unless enjoined from doing so;

3.     That Defendants and their officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or privity or in participation with them, be preliminarily, and thereafter permanently, enjoined and restrained in the form of a temporary restraining order, a preliminary injunction, and/or a permanent injunction, pursuant to the Court's inherent equitable powers and pursuant to 17 U.S.C. § 502, from:

(a)     directly or indirectly engaging in any manner in the unauthorized copying, reproduction, adaptation, exhibition, distribution, display, or other infringement of Plaintiff's protected works and/or exclusive copyright rights (whether now in existence or hereafter created), including, without limitation, those involving the original content of and works on and in Plaintiff's RPC technology and products and from continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived or copied from the content of Plaintiff's copyrighted works, all as described in this Complaint;

(b)     causing, contributing to, enabling, facilitating, supporting, aiding, or participating in any manner in the infringement of Plaintiff's protected works and/or exclusive copyright rights (whether now in existence or hereafter created), including, without limitation, the content of Plaintiff's RPC technology and products, all as described in this Complaint; and

-17-

1
                (c)      otherwise engaging in any conduct that unlawfully, unfairly, and/or

2
fraudulently competes with Plaintiff and Plaintiff's RPC technology and products

3
(including, without limitation, through the unauthorized use and infringement of

4
Plaintiff's original works of authorship), all as described in this Complaint;

5
                4.      That Defendants and their officers, employees, agents, servants, attorneys,

6
and representatives, and all other persons, firms, or corporations in active concert or privity or in

7
participation with them, be ordered to immediately deliver to the Court for impoundment (and

8
destruction upon entry of final judgment against Defendants) all illegal, unlicensed copies of

9
Plaintiff's software in their possession, custody or control together with an accounting, to be

10
provided to Plaintiff, of: (1) the number of such copies in Defendants' possession, custody or

11
control; (2) where each copy was found; (3) how each copy was used; (4) the identity of the

12
individual or individuals having possession, custody or control of each copy at the time it was

13
found; and (5) a sworn explanation of how each copy was obtained, duplicated or distributed,

14
including the identity of all persons involved in such activity for each such copy;

15
                5.      That Defendants' unlawful conduct as alleged herein be deemed a willful

16
violation of Plaintiff's copyrights;

17

18
                6.      That Plaintiff be awarded its actual compensatory damages according to

19
proof for Defendants' acts of copyright infringement, including but not limited to server runtime

20
license fees and client runtime license fees;

21
                7.      That Defendants be ordered to disgorge any direct or indirect profits or

22
gains in Defendants' possession attributable to the infringement of Plaintiff's copyrights;

23
                8.      That Plaintiff be awarded statutory damages pursuant to 17 U.S.C. § 504(c)

24
when statutory damages are appropriate and desirable;

25
                9.      That the Court order an accounting of all gains, profits, and advantages

26
realized by Defendants, or others acting in concert or participation with them, from their unlawful

27
conduct (including an accounting of all usages and copies of Plaintiff's software and Defendants'

-18-

28

Case No.                                                        COMPLAINT

Case 5:08-cv-00019-JW    Document 1    Filed 01/02/2008    Page 19 of 25
1    revenues and profits related thereto), and that all such gains, profits, and advantages be deemed to

2    be in constructive trust for the benefit of Plaintiff, at the sole cost and expense of Defendants, by

3    means of an independent accountant;

4            10.    That the Court order an accounting of licenses of Plaintiff's software

5    distributed by Defendants and of all related license usages and/or copies by CSI's customers and

6    other third parties , as well as the disclosure of the identities of all such customers, and allow

7    Plaintiff to amend this Complaint to name such customers and third parties in this action for their

8    infringement of Plaintiff's copyrights;

9            11.    That Plaintiff recover its reasonable attorneys' fees pursuant to any

10    applicable laws and/or rules;

11    

12            12.    That Plaintiff recover its costs of this suit, including expert witness costs,

13    pursuant to 17 U.S.C. § 505 and any other applicable laws and/or rules; and

14            13.    That Plaintiff be granted such other and further relief as this Court deems

15    just and proper.

16    

17    Dated:   January 2, 2008

18    

19                   By:        Dongxiao Yue

20                              *Pro Se*

21    

22    **DEMAND FOR JURY TRIAL**

23        Plaintiff Dongxiao Yue demands a jury trial in this action.

24    Dated:   January 2, 2008

25    

26                   By:        Dongxiao Yue

27                              *Pro Se*

28                             -19-

Case No.                                           COMPLAINT

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TX 6—491—697**

EFFECTIVE DATE OF REGISTRATION

Dec 15 2006
Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**
NETBULA POWERRPC 2K4

**PREVIOUS OR ALTERNATIVE TITLES ▼**
NETBULA PowerRPC

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    **Title of Collective Work ▼**

If published in a periodical or serial give:  Volume ▼        Number ▼        Issue Date ▼        On Pages ▼

---

**2**

**a**

**NAME OF AUTHOR ▼**
NETBULA, LLC

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR  Citizen of ▶ U.S.A.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
COMPUTER PROGRAM

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR  Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR  Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
2004
◀ Year

**b**

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ January  Day ▶ 15  Year ▶ 2004
U.S.A.    ◀ Nation

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
NETBULA, LLC
2777 ALVARADO STREET, SUITE C
SAN LEANDRO, CA 94577, U.S.A.

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
DEC 15 2006

ONE DEPOSIT RECEIVED
DEC 15 2006

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE

Page 1 of ___ pages

| EXAMINED BY | OXMA | FORM TX |
|---|---|---|
| CHECKED BY | | |
| ☐ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☑ Yes  ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☑ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▶ TX-6-211-063    Year of Registration ▶ 2005

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

SUN RPCSRC 4.0, Netbula PowerRPC (Registered: TX-6-211-063)

**a**

**6**

See instructions before completing this space.

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

revisions and additional text of computer program, new programming text

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼    Account Number ▼

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

DON YUE
2777 ALVRADO STREET, SUITE C
SAN LEANDRO, CA 94577

**b**

Area code and daytime telephone number ▶ 510-396-0012    Fax number ▶ 510-291-2237

Email ▶ ydx@netbula.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  NETBULA, LLC

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

DONGXIAO YUE    Date ▶ December 7, 2006

Handwritten signature (X) ▼

X _____

| Certificate will be mailed in window envelope to this address: | Name ▼ DON YUE | • Complete all necessary spaces • Sign your application in space 8 |
|---|---|---|
| | Number/Street/Apt ▼ 2777 ALVRADO STREET, SUITE C | SEND ALL 3 ELEMENTS IN THE SAME PACKAGE: 1. Application form 2. Nonrefundable filing fee in check or money order payable to Register of Copyrights 3. Deposit material |
| | City/State/ZIP ▼ SAN LEANDRO, CA 94577 | Library of Congress Copyright Office - TX 101 Independence Avenue, S.E. Washington, D.C. 20559-6222 |

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: July 2003—xxx    Web Rev: July 2003    ⊕ Printed on recycled paper    U.S. Government Printing Office: 2000-461-113/60,021

# EXHIBIT B

# COPYRIGHT ASSIGNMENT

This Copyright Assignment is made by **NETBULA, LLC**, a Delaware Limited Liability Company (hereafter **NETBULA** or **Assignor**) with its principal address of business at 2777 ALVARADO STR, SUITE C, SAN LEANDRO, CA 94577, USA to **Dr. DONGXIAO YUE** (hereafter **DR. YUE** or **Assignee**), an individual currently residing in Union City, California, USA.

For valuable consideration, receipt and sufficiency of which are hereby acknowledged, NETBULA transfers and assigns to DR. YUE, his successors and assigns, in perpetuity, all rights, ownership, title, and interest, throughout the world, including any copyrights and renewals or extensions thereto, in the works with U.S. copyright registration numbers TX 6-211-063, TX 6-446-398, TX 6-459-456, TX 6-437-847, TX 6-491-697 and all Netbula PowerRPC and Netbula ONC RPC software created before January 1, 2007 (collectively "THE POWERRPC COPYRIGHTS"). The Assignor acknowledges that DR. YUE was the founder of Netbula, LLC and the natural person who created the works protected by the THE POWERRPC COPYRIGHTS. The description of the works protected by the THE POWERRPC COPYRIGHTS is provided in Exhibit A of this copyright assignment document.

NETBULA further assigns to DR. YUE, his successors and assigns, the right to collect payment for any past, current and future use of the works protected by THE POWERRPC COPYRIGHTS in any part of the world. NETBULA further assigns to **DR. YUE,** his successors and assigns, any and all claims assertable under copyright against any infringement of THE POWERRPC COPYRIGHTS in any part of the world which may have heretofore arisen or which may hereafter arise as well as the right to investigate, prosecute, settle or otherwise control such accrued, ongoing or prospective claims except the claims that had been resolved before the signing date of this Agreement.

IN WITNESS THEREOF, Assignor has duly executed this Copyright Assignment.

NETBULA, LLC

By: _____

Dongxiao Yue, in his capacity as the President of Netbula, LLC

Title: President, Netbula, LLC

Date: 09-26, 2007

## EXHIBIT A

## THE POWERRPC COPYRIGHTS ASSIGNED TO DR. YUE

| Title of Copyrighted Work | U.S. Copyright Registration No. | Date of Registration |
|---|---|---|
| Netbula PowerRPC | TX 6-211-063 | October 18, 2005 |
| Netbula PowerRPC Runtime DLL 98-NT-SDK-NTCT | TX 6-446-398 | October 6, 2006 |
| Netbula powerRPC-98 | TX 6-459-456 | October 6, 2006 |
| Netbula PowerRPC PWRPC32.DLL 00-SDK-STK | TX 6-437-847 | October 3, 2006 |
| NETBULA POWERRPC 2K4 | TX 6-491-697 | December 15, 2006 |
| All Netbula PowerRPC and ONC RPC software created before January 1, 2007 | | |

## NOTARIZATION

Before me this *September 26, 2007* personally appeared: <u>Dongxiao Yue,</u> to me known to be the person who is described in and who executed the foregoing copyright assignment instrument and acknowledged to me that he executed the same in his capacity as President of Netbula, LLC for the purpose therein expressed.

Notary Public

