1   LAURENCE F. PULGRAM (CSB NO. 115163)
    JEDEDIAH WAKEFIELD (CSB NO. 178058)
2   ALBERT L. SIEBER (CSB NO. 233482)
    LIWEN A. MAH (CSB NO. 239033)
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, CA  94104
    Telephone: (415) 875-2300
5   Facsimile:  (415) 281-1350

6   Attorneys Appearing Specially for
    Defendant Oliver Wilson

7

8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO DIVISION

11  DONGXIAO YUE,                          Case No.  C-08-0019-MJJ

12              Plaintiff,                  **DEFENDANT OLIVER WILSON'S
                                            NOTICE OF MOTION AND MOTION TO
13  v.                                      DISMISS FOR LACK OF PERSONAL
                                            JURISDICTION; MEMORANDUM OF
14                                          POINTS AND AUTHORITIES IN
                                            SUPPORT**
15  CHORDIANT SOFTWARE, INC., a
    Delaware corporation; DEREK P. WITTE,   **[FED. R. CIV. P. 12(b)(2)]**
16  an individual; STEVEN R.
    SPRINGSTEEL, an individual; and         Date:       Tuesday, April 1, 2008
17  OLIVER WILSON, an individual,           Time:       9:30 A.M.
                                            Courtroom:  11, 19th Floor
18              Defendants.                 Judge:      Hon. Martin J. Jenkins

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

# TABLE OF CONTENTS

2

**Page**

3   NOTICE OF MOTION AND MOTION ....................................................................... 1

4   MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

5   INTRODUCTION .................................................................................................... 1

6   STATEMENT OF FACTS ....................................................................................... 3

7        A.   Mr. Wilson's Lack of Contacts with California.................................... 3

8        B.   The *Yue v. Chordiant* Complaint ....................................................... 4

9            1.   General Allegations........................................................................ 4

10           2.   The Allegations Specific to Mr. Wilson. ...................................... 4

11           3.   Chordiant's General Counsel, Not Mr. Wilson, Handled Dr. Yue's
12                     Inquiries About License Usage ................................................... 6

13  ARGUMENT ........................................................................................................... 7

14  I.   THE EXERCISE OF PERSONAL JURISDICTION REQUIRES MINIMAL
    CONTACTS WITH CALIFORNIA BY MR. WILSON PERSONALLY,
15  REGARDLESS OF CHORDIANT'S CONNECTION WITH THE FORUM ............. 7

16  II.   MR. WILSON IS NOT SUBJECT TO GENERAL JURISDICTION IN THE
    STATE OF CALIFORNIA............................................................................... 9
17

18  III.   THERE IS NO BASIS FOR SPECIFIC PERSONAL JURISDICTION OVER
    MR. WILSON ................................................................................................ 10

19       A.   There Is No Purposeful Availment By Mr. Wilson, Nor Did He
    Purposefully Direct His Activities Toward California ......................... 11
20

21           1.   No Knowledge Harm Would Be Suffered In California.......... 12

22           2.   No Express Aiming or Targeting at California ....................... 13

23       B.   Dr. Yue's Claims Do Not Arise Out of Mr. Wilson's Contacts with
    California .......................................................................................... 14

24       C.   This Court's Exercise Of Jurisdiction Over Mr. Wilson Would Be
25             Unreasonable.................................................................................... 15

26  CONCLUSION ...................................................................................................... 17

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

4

## CASES

5

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004)................................................................8

6

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
   551 F.2d 784 (9th Cir. 1977)...................................................................8

7

*Brand v. Menlove Dodge*,
   796 F.2d 1070 (9th Cir. 1986)................................................................9

8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................16

9

*Calder v. Jones*,
   465 U.S. 783 (1984)........................................................................ passim

10

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
   557 F.2d 1280 (9th Cir. 1977)................................................................8

11

12

*Davis & Cox v. Summa Corp.*,
   751 F.2d 1507 (9th Cir. 1985)..............................................................10

13

*Doe v. American Nat'l Red Cross*,
   112 F.3d 1048 (9th Cir. 1997)..............................................................15

14

*Dongxiao Yue v. Storage Technology Corporation,
   Sun Microsystems, Inc., et al.*,
   Case Number C07-05850-MJJ .........................................................2, 4

15

16

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984)...........................................................9, 10

17

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002)................................................................9

18

*Gray & Co. v. Firstenberg Mach. Co.*,
   913 F.2d 758 (9th Cir. 1990)................................................................16

19

20

*Hanson v. Denckla*,
   357 U.S. 235 (1958).........................................................................7, 15

21

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
   466 U.S. 408 (1984)..............................................................................9

22

*Kahn v. Sprouse*, No. C-92-4384-MHP,
   1993 U.S. Dist. LEXIS 2156 (N.D. Cal. Feb. 22, 1993)....................15

23

24

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984)..............................................................................8

25

*LeDuc v. Kentucky Cent. Life Ins. Co.*,
   814 F. Supp. 820 (N.D. Cal. 1992) ..................................................8, 10

26

*Merch. Transaction Sys. v. Nelcela, Inc.*,
   2005 U.S. Dist. LEXIS 35348 (D. Ariz. 2005) ..................................11

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

3   *Mullis v. United States Bank. Ct.*,
       828 F.2d 1385 (9th Cir. 1987)................................................. 2

4   *Netbula, LLC v. BindView Development Corporation, et al.*,
       Case Number C06-00711-MJJ ................................................ 2, 4
5

    *Netbula, LLC v. Greenwich Capital Markets, Inc.*,
6      Case Number C06-07143 ......................................................... 2, 4

7   *Netbula, LLC v. Storage Technology Corporation,
    Sun Microsystems, Inc., et al.*,
       Case Number C06-07391-MJJ (the "*STK I*" action).................. 2, 4, 5, 16
8

9   *Panavision Int'l, L.P. v. Toeppen*,
       141 F.3d 1316 (9th Cir. 1998)................................................. 16, 17

10  *Pavlovich v. Superior Court*,
       29 Cal. 4th 262 (Cal. 2002) .................................................... 11, 13

11  *Pebble Beach Co. v. Caddy*,
       453 F.3d 1151 (9th Cir. 2006).................................................. 13

12
    *RMC Pubs., Inc. v. Doulos PM Training*,
13     2007 U.S. Dist. LEXIS 89144 (D. Minn. Dec. 4, 2007) .............. 14

14  *Schwarzenegger v. Fred Martin Motor Co.*,
       374 F.3d 797 (9th Cir. 2004)................................................... passim

15  *Second Amendment Found. v. United States Conference of Mayors*,
       274 F.3d 521 (D.C. Cir. 2001) ................................................ 8

16  *Sun Microsystems, Inc. v. Microsoft, Inc.*,
       188 F.3d 1115 (9th Cir. 1999)................................................. 2

17
    *Superior Edge, Inc. v. Maricopa County Cmty. Coll. Dist.*,
18     509 F. Supp. 2d 786 (D. Minn. 2007) ..................................... 13, 14

19  *Weyerhaeuser Co. v. Keating Fibre Int'l, Inc.*,
       416 F. Supp. 2d 1041 (W.D. Wash. 2006)................................ 9

20  *World-Wide Volkswagen Corp. v. Woodson*,
       444 U.S. 286 (1980)................................................................ 7, 8, 15

21

22  **STATUTES**

23  Cal. Civ. Proc. Code § 410.10 ...................................................... 7

24  Fed. R. Civ. P. 12(b)(2)................................................................ 1

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF DONGXIAO YUE, appearing *pro se*:

NOTICE IS HEREBY GIVEN that on April 1, 2008 at 9:30 A.M., or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California (San Francisco Division), located at 450 Golden Gate Avenue, San Francisco, California, in the courtroom of the Honorable Martin J. Jenkins, Defendant Oliver Wilson will, and hereby does, move this Court for entry of an Order dismissing the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Oliver Wilson and Derek P. Witte, such other oral or written submissions as the Court shall entertain, and upon the papers and pleadings filed in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Defendant Oliver Wilson, a program manager in Defendant Chordiant Software, Inc.'s New Hampshire office, has no connection with the State of California sufficient to create personal jurisdiction in this forum. Mr. Wilson has never lived in California, never visited the state for business purposes, neither supervises, nor is supervised by any Californian. To the extent that any claims were even conceivably tenable based on Mr. Wilson's purportedly making copies of software in his work at Chordiant, his conduct occurred entirely in New Hampshire, without any knowledge that any harm was being felt in California (or anywhere else), and without any "express aiming or targeting" at California. In the absence of such targeting, it is well settled that specific personal jurisdiction cannot be exercised over Mr. Wilson individually, regardless of the existence of jurisdiction over his employer.

As discussed in the accompanying Motion to Dismiss filed by all Defendants, this action arises out of what should be a straightforward contractual matter between Chordiant, a publicly-traded company located in Sunnyvale, California, and Plaintiff Dongxiao Yue's business entity, Netbula, LLC ("Netbula"). Plaintiff admits that Netbula entered a license with Chordiant's affiliate, Chordiant International, Ltd. Compl. ¶¶ 19, 20, 55, 64. Under settled law, breach of that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   license should be remedial in contract, not copyright. *See, e.g.*, *Sun Microsystems, Inc. v.*

2   *Microsoft, Inc.*, 188 F.3d 1115, 1121-22 (9th Cir. 1999). Nonetheless, Plaintiff here seeks to

3   assert copyright claims, on the theory that the license does not apply to Chordiant or that use has

4   been made outside its scope. There is nothing to suggest that Chordiant itself would be unable to

5   respond to any claim or judgment. Nonetheless, Dr. Yue has targeted Chordiant's employees as

6   co-defendants, apparently for the *in terrorem* impact of doing so. Dr. Yue has pursued the same

7   tactic against other individual employees he sued in his prior *BindView* and *STK II* cases.[1]

8   Dr. Yue's *modus operandi* is to contact a licensee's employees, inquire about the license usage

9   reports of Netbula software, then claim copyright infringement against the licensee and the

10   employee who had the bad luck to receive his inquiry, when he does not receive the response he

11   wants. In each of his cases that has reached the merits, all claims, both of copyright infringement

12   and individual liability, have been rejected.

13       Mr. Wilson had the misfortune of e-mailing Netbula with a technical support question

14   seeking Netbula's help in utilizing the software Chordiant licensed in deploying its Marketing

15   Director software on the Microsoft Vista platform. With the assistance and encouragement of

16   Dr. Yue (Netbula's only employee), Chordiant successfully adapted Marketing Director for Vista.

17   Four months later, Dr. Yue e-mailed Mr. Wilson to ask for a "license usage report" for Netbula

18   software. Mr. Wilson referred the inquiries to company counsel, ending his own involvement

19   with the matter. Dr. Yue has now sued Mr. Wilson, claiming that his alleged use of Netbula's

20   software, in particular in connection with a Vista platform, was infringement.

---

[1] In the Northern District since 2006, the present case is the fifth time that Dr. Yue or Netbula has sued one of Netbula's licensees for copyright infringement relating to use and distribution of Netbula software. The common thread among these cases is Plaintiff's theory that any Netbula licensee that is not fully paid up on royalties is categorically a copyright infringer. So far, the Court has rejected such claims and on each occasion the merits have been addressed. Besides the present case, the other cases, all of which have been related and handled by Judge Jenkins, are *Netbula, LLC v. BindView Development Corporation, et al.*, Case Number C06-00711-MJJ (the "*BindView*" action); *Netbula, LLC v. Greenwich Capital Markets, Inc.*, Case Number C06-07143; *Netbula, LLC v. Storage Technology Corporation, Sun Microsystems, Inc., et al.*, Case Number C06-07391-MJJ (the "*STK I*" action); and *Dongxiao Yue v. Storage Technology Corporation, Sun Microsystems, Inc., et al.,* Case Number C07-05850-MJJ (the "*STK II*" action). Defendants request judicial notice of the records in these cases. A court may take judicial notice of its own records or those of other courts. *See, e.g.*, *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987)).

1  Even assuming Dr. Yue's few factual allegations specific to Mr. Wilson were true, they do

2  not approach a showing that Mr. Wilson has purposefully availed himself of the benefits of a

3  California forum, as required to hale him into court here.  Dr. Yue cannot carry his burden of

4  showing that Mr. Wilson had any reason to think that his actions, performed with Dr. Yue's

5  encouragement, would cause harm felt in California, nor that Mr. Wilson somehow targeted

6  California with his conduct.  This is simply a case of an employee being dragged into a forum on

7  the other side of the country because he communicated with what turned out to be a California

8  Plaintiff, all the more galling because the alleged wrongdoing does not arise from those

9  communications. Therefore, this Court lacks personal jurisdiction over Mr. Wilson, and he should

10  be dismissed from this action.

11  ### STATEMENT OF FACTS

12  **A.     Mr. Wilson's Lack of Contacts with California.**

13  Defendant Oliver Wilson lives in New Hampshire.  He works in the New Hampshire

14  office of Chordiant, a software company headquartered in Cupertino, California.  Declaration of

15  Oliver Wilson ("Wilson Decl.") ¶¶ 2-3.  As stated in his declaration, Mr. Wilson works as a

16  program manager, or "program owner," with responsibilities for new features for Chordiant's

17  Marketing Director product suite and Chordiant's new Cx Marketing application.  *Id.* ¶ 2.  He has

18  worked, resided and been domiciled in Bedford, New Hampshire, and before that, the

19  United Kingdom, for his entire life.  *Id.* ¶¶ 2-3.  He is eligible to vote in local elections in

20  New Hampshire and has a New Hampshire driver's license.  *Id.* ¶ 2.

21  Mr. Wilson has never lived or worked in California, and he has never visited California

22  for his work.  *Id.* ¶¶ 2-4.  He does not supervise and is not supervised by any employees in

23  California.  *Id.* ¶ 4.  He has never worked on a computer in California, has never developed

24  software in California, and has never copied or utilized computer software in California. *Id.* ¶ 7.

25  Mr. Wilson also (1) has never had an address or phone number in California; (2) has never

26  owned or leased any real property in California; (3) has never paid California income taxes;

27  (4) has never maintained a bank or other financial accounts in California; (5) has never been

28  licensed by a California governmental agency; (6) has never registered to vote in California;

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(7) has never been personally involved in any legal proceedings governed by California law or within the state of California (besides the present action); (8) has never had a business or any offices in California; (9) has never had any employees or agent for service of process in California; and (10) was not personally served in California with a copy of the Summons and Complaint in this action. *Id*. ¶¶ 5-6, 8.

Mr. Wilson has never even seen California except for a few days during a vacation over ten years ago. *Id*. ¶ 4. He has never traveled to California (or anywhere) for the purpose of meeting with Dr. Yue, Netbula, or their agents or representatives. *Id*. ¶ 10. During his limited communications with Netbula or Dr. Yue, Mr. Wilson was always physically present in his home state of New Hampshire.

**B.    The *Yue v. Chordiant* Complaint.**

**1.    General Allegations.**

As more fully described in the separate Rule 12(b)(6) Motion, the Complaint includes seven "counts" of copyright infringement against every Defendant, without distinction. All counts relate to Chordiant's use and incorporation of Netbula's RPC software into Chordiant's Marketing Director product. Netbula's software includes an SDK (software development kit), which comprises tools for developers to add RPC functionality to commercial software programs, as well as "run time" components intended for incorporation into those programs. Plaintiff admits that Chordiant International submitted a purchase order and received a license for Netbula's software. Compl. ¶¶ 19, 55, 64. But Dr. Yue contends here (as he did against defendants in the *STK I, STK II, BindView,* and *Greenwich* cases) that Chordiant's copying of the SDK and distribution of its Marketing Director software exceeded the scope of its license and constitute copyright infringement.

**2.    The Allegations Specific to Mr. Wilson.**

There are various generic, boilerplate allegations against all Defendants without differentiation. Compl. ¶¶ 4, 43, 44. These claims merely recite legal elements relating to infringement or jurisdiction; they do not tie Mr. Wilson in any way to California. The Complaint's allegations actually mentioning Mr. Wilson also do not identify any specific

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  connection between Mr. Wilson and California. Indeed, the Complaint contains sparse reference

2  to Mr. Wilson at all.

3      The Complaint refers to Mr. Wilson as "program manager for the Marketing Director

4  Project Suite" and states that Wilson corresponded with Netbula about a technical issue. *Id.*

5  ¶¶ 8 & 22. The Complaint tries to sweep Mr. Wilson up with "multiple employees of CSI,"

6  whom Plaintiff alleges "made numerous copies of the SDK onto many computers," *id.* ¶ 56, but

7  alleges no such conduct in California. And the Complaint also conclusorily asserts that

8  Mr. Wilson and Mr. Witte "engaged in [unidentified] activities to conceal, continue and further

9  the infringement by CSI and its customers." *Id.* ¶ 39. None of these allegations assert that any of

10  Mr. Wilson's acts took place in or were connected with California, and, in fact, they did not.

11  Wilson Decl. ¶¶ 4, 10.

12      The only other allegations that mention Mr. Wilson pertain to communications that he had

13  from New Hampshire with Dr. Yue. Mr. Wilson's correspondence began in March 2007, when

14  Mr. Wilson e-mailed Netbula for technical assistance. Wilson Decl. ¶ 9, Exhs. 1-3. His e-mail,

15  entitled "ONC-RPC – Vista," inquired about problems Chordiant was having using Netbula

16  ONC-RPC code in a product for the Vista operating system. *Id.* Dr. Yue, under the false name of

17  "Dave," offered some advice and invited Mr. Wilson to download some software in hopes this

18  would enable Marketing Director to run on Vista.[2] *Id.* Thus, Netbula offered to assist in solving

19  the Vista problem and said nothing about any restriction on Chordiant's preparation of a Vista

20  version. *Id.* By the end of April 2007, these communications ceased.

21      Several months later, on August 23, 2007, Dr. Yue e-mailed Mr. Wilson a request to

22  identify what Chordiant products used Netbula RPC. *Id.* Mr. Wilson, not suspecting that

23  Dr. Yue was setting up a lawsuit against Chordiant and himself, responded that Chordiant used

24  Netbula's code in Marketing Director, thanked Dr. Yue for the prior assistance, and advised him

25  that Chordiant had been able to get its application running on Vista. *Id.*

26

27  [2] Dr. Yue is the owner and only employee of Netbula. *See STK I* Docket No. 64, at 56.
Depending on the circumstances, Dr. Yue uses various titles: President, Chief Officer of Sales
and Marketing, and Vice President of Sales. *Id.* He also assumes false identities, using the

28  aliases "John Young" and "David King" when communicating with his customers. *Id.* at 46-49.

Dr. Yue responded on August 24, 2007 by requesting a "license usage report for the past years" regarding Netbula's RPC software. *Id.* Dr. Yue added: "Also, the original license Chordiant purchased does not cover Windows Vista." *Id.* This e-mail, after the work on the Vista version was already finished, was the first Mr. Wilson ever heard that Netbula had any issue relating to use of its software in Vista. *Id.* Since this seemed to touch on legal matters, he forwarded the request to Chordiant's General Counsel. *Id.* When Dr. Yue telephoned Mr. Wilson to ask for the license usage report, Compl. ¶ 24, Mr. Wilson responded that it would be provided (as it ultimately was). Even at this time, Dr. Yue did not assert that Chordiant Software, Inc. and Mr. Wilson had *no* license (as Dr. Yue asserts now, purportedly because the purchase order had been submitted under the name of Chordiant International). Rather, Dr. Yue expressly acknowledged the "original license Chordiant purchased," and merely asserted, after having himself encouraged completion of the Vista version, that the license did not reach to Vista products. Wilson Decl., Exh. 3.

All these allegations are silent as to any connection of Mr. Wilson to California. Indeed, before the present litigation, Mr. Wilson never even knew that Netbula or Dr. Yue were in or from California, or anywhere else for that matter. *Id.* ¶ 10. Since Mr. Wilson never called Netbula or Dr. Yue and his only correspondence was by e-mail, their location was immaterial. *Id.*

### 3. Chordiant's General Counsel, Not Mr. Wilson, Handled Dr. Yue's Inquiries About License Usage.

After Dr. Yue requested the "license usage report" in August, 2007, Chordiant's General Counsel, Mr. Witte, interceded. *Id.* On December 21, 2007, Mr. Witte provided the license usage report, stating Chordiant's count of 953 uses — less than the 1000 licensed in 2004. *See* Compl. ¶ 19; Witte Decl. ¶ 2, Exh. 2. Dr. Yue, apparently unhappy with the count, responded, "We have determined that Chordiant has infringed our copyright. There is no point for you to conceal the infringement." Witte Decl., Exh. 2. When Mr. Witte pointed out that Chordiant had provided a usage count and honored its obligations, and that Dr. Yue had never mentioned copyright infringement before, Dr. Yue responded with all sorts of new claims. *Id.* On the day he filed this action, January 2, 2008—eight months after he assisted Mr. Wilson with the Vista

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

issue—Dr. Yue first asserted that Chordiant (and all of its customers) had no license because the purchase order for the license agreement was transmitted by Chordiant International. *Id.* The record reflects that no notice, nor any request to cease use, was ever provided to Mr. Wilson. *Id.* Dr. Yue provided only a request for license usage information, followed by repudiation in January 2008 of the license *after* Mr. Witte provided the license usage count. *Id.*

## ARGUMENT

Because Mr. Wilson has no meaningful ties to California, this Court has no personal jurisdiction over him and should dismiss the claims against him.

### I. THE EXERCISE OF PERSONAL JURISDICTION REQUIRES MINIMAL CONTACTS WITH CALIFORNIA BY MR. WILSON PERSONALLY, REGARDLESS OF CHORDIANT'S CONNECTION WITH THE FORUM.

The jurisdictional reach of courts in California is limited by the Due Process Clause of the United States Constitution, which allows the exercise of personal jurisdiction over a non-resident defendant only so long as there exist "minimum contacts" between the defendant and the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).[3] The "minimum contacts" rule prevents a defendant from being forced to litigate in a jurisdiction where he has no meaningful contacts related to the claim at issue:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; . . . even if the forum State is the most convenient place for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the state of its power to render a valid judgment.

*World-Wide Volkswagen*, 444 U.S. at 294.

For the Court to find that minimum contacts exist between a non-resident defendant and the forum state, there must be some act by which the defendant "purposefully avails itself of the privilege of conducting activities" within that state, thus "invoking the benefits and protections" of the state's laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The defendant's conduct and connection with the forum state must also be such that he or she would reasonably anticipate

---

[3] California's long-arm statute permits its courts to exercise jurisdiction "on any basis not consistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   being haled into court in that state. *World-Wide Volkswagen*, 444 U.S. at 297.  The forum may

2   exercise "general" jurisdiction over a defendant whose contacts with the forum are "substantial"

3   or "continuing and systematic." *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1287

4   (9th Cir. 1977).  Absent a finding of general jurisdiction, the court may still exercise "specific"

5   jurisdiction over a defendant if (1) the defendant has performed an act which purposefully avails

6   him or herself of the privileges of the forum; (2) the claim <u>arises out of</u> defendant's forum-related

7   actions; and (3) exercising jurisdiction is reasonable.  *Id.*

8       Plaintiff bears the burden of proving that jurisdiction over a particular defendant is

9   appropriate.  *Id.* at 1285.  Neither a plaintiff's bare allegations nor conclusions of law

10  masquerading as fact are sufficient to meet this burden.  *See Second Amendment Found. v. United*

11  *States Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001); *Amba Mktg. Sys., Inc. v. Jobar*

12  *Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977) (in jurisdictional dispute, plaintiff could not "simply

13  rest on the bare allegations of its complaint, but rather was obligated to come forward with facts,

14  by affidavit or otherwise, supporting personal jurisdiction").

15      The United States Supreme Court has established the fundamental rule that "[e]ach

16  defendant's contacts with the forum State must be assessed <u>individually</u>." *Calder v. Jones*, 465

17  U.S. 783, 790 (1984) (emphasis added).  Only acts personally committed by a defendant may be

18  considered to establish jurisdiction over that person, and conduct by an employer corporation or

19  by other defendants may not be considered to establish minimum contacts.  *Id.*  The mere fact that

20  a corporation is subject to the jurisdiction of the forum state is insufficient as a matter of law to

21  subject an employee of the corporation to the jurisdiction of the forum state.  *Keeton v. Hustler*

22  *Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not

23  automatically follow from jurisdiction over the corporation which employs him."); *LeDuc v.*

24  *Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 824 (N.D. Cal. 1992) ("[t]he mere fact that a

25  corporation is subject to general jurisdiction does not mean that its non-resident officers and

26  directors are subject to jurisdiction as well").  Finally, where a plaintiff has asserted multiple

27  claims against a single defendant, "[p]ersonal jurisdiction must exist for each claim." *Action*

28  *Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## II.    MR. WILSON IS NOT SUBJECT TO GENERAL JURISDICTION IN THE STATE OF CALIFORNIA.

The Complaint sets forth no systematic, substantial or continuous contacts that could subject Mr. Wilson to general jurisdiction in California.  To exercise general jurisdiction over a non-resident defendant, the non-resident's contacts must be so pervasive that it would be fair and just for the forum courts to treat the non-resident as if he were physically present in the state. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408 (1984); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984)*; Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002) (to establish general jurisdiction, the plaintiff must show that the defendant "has sat down and made itself at home"); *Weyerhaeuser Co. v. Keating Fibre Int'l, Inc.*, 416 F. Supp. 2d 1041, 1044 n.2 (W.D. Wash. 2006) (noting that Ninth Circuit and Supreme Court precedent "reveals that general jurisdiction is rarely available, even with substantial contacts in the forum"); *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases where general jurisdiction was denied despite defendants' significant contacts with forum).  Mr. Wilson's contacts with California fall far short of this rigorous standard.

None of the factors typically supporting a finding of general jurisdiction are present here. Mr. Wilson has never lived or worked in California, has never had an address or phone number in California, does not own or lease any real or personal property in California, has never registered to vote in California, has never paid California income taxes or been employed by a California company, has never been licensed by a California governmental agency, or otherwise sought the benefits of California residency or of California's laws.  Wilson Decl. ¶ 5.  Furthermore, Mr. Wilson has personally maintained no employees, agents, offices or other links to California, and has no supervisorial relation with California, as might show an intention to establish a continuous and substantial connection to California.  *Id.* ¶ 6.

Mr. Wilson's limited personal travel to California for a few days over ten years ago does not support a finding of general jurisdiction.  The Ninth Circuit has held that even significantly more frequent travel directly related to the matter in dispute failed to establish general jurisdiction

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    over the defendant:

2         His activities within the forum state, California, were not "substantial" nor
          "continuous or systematic." In his individual capacity, Lummis made occasional
3         vacation trips to California. In his capacity as administrator of the Estate, Lummis
          made a few trips to California to locate Hughes' will and to appear on behalf of the
4         Estate in certain litigation. As an officer and director of Summa, Lummis
          occasionally traveled to California to represent Summa. These business and
5         vacation trips to California, amounting to an average of about three weeks a year,
          did not constitute "conducting business" in California to support a finding of
6         general jurisdiction.

7    *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1526 (9th Cir. 1985). And even if Mr. Wilson

8    knew where Dr. Yue or Netbula were based, which he did not, Wilson Decl. ¶ 10, intermittent

9    communications with persons or entities in California, like those alleged in the Complaint, do not

10   establish general jurisdiction. *See, e.g.*, *Gates Learjet Corp.*, 743 F.2d at 1331 ("Making

11   telephone calls and sending telexes and letters to [the forum state] are not activities which support

12   a finding of general jurisdiction.")

13        Additionally, Chordiant's activities within California do nothing to support personal

14   jurisdiction over a mere employee from a non-California office. *See Calder*, 465 U.S. at 790;

15   *Kentucky Central Life Ins. Co.*, 814 F. Supp. at 832. Therefore, Chordiant's contacts, including

16   any alleged acts of infringement that may have occurred in or had an effect in California, are

17   wholly irrelevant to this analysis. Regardless of Chordiant's operations, Mr. Wilson's brief and

18   transitory contacts with California are not enough to give rise to general jurisdiction.

19   **III.    THERE IS NO BASIS FOR SPECIFIC PERSONAL JURISDICTION OVER
             MR. WILSON.**
20

21        Specific personal jurisdiction over a defendant entails a three-pronged analysis: a plaintiff

22   must demonstrate that (1) each defendant "purposefully availed itself of the privilege of

23   conducting activities in California, or purposefully directed its activities toward California,"

24   (2) the claim arises out of or relates to the particular defendant's contacts with the forum; and

25   (3) the exercise of jurisdiction would comport with fair play and substantial justice. *See*

26   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004);[4] *see also*

27   _____

28   [4] If the Plaintiff carries its burden to prove the first two prongs, only then must Defendant bear the
     burden to refute the third prong. *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  *Pavlovich v. Superior Court*, 29 Cal. 4th 262, 269 (Cal. 2002) ("The purposeful availment

2  inquiry . . . focuses on the defendant's intentionality" and "ensures that a defendant will not be

3  haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts";

4  finding no jurisdiction over internet publisher of DVD decryption code that harmed California

5  industry).  Here, the prerequisites for specific jurisdiction are absent.

6      **A.    There Is No Purposeful Availment By Mr. Wilson, Nor Did He Purposefully**

7           **Direct His Activities Toward California.**

8          As to the first prong of the analysis, the Complaint does not allege, nor do the facts

9  establish, that Mr. Wilson purposefully availed himself of the privilege of conducting activities in

10  California.  *See Schwarzenegger*, 374 F.3d at 802 (stating that "purposeful availment" is

11  generally evidenced by a defendant's actions *in* the forum, such as executing or performing a

12  contract there; purposeful availment not found by defendant's inclusion of photograph of

13  Schwarzenegger in a magazine edited and published in Ohio).  Since Mr. Wilson has never been a

14  party to any contract with Dr. Yue or Netbula—and indeed has never conducted any activities,

15  including the alleged infringement, in California—specific jurisdiction depends on Dr. Yue's

16  ability to show that Mr. Wilson purposefully *directed* activities toward California.  *See id.* at 803

17  (analyzing purposeful direction after finding no purposeful availment).

18          In the Ninth Circuit, analysis of "purposeful direction" employs the three-part *Calder*

19  "effects" test:  the defendant must allegedly have (1) committed an intentional act, (2) expressly

20  aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the

21  forum state.  *Id.* (referring to *Calder*, 465 U.S. 783).  "[M]erely asserting that a defendant knew

22  or should have known that his intentional acts would cause harm in the forum state is not enough

23  to establish jurisdiction under the effects test."  *Pavlovich*, 29 Cal. 4th at 270-71 (reviewing law

24  of Ninth Circuit). Rather, under the *Calder* effects test, a defendant must commit intentional acts

25  "*expressly aimed at or targeting* the forum state" in addition to knowing that foreseeable harm in

26  the forum state would result.  *Id.* at 271 (emphasis in original); *Merch. Transaction Sys. v.*

27  *Nelcela, Inc.*, 2005 U.S. Dist. LEXIS 35348, at *35 (D. Ariz. 2005).

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Both the second and third prong of the *Calder* test are lacking here.[5]  Significantly,

2  Mr. Wilson is not alleged to have directed the sale or distribution of any product in California; he

3  is a program manager responsible for planning software.  His allegedly wrongful acts consist of

4  assistance in New Hampshire in developing a Vista version using Netbula RPC.  Mr. Wilson had

5  no basis to know that he was doing *anything* causing injury to *anyone*; he thus certainly

6  committed no act "expressly aimed or targeted" at California, nor did he know that any "harm

7  was likely to be suffered" in California since he did not know that he was causing any harm at all.

8    **1.    No Knowledge Harm Would Be Suffered In California.**

9    Taking the harm prong first, Mr. Wilson had no basis to believe that developing a Vista

10  version would cause harm.  When Mr. Wilson contacted Netbula, he forthrightly explained that

11  he was developing a Vista version.  Wilson Decl. ¶ 9, Exh. 1.  Dr. Yue (posing as "Dave") freely

12  assisted him, and even invited Mr. Wilson to download Netbula's RPC software for the purpose

13  of creating a Vista product.  *Id.*  It was only four months later, after the Vista product was

14  completed, that Dr. Yue would suddenly claim that the development of Vista was outside of the

15  scope of what Dr. Yue himself described as "the original license Chordiant purchased."  *See id.*

16    Likewise, when Dr. Yue, in August, requested license usage reports about the admitted

17  Chordiant license, Mr. Wilson referred the requests to Chordiant's General Counsel.  It was

18  another four months later, on December 21, 2007, that Dr. Yue first raised a claim of

19  "infringement," and it was only in January, 2008, that Dr. Yue first claimed the license was

20  inapplicable to Chordiant, Inc.  Indeed, there is no allegation that Mr. Wilson engaged in any

21  activities relating to Netbula's software after Dr. Yue first raised issues of licensing and

22  infringement.  *See* Witte Decl. ¶ 2, Exh. 2.  Hence, there is no factual basis to establish that

23  Mr. Wilson ever had reason to believe that any harm would result in California from his actions at

24  the time he took them.

25

26  [5] For present purposes, we assume, *arguendo*, that the "intentional act" prong has been satisfied—
because under *Schwarzenegger*, "intent" is established by an intention to perform an act (*e.g.*,
27  allegedly copying) regardless of the intention to cause injury.  Mr. Wilson reserves the right to
dispute this prong and the Complaint's allegations in this regard, but the Court need not resolve
28  that issue here.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## 2.    No Express Aiming or Targeting at California.

Even assuming (contrary to the record) that Mr. Wilson actually knew that he was causing the harm now alleged by Dr. Yue, there is no basis to conclude that he expressly aimed or targeted *California* with his activities. The "harm" part of the *Calder* effects does not displace the separate analysis of whether a defendant expressly aimed his activities at the forum state. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) ("we have warned courts not to focus too narrowly on . . . the effects prong—holding that 'something more' [express aiming] is needed in addition to a mere foreseeable effect."); *see also Pavlovich*, 29 Cal. 4th at 270-71. Thus, in *Schwarzenegger*, even though the Ohio advertiser using Schwarzenegger's unauthorized image knew that doing so could cause harm to Schwarzenegger, and that Schwarzenegger was in California, this did not constitute targeting of California, where the ad was directed at an Ohio audience.  374 F.3d at 803.  Likewise, even if Mr. Wilson had anticipated Dr. Yue's claim that the use of Netbula's software was unlicensed, use of Netbula's development software in New Hampshire would not be express aiming of his activity toward California.  A foreseeability of harm does not equate to targeting harm towards California.

Moreover, before the present litigation, Mr. Wilson did not even know that Netbula or Dr. Yue were in or from California, or anywhere else for that matter.  Wilson Decl. ¶ 10.  Thus, even more so than in *Schwarzenegger*, where the plaintiff's domicile was well known to the alleged infringer, there can be no claim that Mr. Wilson targeted California.  This case falls squarely in line with *Pavlovich*:  where the defendant does not know, at the time his conduct was allegedly done, that it would harm a plaintiff in California, that conduct cannot constitute express aiming at California.  29 Cal. 4th at 270-71 & n.5 (collecting federal cases).

Two recent decisions finding no personal jurisdiction as to copyright claims brought by software licensors in their home forum are particularly instructive. In *Superior Edge, Inc. v. Maricopa County Community College District*, a Minnesota software licensor sued an Arizona licensee for continuing to use the software after the license expired. *Superior Edge, Inc. v. Maricopa County Cmty. Coll. Dist.*, 509 F. Supp. 2d 786, 788 (D. Minn. 2007).  Like the *Schwarzenegger* court, the *Superior Edge* court noted that the *Calder* test requires that a

1    "defendant aimed its conduct at the forum state," not just that the conduct was felt there. *See id.*

2    at 794; *Schwarzenegger*, 374 F.3d at 803. Even though the *Superior Edge* defendant knew

3    (unlike here) that the plaintiff was a Minnesota corporation, mere knowledge that the plaintiff

4    "would feel the injury arising from the alleged infringement" did not suffice under the *Calder* test

5    to show that the defendant aimed its allegedly infringing use at Minnesota. *Superior Edge*, 509 F.

6    Supp. 2d at 794. Similarly, in *RMC Publications, Inc. v. Doulos PM Training*, the court found no

7    jurisdiction over an out-of-state software licensee that allegedly made more copies than the

8    license with the plaintiff allowed, even though the excessive copying monetarily harmed the in-

9    state plaintiff. *RMC Pubs., Inc. v. Doulos PM Training*, 2007 U.S. Dist. LEXIS 89144, at *6-7

10   (D. Minn. Dec. 4, 2007). This monetary harm was not "localized" and thus not aimed at the

11   plaintiff's state. *See id.* (contrasting loss of revenue in state where copy occurred to the localized

12   reputational damage to the plaintiff alleged in the defamation claims in *Calder*). Nor was

13   jurisdiction established by the fact that the defendant accessed the plaintiff's computer server in

14   the forum state or contacted the plaintiff by e-mail or telephone about licensing or support issues.

15   *See id.* at *6. Likewise, the fact that Mr. Wilson contacted Netbula about his Vista issues or

16   accessed Netbula's server to download software does not constitute sufficient targeting of

17   California under *Calder*.

18        Defendant knows of no case that has held that mere making of an allegedly infringing

19   copy in a foreign state allows the hailing of a remote defendant into the plaintiff's home forum.

20   Dr. Yue has made no showing that Mr. Wilson did anything that he knew could cause harm in

21   California or that was directed at California. Indeed, Dr. Yue has alleged no acts whatsoever by

22   Mr. Wilson after Dr. Yue first asserted that the alleged use of Netbula software was unauthorized.

23   Since Mr. Wilson could not have known of any harm, and targeted none of his activities toward

24   California, Dr. Yue has not satisfied the first prong for specific jurisdiction.

25        **B.    Dr. Yue's Claims Do Not Arise Out of Mr. Wilson's Contacts with California.**

26        Plaintiff's claims also fail the second prong of specific jurisdiction, as any contacts that

27   Mr. Wilson did have with California are not the conduct out of which Plaintiff's purported claims

28   arise. *See Schwarzenegger*, 347 F. 3d at 802. Mr. Wilson's contacts with California are limited to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    his communications with Dr. Yue regarding Netbula's willing assistance with Chordiant's

2    inquiries about Vista and, months later, Dr. Yue's requests for license usage reports.  Wilson

3    Decl. ¶ 9, Exhs. 1-3.  Those communications did not constitute or give rise to copyright

4    infringement.  Moreover, Mr. Witte interceded once Dr. Yue began questioning the scope of

5    Chordiant's license and usage.  Witte Decl. ¶ 2, Exh. 2. Dr. Yue's mere request for a license

6    count cannot bootstrap jurisdiction over Mr. Wilson in California.  *See World-Wide Volkswagen*,

7    444 U.S. at 298 ("the mere 'unilateral activity of those who claim some relationship with a

8    nonresident defendant cannot satisfy the requirement of contact with the forum state'") (quoting

9    *Hanson*, 357 U.S. at 253).

10        In determining whether a plaintiff's injury arises out of a defendant's forum-related

11    activities, the Ninth Circuit adheres to the "but for" test.  *See Doe v. American Nat'l Red Cross*,

12    112 F.3d 1048, 1051 & n.7 (9th Cir. 1997); *Kahn v. Sprouse*, No. C-92-4384-MHP, 1993 U.S.

13    Dist. LEXIS 2156, at *18-*21 (N.D. Cal. Feb. 22, 1993) (finding that plaintiff had not satisfied

14    the "but for" requirement where there was "no evidence that the plaintiffs would not have been

15    injured" despite the defendants' contacts with California).  Dr. Yue does not plead that, but for

16    Mr. Wilson's communications with California, Dr. Yue would not have been harmed.  To the

17    contrary, if there were harm from unauthorized copying by Mr. Wilson, it would have happened

18    regardless of any communications with Dr. Yue.  Therefore, Dr. Yue has not satisfied the second

19    prong of specific jurisdiction.

20        **C.    This Court's Exercise Of Jurisdiction Over Mr. Wilson Would Be
              Unreasonable.**

21

22        Finally, in order for an exercise of personal jurisdiction to comport with the Due Process

23    Clause, the exercise of jurisdiction must be reasonable.  The Supreme Court has identified seven

24    factors relating to the reasonableness inquiry:

25        (1) the extent of a defendant's purposeful interjection; (2) the burden on the
          defendant in defending in the forum; (3) the extent of conflict with the sovereignty
26        of the defendant's state; (4) the forum state's interest in adjudicating the dispute;
          (5) the most efficient judicial resolution of the controversy; (6) the importance of
27        the forum to the plaintiff's interest in convenient and effective relief; and (7) the
          existence of an alternative forum.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (citing *Burger King Corp.*

2   *v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)).  Ultimately, "[f]or jurisdiction to be reasonable, it

3   must comport with fair play and substantial justice."  *Id.* at 1322 (internal quotation marks

4   omitted).

5       Under this first factor, a court should weigh the relative *degree* to which the defendant has

6   purposefully availed himself of the forum state.  *Id.* at 1323.  In this case, even if the Court finds

7   that Mr. Wilson's sparing communications with plaintiff are sufficient to satisfy the first two

8   prongs of personal jurisdiction, his interjection into California is still minimal.  This factor weighs

9   against finding personal jurisdiction over Mr. Wilson.  *See, e.g.*, *Gray & Co. v. Firstenberg*

10  *Mach. Co.*, 913 F.2d 758, 761 (9th Cir. 1990) ("The most notable factor [in the reasonableness

11  analysis] is the first; clearly the defendants' purposeful interjection into Oregon was minimal.").

12      The second factor, the burden on Mr. Wilson, also weighs against finding personal

13  jurisdiction over him.  Since emigrating from the United Kingdom, Mr. Wilson has been a

14  resident of New Hampshire and is employed there.  To force him to litigate in California would

15  create a significant burden.  *See, e.g.*, *Panavision Int'l*, 141 F.3d at 1323 (noting that the burden

16  on an Illinois resident to litigate in California is "significant").

17      The third and fourth factors, whether an exercise of jurisdiction over Mr. Wilson conflicts

18  with the sovereignty of New Hampshire and/or impinges the forum state's sovereignty, are

19  neutral.  There are no state law claims here.  The Complaint against Mr. Wilson is solely for

20  copyright infringement, a federal claim that can just as easily be decided in New Hampshire as in

21  California.  *See, e.g.*, *Gray & Co.*, 913 F.2d at 761 (noting, in the context of a contract claim, that

22  both potential forums had adopted the UCC and "any conflicting sovereignty interests are best

23  accommodated through choice-of-law rules rather than jurisdictional rules").

24      The fifth factor, which "focuses on the location of the evidence and witnesses," is also at

25  least neutral.  As to the claims against Mr. Wilson, whose workplace is in New Hampshire,

26  records, witnesses, and parties are in New Hampshire.  Although Plaintiff is in California, it has

27  only one employee, Dr. Yue. *See STK I* Docket No. 64, at 56.

28      Under the sixth factor, while it might be somewhat inconvenient for plaintiff to litigate in

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  another forum, courts in the Ninth Circuit "have given little weight to the plaintiff's

2  inconvenience." *Panavision Int'l*, 141 F.3d at 1324.  Furthermore, the inconvenience would

3  appear to be minimal, because on the Plaintiff's side, Dr. Yue is the single witness with

4  knowledge of the underlying facts.

5      The seventh factor, whether the plaintiff would have an alternative forum for its claims,

6  also weighs against personal jurisdiction in California.  Assuming the copyright claim can survive

7  a Rule 12(b)(6) motion, a federal district court in New Hampshire is just as capable of hearing it

8  as one in California.

9                              **<u>CONCLUSION</u>**

10     For the foregoing reasons, Defendant Oliver Wilson respectfully requests that the Court

11  dismiss Dr. Yue's Complaint as to Mr. Wilson for lack of personal jurisdiction.

12

13  Dated: February 25, 2008                    FENWICK & WEST LLP

14

15                                          By  /S/ LAURENCE F. PULGRAM

16                                             Laurence F. Pulgram

17                                          Attorneys Appearing Specially for
                                            Defendant Oliver Wilson

18  26257/00401/LIT/1280815.4

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO