1  LAURENCE F. PULGRAM (CSB NO. 115163)
   *lpulgram@fenwick.com*
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   *jwakefield@fenwick.com*
3  ALBERT L. SIEBER (CSB NO. 233482)
   *asieber@fenwick.com*
4  LIWEN A. MAH (CSB NO. 239033)
   *lmah@fenwick.com*
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94104
   Telephone: (415) 875-2300
7  Facsimile:  (415) 281-1350

8  Attorneys for Defendants
   CHORDIANT SOFTWARE, INC.,
9  DEREK P. WITTE, STEVEN R. SPRINGSTEEL,
   and specially appearing for OLIVER WILSON

10

11                 UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  DONGXIAO YUE,                          Case No.  C-08-0019-MJJ

16                 Plaintiff,              **DEFENDANTS' NOTICE OF MOTION
                                           AND MOTION TO DISMISS AND STRIKE**
17        v.                               **[FED. R. CIV. P. 12(b)(1), 12(b)(6), 12(f),
                                           17(a)]**
18
    CHORDIANT SOFTWARE, INC., a            Date:    Tuesday, April 1, 2008
19  Delaware corporation; DEREK P. WITTE,  Time:    9:30 A.M.
    an individual; STEVEN R.               Dept:    11, 19th Floor
20  SPRINGSTEEL, an individual; and        Judge:   Hon. Martin J. Jenkins
    OLIVER WILSON, an individual,
21
                   Defendants.
22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

INTRODUCTION ...................................................................................................................... 1

SUMMARY OF ISSUES PRESENTED ................................................................................... 3

ALLEGATIONS OF THE COMPLAINT ................................................................................. 3

    A.    Netbula LLC and the Copyrights in Suit .............................................................. 3

    B.    Allegations of the Complaint as to Individual Defendants ................................... 4

    C.    The Allegations Regarding Mr. Witte ................................................................... 5

    D.    The Allegations Regarding Mr. Springsteel .......................................................... 7

    E.    Previous Cases by Dr. Yue and Netbula Targeting Defendant Corporations'
        Individual Employees ............................................................................................ 7

ARGUMENT .............................................................................................................................. 8

I.    DR. YUE'S LACKS STANDING TO ASSERT AS A PRO SE LITIGANT
    CLAIMS THAT BELONGED TO HIS COMPANY AND TO ASSERT CLAIMS
    IN COPYRIGHTS UNREGISTERED AT THE COMMENCEMENT OF THIS
    ACTION ........................................................................................................................... 9

    A.    Courts Routinely Refuse to Recognize Assignments That Would Otherwise
        Permit Claims Originally Belonging to a Company to Be Brought by an
        Individual ............................................................................................................... 9

    B.    Under The Governing Standards, Plaintiff's Purported Assignment of
        Claims in Netbula LLC's Copyright Registration Should Be Disregarded ......... 12

    C.    The Copyright Dr. Yue Claims as an Individual Has No Valid Registration,
        So Dr. Yue Has No Standing to Sue on It, Either. ................................................ 16

II.    COPYRIGHT CLAIMS AGAINST DEREK P. WITTE AND STEVEN R.
    SPRINGSTEEL FAIL AS A MATTER OF LAW ......................................................... 18

    A.    A Pleading Alleging Copyright Infringement May Not Rely on Legal
        Conclusions And Must State Facts Showing How a Defendant Infringed .......... 19

    B.    Dr. Yue Fails to State a Cause of Action Against Mr. Springsteel for Either
        Direct, Contributory, or Vicarious Copyright Infringement ................................ 22

    C.    Dr. Yue Fails to State a Cause of Action Against Mr. Witte for Either
        Direct, Contributory, or Vicarious Copyright Infringement ................................ 23

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**
**(continued)**

Page

III.    THE COURT SHOULD STRIKE PLAINTIFF'S PRAYER FOR ATTORNEYS' FEES AND STATUTORY DAMAGES ........................................................... 24

CONCLUSION ................................................................................................................. 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

<u>**CASES**</u>

4

*Balistreri v. Pacifica Police Dep't.,*
901 F.2d 696 (9th Cir. 1988).................................................................. 9

5

*Bell Atl. Corp. v. Twombly,*
127 S. Ct. 1955 (2007) ............................................................ 8, 9, 19, 22

6

*Bell v. Carlsen Motor Cars, Inc.,*
Case No. 06-CIV-2974-LBS, 2007 U.S. Dist. LEXIS 75623
(S.D.N.Y. Oct. 10, 2007) ...................................................................... 12

7

8

*Bell v. South Bay European Corp.,*
486 F. Supp. 2d 257 (S.D.N.Y. 2007).................................................. 12

9

*Berry v. Penguin Group, Inc.,*
448 F. Supp. 2d 1202 (W.D. Wash. 2006) ................................. 16, 17, 18

10

*Brought to Life Music, Inc. v. MCA Records, Inc.,*
2003 U.S. Dist. LEXIS 1967 (S.D.N.Y. 2003) .............................. 20, 22

11

*Bureerong v. Uvawas,*
922 F. Supp. 1450 (C.D. Cal. 1996)..................................................... 24

12

*Carell v. Shubert Org.,*
104 F. Supp. 2d 236 (S.D.N.Y. 2000)............................... 20, 21, 22, 23

13

*Caterpillar, Inc. v. Williams,*
482 U.S. 386 (1987)............................................................................. 18

14

*Chang v. McKesson HBOC, Inc.,*
2007 U.S. Dist. LEXIS 95088 (N.D. Cal. Dec. 17, 2007) ...................... 8

15

*Cinema Concepts Theatre Service Co. v. Filmack Studios,*
No. 89 C 0024, 1989 U.S. Dist. LEXIS 5640,
(N.D. Ill. May 15, 1989) ...................................................................... 21

16

17

*CNN, L.P. v. GoSMS.com, Inc.,*
2000 U.S. Dist. LEXIS 16156 (S.D.N.Y. 2000) ........................ 21, 22, 23

18

*Cognotec Servs. v. Morgan Guar. Trust Co.,*
862 F. Supp. 45 (S.D.N.Y. 1994)......................................................... 25

19

*ConnectU LLC v. Zuckerberg,*
482 F. Supp. 2d 3 (D. Mass. 2007) ...................................................... 18

20

21

*Corbis Corp. v. Amazon.com, Inc.,*
351 F. Supp. 1090 (W.D. Wash. 2004)................................................. 16

22

*Demetriades v. Kaufmann,*
680 F. Supp. 658 (S.D.N.Y. 1988)....................................................... 17

23

*Dongxiao Yue v. Storage Technology Corporation,*
*Sun Microsystems, Inc., et al.,*
Case Number C07-05850-MJJ (the "*STK II*" action) ....................... passim

24

25

*Estelle v. Gamble,*
429 U.S. 97 (1976)............................................................................... 11

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

### TABLE OF AUTHORITIES
### (continued)

2

Page(s)

3

*Galiano v. Harrah's Operating Co.*,
No. 00-0071, 2004 U.S. Dist. LEXIS 8265

4

(E.D. La. May 10, 2004) ................................................................. 21

5

*Goes Litho. Co. v. Banta Corp.*,
26 F. Supp. 2d 1042 (N.D. Ill. 1998) ............................................. 21

6

*Google, Inc. v. Affinity Engines, Inc.*,
No. C-05-0598, 2005 U.S. Dist. LEXIS 37369

7

(N.D. Cal. Aug. 12, 2005) .............................................................. 25

8

*Gully v. First National Bank*,
299 U.S. 109 (1936) ....................................................................... 18

9

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007) ............................................................ 19

10

*In re Neiman*,

11

379 B.R. 299 (Bankr. N.D. Ill. 2007) ........................................... 12

12

*Jacobs v. Patent Enforcement Fund, Inc.*,
230 F.3d 565 (2d Cir. 2000) .......................................................... 12

13

*Jones and Ultracashmere House, Ltd. v. Nordstrom, Inc.*,
123 F.R.D. 435 (S.D.N.Y. 1988) ................................................... 11

14

*Jones v. Niagara Frontier Transp. Authority*,
722 F.2d 20, 22 (2d Cir. 1983) .................................... 10, 11, 12, 15

15

*Kelly v. L.L. Cool J*,

16

145 F.R.D. 32 (S.D.N.Y. 1992) ............................................... 19, 20

17

*La Resolana Architects v. Clay Realtors Angel Fire*,
416 F.3d 1195 (10th Cir. 2005) ..................................................... 17

18

*Lattanzio v. COMTA*,
481 F.3d 137 (2d Cir. 2007) .......................................................... 10

19

*Literary Works in Electronic Databases Litigation*,
509 F.3d 116 (2d Cir. 2007) .......................................................... 17

20

*Livnat v. Lavi*,

21

1997 U.S. Dist. LEXIS 13633 (S.D.N.Y. 1997) ........................... 23

22

*Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*,
315 F. Supp. 2d 1053 (C.D. Cal. 2004) ........................................ 17

23

*Lutin v. New Jersey Steel Corp.*,
Case No. 95-CIV-4965, 1996 U.S. Dist. LEXIS 16340

24

(S.D.N.Y. Nov. 1, 1996) .......................................................... 11, 13

25

*Marvullo v. Gruner & Jahr*,
105 F. Supp. 2d 225 (E.D.N.Y. 2000) ........................... 19, 20, 23, 24

26

*Mercu-Ray Indus., Inc. v. Bristol-Myers, Co.*,
392 F. Supp. 16 (S.D.N.Y. 1974),

27

*aff'd*, 508 F.2d 837 (2d Cir.) ........................................................ 11

28

*Miller v. Cont'l Airlines, Inc.*,
260 F. Supp. 2d 931 (N.D. Cal. 2003) ............................................ 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Nat'l Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*,
748 F.2d 602 (11th Cir. 1984)......................................................................... 12

*Netbula, LLC v. BindView Development Corporation et al.*,
Case Number C06-00711-MJJ ................................................................. passim

*Netbula, LLC v. Greenwich Capital Markets, Inc.*,
Case Number C06-07143 .......................................................................... 1, 2, 3

*Netbula, LLC v. Storage Technology Corporation,
Sun Microsystems, Inc., et al.*,
Case Number C06-07391-MJJ (the "*STK I*" action)............................. passim

*Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*,
20 F.3d 987 (9th Cir. 1994)........................................................................... 14

*Palazzo v. Gulf Oil Corp.*,
764 F.2d 1381 (11th Cir. 1985)..................................................................... 10

*Parfums Givenchy v. C & C Beauty Sales*,
832 F. Supp. 1378 (C.D. Cal. 1993).............................................................. 24

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007)............................................................... 9, 22, 23

*Pridgett v. Andresen*,
113 F.3d 391 (2d Cir. 1997)........................................................................... 10

*Robinson v. Princeton Review, Inc.*,
1996 WL 663880 (S.D.N.Y. 1996)................................................................ 17

*Rowland v. Cal. Men's Colony*,
506 U.S. 194 (1993)....................................................................................... 10

*Ryan v. Carl Corp.*,
1998 U.S. Dist. LEXIS 9012 (N.D. Cal. 1998).............................................. 17

*Sallen v. Corinthians Licenciamentos LTDA*,
273 F.3d 14 (1st Cir. 2001)............................................................................ 18

*Sanyo Laser Prods., Inc. v. Royal Ins. Co. of Am.*,
No. 1:03-CV-1151, 2003 U.S. Dist. LEXIS 20129
(S.D. Ind. Nov. 7, 2003).................................................................................. 9

*Schueneman v. 1st Credit of Am., LLC*,
Case No. 05-04505-MHP, 2007 U.S. Dist. LEXIS 48981
(N.D. Cal. July 6, 2007).................................................................................. 10

*SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,
88 F.3d 780 (9th Cir. 1996).............................................................................. 8

*Transphase Sys. v. Southern California Edison*,
839 F. Supp. 711 (C.D. Cal. 1993)................................................................. 19

*United States v. High Country Broad. Co.*,
3 F.3d 1244 (9th Cir. 1993)..................................................................... 10, 12

*Wiesbuch v. County of Los Angeles*,
119 F.3d 778 (9th Cir. 1997)............................................................................ 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

## STATUTES

17 U.S.C. § 410(a) ........................................................................................... 16, 17

17 U.S.C. § 410(b) ................................................................................................. 17

17 U.S.C. § 410(d) ................................................................................................. 17

17 U.S.C. § 411 ............................................................................................... 16, 17

17 U.S.C. § 411(a) ................................................................................................. 16

17 U.S.C. § 412 ............................................................................................ 3, 24, 25

28 U.S.C. § 1359 ................................................................................................... 14

28 U.S.C. § 1654 ................................................................................................... 10

## RULES

Fed. R. Civ. P. 12 ................................................................................................. 24

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 8, 19

Fed. R. Civ. P. 12(f) ............................................................................................... 1

Fed. R. Civ. P. 17(a) ............................................................................................... 1

Fed. R. Civ. P. 24 ................................................................................................. 12

Fed. R. Civ. P. 25 ................................................................................................. 12

## OTHER AUTHORITIES

William F. Patry, *Patry on Copyright* § 17-213 (2007) ...................................... 17

William F. Patry, *Patry on Copyright* § 17-224 to 17-225 (2007) ...................... 17

William F. Patry, *Patry on Copyright* § 17-226 (2007) ...................................... 17

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF DONGXIAO YUE, appearing *pro se*:

NOTICE IS HEREBY GIVEN that on April 1, 2008 at 9:30 A.M., or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California (San Francisco Division), located at 450 Golden Gate Avenue, San Francisco, California, in the courtroom of The Honorable Martin J. Jenkins, Defendants Chordiant Software, Inc. ("Chordiant"), Derek P. Witte, Steven R. Springsteel, and Oliver Wilson (collectively "Defendants") will and hereby do move the Court,

> (a) pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and/or 17(a), to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, and

> (b) pursuant to Federal Rule of Civil Procedure 12(f), to strike Plaintiff's prayers for attorneys' fees and statutory damages (and, if it does not dismiss the Complaint entirely, to strike Plaintiff's claims based on Plaintiff's unregistered copyright and the copyright assigned by his LLC), on the grounds that such claims are untenable as a matter of law.

This motion is based upon this Notice, Motion and Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, Declaration of Derek P. Witte, pleadings and other papers on file in this action, and other oral or written submissions as the Court may entertain.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This action is the fifth brought since 2006 in this District by Plaintiff Dongxiao Yue or his company, Netbula, LLC ("Netbula") against Netbula's customers. Each demanded tens of millions of dollars in damages for alleged copyright infringement.[1] Each dressed up simple royalty disputes with Netbula's licensees as claims that the customers owe massive copyright

---

[1] Besides the present case, the other cases, all of which have been related and handled by Judge Jenkins, are *Netbula, LLC v. BindView Development Corporation, et al.*, Case Number C06-00711-MJJ (the "*BindView*" action); *Netbula, LLC v. Greenwich Capital Markets, Inc.*, Case Number C06-07143; *Netbula, LLC v. Storage Technology Corporation, Sun Microsystems, Inc., et al.*, Case Number C06-07391-MJJ (the "*STK I*" action); and *Dongxiao Yue v. Storage Technology Corporation, Sun Microsystems, Inc., et al.*, Case Number C07-05850-MJJ (the "*STK II*" action). In *BindView*, Dr. Yue alleged damages "likely to exceed $10,000,000." In *STK I*, he claimed damages "likely to exceed $10,000,000," and in *STK II*, he claimed damages "likely to exceed $20,000,000." Defendants have requested judicial notice of the records in these cases.

1    damages for allegedly distributing more Netbula components than they have paid for. So far, the

2    Court has dismissed these claims on each occasion the merits have been addressed.

3        Here, the Court need not reach the merits because Dr. Yue has no standing to bring the

4    present action in his own name. *See* Part I, *infra*. After Netbula LLC proceeded as plaintiff in the

5    *BindView*, *Greenwich*, and *STK I* actions, Dr. Yue has more recently attempted to bypass the

6    strictures that a business entity can only appear through counsel. In both the *STK II* action and

7    the present case, Dr. Yue filed complaints with himself in the role of plaintiff *in propria persona*,

8    omitting Netbula as a party.[2] In an attempt to fabricate standing to sue *pro se*, Dr. Yue purported

9    to assign all of Netbula's copyright registrations in its PowerRPC product—as well as all claims

10   of infringement thereon—to himself on September 26, 2007. *See* Compl. ¶ 13 & Exh. B;

11   *STK II* FAC ¶ 3 & Exh. C. Courts have repeatedly invalidated this stratagem to prevent

12   individuals from abusing the corporate form and pursuing corporate claims without counsel.

13   Dr. Yue also purports to sue here for infringement of a copyright that has not yet been

14   registered—omitting the federal jurisdictional prerequisite for filing a copyright lawsuit. Because

15   Dr. Yue is not a proper plaintiff for any of the copyrights at issue in this matter, the Court should

16   dismiss his Complaint as to all Defendants due to failure to state a claim and lack of federal

17   jurisdiction.

18       The Court should also dismiss his Complaint for failing to state a claim for personal

19   liability against Mr. Witte and Mr. Springsteel, Chordiant's general counsel and CEO

20   respectively. *See* Part II, *infra*. This action perpetuates Plaintiff's model of naming as individual

21   defendants the CEOs of Netbula's licensees, based on nothing other than their being on the

22   receiving end of letters that Dr. Yue transmits. Indeed, Mr. Springsteel is the third CEO of a

23   publicly traded software company that Dr. Yue has joined on this basis. *See* Part II.B, *infra*.

24   Similarly, Dr. Yue has, in his last two suits, named as defendants the in-house lawyers of

25   Netbula's licensees, based merely on their misfortune of having become engaged in negotiations

26

27   ―――――――――――――――――
     [2] On January 28, 2008, Dr. Yue decided to employ as counsel for the *STK II* case the same lawyer
28   he had engaged in *STK I*. *See STK II* Docket Nos. 19 & 38. However, his counsel then sought to
     withdraw from both cases on February 21. *See STK I* Docket No. 144; *STK II* Docket No. 47.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Dr. Yue commenced about royalties allegedly due.  *See* Part II.C, *infra*.  The claims against these individuals have no factual basis and serve no purpose other than to harass.  Mere status as a corporate officer and shareholder, or mere knowledge of the existence of a royalty inquiry, provides no basis for asserting millions of dollars in personal liability.  *See* Compl. ¶ 51 (seeking damages "likely to exceed $20,000,000" against all Defendants).

Finally, Dr. Yue has continued to seek statutory damages and attorney fees, despite the fact that 17 U.S.C. § 412 expressly precludes any such award where, as here, the alleged use commenced before the copyright registration date.  Thus the Court should strike his claims for statutory damages and attorney fees.  *See* Part III, *infra*.

## SUMMARY OF ISSUES PRESENTED

1.    Whether Dr. Yue lacks standing to sue on behalf of Netbula, LLC.

2.    Whether Dr. Yue lacks standing to sue over a copyright that has not been registered prior to suit.

3.    Whether all claims should be dismissed as to Mr. Witte and Mr. Springsteel, where the Complaint fails to assert facts supporting a finding of personal liability.

4.    Whether the Court should strike Dr. Yue's prayers for statutory damages and statutory attorneys' fees, where that recovery is barred by 17 U.S.C. § 412.

## ALLEGATIONS OF THE COMPLAINT

### A.    Netbula LLC and the Copyrights in Suit.

Netbula markets software components based on open source RPC (Remote Procedure Call) technology.  The components are intended for incorporation into other commercial software applications.  Compl. ¶ 10.  Although the Complaint reads as if Chordiant never had a license to use Netbula's components, it acknowledges that Netbula sold a license to Chordiant International, Ltd. in 2004 to distribute 1000 runtime copies.  Compl. ¶¶ 19, 55, 64.

Notwithstanding the license, Dr. Yue contends here (as in the *STK I, STK II, BindView,* and *Greenwich* cases) that Chordiant's distribution of its Marketing Director software infringed copyrights, of which he identifies two in the Complaint.  One is a copyright in PowerRPC

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MPA ISO DEFENDANTS' RULE 12(b)(6)
AND 12(f) MOTIONS TO DISMISS AND TO
STRIKE                                    -3-                        CASE NO. C-08-0019-MJJ

registered to Netbula in 2004 as both its "author" and "owner" (the "2k4 copyright"). Compl. Exh. A. Dr. Yue claims that Netbula, by Dr. Yue's signature, assigned this copyright to Dr. Yue on September 27, 2007. Compl. Exh. C. The other copyright, which has no registration, is allegedly for "earlier works created before July 24, 1996," comprising parts of the PowerRPC software that Dr. Yue claims he wrote but never assigned to Netbula. Compl. ¶ 12.

Although he sues here (and filed his *STK II* action) in his individual capacity, the Court has recognized that Netbula and Dr. Yue are really "one and the same." *See STK I* Docket No. 139 [November 20, 2007 Transcript], at 10:25.[3] Dr. Yue has alternatively identified himself as Netbula's founder, its President, or its Chief Marketing and Sales Officer. *See, e.g.*, *BindView* Docket No. 257 [Joint Statement of Undisputed Facts ¶ 1]; *STK II* FAC ¶ 14 ("Plaintiff founded Netbula, LLC . . . ."); Compl. ¶ 13 & Exh. B (Copyright Assignment to Dr. Yue signed by Dr. Yue as President of Netbula); *STK I* Docket No. 3 [Don Yue's Declaration in Support of Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction and Impoundment; identified as "Chief Marketing and Sales Officer"]. Dr. Yue is the only owner, officer and employee of Netbula, and has been personally involved in all aspects of his or Netbula's copyright litigation. *See, e.g.*, *STK II* Docket No. 43 [Opposition to Motion to Dismiss at 5:11-12 ("Netbula is wholly-owned by Plaintiff.")]; *BindView* Docket No. 308 [Declaration of Third Party Dongxiao Yue in Support of Motion to Intervene and Enforce Protective Order ¶ 10].

### B.    Allegations of the Complaint as to Individual Defendants.

The Complaint includes seven separate "counts" of copyright infringement, each purportedly "Against All Defendants" without distinction. Compl. ¶¶ 54-80. In addition to

---

[3] At a November 20, 2007 hearing, Judge Jenkins denied Dr. Yue's motion to substitute himself as plaintiff for his corporation in the *STK I* action. *STK I* Docket No. 111. After Netbula's counsel acknowledged that one purpose of Dr. Yue's motion was to allow him to proceed *pro se*, Judge Jenkins noted that the purported September 26, 2007 "assignment does nothing to advance the conduct of this litigation since they're [Dr. Yue and Netbula] one in the same." *STK I* Docket No. 139, at 12:5-7, 12:13-20. The Court further noted:

> He wants to represent himself in this matter, and that's clear, and the record is abundantly clear. The inferences are extremely strong that the assignment was made in view toward being able to appear before the court and assert now the assigned interests in the copyright that is the subject of this litigation.

*See id.* at 16:21-17:1.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Chordiant, its CEO Mr. Springsteel, and its General Counsel Mr. Witte, Dr. Yue has sued Oliver

2   Wilson, whom he identifies as "program manager for the Marketing Director Project Suite," and

3   who also had the misfortune of a communication with Dr. Yue.  *See* Declaration of Derek P.

4   Witte ("Witte Decl.") ¶ 2, Exh. 2.[4]  The Complaint lumps all Defendants together as being

5   culpable for direct, contributory, and vicarious liability on each of the seven counts.  Compl.

6   ¶¶ 41-53.  Yet he offers no factual basis tying Mr. Witte or Mr. Springsteel to the purported

7   liability.

8       "Count I" of the Complaint purports to allege that the license purchased by Chordiant

9   granted one user the right to employ Netbula's software development kit ("SDK"), but that "on

10  information and belief, multiple employees of CSI, including Oliver Wilson, made numerous

11  copies of the SDK onto many computers."  There is no explanation of how Mr. Witte, an

12  attorney, or Mr. Springsteel, as CEO, has liability for purported copies of an SDK used in

13  software development.  Counts II and IV allege that because allegedly unlicensed copies of the

14  SDK were used, Marketing Director constitutes an infringing derivative work.  Again, there is no

15  explanation of Chordiant's attorney or CEO's involvement in creating that work, or how they

16  could have liability.  Count III claims that development of a version of Marketing Director for the

17  Vista operating system was infringing—without any link to the attorney or CEO.  And Counts V,

18  VI and VII assert that distribution of client and server runtime copies "without purchasing

19  licenses" or with site licenses (that is, without counting copies by customers) was infringing.

20      **C.    The Allegations Regarding Mr. Witte.**

21      Dr. Yue observes that Mr. Witte is "the Vice President, General Counsel, and Secretary"

22  of Chordiant.  *Id.* ¶ 8.  Beyond that allegation, the Complaint's allegations against Mr. Witte arise

23  solely out of Dr. Yue's communications with him about Chordiant's use of Netbula's software

24  between August 2007 and January 2008.  *Id.* ¶¶ 25-28.  Because the Complaint quotes those

25  communications but omits to attach the actual correspondence, the e-mail strings are attached in

26  their entirety to the Declaration of Derek P. Witte as Exhibits 1 and 2.  *See* Request for Judicial

27  _____

28  [4] Concurrently with this motion, Mr. Wilson is moving to dismiss for lack of personal jurisdiction.

1    Notice (compiling authorities for consideration of such materials).

2          Specifically, on August 27, 2007, Dr. Yue requested a "license usage report" from

3    Mr. Wilson.  Although Dr. Yue had helped Wilson with a product for Windows Vista operating

4    system in April, 2007, Yue commented in August that "also, the original license Chordiant

5    purchased does not cover Windows Vista."  *See* Witte Decl. ¶ 2, Exh. 1.  After having this e-mail

6    forwarded to him, Mr. Witte responded to Dr. Yue that he was collecting data and requested

7    clarification about the basis for Dr. Yue's demands for information, including clarification of the

8    terms of the license Dr. Yue was relying on for his Vista argument.  Dr. Yue responded that "the

9    license information should be reflected on the purchase order Chordiant made and the software

10   delivered to Chordiant, which should have a click-through button on standard terms."  *Id*.

11   Mr. Witte responded that no such click-through existed on the software Chordiant purchased from

12   Netbula.  He also questioned the basis for Netbula's onerous requests for information, reiterating

13   that he was collecting data, although given the multi-year period at issue, that process was time

14   consuming.  *Id.*, Exh. 2.  A back and forth ensued about Chordiant's obligations under its license,

15   with Mr. Witte asserting that Dr. Yue was asking for shifting information beyond any contractual

16   obligation, and Dr. Yue sending a copy of the Chordiant purchase order.  *Id.,* Exh. 3; Compl. ¶ 19

17   (detailing terms of purchase order).

18         Ultimately, on December 21, 2007, Mr. Witte provided the license usage report, stating

19   Chordiant's count of 953 uses (less than the 1,000 licensed). Witte Decl., Exh. 2.  Mr. Witte also

20   stated that Chordiant was stopping use of Netbula's software.  *Id.*

21         Dr. Yue responded angrily that he had not received the information requested, and

22   announced, "We have determined that Chordiant has infringed our copyright.  There is no point

23   for you to conceal the infringement."  *Id.*  When Mr. Witte pointed out that Chordiant had

24   honored its obligations, and that Dr. Yue had never mentioned copyright infringement before,

25   Dr. Yue responded with all sorts of new claims.  On January 2, 2008, the day he filed this action,

26   Dr. Yue asserted that his request for "license usage reports" "put Chordiant Software Inc. ('CSI')

27   on notice of its infringing acts back in August, 2007," that he "never heard of CSI until quite

28   recently" and that Netbula's license was "with another company in UK."  *Id.*  January 2, 2008

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  was the first time that Dr. Yue asserted that Chordiant had no license. *Id.* Dr. Yue further

2  explained that the actual *purpose* of his months of requests about "license usage" information

3  "was to determine the extent of the infringement." *Id.*

4  The only allegations in all seven counts against Mr. Witte are based on his having

5  participated in the e-mail exchange that Dr. Yue initiated:

> Instead of immediately stopping the infringement upon Plaintiff's initial notice,
> Mr. Witte . . . engaged in activities to conceal, continue and further the
> infringement by CSI and its customers. On information and belief, Mr. Witte
> supported, encouraged and guided CSI's continuing infringement, while evading
> Plaintiff's inquiries on software usage."

9  Compl. ¶ 39. But the Complaint actually contains no allegation of any "initial notice" of

10  infringement nor any request to cease use. The Complaint reflects only a request for "license

11  usage" information, followed by Dr. Yue's repudiation in January 2008 of that license <u>after</u>

12  Mr. Witte provided the information. Witte Decl., Exh. 2.

### D.    The Allegations Regarding Mr. Springsteel.

14  The Complaint observes that Mr. Springsteel "is the Chairman, President and CEO of

15  CSI," Compl. ¶ 8, but mentions nothing about his involvement in the alleged infringement.

16  Rather, it alleges merely that, in October 2007, Dr. Yue had sent a single letter addressed to

17  Mr. Springsteel "requesting the software usage information." *Id.* ¶ 27. The Complaint then seeks

18  to hold Mr. Springsteel personally liable based on the conclusion that "Mr. Springsteel was

19  informed about CSI's infringing actions, but did not stop the infringement." *Id.* ¶ 40.

### E.    Previous Cases by Dr. Yue and Netbula Targeting Defendant Corporations' Individual Employees.

22  Dr. Yue has carried over from his other lawsuits his pattern of suing individual employees

23  without cause. On December 10, 2007, Dr. Yue filed a First Amended Complaint in the *STK II*

24  action, adding as defendants (in addition to StorageTek and Sun) four current and/or former

25  StorageTek/Sun employees and officers. *STK II* Docket No. 9 [*STK II* FAC]. Dr. Yue took aim

26  at Sun's CEO and President, Jonathan Schwartz, and Sun's Assistant General Counsel, Julie

27  DeCecco. Dr. Yue has replicated in this case the same boilerplate allegations of direct,

28  contributory and vicarious liability from *STK II*. *Compare* Compl. ¶ 44 & *STK II* FAC ¶ 73;

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Compl. ¶ 8 & *STK II* FAC ¶ 11; Compl. ¶ 43 & *STK II* FAC ¶ 72.

2        Similarly, on September 1, 2006, Netbula amended its complaint in the *BindView* action,

3    accusing the defendant's CEO, Eric J. Pulaski, of copyright infringement using the same

4    boilerplate, conclusory allegations. *See, BindView* Docket No. 38 ¶ 60. The Court ultimately

5    granted Mr. Pulaski's summary judgment motion on all claims. *See BindView* Docket No. 288.

6        In each of these prior complaints, as here, Dr. Yue or Netbula targeted whatever

7    employees had the misfortune to receive his communications purportedly directed at resolving

8    how much royalty might be due under Netbula's license agreements.  Thus, as here, in *STK II* the

9    only sin of Sun's in-house counsel was attempting to work out a royalty dispute. *See STK II* FAC

10   ¶ 60.  Similarly, Netbula sued Mr. Pulaski, BindView's CEO, on the basis of three letters sent by

11   Dr. Yue to Mr. Pulaski and a single telephone call initiated by Mr. Pulaski attempting to resolve

12   the royalty dispute. *BindView* FAC ¶¶ 28, 30, 35-38.  Dr. Yue's decision to name Sun's CEO

13   Schwartz as a defendant rested on even less: Netbula (again through Dr. Yue) sent Mr. Schwartz

14   two e-mails eight months after the use of Netbula code had already ceased. *See STK II* FAC ¶ 61.

15   The allegations in *STK II* mirrored those against Mr. Witte and Mr. Springsteel:

16       [o]n information and belief, ***Julie DeCecco and Jonathan Schwartz***, ***instead of
         stopping the infringement***, ***employed delay tactics to continue the infringement***.

17

18   *Id.* ¶ 62 (emphases added). On January 18, 2008, Judge Jenkins granted Sun's motion for

19   summary judgment as to all copyright claims. *See STK I* Docket No. 138.

20                                    **ARGUMENT**

21       Dismissal is appropriate under Federal Rule of Civil Procedure Rule 12(b)(6) where a

22   plaintiff has failed to assert a cognizable legal theory or has failed to allege sufficient facts under

23   a cognizable legal theory. *See, e.g.*, *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,

24   88 F.3d 780, 782 (9th Cir. 1996); *Chang v. McKesson HBOC, Inc.*, 2007 U.S. Dist. LEXIS

25   95088, at *4-*5 (N.D. Cal. Dec. 17, 2007).  As the Supreme Court recently explained, to survive

26   a motion to dismiss, a plaintiff is obliged to provide more than "labels and conclusions, and a

27   formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 127 S. Ct.

28   1955, 1964-65 (2007).  To plead sufficient facts a plaintiff must suggest that the right to relief is

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    more than conceivable, but also plausible on its face. *Id.* at 1974. "Although the federal

2    procedural standards for notice pleading . . . are liberal, they are not so liberal as to allow purely

3    conclusory statements to suffice to state a claim that can survive a motion to dismiss." *Miller v.*

4    *Cont'l Airlines, Inc.*, 260 F. Supp. 2d 931, 935 (N.D. Cal. 2003). A motion to dismiss should be

5    granted where there is either lack of a cognizable legal theory or absence of sufficient <u>facts</u>

6    alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699

7    (9th Cir. 1988); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007) ("the

8    court need not accept conclusory allegations of law or unwarranted inferences, and dismissal is

9    required if the facts are insufficient to support a cognizable claim").

10        Plaintiffs can plead themselves out of court by pleading particulars that show they have no

11    legal claim, and are not saved by having pleaded legal conclusions where facts pleaded are

12    inconsistent with them. *Wiesbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir.

13    1997)).("If the pleadings establish facts compelling a decision one way, that is as good as if

14    depositions and other expensively obtained evidence on summary judgment establishes the

15    identical facts."); *see also Sanyo Laser Prods., Inc. v. Royal Ins. Co. of Am.*, No. 1:03-CV-1151,

16    2003 U.S. Dist. LEXIS 20129, at *4 (S.D. Ind. Nov. 7, 2003) ("[A] Court need not ignore facts

17    set out in the complaint that undermine Plaintiff's claims.").

18    **I.    DR. YUE'S LACKS STANDING TO ASSERT AS A PRO SE LITIGANT CLAIMS**

19    **THAT BELONGED TO HIS COMPANY AND TO ASSERT CLAIMS IN COPYRIGHTS UNREGISTERED AT THE COMMENCEMENT OF THIS**

20    **ACTION.**

21        Long-standing and settled law prevents Dr. Yue from doing what he is attempting here—

22    to bring a *pro se* lawsuit based on claims that he assigned to himself from his LLC. These claims

23    must be brought by Netbula and by a licensed attorney. Furthermore, this Court lacks jurisdiction

24    over the only claim that could possibly be brought by Dr. Yue individually—the alleged

25    infringement of his own *unregistered* copyright. Accordingly, this action should be dismissed.

26        **A.    Courts Routinely Refuse to Recognize Assignments That Would Otherwise**

27    **Permit Claims Originally Belonging to a Company to Be Brought by an Individual.**

28        It is fundamental that "a layperson may not represent a separate legal entity" in the federal

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  courts.  *See Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007); *see also Rowland v. Cal.*

2  *Men's Colony*, 506 U.S. 194, 202 (1993) ("[T]he lower courts have uniformly held that 28 U.S.C.

3  § 1654 . . . does not allow corporations, partnerships, or associations to appear in federal court

4  otherwise than through a licensed attorney."); *United States v. High Country Broad. Co.*, 3 F.3d

5  1244, 1245 (9th Cir. 1993) (same).  This rule applies with equal force to limited liability

6  companies (LLCs) as to any other legal entity.  *See, e.g., Lattanzio*, 481 F.3d at 140 (rejecting

7  attempt of sole member of LLC to appear on its behalf); *Schueneman v. 1st Credit of Am., LLC*,

8  Case No. 05-04505-MHP, 2007 U.S. Dist. LEXIS 48981, at *24 (N.D. Cal. July 6, 2007) (LLC

9  may appear only through counsel).  The rationale for this blanket rule is also well established:

10      [T]he conduct of litigation by a nonlawyer creates unusual burdens not only for the
        party he represents but as well for his adversaries and the court. The lay litigant
11      frequently brings pleadings that are awkwardly drafted, motions that are
        inarticulately presented, proceedings that are needlessly multiplicative. In addition
12      to lacking the professional skills of a lawyer, the lay litigant lacks many of the
        attorney's ethical responsibilities, *e.g.*, to avoid litigating unfounded or vexatious
13      claims.

14  *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20, 22 (2d Cir. 1983).

15      Of course, this prohibition would be meaningless if an entity simply could assign its

16  claims to an individual who could then litigate the assigned claims in his own name.  For that

17  reason, courts have disapproved of "any circumvention of the rule by the procedural device of an

18  assignment of the corporation's claims to the lay individual."  *Jones*, 722 F.2d at 23.  As such,

19  courts have consistently refused to honor purported assignments of claims from a corporation to

20  an individual, particularly where the assignment is from a closely-held corporation to its owner.

21  *See, e.g., id.* at 21-23 (affirming conditional dismissal of complaint brought by non-attorney

22  individual on basis of purported assignment made by company of which he was sole stockholder;

23  action could be brought only by counsel on behalf of corporation); *Palazzo v. Gulf Oil Corp.*, 764

24  F.2d 1381, 1382 (11th Cir. 1985) (affirming dismissal of claims originally belonging to company

25  but assigned to company's president and major stockholder; "[w]e see no reason to permit any

26  evasion of the general rule by the simple expedient of the assignment of corporate claims to the

27  *pro se* plaintiff"); *see also Pridgett v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) ("[I]t is well

28  established that a layperson . . . may not assert pro se a claim that has been assigned to the litigant

1    by a corporation.").

2          In addition to serving the interests summarized in *Jones*, the courts' refusal to recognize

3    assignments from companies to their principals prevents parties from playing fast and loose with

4    the corporate form—invoking its benefits when expedient and seeking to avoid the corresponding

5    burdens.  *See, e.g.*, *Mercu-Ray Indus., Inc. v. Bristol-Myers, Co.*, 392 F. Supp. 16, 20 (S.D.N.Y.

6    1974) (dismissing complaint brought by sole-shareholder-assignee; having "chose[n] to accept

7    the advantages of incorporation[, he] must now bear the burdens of that incorporation"), *aff'd*,

8    508 F.2d 837 (2d Cir.).  In other words, whatever benefits an assignee perceives in proceeding

9    *pro se*—whether it is because he believes himself to be better than an attorney, or cannot locate a

10   lawyer willing to take his case, or because he wants to be free of the ethical restraints to which

11   attorneys are bound, or because he wants to invoke the special leniency sometimes offered *pro se*

12   litigants, *see, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)—he is not entitled to them.

13         It also would not matter that an assignment from a company to its principal might have

14   been entered into without a purpose of allowing the principal to proceed *pro se*.  In *Lutin v. New*

15   *Jersey Steel Corp.*, Case No. 95-CIV-4965, 1996 U.S. Dist. LEXIS 16340 (S.D.N.Y. Nov. 1,

16   1996), for example, the court dismissed a complaint and specifically rejected the proposition that

17   assignments may be disregarded only upon a showing that assignment was entered into "for the

18   purpose of evading the rule that a corporation may not proceed *pro se*."  *Id.* at *38 (citing, *inter*

19   *alia*, *Jones* and *Ultracashmere House, Ltd. v. Nordstrom, Inc.*, 123 F.R.D. 435 (S.D.N.Y. 1988)).

20   The reason is plain:  the policies underlying the rule against *pro se* representation of claims

21   formerly belonging to a company are implicated regardless of the purpose underlying the

22   assignment.  *See id.* at *38-*39.  Permitting an individual to bring a corporation's claims *pro se*

23   (even if that was not the purpose of the assignment) would still unnecessarily burden "his

24   adversaries and the court with . . . pleadings that are awkwardly drafted, motions that are

25   inarticulately presented, proceedings that are needlessly multiplicative . . . [and] unfounded or

26   vexatious claims."  *Jones*, 722 F.2d at 22.

27         In *Jones*, the plaintiff—the sole shareholder of a corporation—filed a *pro se* complaint

28   alleging claims on behalf of himself and his company.  722 F.2d at 20-21.  After defendants

Fenwick & West LLP
Attorneys At Law
San Francisco

1    questioned his right to bring claims on behalf of his company, plaintiff moved to amend to name

2    himself as plaintiff for all claims on the basis of a purported assignment from the company to

3    himself. *Id.* at 21. The Second Circuit affirmed the denial of the motion to amend and ordered

4    the action dismissed unless *the company* appeared through counsel. *Id.* at 21-23.[5]

5        Quite logically, the *Jones* rationale reaches circumstances where (as here) the purported

6    assignment *preceded* the filing of an original complaint. *See, e.g.*, *Bell v. South Bay European

7    Corp.*, 486 F. Supp. 2d 257, 258-260 & n.2 (S.D.N.Y. 2007) (conditionally dismissing complaint

8    brought *pro se* by purported assignee of claims belonging to trust; assignment dated one month

9    prior to commencement of lawsuit); *Bell v. Carlsen Motor Cars, Inc.*, Case No. 06-CIV-2974-

10   LBS, 2007 U.S. Dist. LEXIS 75623, at *2-*3 (S.D.N.Y. Oct. 10, 2007) (conditionally dismissing

11   complaint brought by *pro se* plaintiff where assignment of claims occurred "years before the

12   filing of action," because the "concern in *Jones* was not the timing of the assignment, but rather

13   the threat to court integrity from allowing a layperson to appear for a corporate entity"); *In re

14   Neiman*, 379 B.R. 299, 305-06 (Bankr. N.D. Ill. 2007) (holding that under analogous Illinois law

15   assignee had no right to bring adversary complaint based on claims originally belonging to the

16   company, even where assignment preceded filing of complaint). Courts have recognized there is

17   no legitimate reason to treat an assignment of corporate claims that occurs shortly *before* a

18   lawsuit is filed any differently than an assignment that occurs *after* a lawsuit is initiated. Under

19   either scenario, the "procedural device of an assignment" is ripe for abuse, allowing companies to

20   evade the counsel requirement, and resulting in the same harms.

21       **B.    Under The Governing Standards, Plaintiff's Purported Assignment of Claims
              in Netbula LLC's Copyright Registration Should Be Disregarded.**

22

23       Under the above authority, Plaintiff has no right to bring the copyright claims assigned to

---

24   [5] The rule prohibiting individuals from asserting claims on behalf of their companies has been

25   applied in every conceivable context, including motions to intervene and motions to substitute
     under Federal Rules of Civil Procedure 24 and 25. *See, e.g.*, *High Country*, 3 F.3d at 1245
     (denying motion to intervene brought by sole shareholder, even assuming that he had satisfied the

26   requirements of intervention as a matter of right); *Jacobs v. Patent Enforcement Fund, Inc.*, 230
     F.3d 565, 569 (2d Cir. 2000) (district court erred in permitting sole officer and director of

27   company to intervene and appear *pro se*); *Nat'l Independent Theatre Exhibitors, Inc. v. Buena
     Vista Distribution Co.*, 748 F.2d 602, 610 (11th Cir. 1984) (affirming denial of motion to

28   substitute to allow sole shareholder to proceed as party-defendant).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    him by his LLC on a *pro se* basis. The facts are clear: Plaintiff is the founder and sole owner of

2    Netbula. *See* Compl. ¶¶ 1, 11; *STK II* Docket No. 43 [Plaintiff's [Dr. Yue's] Opposition to

3    Motion to Dismiss at 5:11-12 ("Netbula is wholly-owned by Plaintiff [Dongxiao Yue].")]. The

4    copyright registration itself lists Netbula as the sole owner and author. Compl. ¶ 2 & Exh. A.

5    The registration—as well as any related claims for infringement—belonged to Netbula until

6    Dr. Yue collusively assigned that registration (and related claims) to himself on or about

7    September 26, 2007. *Id.* ¶ 13 & Exh. B. Of course, well prior to that assignment, Netbula was

8    corresponding with Chordiant about its use of Netbula software—correspondence that Dr. Yue

9    subsequently explained was to "determine the amount of infringement." Witte Decl. Exh. 2.

10    Plaintiff is not entitled, in the midst of his pursuit of Chordiant, to assign himself claims

11    belonging to Netbula, LLC and then bring Netbula's claims in his own name.

12            Furthermore, although not required to find a purported assignment invalid, *see, e.g.*, *Lutin*,

13    1996 U.S. Dist. LEXIS at *38-*39, the purported assignment here was, in fact, motivated at least

14    in part by Dr. Yue's desire to represent himself *pro se* in litigation related to Netbula's

15    copyrights. Netbula's counsel in the related *STK I* case admitted as much. On October 1, 2007,

16    four days after the assignment, Netbula filed a motion seeking to substitute Dr. Yue as plaintiff

17    with respect to the then-pending copyright claims in that action. *See STK I* Docket Nos. 56-57

18    [Motion for Substitution of Party as to the Copyright Infringement Claim; Declaration of

19    Vonnah M. Brillet in Support of Motion for Substitution of Party ¶ 2 & Exh. A (attaching the

20    same purported assignment as attached to complaint in this action)]. At oral argument, Netbula's

21    counsel acknowledged that the assignment was effected in part because Dr. Yue wanted to appear

22    *pro se*, and the Court so found in denying the motion. *STK I* Docket No. 139 [Transcript of

23    November 20, 2007 at 10:21-11:12, 16:20-17:1 (Court states that Dr. Yue "wants to represent

24    himself in this matter . . . . [T]he record is abundantly clear. The inferences are extremely strong

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   that the assignment was made in view of being able to appear before the Court . . . .")].[6] To allow

2   Dr. Yue to proceed as Plaintiff in this action would sanction an assignment intended to

3   circumvent the rule requiring company claims to be brought through a licensed attorney.

4          In addition, the policy concerns underlying this rule are fully implicated in this matter.

5   There is no question that Dr. Yue's personal, lay participation in this matter would create undue

6   burdens on both Defendants and this Court. Even a cursory review of the dockets in the five

7   recent cases demonstrate as much. In this matter, for example, Dr. Yue refused Chordiant's

8   request for an extension of time to respond to the Complaint so that each of the Defendants

9   (including then-unserved defendants) could respond simultaneously and thereby relieve the Court

10  of the burden of dealing with multiple responses and hearings. *See* Docket Nos. 9-10

11  [Administrative Motion for Enlargement of Time to Respond to Complaint and accompanying

12  Declaration]. Judge Illson summarily entered Defendants' proposed order over Dr. Yue's

13  opposition. *See* Docket Nos. 14, 16. Similarly, Dr. Yue failed to agree that this action was

14  related to the four prior actions, necessitating another unnecessary administrative motion. *See*

15  *STK II* Docket Nos. 22-23, 26, 44.

16         Similarly, in *STK II*, Dr. Yue, proceeding *pro se*, unreasonably filed a motion for entry of

17  default judgment which contravened a prior court order. Dr. Yue's motion was denied and led

18  the Court to "caution[ Plaintiff] against multiplying proceedings without a sufficient legal basis in

19  the future." *STK II* Docket Nos. 13, 41 [Motion for Entry of Default Judgment; Order Denying

20  Plaintiff's Motion for Entry of Default at 5:3-4]. In *STK I*, Dr. Yue filed a *pro se* "Motion to

21  Intervene and Join as Plaintiff, for Injunctive Relief, and for Copyright Impoundment," again on

22  the basis of the purported assignment from Netbula, *while Netbula's motion to substitute him as a*

23  *party for the copyright claims was still pending.* *STK I* Docket No. 68. This procedurally

---

24

25  [6] It is hard to fathom any legitimate business purpose for this copyright transfer, which purports to
    deprive Netbula of ownership its "main product" and the software that generates "the heart of
26  Netbula's business revenues." *See STK I* FAC ¶¶ 1, 14. Under 28 U.S.C. § 1359, the assignment
    between Netbula and its owner is presumptively collusive and would be disregarded for the
27  purposes of invoking the diversity jurisdiction in federal court, unless the parties to the
    assignment present a business reason for the assignment that is "sufficiently compelling that the
28  assignment would have been made absent the purpose of gaining a federal forum." *See Nike, Inc.
    v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991-92 (9th Cir. 1994).

1    improper motion was subsequently ordered off-calendar by the Court. *STK I* Docket No. 94.

2         The list goes on and on. Dr. Yue, *pro se*, not only refused to stipulate to modify the

3    Protective Order in the *BindView* case to use relevant materials in *STK I*, he appealed Judge

4    Jenkins' order allowing such modification—only to have that appeal dismissed *sua sponte* by the

5    Ninth Circuit for lack of jurisdiction after the record was compiled. Request for Judicial Notice,

6    Exh. B. Dr. Yue, *pro se,* petitioned the Ninth Circuit for an emergency stay of the summary

7    judgment hearing in *STK I. Id.*, Exh. A. After the writ was denied, he further petitioned for a

8    "reasoned decision"—to which the Ninth Circuit responded with an order that he not file any

9    other papers in that matter. *Id.* Dr. Yue, again *pro se*, has argued that Judge Jenkins is biased

10   against him, including complaints made to the Ninth Circuit and to Congress. *STK II* Docket

11   No. 11 [Letter Brief by Dongxiao Yue Regarding Motion for Summary Judgment and Relating

12   Cases]. And he has filed frivolous complaints against opposing counsel that were perfunctorily

13   rejected by the State Bar. *STK II* Docket No. 36 [Declaration of Albert L. Sieber in Support of

14   Motion to Dismiss ¶ 6 & Exh. E].

15        It is apparent that Dr. Yue is exactly the type of *pro se* litigant that *Jones* and its progeny

16   warned against when prohibiting the assignment of claims from a company to a lay individual.

17   *See Jones*, 722 F.2d at 23 ("The district court, based on its years of dealing with Jones, was

18   'unable to find with any quantum of confidence that Jones possesses the level of legal

19   sophistication necessary to present this case.'").

20        The only copyright registration asserted in the Complaint is the one authored and owned

21   by Netbula until the assignment. The copyright claims related to this registration are not

22   Dr. Yue's claims to bring. Because, as next discussed, no copyright claim lies absent a valid

23   registration, there is no basis for any copyright claim here, and the complaint must be dismissed.[7]

24

25   ───────────────

[7] In the alternative, if the Court found that Dr. Yue somehow had the right to pursue the

26   *unregistered* copyright he claims to own *individually*, then the claims based on the copyright
     assigned by Netbula still cannot be pursued other than by Netbula through an attorney, and the
     allegations relating to that registration should be stricken from Paragraph 2 of the Complaint. *See*

27   *Jones*, 722 F.2d at 20-21 (refusing to allow claims assigned by corporation to be combined with
     claims by individual in absence of presence of participation by company, represented by

28   attorney).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

**C.    The Copyright Dr. Yue Claims as an Individual Has No Valid Registration, So Dr. Yue Has No Standing to Sue on It, Either.**

3

4    In addition to the copyright registration assigned by Netbula, Plaintiff also purports to sue

5    for alleged infringement for *unregistered* portions of Netbula's PowerRPC software. *See* Compl.

6    ¶ 2 ("The copyrights infringed by Defendants in the instant action are . . . registration number

7    TX 6-491-697 . . . and the copyrights in unpublished works Plaintiff created before July

8    1996 . . . ."). Plaintiff alleges that he created the unpublished, unregistered works "[f]rom 1994 to

9    July 1996," before Netbula was incorporated, and that he "did not assign or transfer the

copyrights in his earlier works created before July 24, 1996 to Netbula." *See* Compl. ¶¶ 10-12.[8]

10    These alleged unregistered copyrights do not establish a basis for Plaintiff to bring this

11    federal lawsuit. Section 411 of the Copyright Act mandates that "no action for infringement of

12    the copyright in any United States work shall be instituted until preregistration or registration of

13    the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Here, there

14    is admittedly no registration in Plaintiff's name, and his pending *application* is not sufficient to

15    confer federal jurisdiction. Under the plain language of the statute, a plaintiff may not

16    "institute[]" an action in federal district court "until . . . *registration* of the copyright claim has

17    been made in accordance with this title." *See id.* (emphasis added). Of course, a copyright

18    registration is not the same as a copyright application—upon receipt of an application, "the

19    Registrar of Copyrights must examine and approve a copyright claim before it is 'registered'

20    under the Act." *Berry v. Penguin Group, Inc.*, 448 F. Supp. 2d 1202, 1202-03 (W.D. Wash.

21    2006) (citing 17 U.S.C. § 410(a)); *see also Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 1090,

22    1112 (W.D. Wash. 2004) ("Although submission of a claim begins the registration process, a

23    claim is not registered until it is approved by the Register of Copyrights. Under the plain meaning

24    of the language, the Register's approval triggers this Court's jurisdiction.").

25

26    [8] Plaintiff further alleges that the PowerRPC software licensed to Defendants was a "derivative work" of these earlier unpublished works," even though the registration at issue in this case does

27    not identify Dr. Yue's alleged earlier works as a preexisting work on which the registered work is based on or incorporates. *Compare* Compl. ¶ 12 *with* Compl. ¶ 2 & Exh. A (attaching registration

28    that fails to identify supposed earlier works authored by Plaintiff).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Courts across the country have followed this approach. *See Berry*, 448 F. Supp. 2d at

2    1202-03 (reviewing case law from district courts of the Ninth Circuit in determining that court

3    lacked subject matter jurisdiction over action where works had not yet been registered at the time

4    complaint was filed and dismissing complaint even where registration issued subsequent to the

5    complaint); *In re Literary Works in Electronic Databases Litigation*, 509 F.3d 116, 121 (2d Cir.

6    2007) ("[W]e again conclude that section 411(a)'s registration requirement limits a district court's

7    subject matter jurisdiction to claims arising from registered copyrights only."); *La Resolana*

8    *Architects v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1202-05 (10th Cir. 2005) (reviewing case

9    law and holding that statute requires "actual registration by the Registrar of Copyrights" and that

10    "[u]ntil that happens, an infringement action will not lie in the federal courts"); *Loree Rodkin*

11    *Mgmt. Corp. v. Ross-Simons, Inc.*, 315 F. Supp. 2d 1053, 1055-56 (C.D. Cal. 2004) (citing, *inter*

12    *alia*, *Ryan v. Carl Corp.*, 1998 U.S. Dist. LEXIS 9012 (N.D. Cal. 1998), for the proposition that

13    registration must issue before action may be brought and dismissing case on that basis); *see also*

14    William F. Patry, *Patry on Copyright* § 17-213 (2007) (collecting cases and noting that all courts

15    of appeals addressing the issue, except the Fifth Circuit, have held that actual registration is

16    prerequisite to filing suit).

17    As Patry explains, "registration"—and thus standing to file suit—can only occur "after

18    examination" by the Register of Copyrights, so under Section 411, the term *registration* cannot

19    merely be the submission of an application to the Register of Copyrights. *Id.* at §§ 17-224 to 25

20    (citing Section 410(a) of the 1976 Copyright Act). As contemplated by Sections 410(b) and (d),

21    the Copyright Office may find that the submitted work is not entitled to registration after

22    examination. Thus it would be nonsensical to treat an application the same as a registration. *See,*

23    *e.g.*, *Robinson v. Princeton Review, Inc.*, 1996 WL 663880, at *7 (S.D.N.Y. 1996) ("Section

24    410(a)'s requirement of "examination" would be meaningless if filing and registration were

25    synonymous"); *Patry on Copyright* § 17-226 (noting that Copyright Office has examining, not

26    merely clerical, function). The prerequisite of registration is in accord with the statutory

27    obligations of the Copyright Office "to determine in the first instance the validity of a copyright

28    request." *Demetriades v. Kaufmann*, 680 F. Supp. 658, 661 (S.D.N.Y. 1988).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    The complaint discloses that no registration has issued for Plaintiff's alleged individual

2    copyright, and therefore it cannot support a claim.

3    Nor is there basis to allow leave to amend to allege any registration that might

4    subsequently issue. As stated by the Supreme Court, "[t]he presence or absence of federal-

5    question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that

6    federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

7    properly pleaded complaint." *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing

8    *Gully v. First National Bank*, 299 U.S. 109, 112-13 (1936)); *see also Sallen v. Corinthians*

9    *Licenciamentos LTDA*, 273 F.3d 14, 23 (1st Cir. 2001) ("Jurisdiction depends upon the facts as

10   they existed when the complaint was brought.") Accordingly, even if a registration for Plaintiff's

11   alleged pre-1996 works were issued after the Complaint was filed, this Court should still dismiss

12   this action. *See ConnectU LLC v. Zuckerberg*, 482 F. Supp. 2d 3, 5-6 n.2 (D. Mass. 2007)

13   (subsequent amendment of the complaint to assert newly obtained registration did not cure defect

14   that "there was no basis for federal question jurisdiction on the facts as initially alleged"); *see*

15   *also Berry*, 448 F. Supp. 2d at 1202-03 (same).

16   In short, the only conceivable basis for federal jurisdiction would be a registration that

17   could have been brought, if at all, by Netbula—the legitimate owner of the infringement claims

18   related to the only copyright registration in this action. This action should be dismissed.[9]

19   **II.    COPYRIGHT CLAIMS AGAINST DEREK P. WITTE AND STEVEN R.**
         **SPRINGSTEEL FAIL AS A MATTER OF LAW.**
20

21   As to Mr. Witte and Mr. Springsteel, Dr. Yue cannot rely on conclusory assertions in his

22   Complaint to satisfy the requirements for pleading their individual liability. Referring to

23   "Defendants" generically and sweeping the individual employees up with Chordiant does not

24   state a claim of copyright infringement against those individuals.

25

26

27   [9] If the Court were to conclude that Dr. Yue somehow had standing to assert claims based on the
     assigned copyright, the lack of a federal registration would still doom suit on the unregistered
28   copyright, and the Court should, in such case, strike the Complaint's allegations in Paragraph 2
     related to the unregistered copyright.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

**A.    A Pleading Alleging Copyright Infringement May Not Rely on Legal Conclusions And Must State Facts Showing How a Defendant Infringed.**

3      While the Court must assume that the allegations of *fact* in Plaintiff's Complaint are true

4 when considering a Rule 12(b)(6) motion to dismiss, the Court has no obligation "to accept as

5 true conclusory allegations . . . or unreasonable inferences." *See Transphase Sys. v. Southern*

6 *California Edison*, 839 F. Supp. 711, 718 (C.D. Cal. 1993) (rejecting plaintiff's conclusory

7 allegations and granting defendant's motion to dismiss). A complaint must "give the defendant

8 fair notice of what the . . . claim is *and the grounds upon which it rests.*" *See Bell Atl. Corp. v.*

9 *Twombly*, 127 S. Ct. 1955, 1964 (2007) (emphasis added). The *Twombly* Court rejected the

10 standard that a complaint should not be dismissed for failure to state a claim "unless it appears

11 beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

12 entitle him to relief." *See id.* at 1968–69. Instead:

13      While a complaint . . . does not need detailed factual allegations, a plaintiff's
          obligation to provide the "grounds" of his "entitlement to relief" requires more
14      than labels and conclusions, and a *formulaic recitation of the elements of a cause
          of action will not do. . . . Factual allegations must be enough to raise a right to
15      relief above the speculative level*, . . . on the assumption that all the allegations in
          the complaint are true (even if doubtful in fact).

16

17 *Id.* at 1964–65 (citations and footnote omitted) (emphasis added). If a complaint does not meet

18 this standard, "this basic deficiency should . . . be exposed at the point of minimum expenditure

19 of time and money by the parties and the court." *Id*. at 1966 (citation omitted); *see also In re*

20 *Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (affirming dismissal of complaint

21 because it alleged a "list of theoretical possibilities [that] one could postulate without knowing

22 any facts whatever," without specifying any particular activities by any particular defendant).

23      This precept is particularly true in the context of copyright infringement. Under Rule

24 8(a)(2), a plaintiff must "plead with specificity the acts by which a defendant has committed

25 copyright infringement." *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (E.D.N.Y. 2000)

26 (dismissing complaint and denying motion for leave to amend); *Kelly v. L.L. Cool J*, 145 F.R.D.

27 32, 36 (S.D.N.Y. 1992) (ruling against plaintiff because a "properly plead [sic] copyright

28 infringement claim must allege . . . by what acts during what time the defendant infringed the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

copyright"). A plaintiff must give each defendant notice, "with some specificity," of his "particular infringing acts." *See id.* at 36 n.3 ("Broad, sweeping allegations of infringement do not comply with Rule 8."). A copyright infringement claim cannot survive a motion to dismiss if it fails to indicate . . . by what acts the defendant infringed the copyright. *See Brought to Life Music, Inc. v. MCA Records, Inc.*, 2003 U.S. Dist. LEXIS 1967, at *3 (S.D.N.Y. 2003).

Accordingly, in dismissing a plaintiff's claim of direct copyright infringement, the *Marvullo* court held that the plaintiff's allegation that the defendants acted "'beyond the scope . . . of the limited license,' absent any factual support, merely states a legal conclusion insufficient to withstand a motion to dismiss." *Marvullo*, 105 F. Supp. 2d at 228. As to a possible claim of contributory infringement, the court rejected as insufficient allegations that the defendants were "cooperating with each other" in the infringement or that "the separate but coordinated acts of all defendants" constituted infringement. *Id.* at 230 n.7. Moreover, failure to plead anything to show that a particular defendant knew of the infringing conduct and induced, caused or materially contributed to it failed to state a claim against that defendant. *Id.* at 230.

Similarly, in *Brought to Life*, the court dismissed a claim of copyright infringement against an individual defendant because the plaintiff did not allege how that defendant infringed the plaintiff's exclusive rights. *Brought to Life*, 2003 U.S. Dist. LEXIS 1967, at *4. As to a possible claim of contributory infringement, the court held that the plaintiff had to, but did not, show "that the defendant knew of, and substantially participated in, the alleged direct infringement" for the claim to survive dismissal. *Id.* Alleged "authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Id.* at *5 (citation omitted).

These rules safeguard a defendant from having to defend hopelessly vague, conclusory allegations leveled against a group of defendants. Thus, a claim of copyright infringement is properly dismissed if the plaintiff merely alleges that the defendant was the chairman of a codefendant organization, was credited in the allegedly infringing work, was copied on a letter about possible legal action, and did not respond to the plaintiff's "personal appeals" before the litigation. *Carell v. Shubert Org.*, 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000) (granting motion to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   dismiss).  Likewise, a claim based on allegations that a defendant is "a sole or part owner" of a

2   defendant corporation, is "a producer and/or licensor" of the allegedly infringing productions, and

3   has a sizeable investment in such infringement is insufficient without additional facts about that

4   defendant's actual acts.  *Id.*  Indeed, while the individual defendants in *Carell* were alleged to

5   have "participated in some if not all" of the infringements, the court dismissed claims against

6   them because the plaintiff provided no details about the individual defendants aside from that

7   conclusory allegation.  *Id.* ("Absent from the Complaint is any description of acts that could lead

8   to the conclusion of direct copyright or trademark infringement, or allegations of authorization or

9   participation that would indicate vicarious liability or contributory infringement.")

10          Similarly, in *CNN, L.P. v. GoSMS.com, Inc.*, the court dismissed copyright infringement

11   claims against the manager and the director of a co-defendant corporation. 2000 U.S. Dist. LEXIS

12   16156, at *17-18 (S.D.N.Y. 2000).  It was insufficient for the plaintiff to allege that each

13   individual, "by virtue of [his/her] position and, upon information and belief [his/her]

14   shareholdings, is one of the individuals that controls the affairs of [defendant corporation] and is

15   personally involved in the infringing conduct alleged herein."  *Id.*  "Without allegations of acts of

16   infringement, supervision or control over the direct infringers, or contribution to the infringement,

17   the Court finds that plaintiffs' allegations are insufficient to plead either direct copyright or

18   trademark infringement or either contributory infringement or vicarious liability."  *Id.*; *see also*

19   *Cinema Concepts Theatre Service Co. v. Filmack Studios*, No. 89 C 0024, 1989 U.S. Dist. LEXIS

20   5640, at *3-*4 (N.D. Ill. May 15, 1989) (dismissing copyright infringement claim against

21   corporate officers where the plaintiff alleged no facts that they individually knowingly

22   participated in, supervised or influenced the infringing activity, or derived financial benefit from

23   it); *Galiano v. Harrah's Operating Co.*, No. 00-0071, 2004 U.S. Dist. LEXIS 8265, *40-*42

24   (E.D. La. May 10, 2004) (finding claims for contributory and vicarious copyright infringement

25   insufficient where plaintiff did not allege *how* the defendant directed or participated in the

26   infringing action; *how* the defendant had the right and ability to control the infringing actions; and

27   *how* the defendant received a direct financial benefit from third parties infringing acts); *Goes*

28   *Litho. Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1045 (N.D. Ill. 1998) (granting motion to dismiss

MPA ISO DEFENDANTS' RULE 12(b)(6)
AND 12(f) MOTIONS TO DISMISS AND TO          -21-                      CASE NO. C-08-0019-MJJ
STRIKE

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    claim for vicarious infringement because complaint failed to allege facts about defendant's direct

2    financial interest in infringement or ability to control it).

3        **B.    Dr. Yue Fails to State a Cause of Action Against Mr. Springsteel for Either
                Direct, Contributory, or Vicarious Copyright Infringement.**

4

5        Like the plaintiffs in *Carell* and *GoSMS.com*, the Complaint fails to state a claim against

6    Mr. Springsteel by mere conclusory allegations of his job title and receipt of a letter.  First, there

7    is nothing to suggest that Mr. Springsteel was guilty of direct infringement—no allegation that he

8    actually made any copies of Plaintiff's software.

9        Second, with respect to contributory infringement, there is nothing to show that

10   Mr. Springsteel knew of another's infringement and either materially contributed to or induced

11   that infringement.  *See Perfect 10, Inc.*, 494 F.3d at 795 (affirming dismissal of contributory

12   infringement claims).  As in *Carell*, it is immaterial that Dr. Yue sent a letter to Mr. Springsteel

13   regarding possible legal matters—especially a letter, as here, that merely requested "software

14   usage information."  *See* Compl. ¶ 27; *Carell*, 104 F. Supp. 2d at 271.  Similarly, a conclusory

15   allegation that he "failed to halt" the infringement—without even identifying what infringement

16   purportedly continued, much less his role in it—is not enough to rise above the entirely

17   speculative standard precluded in *Twombly*.  There is nothing to show either Mr. Springsteel's

18   authorization or assistance, much less any direct relationship, to any purported infringing acts by

19   anyone.  *See Brought to Life*, 2003 U.S. Dist. LEXIS 1967, at *4.

20       The fact that Mr. Springsteel "is the Chairman, President and CEO of CSI," Compl. ¶ 8, is

21   also not nearly enough to establish vicarious liability, that is, the right and ability to supervise the

22   infringing conduct, plus a direct financial interest in the infringing activity.  *Perfect 10*, 494 F.3d

23   at 795.  Just as in *Carell* and *GoSMS.com,* recitation of a CEO's lofty job titles is insufficient to

24   allege how this apex officer was involved in the alleged infringement and supervised any

25   individual purportedly involved.  *See Carell*, 104 F. Supp. 2d at 271; *GoSMS.com*, 2000 U.S.

26   Dist. LEXIS 16156, at *17-18.  As in *GoSMS.com*, a bare allegation that an individual defendant

27   "controls the affairs" of other defendants and was "personally involved" cannot prevent dismissal.

28   *See GoSMS.com*, 2000 U.S. Dist. LEXIS 16156, at *17-18.  Likewise regardless of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Mr. Springsteel's investment in the defendant corporation, Dr. Yue fails to allege facts that

2   Mr. Springsteel has a *direct* financial interest in the alleged infringing activity.  *See* Compl. ¶ 40;

3   *Carell*, 104 F. Supp. 2d at 271; *Perfect 10*, 494 F.3d at 802.  Accordingly, the claims against Mr.

4   Springsteel must be dismissed for lack of any factual support.

5          **C.     Dr. Yue Fails to State a Cause of Action Against Mr. Witte for Either Direct,
              Contributory, or Vicarious Copyright Infringement.**

6

7          Dr. Yue's allegations against Mr. Witte are likewise fatally flawed.  Again, with respect to

8   direct liability, there is simply no allegation, whatsoever, that Mr. Witte actually engaged in

9   copying of Netbula's software himself.

10         As to contributory infringement, while Dr. Yue certainly communicated with Mr. Witte

11  about license usage reports, as in *Carell*, it is not enough to simply allege that Mr. Witte did not

12  respond to Dr. Yue's personal appeals in the way Dr. Yue desired. *See Carell*, 104 F. Supp. 2d at

13  271.  Mere communications with an individual defendant about possible legal matters does not

14  constitute a sufficient allegation that the defendant participated in, materially contributed to or

15  induced any allegedly infringing activity. *See id*.  Nowhere does the Complaint identify what

16  "continuing infringement" occurred after Mr. Witte became involved, nor any facts indicating

17  what Mr. Witte purportedly did to "support, encourage or guide" same.  Compl. ¶ 39.  As in

18  *GoSMS.com*, this conclusory type of allegation cannot withstand a motion to dismiss.  *See*

19  *GoSMS.com*, 2000 U.S. Dist. LEXIS 16156, at *17-18; *see also Livnat v. Lavi*, 1997 U.S. Dist.

20  LEXIS 13633, at *6 (S.D.N.Y. 1997) (dismissing copyright claim as to individual defendants

21  because allegations lacked sufficient specificity to permit an adequate opportunity for defense*).*

22         For vicarious liability, there is no allegation of how Mr. Witte, as general counsel,

23  exercised supervision or control over the software programmers.  Nor is there the least allegation

24  of any direct financial benefit Mr. Witte would realize from purported infringement.  Mere status

25  as an officer or shareholder cannot suffice to fill in these blanks—otherwise, every officer would

26  be subject to litigation in every instance in which copyright infringement were alleged.

27         Like the plaintiff in *Marvullo*, Dr. Yue conclusorily alleges that a group of defendants

28  engaged in activities beyond what was authorized by a license.  *See Marvullo*, 105 F. Supp. 2d

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    at 228.  But as *Marvullo* makes clear, it is wholly insufficient to lump together individual

2    defendants under generic claims of direct, contributory, and vicarious infringement.  *Id.*

3    Dr. Yue's ability to parrot the elements for copyright liability should not subject Mr. Witte and

4    Mr. Springsteel to having to answer his baseless and factually vacuous allegations.  *See* Compl.

5    ¶¶ 43-44.

6    **III.    THE COURT SHOULD STRIKE PLAINTIFF'S PRAYER FOR ATTORNEYS'**

7    **FEES AND STATUTORY DAMAGES.**

8         A motion to strike brought under Rule 12 "may be used to strike any part of the prayer for

9    relief when the damages sought are not recoverable as a matter of law."  *Bureerong v. Uvawas*,

10   922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996).

11        A copyright owner is barred "from recovering statutory damages or attorney's fees for

12   copyright infringement if two conditions are met:  (1) the copyright was registered more than

13   three months after the work was first published, and (2) the infringing activity commenced after

14   the date of first publication and before the effective date of registration of the work."  *Parfums*

15   *Givenchy v. C & C Beauty Sales*, 832 F. Supp. 1378, 1393 (C.D. Cal. 1993) (citing 17 U.S.C §

16   412).  Here, Dr. Yue's own allegations establish both of these elements.

17        First, the "NETBULA POWERRPC 2K4" copyright alleged in the Complaint was not

18   registered until December 15, 2006, more than two years *after* the date of first publication

19   (January 15, 2004).  *See* Compl. ¶ 2 & Exh. A.

20        Second, Plaintiff alleges that Chordiant began its infringement long before that 2006

21   registration date.  Indeed, Plaintiff claims that Chordiant's inclusion of Netbula's software in

22   Chordiant's product was unlicensed from the outset, ostensibly because the purchase order that

23   delivered the software to Chordiant in 2004 was submitted for Chordiant International. Compl.

24   ¶¶ 19-20, 55.

25        Because the Complaint demonstrates that "Plaintiff registered its copyright well after

26   Defendant's alleged infringement and publication of the allegedly infringing work," it is

27   appropriate to strike a prayer for attorneys' fees and statutory damages for copyright

28   infringement.  *See Google, Inc. v. Affinity Engines, Inc.*, No. C-05-0598, 2005 U.S. Dist. LEXIS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    37369, at *17 (N.D. Cal. Aug. 12, 2005) (citing 17 U.S.C § 412); *Cognotec Servs. v. Morgan*

2    *Guar. Trust Co.*, 862 F. Supp. 45, 52 (S.D.N.Y. 1994).

3                                    <u>**CONCLUSION**</u>

4         For the foregoing reasons, Defendants respectfully request that the Court dismiss without

5    leave to amend Dr. Yue's claims for copyright infringement.  In the alternative, Defendants

6    request that the Court strike the allegations in paragraph 2 relating to (i) the registered but

7    impermissibly assigned copyright of Netbula, and (ii) the unregistered copyright of Dr. Yue.

8    Defendants Derek P. Witte and Steven R. Springsteel respectfully request that the Court dismiss

9    without leave to amend all claims asserted against them.  Finally, Defendants respectfully request

10    that the Court strike Dr. Yue's prayers for statutory damages and attorneys' fees.

11    Dated: February 25, 2008                FENWICK & WEST LLP

12

13                                            By:_____/S/ LAURENCE F. PULGRAM_____
                                                    Laurence F. Pulgram
14

15                                            Attorneys for Defendants
                                              CHORDIANT SOFTWARE, INC.,
16                                            DEREK P. WITTE, STEVEN R. SPRINGSTEEL,
                                              and specially appearing for OLIVER WILSON
17

18    26257/00401/LIT/1280846.7

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO