1  DONGXIAO YUE
   2777 ALVARADO ST., SUITE C
2  SAN LEANDRO, CA 94577
   Telephone:  (510) 396-0012
3  Facsimile:  (510) 291-2237
4  E-Mail:     ydx@netbula.com

5  *Pro Se*

FILED
MAR 10 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DONGXIAO YUE, | Case No. C08-0019-MJJ |
|---|---|
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT WILSON' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| v. | |
| CHORDIANT SOFTWARE, INC., a Delaware corporation; Derek P. Witte, an individual; Steven R. Springsteel, an individual; Oliver Wilson, an individual; and DOES 1-1000, inclusive, | **[FED. R. CIV. P. 12(b)(2)]**<br><br>Date: Tuesday, April 1, 2008<br>Time: 9:30 A.M.<br>Dept: 11, 19th Floor<br>Judge: Hon. Martin J. Jenkins |
| Defendants. | |

-1-

Case No. C08-0019-MJJ                OPPOSITION TO WILSON'S MOTION TO DISMISS

## INTRODUCTION

Pro Se Plaintiff, Dongxiao Yue ("Yue"), opposes Defendant Oliver Wilson ("Wilson")'s motion to dismiss for lack of personal jurisdiction. Wilson's position is based on his assertion that "his conduct occurred entirely in New Hampshire, without any knowledge that any harm was being felt in California (or anywhere else), and without any express aiming or targeting at California." Wilson's Motion to Dismiss, p.1:19-21. Plaintiff will show this assertion to be false. Mr. Wilson knew Plaintiff is in California. He knew the infringing software he created is sold and distributed in California. The Court's personal jurisdiction over him is proper.

## FACTS

From 1994 to July 1996, as an individual, Plaintiff had been developing a software technology which he later named as "PowerRPC". In July 1996, Plaintiff founded Netbula, LLC, a Delaware Limited Liability Company, to market the aforementioned RPC software that he was developing at the time.

Plaintiff did not assign or transfer the copyrights in his earlier works created before July 24, 1996 to Netbula, LLC. The copyright registration for these unpublished works is pending at the U.S. Copyright Office. The PowerRPC software products were derivative works of these earlier unpublished works. In September 2007, Plaintiff acquired the copyrights of the derivative works by written assignment.

Plaintiff did not know of the existence of Chordiant Software, Inc. ("CSI") until sometime in 2007. CSI had no licenses to use the PowerRPC software.

On April 13, 2007, Oliver Wilson, the Program Manager for the Chordiant Marketing Director ("CMD") Product Suite at CSI sent an email to sales@netbula.com asking a technical question for

-2-

Case No. C08-0019-MJJ                          OPPOSITION TO WILSON'S MOTION TO DISMISS

Windows Vista. Mr. Wilson indicated that CSI had successfully used PowerRPC in its products for many years. He later stated that he had successfully developed software for Windows Vista using PowerRPC.

In August 2007, Plaintiff communicated with Mr. Wilson in an attempt to obtain information about CSI's usage of the PowerRPC software, in particular, whether CSI used PowerRPC in server applications. Mr. Wilson stated that CSI used PowerRPC for a VB.NET client application but did not fully answer Plaintiff's further questions (VB.NET is the name of a Microsoft technology). On August 29, 2007, Plaintiff sent Mr. Wilson another email requesting a detailed software usage report for PowerRPC. Plaintiff also telephoned Mr. Wilson and requested the software usage information via voice-to-voice communication. Mr. Wilson stated that he had requested that a usage report to be prepared and CSI would provide it soon.

Derek Witte, Vice President of CSI, subsequently communicated with Plaintiff. Instead of truthfully reporting CSI's unauthorized use of PowerRPC, Mr. Witte and Mr. Wilson engaged in a set of evasive conduct to conceal, continue and further the infringement of PowerRPC in the Marketing Director Product.

CSI copied and continue to copy PowerRPC software into its CMD products and potentially other software products by including "pmapsvc.exe", "pwrpc32.dll" and other files and by incorporating the program code developed with the PowerRPC SDK. As the program manager of the CMD product, Mr. Wilson directly participated and participates in these infringing activities.

CSI continued to sell the CMD products containing Plaintiff's software after receiving Plaintiff's license inquiries which put CSI on notice of its infringement.

## ARGUMENT

### A. The Complaint Alleged Willful Infringement by Mr. Wilson

The complaint alleged that Mr. Wilson willfully infringed the PowerRPC copyrights, with the knowledge that Plaintiff is in California. Plaintiff sent specific notices of potential copyright violations to Mr. Wilson and demanded copyright use reports. Moreover, since Mr. Wilson's employer, CSI, is located in California and since the CMD products are sold and distributed in California, Mr. Wilson also knew that the infringing products he developed and the PowerRPC components he unlawfully copied would and will have effect in California. Nevertheless, Mr. Wilson continued and continues the alleged infringement.

### B. The Court has Specific Jurisdiction over Mr. Wilson

In *Schwarzenegger v. Fred Martin Motor Company*, 374 F.3d 797 (9th Cir. 2004), the Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction":

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

A detailed legal analysis of personal jurisdiction in a copyright infringement case has been performed in *Brayton Purcell LLP v. Recordon & Recordon*, No. C-04-4995-EMC (N.D.Cal. 03/182005) (Docket No. 27). In *Brayton Purcell*, defendant R&R, a San Diego law firm copied

seven pages of text from Brayton Purcell's web site. Brayton Purcell sued R&R for copyright infringement. R&R moved to dismiss for lack of personal jurisdiction. Plaintiff's following argument parallels the analysis of the *Brayton Purcell* court.

### 1. Purposeful Availment

The *Brayton Purcell* court held:

> The alleged willful conduct together with the injection of the offending material into this District which could have produced some benefit to R&R makes this a stronger case for purposeful availment than in *Schwarzenegger*.
>
> Accordingly, the Court finds that in light of *Columbia Pictures* and the facts of this case, purposeful availment obtains in the case at bar notwithstanding the Ninth Circuit's decision in *Schwarzenegger*.

*Id.*

Here, like in *Columbia Pictures Television v. Krypton Broadcasting of Birmingham Inc.*, 106 F.3d 284 (9th Cir. 1997), "[Defendant] willfully infringed copyrights owned by [Plaintiff], which, as [Defendant] knew, had its principal place of business in the [forum]. This fact alone is sufficient to satisfy the purposeful availment requirement." *Columbia Pictures Television*, 106 F.3d at 289.

Like in *Brayton Purcell,* the alleged willful conduct is coupled with the injection of the offending material into this District. Namely, Wilson knew that the infringing CMD software he developed and the PowerRPC component he bundled with the infringing CMD software would be sold and distributed to this District, where CSI is located.

Accordingly, the purposeful availment prong is plainly satisfied under the alleged facts.

### 2. Arising Out of

-5-

Case No. C08-0019-MJJ                                   OPPOSITION TO WILSON'S MOTION TO DISMISS

Following *Brayton Purcell*, but for Wilson's copyright infringement, which reached into this District and which affected Plaintiff in this District, Yue's claim against Wilson would not have arisen. Therefore, the second-prong of the test is satisfied.

### 3. Fair Play and Substantial Justice

Defendants, including Mr. Wilson, requested an extension in this case so they could coordinate their defenses. The Court granted their request. Mr. Wilson hired the same Fenwick & West, LLP lawyers. He had no difficulty submitting declarations to this Court. He did not even need to manually sign his declarations. They were "electronically" signed. With telephones, email and faxes, he can direct his attorneys instantly. Mr. Wilson does not live in another country or the other side of the globe.

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Mr. Wilson fails to satisfy a very substantial burden of demonstrating that justice and convenience require that the case against him must not be tried in this District.

### CONCLUSION

The three-prong test for analyzing a claim of specific personal jurisdiction shows that the Court has personal jurisdiction over Mr. Wilson for his alleged willful infringement. Plaintiff requests that the Court deny his motion to dismiss for lack of personal jurisdiction.

Alternatively, the Plaintiff respectfully requests that the Court grant limited jurisdictional discovery on Mr. Wilson and permit Plaintiff to amend the complaint with more specific jurisdictional facts.

Respectfully submitted,

-6-

Case No. C08-0019-MJJ                    OPPOSITION TO WILSON'S MOTION TO DISMISS

1  Dated: March 10, 2008

DONGXIAO YUE (Pro Se)

Case No. C08-0019-MJJ                              OPPOSITION TO WILSON'S MOTION TO DISMISS