1  DONGXIAO YUE
   2777 ALVARADO ST., SUITE C
2  SAN LEANDRO, CA 94577
3  Telephone:    (510) 396-0012
   Facsimile:    (510) 291-2237
4  E-Mail:        ydx@netbula.com

5  *Pro Se*

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 | DONGXIAO YUE,                                    | Case No. C08-0019-MJJ |

11 |                     Plaintiff,                    | **PLAINTIFF'S OPPOSITION TO** |

12 |                                                   | **DEFENDANTS' MOTION TO DISMISS** |
   |           v.                                      | **AND STRIKE** |

13 |                                                   |                       |

14 | CHORDIANT SOFTWARE, INC., a                       | **[FED. R. CIV. P. 12(b)(1), 12(b)(6), 12(f),** |
   | Delaware corporation; Derek P. Witte, an          | **17(a)]** |
15 | individual; Steven R. Springsteel, an             | Date: Tuesday, April 1, 2008 |
16 | individual; Oliver Wilson, an individual; and     | Time: 9:30 A.M. |
   | DOES 1-1000, inclusive,                           | Dept: 11, 19th Floor |
17 |                                                   | Judge: Hon. Martin J. Jenkins |

18 |                     Defendants.                   |

19

20

21

22

23

24

25

26

                                     -1-
27

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... 3

INTRODUCTION......................................................................................................................... 5

FACTS ........................................................................................................................................ 6

LEGAL STANDARD ................................................................................................................. 10

A.  Pro Se Litigant................................................................................................ 10

B.  Legal Standard for Motion to Dismiss ............................................................. 11

C.  Copyright Registration and Court's Subject Matter Jurisdiction........................... 12

D.  Legal standard on the transfer of copyrights ...................................................... 13

E.  Assignment of accrued copyright action ............................................................ 13

F.  Contributory and Vicarious Copyright Infringement ........................................... 14

ARGUMENT ............................................................................................................................ 15

A.  Yue's Pro Se Rights Must be Respected ............................................................ 15

B.  Yue has standing to sue Defendants for infringement of the "NETBULA POWERRPC 2K4" Copyright  (U.S. registration number TX 6-491-697) ........... 16

C.  The Court has Subject Matter Jurisdiction Over Yue's pre-Netbula Copyrights........................................................................................................ 18

C. Plaintiff Alleged Sufficient Facts Supporting the Infringement Claims against Witte, Springsteel and Wilson........................................................................... 20

    1.  Direct infringement by CSI, Witte and Wilson ........................................... 20

    2.  Contributory Infringement by Mr. Witte and Mr. Springsteel..................... 20

    3.  Vicarious Infringement by Mr. Springsteeel ............................................. 21

D.  Plaintiff's Prayer for Attorney's Fees and Statutory Damages.............................. 22

CONCLUSION ......................................................................................................................... 23

-2-

1

# TABLE OF AUTHORITIES

2

3

<u>Cases</u>

4

*A&M Records v. Napster,*
239 F.3d 1004, 1022(9th Cir. 2001) .................................................................. 15, 22

5

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991) ................................................................................ 17

6

7

*ABKCO Music,Inc. v. Harrisongs Music, Ltd.*,
944 F.2d 971, 980 (2d Cir. 1991) ........................................................................ 14

8

*Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384 (5th Cir. 1984) ...................................... 12

9

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696, 699 (9th Cir. 1990) ....................................................................... 11

10

11

*Cahill v. Liberty Mutual Ins. Co.*,
80 F.3d 336, 337-38 (9th Cir. 1996) .................................................................... 11

12

*Caligav v. Inter Ocean Newspaper Company.*, 30 S. Ct. 38, 215 U.S. 182 (U.S.
11/29/1909) ......................................................................................................... 13

13

14

*Conley v. Gibson*,
355 U.S. 41, 45-46 (1957) ................................................................................... 11

15

*Davis v. Blige*,
No. 05-6844-cv (2d Cir. 10/05/2007) .................................................................. 13, 16

16

17

*Ellison v. Robertson*,
357 F.3d 1072, 1076 (9th Cir. 2004) .................................................................... 15

18

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542, 1555 n.19 (9th Cir. 1990) ............................................................ 12

19

20

*Iannaccone v. Law*,
142 F.3d 553 (2d Cir. 1998) ................................................................................ 10, 15

21

*In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1101 (N.D. Cal. 2002) .... 12, 19

22

*Jones v. Niagara Frontier Transportation Authority*,
722 F.2d 20 (2nd Cir. 1983) ................................................................................ 15

23

24

*Kalantari v. NITV*, Inc.,
352 F.3d 1202 (9th Cir. 2003) ............................................................................. 16

25

*Kourtis v. Cameron*,
419 F.3d 989 (9th Cir. 2005) ............................................................................... 19, 23

26

27

-3-

28

Case No. C08-0019-MJJ                                    OPPOSITION TO MOTION TO DISMISS

*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000) .................................................................................... 11

*Maurel v. Smith,*
    271 F. 211, 214 (2d Cir. 1921) ................................................................................... 13

*Metro-Goldwyn-Mayer Studios Inc v. Grokster, Ltd.,*
    125 S.Ct. 2764, 545 U.S. 913 (U.S. 2005) ................................................................. 22

*Olan Mills, Inc. v. Linn Photo Co.,*
    23 F.3d 1345, 1349 (8th Cir. 1994) ............................................................................ 19

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    487 F.3d 701, 710 n.1 (9th Cir. 2007) ....................................................................... 19

*Prather v. Neva Paperbacks Inc.,*
    410 F.2d 698 (5th Cir. 1969) ...................................................................................... 18

*Roth Greeting Cards v. United Card Co. ,*
    429 F.2d 1106 (9th Cir. 1970) .................................................................................... 19

*Roth Greeting Cards v. United Card Co.* , 429 F.2d 1106 (9th Cir. 1970) .......................... 12

*Sebastian Intern., Inc. v. Consumer Contacts Ltd.,* 664 F. Supp. 909, 912 (D.N.J. 1987) . 12

*Silvers v. Sony Pictures Entertainment, Inc.,*
    402 F.3d 881 (9th Cir. 2005) ............................................................................... 14, 17

*Syntek Semiconductor Co. v. Microchip Tech, Inc.,*
    307 F.3d 775, 781 (9th Cir. 2002) .............................................................................. 12

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,*
    368 F.3d 1053, 1061 (9th Cir. 2004) .......................................................................... 11

<u>Statutes</u>

17 U.S.C. § 201(d)(1) ..................................................................................................... 13, 16

18 U.S.C. §242 ............................................................................................................... 15, 16

42 U.S.C. §1981 ................................................................................................................... 15

42 U.S.C. §1982 ............................................................................................................. 13, 16

-4-

1

## INTRODUCTION

2    *Pro Se* Plaintiff, Dongxiao Yue ("Yue"), opposes Defendants' motion to dismiss and strike.

3    Yue's assigned and originally owned copyrights in the PowerRPC software are personal

4    intellectual property. See 17 U.S.C. § 201(d)(1). Against the fundamental principles of the

5
6    Constitution, Defendants' urges the Court to adopt a theory that touches dangerous grounds – that

7    Netbula's transfer of the 2004 PowerRPC copyright to Yue was impermissible as a matter of law.

8    As Yue will show below, the controlling authorities establish that Yue has every right to acquire

9    the intellectual property, and Netbula had the constitutional right to transfer the intellectual

10   property in question.

11   Defendants claimed that this case "should be a straightforward contractual matter". Yet,

12   Plaintiff had no prior dealings with defendants. Plaintiff did not even know the existence of

13
14   defendants prior to 2007. Defendant Witte, the Vice President of Chordiant Software, Inc. ("CSI"),

15   also denied the existence of any contract in his emails. Complaint at ¶¶26-30.

16   Defendants claim that the Court lacks subject matter jurisdiction because the registration of the

17   code Yue created before the creation of Netbula was pending. However, according to Fenwick &

18   West LLP, one "[g]enerally can file suit on a copyright registration **application**".  *"Copyright*

19   *Infringement Litigation With Some Asides on Software Copyright Litigation"*[1]. Cases in the

20   Northern District of California and other circuits support the point that Courts have subject matter

21   jurisdiction over copyright actions with a pending copyright registration[2].

22

23

24   [1] http://www.fenwick.com/docstore/Publications/IP/Copyright_Infringement_Litigation.pdf, page
     1. Last accessed March 9, 2008.

25   [2] In the *Netbula v. BindView* (C06-0711-MJJ), Netbula filed a Rule 11 sanction motion against
26   Mr. Wakefield and Mr. Pulgram for not disclosing the cases that permit copyright lawsuits based

27                                         -5-

28   Case No. C08-0019-MJJ                                    OPPOSITION TO MOTION TO DISMISS

1    Yue sufficiently alleged direct and/or indirect infringement by Derek P. Witte, Steven R.

2    Springsteel and Oliver Wilson. These individuals were notified about the alleged infringement by

3    email and letters, yet they willfully continued the infringing activities. They directly or indirectly

4    infringed Plaintiff's personal property. Their status as corporate officers does not shield them from

5    infringement lawsuits.

6

7                                            **FACTS**

8    From 1994 to July 1996, as an individual, Plaintiff had been developing a software technology

9    which he later named as "PowerRPC". In July 1996, Plaintiff founded Netbula, LLC, a Delaware

10   Limited Liability Company, to market the aforementioned RPC software that he was developing at

11   the time.

12

13   Plaintiff did not assign or transfer the copyrights in his earlier works created before July 24,

14   1996 to Netbula, LLC. The copyright registration for these unpublished works is pending at the

15   U.S. Copyright Office. The PowerRPC software products were derivative works of these earlier

16   unpublished works.

17   On September 26, 2007, Netbula executed a written copyright assignment, transferring all

18   exclusive rights in all PowerRPC and ONC RPC for Windows software created before January 1,

19   

20   2007 back to Dr. Dongxiao Yue -- Plaintiff. The copyright assignment further assigned all past

21   and future claims of infringement to Plaintiff. A copy of the assignment is attached as Exhibit B to

22   the complaint.

23

24

25   on a pending copyright application. Docket No. 103 of the C06-0711-MJJ case. Thus, this issue is
     not new to defense counsel.
26

27                                            -6-

28   Case No. C08-0019-MJJ                                    OPPOSITION TO MOTION TO DISMISS

A purchaser of PowerRPC software must buy one type of license (an "SDK" license) for each computer programmer who will use the "powerrpc.h", "rpcgen.exe", "pwrpc32.lib", "pwrpc32.dll" and/or other PowerRPC files to develop RPC applications. A purchaser must also buy a separate server or client license for the right to copy the runtime software files, also including the "pwrpc32.dll" file.

The license for the right to copy the PowerRPC runtime software to a single computer is called a "server runtime license" or a "client runtime license," depending on whether the runtime software is used for a server application or a client application. A server application is one that provides services to many users or clients. A client application is usually used by one end-user on a PC or workstation. Netbula listed its prices for server and client runtime licenses on its online shopping system. Based on Netbula's sales records, in April 2004, a server runtime license cost about $800 per server machine.

Each SDK license and runtime license (server or client) is only granted for a single computer and might only be granted for use in one specific operating system environment, for example, "Windows Server 2003" but not "Windows Vista", depending upon the specific license grant.

Plaintiff alleged that defendant Delaware Corporation Chordiant Software, Inc. ("CSI") had no licenses to PowerRPC but copied and distributed the software. CSI made no purchase of PowerRPC licenses. Plaintiff did not even know the existence of CSI until sometime in 2007.

On April 13, 2007, Oliver Wilson, the Program Manager for the Marketing Director Product Suite at CSI sent an email to sales@netbula.com asking a technical question for Windows Vista. Mr. Wilson indicated that CSI had successfully used PowerRPC in its products for many years. He later stated that he had successfully developed software for Windows Vista using PowerRPC.

-7-

OPPOSITION TO MOTION TO DISMISS

1    In May 2007, a person emailed Netbula about PowerRPC's "pmapsvc.exe" program for

2    software named "Chordiant Marketing Director" ("CMD"). For the first time, Plaintiff learnt that

3    PowerRPC was used in the CMD software. Based on online research, Plaintiff suspected that

4    CMD consisted of both PowerRPC server and client applications, which would require both server

5    and client runtime licenses.

6

7    In August 2007, Plaintiff communicated with Mr. Wilson in an attempt to obtain information

8    about CSI's usage of the PowerRPC software, in particular, whether CSI used PowerRPC in

9    server applications. Mr. Wilson stated that CSI used PowerRPC for a VB.NET client application

10    but did not fully answer Plaintiff's further questions (VB.NET is the name of a Microsoft

11    technology). On August 29, 2007, Plaintiff sent Mr. Wilson another email requesting a detailed

12    software usage report for PowerRPC. Plaintiff also telephoned Mr. Wilson and requested the

13    software usage information via voice-to-voice communication. Mr. Wilson stated that he had

14    requested that a usage report to be prepared and CSI would provide it soon.

15

16    On September 17, 2007, Derek Witte, Vice President of CSI, emailed Plaintiff and asked

17    Plaintiff for a signed license agreement Plaintiff had with CSI.

18    On October 1, 2007, Mr. Witte sent an email to Plaintiff, stating that the PowerRPC software

19    CD in his possession contained a license file with blanks to be filled. Mr. Witte wrote about the

20    license file: "It is unsigned, and does not refer to or purport to govern or be accepted by

21    Chordiant." Mr. Witte further wrote: "The unsigned form also does not prevent Chordiant from

22    distributing its products for all Windows platforms. It does refer to limited platforms for use

23    under the development license, but the distribution license contains no limitation."

24

25

26

27

-8-

28

1    The same day, October 1, 2007, Plaintiff emailed Mr. Witte the purchase order sent by

2    ChordiantUK and requested Mr. Witte to provide a copy of the PowerRPC software CD he had in

3    his possession. After realizing that CSI is a different company with its headquarters in California,

4    Plaintiff sent a letter to Steven R. Springsteel, President and CEO of CSI, again requesting the

5    software usage information.

6

7    On October 5, 2007, Mr. Witte sent another email to Plaintiff. Mr. Witte wrote, in part:

8        Therefore I ask you again: please show me what agreement you claim
         requires anything of the sort you're requesting, or please acknowledge
9        that there is no such requirement.

10       I also asked you below to give me any information or documentation that
         you claim indicates that when Chordiant purchased its licenses, it
11       accepted any of the purported restrictions that you are now relying on. I
         assume that you're acknowledging now that there was no click wrap
12       agreement. So I ask you again: if you have any record of Chordiant's
         acceptance of any particular terms, including anything that suggests that
13       Chordiant agreed to limitation on which versions of windows operations
14       systems it could distribute its products, please show me.

15   On the same day, Plaintiff replied to Mr. Witte's email:

16       My question to Chordiant is this: did Chordiant agree to and abide by
         Netbula's license terms?
17       Please answer that question by 4:00PM today. I have given your
18       company plenty of time to reflect your positions.

19   CSI did not respond to Plaintiff's question above, nor did CSI provide a usage report as

20   requested in August 2007 and subsequent communications. Plaintiff requested Mr. Witte to

21   provide a copy of the PowerRPC software CD in CSI's possession, CSI ignored Plaintiff's

22   request.

23

24   CSI copied and continue to copy PowerRPC software into its CMD products and

25   potentially other software products by including "pmapsvc.exe", "pwrpc32.dll" and other files and

26   by incorporating the program code developed with the PowerRPC SDK.

27                                              -9-

28   Case No. C08-0019-MJJ                                    OPPOSITION TO MOTION TO DISMISS

1   CSI's use of PowerRPC in its CMD products includes both RPC server and RPC client

2   applications. A CMD server listens to and processes incoming computerized requests from CMD

3   clients. Users of the CMD client application connect to a CMD server to perform sales and

4   marketing activities. The complaint detailed the extent of CSI of PowerRPC software.

5

6   CSI continued to sell the CMD products containing Plaintiff's software after receiving

7   Plaintiff's license inquiries which put CSI on notice of its infringement. Instead of immediately

8   stopping the infringement upon Plaintiff's initial notice, Mr. Witte and Mr. Wilson engaged in

9   activities to conceal, continue and further the infringement by CSI and its customers. On

10  information and belief, Mr. Witte supported, encouraged and guided CSI's continuing

11  infringement, while evading Plaintiff's inquiries on software usage.

12  Mr. Springsteel was informed about CSI's infringing actions, but did not stop the

13  infringement. Mr. Springsteel owns large quantity of shares of CSI stocks and derivative

14  securities, the value of which closely depends on the revenues received from infringing software,

15

16  such as the CMD products.

17                              **LEGAL STANDARD**

18                              **A. Pro Se Litigant**

19  Defense counsel keeps disparaging Yue because of his *pro se* status. It is thus instructive to

20  review the legal principles regarding *pro se* representation in civil litigation.

21  "The framers of our Constitution thought self-representation in civil suits was a basic right that

22  belongs to a free people." *Iannaccone v. Law*, 142 F.3d 553 (2d Cir. 1998). The Second Circuit

23  further stated:

24

25          The right to proceed *pro se* in civil actions in federal courts is guaranteed
            by 28 U.S.C. § 1654, which provides: "In all courts of the United States

26          the parties may plead and conduct their own cases personally or by

27                                          -10-

28  Case No. C08-0019-MJJ                              OPPOSITION TO MOTION TO DISMISS

1    counsel as, by the rules of such courts, respectively, are permitted to
     manage and conduct causes therein." Section 1654's guarantee derives
2    directly from the Judiciary Act of 1789.... As can be seen, the right to
     self-representation has remained constant for over 200 years.
3
*Id.*

4    In fact, most Courts have rules to help *pro se* litigants to protect their rights. The Ninth

5    Circuit has "noted frequently that the rule favoring liberality in amendments to pleadings is

6
     particularly important for the pro se litigant. Presumably unskilled in the law, the *pro se* litigant is
7
     far more prone to making errors in pleading than the person who benefits from the representation
8
9    of counsel." *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (*en banc*) (finding dismissal of pro se

10   complaint without leave to amend contrary to the "longstanding rule that leave to amend should be

11   granted" and "inconsistent with our precedent because Lopez was a pro se plaintiff"). "Failure to

12   grant leave to amend the complaint, however, is improper unless it is clear, upon de novo review,

13   that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun*

14
     *Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (internal quotes removed).
15
     Model Rule 4.3 of Professional Conduct of the American Bar Association also requires
16
17   that a lawyer shall respect an unrepresented person. This is an ethical and civility requirement.

18   "We are in reason business."

19                      **B. Legal Standard for Motion to Dismiss**

20   "A complaint should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that

21   the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"

22   *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (quoting *Conley v. Gibson*,

23   355 U.S. 41, 45-46 (1957)). In ruling on a Rule 12(b)(6) motion, the facts in the complaint are

24
     taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty*
25
     *Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).
26

27                                      -11-

28   Case No. C08-0019-MJJ                          OPPOSITION TO MOTION TO DISMISS

1    "Generally, a district court may not consider any material beyond the pleadings in ruling on a

2    Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555

3    n.19 (9th Cir. 1990).

### C. Copyright Registration and Court's Subject Matter Jurisdiction

4

5    In the Napster litigation presided over by Judge Patel,  "Napster argue[d] that . . . works

6    with pending registration applications are not entitled to the same rebuttable presumption as

7    registered works . . . . [However,] 17 U.S.C. section 410(d), states that '[t]he effective date of a

8    copyright registration is the day on which an application . . . [is] received in the Copyright Office.'

9    Hence, works with pending registrations will be given the benefit of the presumption of

10   ownership." *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1101 (N.D. Cal. 2002).

11   "[W]hen plaintiff placed the revised applications in the mail.., it had done everything required of it

12   under the copyright law with respect to the deposit of copies and registration and could therefore,

13
     on that day maintain that action". *Roth Greeting Cards v. United Card Co.* , 429 F.2d 1106 (9th
14

15   Cir. 1970) (internal quotes removed) (Plaintiff filed copyright lawsuit two days before copyright

16   office received correct registration material, 9th Circuit found subject matter jurisdiction existed).

17   See also, *Melville B. Nimmer, Nimmer on Copyright*, Vol. 2 § 7.16[B][1][a], p. 7-154-56.

18       The Fifth and Third Circuits, as well as district courts in other circuits, have found that

19   Courts have subject matter jurisdiction when plaintiffs have initiated the process of obtaining

20   registration certificates. *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384 (5th Cir. 1984).

21
     *Sebastian Intern., Inc. v. Consumer Contacts Ltd.*, 664 F. Supp. 909, 912 (D.N.J. 1987), vacated
22

23   on other grounds, 847 F.2d 1093 (3d Cir. 1988). "Congressional intent to have national

24   uniformity in copyright laws is clear." *Syntek Semiconductor Co. v. Microchip Tech, Inc.*, 307

25   F.3d 775, 781 (9th Cir. 2002). Given Ninth Circuit's decision in *Roth Greeting Cards* and the

26

27                                      -12-

1 | precedents in Northern District of California, it is clear that a pending copyright registration gives

2 | the court subject matter jurisdiction over an infringement claim.

3 | **D. Legal standard on the transfer of copyrights**

4 | The right to own, hold and convey property is a basic civil right. 42 U.S.C. §1982 mandates

5 | that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is

6 | enjoyed by white citizens thereof to inherit, purchase, lease, **sell, hold, and convey real and**

7 | **personal property**."

8 | Copyright is a statutory property right of the author granted by the Copyright Act (the "Act").

9 | "The statute created a new property right, giving to the author... the exclusive right to multiply

10 | copies for a limited period." *Caligav v. Inter Ocean Newspaper Company.*, 30 S. Ct. 38, 215 U.S.

11 | 182 (U.S. 1909). As with any personal property, copyright may be freely transferred as explicitly

12 | stated in the Copyright Act:

13 |
14 |
15 |

> The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as *personal property* by the applicable laws of intestate succession.

16 | 17 U.S.C. § 201(d)(1).

17 | The courts have observed that

18 |
19 |
20 |
21 |

> [t]he right to sell and transfer personal property is an inseparable incident of the property. An author or proprietor of a literary work or manuscript [or other work protected by the Copyright Act] possesses such a right of sale as fully and to the same extent as does the owner of any other piece of personal property. It is an incident of ownership.

22 | *Davis v. Blige*, No. 05-6844-cv (2d Cir. 10/05/2007) (citing *Maurel v. Smith*, 271 F. 211, 214 (2d

23 | Cir. 1921)).

24 | **E. Assignment of accrued copyright action**

25 |
26 |

27 | -13-

28 | Case No. C08-0019-MJJ                                    OPPOSITION TO MOTION TO DISMISS

1    The *en banc* case of *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir.

2  2005) is instructive. There, Nancey Silvers ("Silvers") wrote a manuscript as a work-for-hire for

3  Frank & Bob Films. Thus the copyright in the manuscript was owned by Frank & Bob Films.

4
   After *Sony Pictures Entertainment, Inc.*("Sony") allegedly infringed the copyright in Silvers's
5
   manuscript, Frank & Bob Films retained ownership of the underlying copyright to the script, but
6

7  assigned to Silvers "all right, title and interest in and to any claims and causes of action against

8  Sony Pictures Entertainment, Inc." and others. With the assignment of the causes of action alone,

9  Silvers filed her complaint. A three-judge Ninth Circuit panel initially found that Silvers had

10  standing to sue with the assignment of the cause of action alone.

11    The *Silvers en banc* court explicitly adopted Second Circuit's holding in *ABKCO*

12  *Music,Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991), that a person who
13
   acquired both the copyright and accrued actions can sue infringers for both past infringement and
14

15  prospectively. The Ninth Circuit reasoned as follows:

16        This holding makes perfect sense, as it is consistent with the Act and with
          the constitutional purpose of encouraging authors and inventors by
17        creating a limited monopoly on their works and inventions. When one
          acquires a copyright that has been infringed, one is acquiring a copyright
18        whose value has been impaired. Consequently, to receive maximum
          value for the impaired copyright, one must also convey the right to
19        recover the value of the impairment by instituting a copyright action.

20

21  *Silvers, at 890, fn1.*

22                    **F. Contributory and Vicarious Copyright Infringement**

23
   Three elements required to prove a defendant liable under the theory of contributory copyright
24
   infringement. They are:
25

26        (1)   direct infringement by a primary infringer,

27                                    -14-

1        (2)    knowledge of the infringement, and

2        (3)    material contribution to the infringement.

3    *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

4        Unlike contributory infringement, which requires knowledge of the infringement, vicarious

5

6    infringement has no such requirement. Three elements are required to prove a defendant

7    vicariously liable for copyright infringement: (1) direct infringement by a primary party, (2) a

8    direct financial benefit to the defendant, and (3) the right and ability to supervise the infringers.

9    *A&M Records v. Napster*, 239 F.3d 1004, 1022(9th Cir. 2001).

10    **ARGUMENT**

11    **A.    Yue's Pro Se Rights Must be Respected**

12        "The framers of our Constitution thought self-representation in civil suits was a basic right

13    that belongs to a free people." *Iannaccone v. Law*, 142 F.3d 553 (2d Cir. 1998). "All persons

14

15    within the jurisdiction of the United States shall have the same right in every State and Territory to

16    make and enforce contracts, **to sue, be parties, give evidence, and to the full and equal benefit**

17    **of all laws and proceedings** for the security of persons and property…" 42 U.S.C. §1981.

18    Defendants' suggestion that the Court should discriminate against a *pro se* plaintiff is bordered on

19    violation of fundamental rights prohibited by 18 U.S.C. §242.

20        Defendants cite *Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20 (2nd Cir.

21    1983). In that case, Jones assigned the corporation's lawsuit to himself.

22

23        The situation in the instant case is completely different. In this case, Yue sued for

24    infringement of his personally owned properties that he always owned and/or acquired by

25    assignment.

26

27    -15-

28    Case No. C08-0019-MJJ             OPPOSITION TO MOTION TO DISMISS

**B.   Yue has standing to sue Defendants for infringement of the "NETBULA POWERRPC 2K4" Copyright  (U.S. registration number TX 6-491-697)**

A copyright is a personal property that can be freely sold or transferred. 42 U.S.C. §1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, **sell, hold, and convey real and personal property**." 18 U.S.C. §242 states that no one shall deprive any person any rights protected by the Constitution under color of any law.

A copyright owner "possesses such a right of sale as fully and to the same extent as does the owner of any other piece of personal property. It is an incident of ownership." *Davis v. Blige*, No. 05-6844-cv (2d Cir. 10/05/2007). "The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law . . . ." 17 U.S.C. § 201(d)(1). "Without question, an assignment qualifies as a transfer by 'any means of conveyance.'" *Kalantari v. NITV*, Inc., 352 F.3d 1202 (9th Cir. 2003).

In this case, Netbula assigned the copyrights in "NETBULA POWERRPC 2K4" ("2K4 Copyright") to Yue in September 2007. Yue has the right to acquire the 2K4 Copyright and he has acquired the copyrights. Can Yue sue infringers?

Consider this hypothetical situation: Netbula transferred the title of a car it owned to Yue, and some thieves stole the car. Can Yue sue the thieves? Or can the thieves drive away free with the stolen car? The answer is obvious. The moment the car is transferred to Yue, Yue owns the car. The car is his personal property; Yue can sue any thieves who stole the car.

-16-

1    The analogy above tells us that Yue can sue defendants for any infringing conduct

2    happened after the copyright transfer. And the complaint alleged ongoing and continuing

3    infringement by defendants. Complaint at ¶¶31-39.

4    The next question is whether Yue can sue defendants for accrued actions. The law is well

5    established. Since Netbula assigned both the copyrights and the accrued actions to Yue, Yue has

6    standing to sue defendants for past, ongoing and future infringement of the 2K4 Copyright, under

7    the well settled law in *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005)

8    and *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991).

10    Defendants' argument is that because a corporation must represented by attorney,

11    Netbula's transfer of copyright is impermissible. This argument is missing the logical links. The

12    requirement that a company needs to be represented by a licensed attorney does not prohibit the

13    transfer of property of a company. In *ABKCO Music, Inc*, the copyrights and associated lawsuit

14    was sold multiple times. The purchasers of the copyrights and actions there were corporations.

15    There, a party who initially did not have standing to sue attained the standing by the acquisition of

16    the copyrights and actions. The question is: can an individual acquire copyrights owned by a

17    corporation?

19    Copyright law does not make a difference between an artificial entity and a natural person

20    in terms of transferring or acquiring property. The current situation is quite like what happened in

21    *Silvers v. Sony Pictures Entertainment, Inc.* In *Silvers*, Nancey Silvers created the copyrighted

22    work under work-for-hire doctrine for a company, just like Yue created the 2K4 Copyright for

23    Netbula. Ms. Silvers later acquired the accrued action against Sony by assignment from the

27    -17-

1  company. The Ninth Circuit ruled that Silvers could have had standing to sue Sony if the

2  copyrights had also been assigned.

3      Whether Yue is *pro se* or represented by counsel is a separate issue from whether he could

4  acquire the copyrights. Once he acquired the copyrights, they are his. He owns the copyright and

5
6  he can sue anyone who infringed or infringes it. The Court recognizes this at a hearing in the

7  *Netbula v. Sun* case (C06-07391-MJJ):

8          MS. BRILLET: YOUR HONOR, MR. YUE IS NOT TRYING TO
           ASSERT THE RIGHTS OF NETBULA.
9
           THE COURT: I RECOGNIZE THAT.
10
11         MS. BRILLET: NOW THE ASSIGNMENT IS HIS. IT IS HIS RIGHTS,
           AND THEY HAVE SUED HIM IN HIS INDIVIDUAL CAPACITY
12         ALREADY, SO THEY HAVE ACCEPTED HIM AS AN INDIVIDUAL
           PARTY.
13
           THE COURT: RIGHT, RIGHT...
14
15  Tr. November 20, 2007 hearing for Netbula's motion to substitute party, p.15-5:19.

16      In *Prather v. Neva Paperbacks Inc.*, 410 F.2d 698 (5th Cir. 1969), after discovering

17  infringement, Prather, an individual author, acquired the copyrights owned by Fawcett

18  Publications, Inc. by assignment and then sued the infringers. The infringers claimed that they

19  should have been sued by the original copyright owner -- Fawcett Publications, Inc. The Fifth

20  Circuit "[was] neither **beguiled** nor persuaded." *Id.*

21

22  **C.    The Court has Subject Matter Jurisdiction Over Yue's pre-Netbula Copyrights**

23      As stated in the FACTS section, substantial portion of the PowerRPC code was written by

24  Yue before Netbula was formed. Copyrights existed the moment the work was fixed on tangible

25  medium. Thus, Yue always owned the copyrights of the pre-Netbula code. The registration of the

26

27                                          -18-

28  Case No. C08-0019-MJJ                                    OPPOSITION TO MOTION TO DISMISS

1  related copyrights is currently pending at the U.S. Copyright Office. The question is whether the

2  Court has subject matter jurisdiction over the copyright action arises from the infringement of the

3  works with pending registration.

4
5  As Judge Patel read from the plain language of the Copyright Act, "works with pending

6  registrations will be given the benefit of the presumption of ownership." *In re Napster, Inc.*

7  *Copyright Litig.*, 191 F. Supp. 2d 1087, 1101 (N.D. Cal. 2002). This dictum is consistent with

8  Ninth Circuit precedent: "when plaintiff placed the revised applications in the mail.., it had done

9  everything required of it under the copyright law with respect to the deposit of copies and

10 registration and **could therefore, on that day maintain that action**". *Roth Greeting Cards v.*

11 *United Card Co.* , 429 F.2d 1106 (9th Cir. 1970). Consistently, the Ninth Circuit has held that "the

12 court may grant injunctive relief to restrain infringement of any copyright, whether registered or

13 unregistered." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 710 n.1 (9th Cir. 2007) (citing

14
15 *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994)).

16 According to defense counsel's own training material, one "[g]enerally can file suit on a

17 copyright registration application". *"Copyright Infringement Litigation With Some Asides on*

18 *Software Copyright Litigation"*[3], Fenwick & West LLP. This publication by Fenwick should be

19 considered judicial admission.

20
21 Plaintiff has alleged that he has a pending registration at the U.S. Copyright Office for the

22 works He created before Netbula was found. This allegation satisfies "the permissive requirements

23 of notice pleading." See *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005). Accordingly, the

24 Court has subject matter jurisdiction over Yue's copyrights with pending registration.

25
26 ---
[3] http://www.fenwick.com/docstore/Publications/IP/Copyright_Infringement_Litigation.pdf

27 -19-

1    If the Court would conclude that it has no subject matter jurisdiction over copyrights with

2  pending registration, Plaintiff requests that leave to amend to be granted, so that Yue can seek an

3  expedited copyright registration.

4  **C. Plaintiff Alleged Sufficient Facts Supporting the Infringement Claims against Witte,**
5  **Springsteel and Wilson**

6

7  **1.  Direct infringement by CSI, Witte and Wilson**

8    The complaint alleged specific facts regarding the direct infringement by CSI, Mr. Witte and

9  Mr. Wilson. CSI copied and distributed PowerRPC components with its CMD products.

10  Complaint at ¶¶31-39. Mr. Wilson copied and used the PowerRPC SDK to develop infringing

11  products.

12    Mr. Witte also copied the software directly. H examined the content of the software CD, which
13
required a copy to be made into computer random access memory.
14

15    Since none of the acts of copying was done with authorization, they constitute direct

16  infringement.

17  **2.  Contributory Infringement by Mr. Witte and Mr. Springsteel**

18    Mr. Witte contacted Yue after Yue requested specific information about CSI's usage: date of

19  installation, operating system type, usage type (client or server) and number of copies. As a Vice

20
President for CSI, a sophisticated software company, Mr. Witte knew Yue was inquiring about
21
22  potential copyright violations. The subsequent communications from Mr. Witte indicate that he

23  clearly understood the case is about copyright infringement. He wrote about whether Chordiant

24  had rights to distribute the software to all Windows platforms. He wrote about development

25  licenses and the distribution licenses. Complaint at ¶¶24-30. As Vice President of CSI, Witte is

26

27                                          -20-

28  Case No. C08-0019-MJJ                                    OPPOSITION TO MOTION TO DISMISS

1  closely involved in CSI's operations and thus knew its infringing use of PowerRPC software. The
2  complaint alleged that Witte handled the license inquiries. Witte had knowledge of the direct
3  infringement by CSI.

4      The complaint alleges material contribution by Mr. Witte to the continuing infringement. Mr.
5  Witte's evasive emails and his acts of evading key questions were plain efforts to conceal CSI's
6  infringement and to delay Yue's legal action. That alone is aiding and abetting infringement. By
7  concealing the infringement, Mr. Witte enabled CSI to further the infringement. "Mr. Witte and
8  Mr. Wilson engaged in activities to conceal, continue and further the infringement by CSI and its
9  customers... Mr. Witte supported, encouraged and guided CSI's continuing infringement, while
10 evading Plaintiff's inquiries on software usage." Complaint at ¶39.

11     As for Mr. Springsteel, he was clearly notified of CSI's infringement by Yue's October 1,
12 2007 letter. Complaint at ¶27. Although the complaint does not include the details of that letter,
13 Mr. Springsteel was notified of the infringement. The complaint alleges that Mr. Springsteel is the
14 President of CSI and "knowingly and materially contributed, caused, induced, supported,
15 facilitated, aided or abetted the infringement of Plaintiff's copyrights." This plainly satisfies the
16 notice pleading requirement. The president of a company manages day-to-day operations. Since
17 CSI's day-to-day operations include substantial direct infringing activities, Mr. Springsteel
18 contributed and contributes to the direct infringement.

19     Being a corporate officer does not shield Mr. Springsteel from liabilities. His company thrived
20 on using Plaintiff's software, and he should be held to the same standard under the rule of law.

**3. Vicarious Infringement by Mr. Springsteeel**

-21-

Case No. C08-0019-MJJ                                              OPPOSITION TO MOTION TO DISMISS

1   Defendant CSI is a public traded company, and Mr. Springsteel is the President, Chairman and

2   CEO, he did not stop the infringement and he owned large quantities of CSI shares and derivative

3   securities. Complaint at ¶¶ 7,8,40. Based on these allegations and the allegation that CSI and

4   Wilson directly infringed copyrights, Mr. Springsteel is vicariously liable for copyright

5   infringement.

6

7   "One … infringes vicariously by profiting from direct infringement while declining to exercise

8   a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc v. Grokster, Ltd.*, 125 S.Ct. 2764,

9   545 U.S. 913 (U.S. 2005). The complaint alleges that "CSI received substantial amount of

10  revenue from selling the CMD products and related services." Complaint at ¶ 37. With reasonable

11  inference from the complaint, Mr. Springsteel profits from the direct infringement. The substantial

12  amount revenue of CSI receives from the infringing CMD software increases the value of the

13  shares and derivative securities Mr. Springsteel owned. Mr. Springsteel has the right and ability to

14  supervise the infringers. *A&M Records v. Napster*, 239 F.3d 1004, 1022(9th Cir. 2001). He is the

15  
16  CEO. He could fire Mr. Wilson or anyone who infringed and thus he could have stopped the

17  infringement. But he didn't do it.

18  **D.    Plaintiff's Prayer for Attorney's Fees and Statutory Damages**

19  The complaints does not allege the exact commencement time of infringement by each of

20  the named and unnamed defendants. Therefore, based on the complaint, it is not possible to

21  
22  preclude the availability of attorney's fees and statutory damages under the Copyright Act. It is

23  entirely possible that Mr. Wilson, or his one of his colleague (a DOE defendant), or a CSI

24  customer started infringing PowerRPC after the 2K4 Copyright was registered.

25

26

27                                                      -22-

28  Case No. C08-0019-MJJ                                OPPOSITION TO MOTION TO DISMISS

1    Moreover, it is entirely possible that some infringing acts can be considered new

2  infringements for statutory damages purposes. For instance, the Ninth Circuit has held that re-

3  releasing a movie on DVD may be considered a new infringing act. See *Kourtis v. Cameron*, 419

4  F.3d 989 (9th Cir. 2005). Here, CSI may have created newer versions of CMD software after the

5  registration date, thus making these newer infringing acts subject to statutory damages.

6

7                                    **CONCLUSION**

8    Plaintiff has shown that (1) he has standing to sue for the infringement of the copyrights

9  assigned to him before commencement of the instant action; (2) the Court has subject matter

10  jurisdiction over copyright actions with pending registration; (3) the complaint well plead the

11  claims against the individual defendants; (4) statutory damages and attorneys fees are available.

12  Plaintiff respectfully requests that the Court deny defendants' motion to dismiss and to strike.

13

14

15    Dated: March 10, 2008

16

17                                    DONGXIAO YUE (*Pro Se*)

18

19

20

21

22

23

24

25

26

27                                    -23-

28  Case No. C08-0019-MJJ                          OPPOSITION TO MOTION TO DISMISS