LAURENCE F. PULGRAM (CSB NO. 115163)
*lpulgram@fenwick.com*
JEDEDIAH WAKEFIELD (CSB NO. 178058)
*jwakefield@fenwick.com*
ALBERT L. SIEBER (CSB NO. 233482)
*asieber@fenwick.com*
LIWEN A. MAH (CSB NO. 239033)
*lmah@fenwick.com*
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendants
CHORDIANT SOFTWARE, INC.,
DEREK P. WITTE, STEVEN R. SPRINGSTEEL,
and specially appearing for OLIVER WILSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONGXIAO YUE,<br><br>    Plaintiff,<br><br>  v.<br><br>CHORDIANT SOFTWARE, INC., a Delaware corporation; DEREK P. WITTE, an individual; STEVEN R. SPRINGSTEEL, an individual; and OLIVER WILSON, an individual,<br><br>    Defendants. | Case No. C-08-0019-MJJ<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE [FED. R. CIV. P. 12(b)(1), 12(b)(6), 12(f), 17(a)]**<br><br>Date:   Tuesday, April 1, 2008<br>Time:   9:30 A.M.<br>Dept:   11, 19th Floor<br>Judge:  Hon. Martin J. Jenkins |

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE

CASE NO. C-08-0019-MJJ

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

I. DR. YUE LACKS STANDING TO ASSERT AS A *PRO SE* LITIGANT CLAIMS THAT BELONGED TO HIS COMPANY, AND TO ASSERT CLAIMS IN COPYRIGHTS UNREGISTERED AT THE COMMENCEMENT OF THIS ACTION ............................................................................................................................. 2

    A. Dr. Yue's Resort to His *Pro Se* Status Is Misplaced. ................................................ 2

    B. None of the Cases Cited by Plaintiff Rebut the Well-Established Rule That a Company's Claims Can Be Brought Only Through Counsel ...................... 3

    C. Plaintiff's Argument That a Copyright Application Is Sufficient to Confer Subject-Matter Jurisdiction Fails ...................................................................... 5

    D. Plaintiff's Request for Leave to Amend His Complaint to Allege a Copyright Registration Must Be Denied .......................................................... 6

II. THE COPYRIGHT CLAIMS AGAINST DEREK P. WITTE AND STEVEN R. SPRINGSTEEL FAIL AS A MATTER OF LAW ........................................................... 7

    A. Dr. Yue Fails to State a Cause of Action Against Mr. Springsteel for Either Direct, Contributory, or Vicarious Copyright Infringement ................... 7

    B. Plaintiff Fails to State a Cause of Action Against Mr. Witte for Either Direct, Contributory, or Vicarious Copyright Infringement ................................ 9

III. THE COURT SHOULD STRIKE PLAINTIFF'S PRAYER FOR ATTORNEYS' FEES AND STATUTORY DAMAGES ....................................................................... 11

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&M Records v. Napster, Inc.*,
   239 F.3d 1004 (N.D. Cal. 2001) .................................................................................... 8

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
   944 F.2d 971 (2d Cir. 1991) .......................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) .................................................................................................. 1

*Bell v. S. Bay European Corp.*,
   486 F. Supp. 2d 257 (S.D.N.Y. 2007) .......................................................................... 4

*Berry v. Penguin Group, Inc.*,
   448 F. Supp. 2d 1202 (W.D. Wash. 2006) ................................................................... 6

*Bouchat v. Bon-Ton Dep't Stores, Inc.*,
   506 F.3d 315 (4th Cir. 2007) ...................................................................................... 12

*Caterpillar, Inc. v. Williams*,
   482 U.S. 386 (1987) ..................................................................................................... 6

*ConnectU LLC v. Zuckerberg*,
   482 F. Supp. 2d 3, 5-6 (D. Mass. 2007) ....................................................................... 6

*Dongxiao Yue v. Sun Microsystems, Inc. et al.*,
   Civ. No. 07-05850-MJJ ....................................................................................... 1, 2, 5

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*,
   209 F.3d 552 (6th Cir. 2000) ........................................................................................ 2

*Johnson v. Jones*,
   149 F.3d 494 (6th Cir. 1998) ...................................................................................... 11

*Jones v. Niagara Frontier Transp. Authority*,
   722 F.2d 20 (2d Cir. 1983) ....................................................................................... 3, 4

*Kourtis v. Cameron*,
   419 F.3d 989 (9th Cir. 2005) ...................................................................................... 13

*Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*,
   315 F. Supp. 2d 1053 (C.D. Cal. 2004) .................................................................... 5, 6

*MacNeil v. United States*,
   508 U.S. 106 (1993) ..................................................................................................... 2

*MAI, Sys. Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (1993) ..................................................................................................... 9

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ........................................................................................ 8

*Marvullo v. Gruner & Jahr*,
   105 F. Supp. 2d 225 (E.D.N.Y. 2000) ......................................................................... 7

*Mason v. Montgomery Data, Inc.*,
   967 F.2d 135 (5th Cir. 1992) ...................................................................................... 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO DEFENDANTS' RULE 12(b)(6)
AND 12(f) MOTIONS TO DISMISS AND TO       -ii-                    CASE NO. C-08-0019-MJJ
STRIKE

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Napster, Inc. Copyright Litig.*,
   191 F. Supp. 2d 1087 (N.D. Cal. 2002) ............................................................................. 6

*Parfums Givenchy v. C & C Beauty Sales*,
   832 F. Supp. 1378 (C.D. Cal. 1993).................................................................... 11, 12, 13

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   487 F.3d 701 (9th Cir. 2007) ........................................................................................ 5, 6

*Prather v. Neva Paperbacks, Inc.*,
   410 F.2d 698, (5th Cir. 1969)........................................................................................... 4

*Roth Greeting Cards v. United Card Co.*,
   429 F.2d 1106 (9th Cir. 1970) ...................................................................................... 5, 6

*Ryan v. Carl Corp.*,
   1998 U.S. Dist. LEXIS 9012, at *1 (N.D. Cal. 1998) ...................................................... 5

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir. 2005)............................................................................................ 3

*Softel, Inc. v. Dragon Med. & Sci. Communs.*,
   118 F.3d 955 (2d Cir. 1997) ......................................................................................... 8, 9

# INTRODUCTION

Dr. Yue's Opposition does not even attempt to dispute that Dr. Yue is the sole owner and employee of Netbula LLC ("Netbula"), and that he transferred Netbula's claims to himself to pursue the LLC's claims without representation by an attorney. As this Court recently explained in dismissing the related matter of *Dongxiao Yue v. Sun Microsystems, Inc. et al.*, Civ. No. 07-05850-MJJ (the "*STK II*" action), Dr. Yue cannot assign the rights of Netbula to himself in order to litigate *pro se*. The Opposition does not dispute either the judicially noticeable facts about Netbula's ownership and transfer, nor Defendants' cited legal authorities. Accordingly, *STK II* compels a similar result here: dismissal of the claims originally belonging to Netbula.

Dr. Yue's other attempt to manufacture standing for himself—invoking a submitted but unregistered copyright in his own name—is equally unsuccessful. Three months into this litigation, he still has no registration; there is no certainty that the Copyright Office will ever view his application as valid and grant a registration. Thus this situation is the exemplar of why the Copyright Act requires that a plaintiff produce a registration *before* filing any claim of copyright infringement. For Dr. Yue to be in this Court, the Court must have had jurisdiction at the time the action was filed, not merely have a hope for jurisdiction in the future.

As for Dr. Yue's claims against Mr. Springsteel and Mr. Witte, the pleadings speak for themselves and require dismissal. Dr. Yue recites the *Conley* standard of pleading, recently "retired" by the Supreme Court, which now requires that a plaintiff must plead more than just "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); Opening Brief at 19:12-17. In the Complaint, Dr. Yue incants boilerplate elements of infringement to form allegations against the Defendant Individuals. The Opposition in turn copies the same elements and conclusory facts from the Complaint. What has not changed is that the sparsely pleaded facts fail to support the claims of direct, contributory, or vicarious infringement against Mr. Springsteel and Mr. Witte, so dismissal of those claims is proper.

Finally, Dr. Yue effectively concedes the critical facts and statutory rules regarding attorney fees and statutory damages, so Defendants' motion to strike should be granted if the

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE        -1-        CASE NO. C-08-0019-MJJ

entire Complaint is not dismissed.

## DISCUSSION

**I.    DR. YUE LACKS STANDING TO ASSERT AS A *PRO SE* LITIGANT CLAIMS THAT BELONGED TO HIS COMPANY, AND TO ASSERT CLAIMS IN COPYRIGHTS UNREGISTERED AT THE COMMENCEMENT OF THIS ACTION.**

**A.    Dr. Yue's Resort to His *Pro Se* Status Is Misplaced.**

Dr. Yue's plea for leniency in construing his complaint based on his *pro se* status, *see* Opp. at 10:19-11:18, is flawed to the core. Dr. Yue, who is now pursuing the *fifth* claim brought in this district by himself or Netbula is not entitled to any leniency in this matter. As he well knows from *STK II,* he is not even entitled to bring this action in his own name. His *pro se* status was a *choice*, the direct objective of a collusive assignment between himself as an individual and himself as President and sole owner of Netbula. Compl., Exh. B. If given effect, the assignment would permit Dr. Yue (and Netbula) to circumvent the rule that companies cannot appear in federal court except through licensed counsel. The irony is palpable—having schemed to be able to bring claims *pro se*, he now seeks relief from the court based on his *pro se* status. Under the circumstances, the Court should disregard Dr. Yue's status. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552 (6th Cir. 2000) ("[A] willfully unrepresented plaintiff volitionally assumes the risks and accepts the hazards which accompany self-representation.") (citing *MacNeil v. United States*, 508 U.S. 106 (1993)). This is especially true given that Dr. Yue has engaged counsel for Netbula in his other cases, and that he purports to seek in excess of $20 million here. There is no indication of an inability to obtain counsel. Rather, Plaintiff just wants to pursue his claims as suits Dr. Yue, without the economic impact or ethical constraints that counsel would impose.

In any event, no amount of leniency can save this lawsuit. A *pro se* litigant was necessarily involved in every case that Defendants cited in support of their argument that Dr. Yue is not entitled to bring this lawsuit *pro se* for claims assigned to him by his company. *See generally* Motion to Dismiss at 9:28-12:20; Section I.B, *infra*. Nor is Dr. Yue's *pro se* status a substitute for subject-matter jurisdiction or for compliance with the statutory requirements for

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE        -2-        CASE NO. C-08-0019-MJJ

eligibility for attorneys' fees. *See* Sections I.C & III, *infra*. Finally, choosing to proceed *pro se* is not a substitute for having facts to support the senseless joinder of individuals unconnected to the alleged infringement. Section II, *infra*.

### B. None of the Cases Cited by Plaintiff Rebut the Well-Established Rule That a Company's Claims Can Be Brought Only Through Counsel.

The only copyright registration alleged in this action discloses that the copyrighted work was authored and owned by Netbula, not Dr. Yue, until shortly before this lawsuit was initiated. That copyright was then assigned along with accrued claims of to himself. As explained in Defendants' opening papers, courts have uniformly refused to credit such assignments where, as a result, a company's claims are brought by the *pro se* individual. Motion to Dismiss at 9:28-15:23.

Dr. Yue's Opposition offers no on-point authority to the contrary. It attempts to distinguish only one case cited by Defendants, *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20 (2d Cir. 1983), describing *Jones* as a case in which the plaintiff "assigned the corporation's lawsuit to himself." *See* Opp. at 15:20-25. That is true, and it was the basis of the Second Circuit's affirmance of dismissal of the complaint unless *the corporation* appeared through licensed counsel. *Jones*, 722 F.2d at 23. Dr. Yue attempts to distinguish this case by noting that he "sued for infringement of his personally owned properties that he always owned *and/or* acquired by assignment." Opp. at 15:23-25 (emphasis added). This argument attempts to elide two separate issues raised by Defendants: (1) that the Court lacks jurisdiction over Dr. Yue's "personally owned properties that he always owned," because a copyright registration for those alleged works has not issued, *see* Section I.C; and (2) that Dr. Yue is barred from bringing claims that belong to his company and were improperly and collusively assigned to him. *Jones* and its progeny support this second argument, and Dr. Yue has no substantive argument to the contrary.

Each of the remaining cases on which Dr. Yue relies discusses whether the *form* of the copyright assignment is sufficient to allow plaintiff-assignee to bring her claims. *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (cited in Opposition at 17:6-9,

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE     -3-     CASE NO. C-08-0019-MJJ

17:20-18:2; holding that bare assignment of an accrued cause of action is impermissible under the Copyright Act); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991) (cited in Opposition at 17:6-17; holding that assignment of ownership *and* accrued claims is necessary to bring action for past infringement); *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir. 1969) (cited in Opposition at 18:16-20; holding that assignment of copyright and accrued causes of action confers right to sue for past infringement, even where assignor retained some exclusive rights).

Plaintiff answers the wrong question. None of the cases Plaintiff cites discuss the issue presented here—whether the owner of a wholly-owned company may assign claims from the company to himself in order to bring the company's claims *pro se*. The answer to this question is no. There is no doubt in the abstract that "[t]here is no public policy against assignments" of copyright infringement claims. *See Prather*, 410 F.2d at 700. There is, however, a very strong policy, uniformly endorsed and applied across the country, that bars "*any* circumvention of the rule [against lay representation of a corporation's claims] by the procedural device of an assignment of the corporation's claims to the lay individual." *Bell v. S. Bay European Corp.*, 486 F. Supp. 2d 257, 259 (S.D.N.Y. 2007) (internal quotation marks omitted; emphasis added). This rule is categorical, has been followed in every case raising the issue (of which Defendants are aware), and knows no limitations on subject matter of the assigned claims. Certainly, the policy implications underlying the rule—to avoid the "unusual burdens" on the court and opposing parties occasioned by *pro se* litigants representing claims rightfully belonging to a company, *see Jones*, 722 F.2d at 22, are as present in this copyright case as in any other action.

Plaintiff's litigation history, recapped in Defendants' opening brief, shows exactly why public policy prohibits *pro se* representation of corporate claims. *See* Motion to Dismiss at 14:4-15:19. Since then, Plaintiff has yet again demonstrated his harassing and inappropriate tactics by filing a frivolous motion to disqualify Defendants' counsel, based on communications by Defendants' counsel with him in the related *STK I* case that (1) were initiated by Plaintiff; (2) at a time when he was purporting to act *pro se*; and (3) which always included Netbula's counsel as

well. *See* Docket No. 32.[1] Indeed, in dismissing Plaintiff's *pro se* action in the related *STK II* case with prejudice, Judge Jenkins characterized Plaintiff's tactics as "nearly vexatious." *STK II* Docket No. 11. There is, in short, every reason here to adhere to the rule that a company's claims can be brought only through licensed counsel.

### C. Plaintiff's Argument That a Copyright Application Is Sufficient to Confer Subject-Matter Jurisdiction Fails.

Dr. Yue argues that his pending copyright application is sufficient to create jurisdiction, but manages to ignore every case that Defendants cited as holding the opposite. Instead, he relies primarily on two cases, one of which arose under the 1909 Copyright Act and has been roundly distinguished on that basis, and the other of which actually supports *Defendants'* position.

Dr. Yue first cites (and emphatically quotes) *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106 (9th Cir. 1970). *See* Opp. at 19:7-11. *Roth*, however, was decided under the 1909 Act, "which contained fundamentally distinguishable language than the jurisdiction provision of the 1976 Copyright Act." *Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*, 315 F. Supp. 2d 1053, 1055 n.2 (C.D. Cal. 2004). For that reason, district courts in the Ninth Circuit have repeatedly found *Roth* not controlling and instead adopted the rule—based on the plain text of the statute— that actual registration or preregistration is required to bring a federal copyright action. *See id.* at 1054-57 & n.2 (distinguishing *Roth* and dismissing complaint based on copyright application); *Ryan v. Carl Corp.*, 1998 U.S. Dist. LEXIS 9012, at *1 (N.D. Cal. 1998) (same).

Dr. Yue also cites *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007). *See* Opp. at 19:11-15. This case is even less useful to Plaintiff than *Roth*. In *Perfect 10*, the Ninth Circuit addressed whether the district could enter an injuction over unregistered copyrights:

> [Defendant] argues that we lack jurisdiction over the preliminary injunction to the extent it enforces unregistered copyrights. *Registration is generally a jurisdictional requirement to a suit for copyright infringement* . . . . Once a court has jurisdiction over an action for copyright infringement, it may grant injunctive relief to restrain infringement of any copyright, whether registered or unregistered. *Because at least some of the [Plaintiff's] images were registered*, the district court did not err in determining that it could issue an order that covers unregistered works.

---

[1] Defendants will respond fully to this motion in their opposition, which will be filed according to the briefing schedule.

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE        -5-        CASE NO. C-08-0019-MJJ

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Id.* at 710 n.1 (emphases added; internal citations omitted). Though arguably dicta, this language from *Perfect 10* is the clearest signal yet that the Ninth Circuit would adopt the prevailing rule that *registration* is a jurisdictional prerequisite. The case goes on to hold that *once jurisdiction is established via registration*, a court is free to grant appropriate injunctive relief over even unregistered works. Here, however, Dr. Yue cannot establish jurisdiction in the first place.[2]

### D. Plaintiff's Request for Leave to Amend His Complaint to Allege a Copyright Registration Must Be Denied.

As a fallback, Dr. Yue seeks leave to amend his Complaint in order to "seek an expedited copyright registration." *See* Opp. at 20:1-3. However, because Dr. Yue cannot assert claims over the only registration that has issued (that is, Netbula's), the Court has no subject-matter jurisdiction over Dr. Yue's alleged unregistered copyright. *See* Section I.B, *supra*. In such circumstances, the Court is without jurisdiction to enter an order permitting amendment of a complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *ConnectU LLC v. Zuckerberg*, 482 F. Supp. 2d 3, 5-6 n.2 (D. Mass. 2007). The proper course is to dismiss the complaint and require a plaintiff to refile if and when a registration actually issues. *See, e.g.*, *Berry v. Penguin Group, Inc.*, 448 F. Supp. 2d 1202, 1202-03 (W.D. Wash. 2006) (dismissing action originally based on copyright application, even where plaintiff had pending motion for leave to amend his complaint to allege registration that had actually issued).[3]

///

///

---

[2] The third case cited by Plaintiff, *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087 (N.D. Cal. 2002), is in accord with *Perfect 10*. In *Napster*, the plaintiffs were able to establish jurisdiction through actual registrations and thus the court was able to grant appropriate relief over unregistered works. *Id.* at 1096, 1101. Plaintiff's reliance on one line in a Fenwick & West PowerPoint presentation as authority, while flattering, does not control the Court. That presentation itself says only that a copyright application is "generally" sufficient, without going into any analysis or particulars.

[3] Whether or not this seems to be an efficient result in a particular case, "the Court is not free to redraft statutes to make them more sensible and just." *Loree Rodkin*, 315 F. Supp. 2d at 1057 (internal quotation marks omitted). Furthermore, in this case, where Dr. Yue (1) is attempting to register computer software that is more than 11 years old, (2) must deposit copies of this old software in support of his application, and (3) none of Netbula's registrations (each signed by Dr. Yue) identified themselves as derivative of Dr. Yue's supposedly unpublished work, there is reason to wonder if and when any registration will issue. Defendants and the Court should not be proceeding through limbo while Dr. Yue's application proceeds.

REPLY ISO DEFENDANTS' RULE 12(b)(6)
AND 12(f) MOTIONS TO DISMISS AND TO          -6-                    CASE NO. C-08-0019-MJJ
STRIKE

## II. THE COPYRIGHT CLAIMS AGAINST DEREK P. WITTE AND STEVEN R. SPRINGSTEEL FAIL AS A MATTER OF LAW.

Despite Plaintiff's attempt to resuscitate the *Conley* pleading standard, the Complaint fails to state claims against Mr. Witte and Mr. Springsteel. In "retiring" *Conley*'s "no set of facts" standard, the Supreme Court decisively determined that this is no longer the "minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969 ("*Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough.") Misapplying *Conley*, Plaintiff erroneously argues that his claims should survive as long as there could be some set of facts, no matter how quixotic, which could entitle him to relief. Opp. at 11:21. To the contrary, merely incanting the legal elements without factual support is insufficient to plead a claim. *Twombly*, 127 S. Ct. at 1969. Nor does the Opposition attempt to distinguish any of the copyright infringement cases cited in Defendants' moving papers for the proposition that a plaintiff must "plead with specificity the acts by which a defendant has committed copyright infringement." *See, e.g.*, *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (E.D.N.Y. 2000). To the extent that Plaintiff does plead even a few facts about Mr. Witte and Mr. Springsteel, those facts do not logically or sufficiently tie these Individual Defendants to the alleged infringement.

### A. Dr. Yue Fails to State a Cause of Action Against Mr. Springsteel for Either Direct, Contributory, or Vicarious Copyright Infringement.

#### 1. Direct Infringement.

Plaintiff does not dispute, and therefore concedes, that there is no viable claim against Mr. Springsteel for direct infringement. *See* Opp. at 22:5-8.

#### 2. Contributory Infringement.

The Opposition repeats a conclusory allegation that Mr. Springsteel "knowingly and materially contributed, caused, induced, supported, facilitated, aided or abetted the infringement of Plaintiff's copyrights." Opp. at 21:15-17. But there are simply no facts pled to support these elements.

On the element of knowledge, even the Complaint itself describes the single

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE    -7-    CASE NO. C-08-0019-MJJ

communication to Mr. Springsteel, an October 1, 2007 letter, as "again *requesting the software usage information*." Compl. ¶ 27 (emphasis added). The Opposition now would spin that allegation into a conclusion that the letter notified Mr. Springsteel of *infringement*. As Plaintiff acknowledges, the Complaint does not include the details of the October 1, 2007 letter, *see* Opp. at 21:13-14, and for good reason. There is nothing in the letter suggesting that Chordiant infringed any copyright, or that Netbula was terminating the license Chordiant had long recognized, or that Chordiant should stop use. *See* Declaration of Derek P. Witte in Support of Reply Regarding Defendants' Motion to Dismiss ("Witte Reply Decl.") ¶ 2, Exh. A.[4]

Furthermore, Plaintiff's logic about corporate officers is exactly backward. *See* Opp. at 21:21-23. While a corporate officer is not automatically shielded from liability, it does not follow that an officer is automatically liable when the officer's company has purportedly committed a tort. Plaintiff's general (and unsupported) belief that "[t]he president of a company manages day-to-day operations," *see* Opp. at 21:18-19, is insufficient to establish that Mr. Springsteel "materially contributed to or induced that infringement. Contributory liability by an individual requires that the individual perform some act that contributes to infringement, not merely that he holds some status within the company. *See Softel, Inc. v. Dragon Med. & Sci. Communs.*, 118 F.3d 955, 971-72 (2d Cir. 1997) (affirming dismissal of infringement claims against defendant company's president and shareholder). No such act is alleged here.

### 3. Vicarious Infringement.

Likewise, Plaintiff's general (and unsupported) belief that senior officers in large corporations automatically have a "right and ability to supervise and control" all other employees is specious.[5] Plaintiff makes no specific factual allegation that Mr. Springsteel had any direct

---

[4] As more fully explained in Defendants' Request for Judicial Notice and Consideration Of Materials Incorporated by Reference, Docket No. 27, it is proper for the Court to take notice of the letter to the extent that the Complaint relies on it to state a claim against Defendants, and Defendants hereby request the Court to take such notice. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Plaintiff has not opposed the Court's consideration of the e-mails between himself and Chordiant in their entirety and also could not reasonably oppose consideration of the entire October 1, 2007 letter that he has made an issue in the Opposition and Complaint.

[5] Plaintiff's reliance on *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1022 (N.D. Cal. 2001) is misplaced. *Napster* involved whether an Internet *company* had right and ability to supervise its users, not whether a senior officer has right and ability to supervise miscellaneous employees.

REPLY ISO DEFENDANTS' RULE 12(b)(6)
AND 12(f) MOTIONS TO DISMISS AND TO         -8-         CASE NO. C-08-0019-MJJ
STRIKE

supervisory role over the people who allegedly made unauthorized copies of Plaintiff's software. Simply stating Mr. Springsteel's title is not enough to make a claim against him for vicarious infringement. *See Carell*, 104 F. Supp. 2d at 271; *GoSMS.com*, 2000 U.S. Dist. LEXIS 16156, at *17-18. Otherwise, any top corporate officer, be it Bill Gates or Steve Jobs, could automatically be liable for the actions of any lower employee, regardless of any knowledge of their acts. Plaintiff cites no authority imposing vicarious liability on individuals absent direct supervisorial responsibility.

Independently, Plaintiff's allegation that Mr. Springsteel owns stock and thus benefits when Chordiant does well is no proof of any direct financial benefit from the alleged copying of Plaintiff's software. All employees have a financial interest in the continued success of their company. Such a generalized community of interest is not nearly enough to plead a direct financial interest derived from the particular alleged infringement. *See Carell*, 104 F. Supp. 2d at 271; *Softel*, 118 F.3d at 971-72.

Accordingly, all claims against Mr. Springsteel must be dismissed for lack of any factual basis. Mere boilerplate cannot justify summoning the CEO of the Defendant company into Court.

### B. Plaintiff Fails to State a Cause of Action Against Mr. Witte for Either Direct, Contributory, or Vicarious Copyright Infringement.

#### 1. Direct Infringement.

The Opposition now asserts that Mr. Witte copied the software directly by looking at a license agreement file in the contents of the software CD provided by Netbula. Notably this allegation is nowhere in the Complaint. The pleading therefore fails to state a claim of direct infringement as to Mr. Witte.

Regardless, even if the allegation were in the Complaint, Mr. Witte's act of opening and reviewing a license file on a CD does not constitute infringement of the Netbula code in other files that might reside on the CD. *Compare MAI, Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (1993) (finding that a user's *loading* of copyrighted software into RAM creates a "copy" of that software). There is no allegation that Mr. Witte used or loaded Netbula's software. Nor is there any copyright registration for the license file; it is only the software that is registered. Thus

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE     -9-     CASE NO. C-08-0019-MJJ

there is no viable claim against Mr. Witte for direct infringement.

### 2.   Contributory Infringement.

As to contributory infringement's element of knowledge, Plaintiff's allegations that Mr. Witte knew of the infringing activities all center around the e-mails attached to Mr. Witte's Declaration in Support of Defendants' Motion to Dismiss. Those e-mails speak for themselves. While Dr. Yue certainly inquired about license usage, it is a non sequitur to claim that Mr. Witte "knew Yue was inquiring about potential copyright violations." Opp. at 20:21-22.  It is undisputed that Plaintiff never suggested that Chordiant Software, Inc. lacked a valid license until the day he filed this lawsuit. As his own e-mails demonstrate, Plaintiff's own position was that a usage inquiry is totally consistent with, indeed contemplated by, Netbula's licenses. *See, e.g.*, Witte Decl., Exh. 2 (Dr. Yue's September 25, 2007 e-mail asserting he was asking for information standard for audits of his licensees).  In fact, the first mention of infringement in the communications between Dr. Yue and Mr. Witte was Dr. Yue's e-mail on December 21, 2007, after Chordiant explained it had decided to stop using Netbula's software. *See id.* Thus there are no facts to support the idea that Mr. Witte knew of the alleged infringement while it was happening.[6]

As for the element of material contribution, Plaintiff's only allegations are that Mr. Witte's communications concealed Chordiant's purported infringement and delayed filing of this action. Yet again, the e-mails speak for themselves. Witte Decl., Exh. 2. From September to December 21, 2007, Plaintiff had never even mentioned infringement. Thus there is no basis for Dr. Yue's conclusory allegation that Mr. Witte supported, encouraged and guided CSI's continuing infringement, while evading Plaintiff's inquiries on software usage." Compl. at ¶ 39.

Moreover, it is not even clear what direct infringement Plaintiff claims Mr. Witte allegedly contributed to with knowledge it was occurring. The work on Vista had been completed months before Mr. Witte was involved.  The allegation that Chordiant had no license came only

---

[6] The Opposition—not the Complaint—makes the unsupported general assertion that vice presidents or general counsel are "closely involved in CSI's operations," and thus Mr. Witte purportedly knew of the infringement. Opp. at 21:1. But there are no facts about what *this* particular vice president and general counsel did or knew.

REPLY ISO DEFENDANTS' RULE 12(b)(6)
AND 12(f) MOTIONS TO DISMISS AND TO STRIKE     -10-      CASE NO. C-08-0019-MJJ

the day the suit was filed. There is nothing explaining what Mr. Witte did that enabled any infringing act. Even assuming that Plaintiff "delayed" his lawsuit while waiting for the license usage report that Mr. Witte ultimately provided, there are no allegations identifying any wrongdoing to which Mr. Witte contributed in that time. Certainly the distribution of Marketing Director was occurring regardless of Mr. Witte's communications with Plaintiff, so in no way could those communications be seen as a material contribution.

If the law allowed Dr. Yue to state a claim against Mr. Witte based on merely communicating about license usage, any copyright plaintiff could sue any officer for contributory infringement just by sending that person a letter asking for a usage report and claiming that distribution continued thereafter. This would turn copyright law into a game of "gotcha" that no court has ever endorsed.

### 3. Vicarious Infringement.

Plaintiff does not dispute, and therefore concedes, that there is no viable claim against Mr. Witte for vicarious infringement.

### III. THE COURT SHOULD STRIKE PLAINTIFF'S PRAYER FOR ATTORNEYS' FEES AND STATUTORY DAMAGES.

Plaintiff concedes the essential points raised in Defendants' motion to strike his prayer for attorneys' fees and statutory damages: (1) the only copyright registration alleged in the Complaint was not registered until 2006, more than two years *after* the date of first publication in 2004; and (2) the alleged infringement began in 2004, two years *before* the registration issued. *See* Motion to Dismiss at 24:17-24; Opp. at 22:19-23:6. Plaintiff is therefore not entitled to either attorneys' fees or statutory damages. This is true even where there are continuing or subsequent infringements of the same work after the registration. *Parfums Givenchy v. C & C Beauty Sales*, 832 F. Supp. 1378, 1393-94 (C.D. Cal. 1993); *see also Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998) ("Every court to consider this question has come to the same conclusion."). Accordingly, Defendants renew their request that Plaintiff's claim for statutory damages and attorneys' fees be stricken from the Complaint.

Plaintiff attempts to distinguish his case from those cited in Defendants' brief in two

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE     -11-     CASE NO. C-08-0019-MJJ

1  ways, both unavailing:  First, he argues that the Court cannot determine when *each individual*
2  *defendant* allegedly began his infringing act.  He does not dispute that Defendant Chordiant began
3  its use in 2004, but claims that "[i]t is entirely possible that Mr. Wilson, or one of his colleagues
4  (a DOE defendant), or a CSI customer started infringing PowerRPC after the 2K4 Copyright was
5  registered."  Opp. at 22:19-24; *see also* Compl. ¶¶ 19-21.  However, it does not matter whether
6  Mr. Wilson (a CSI employee) or other unnamed employees or customers may have played a part
7  in the continuing infringement after the copyright was registered.  The rule proposed by Dr. Yue
8  would eviscerate Section 412 by permitting a plaintiff to recapture his right to attorneys' fees and
9  statutory damages every time a new employee of a defendant company assists in the preparation
10  of an allegedly infringing work, or every time the company distributes a copy of that work to a
11  customer.  Sensibly, that is not the law.  *See, e.g.*, *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506
12  F.3d 315, 330-31 (4th Cir. 2007) (entitlement to statutory damages under Section 412 determined
13  from "the earliest date of infringement by *any* participant in a line of related copyright
14  infringement") (emphasis in original).[7]

15  Second, Plaintiff argues that "CSI may have created newer versions" of its allegedly
16  infringing Marketing Director software after the registration date.  *See* Opp. at 23:5-6.  But
17  regardless of whether "newer versions" of Marketing Director were developed after Plaintiff
18  registered his work on December 15, 2006 (the Complaint makes no such allegation), the only
19  question is whether Defendants allegedly infringed *the same copyrighted work* in subsequent

---

[7] The policy considerations underlying Section 412 are fully implicated in this case.  As explained in *Parfums Givenchy*, the legislative history

> makes clear that because registration would no longer be compulsory under the 1976 Copyright Act, Congress sought to induce [registration] by denying the extraordinary remedies of statutory damages and attorney's fees where copyright owners fail to register their work in a timely manner.  Allowing such remedies where an infringing act occurs before registration and recurs after registration would defeat this purpose.

832 F. Supp. at 1393-95 (internal quotation marks omitted).  Here Netbula failed to register the copyright in this case until December 2006, at which point it (and Plaintiff) had already begun their campaign of suing Netbula's licensees.  *See* Opening Brief at 7:22-8:15 (describing Netbula's litigation history).  It is evident that Netbula's (and Plaintiff's) purpose of registering this copyright and others registered in Netbula's name was to attempt to secure a federal forum, not to fulfill Congress's purposes.

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE    -12-    CASE NO. C-08-0019-MJJ

"infringements." *See Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143-44 (5th Cir. 1992); *Parfums Givenchy*, 832 F. Supp. at 1393-95. Here, there is no question that Defendants allegedly infringed only one work—Netbula's PowerRPC software that Chordiant received under license in 2004. *See* Compl. ¶¶ 2, 19-20 & Ex. A.

The lone case cited by Plaintiff in support of his opposition to the motion to strike, *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005), is inapposite and, if anything, supports Defendants' position. *Kourtis* does not discuss or even mention Section 412 or plaintiffs' entitlement to attorneys' fees under the Copyright Act. Rather, the Ninth Circuit explained that defendants' distribution of a DVD version of an allegedly infringing movie constitutes *a continuing infringement* of plaintiffs' copyrighted screenplay sufficient to get around *a statute of limitations defense*. *See id.* at 999-1000. As such, *Kourtis* reaffirms that a "newer version" of a product that infringes the same work is simply a continuing infringement of the same work.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss without leave to amend Plaintiff's claims for copyright infringement. In the alternative, Defendants request that the Court strike the allegations in paragraph 2 relating to (i) the registered but impermissibly assigned copyright of Netbula, and (ii) the unregistered copyright of Dr. Yue. Defendants Derek P. Witte and Steven R. Springsteel respectfully request that the Court dismiss without leave to amend all claims asserted against them. Finally, Defendants respectfully request that the Court strike Plaintiff's prayers for statutory damages and attorneys' fees.

Dated: March 17, 2008                    FENWICK & WEST LLP

                                         By: /S/ LAURENCE F. PULGRAM
                                             Laurence F. Pulgram

                                         Attorneys for Defendants
                                         CHORDIANT SOFTWARE, INC.,
                                         DEREK P. WITTE, STEVEN R. SPRINGSTEEL,
                                         and specially appearing for OLIVER WILSON

26257/00401/LIT/1281311.3

REPLY ISO DEFENDANTS' RULE 12(b)(6) AND 12(f) MOTIONS TO DISMISS AND TO STRIKE               -13-                    CASE NO. C-08-0019-MJJ