DONGXIAO YUE
2777 ALVARADO ST., SUITE C
SAN LEANDRO, CA 94577
Telephone:    (510) 396-0012
Facsimile:    (510) 291-2237
E-Mail:    ydx@netbula.com

*Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONGXIAO YUE,<br><br>        Plaintiff,<br><br>v.<br><br>Chordiant Software, Inc., et al.,<br><br>        Defendants. | Case No. C08-0019-MJJ<br><br>**PLAINTIFF'S MOTION FOR DISQUALIFICATION OF ASSIGNED JUDGE**<br><br>**[Civ. L.R. 3-15, 28 U.S.C. § 144, § 455]** |

-1-

1

**TABLE OF CONTENTS**

2

FACTS ................................................................................................................................. 4

3

4

LEGAL STANDARD ........................................................................................................ 14

5

    1.    PROCEDURE FOR RECUSAL UNDER 28 U.S.C. § 455 ............................................. 14

6

    2.    PROCEDURE FOR RECUSAL UNDER 28 U.S.C. § 144 ............................................. 15

7

    3.    SUBSTANTIVE STANDARDS FOR RECUSAL .......................................................... 15

8

9

ARGUMENT ..................................................................................................................... 16

10

    1.    EXTRA-JUDICIAL SOURCES AND LEVEL OF ANTAGONISM ..................................... 16

11

    2.    THE FAVORITISM TOWARDS OPPOSING COUNSEL .............................................. 18

12

    3.    JUDGE JENKINS HAS AN INTEREST IN THE OUTCOME OF THE INSTANT CASE ......... 18

13

    4.    JUDGE JENKINS HAS AN INTEREST IN RULING AGAINST YUE ON HIS COPYRIGHTS ................. 19

14

    5.    TIMELINESS OF THE INSTANT MOTION ............................................................... 19

15

16

CONCLUSION .................................................................................................................. 19

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C08-0019-MJJ                                   **28 U.S.C. § 144 MOTION TO DISQUALIFY**

1

## TABLE OF AUTHORITIES

2

### Cases

3  *Davis v. Board of Sch. Comm'rs of Mobile County,*
       517 F.2d 1044, 1051 (5th Cir. 1975) ...................................................................... 15
4

5  *Iannaccone v. Law,*
       142 F.3d 553 (2d Cir. 1998) ................................................................................ 17

6  *Liteky v. United States,*
       510 U.S. 540, 554 (1994) .................................................................................... 15
7

8  *Preston v. United States,*
       923 F.2d 731, 734 (9th Cir. 1991) ....................................................................... 15

9  *United States v. Balistrieri,*
       779 F.2d 1191, 1199 (7th Cir. 1985) .................................................................. 16
10

11  *United States v. Studley,*
       783 F.2d 934, 939 (9th Cir. 1986) ....................................................................... 15

12  *Yagman v. Republic Ins.,*
       987 F.2d 622, 626 (9th Cir. 1993) ....................................................................... 15
13

### Statutes

14
28 U.S.C. § 144 ............................................................................................ 1, 4, 15
15

28 U.S.C. § 455 .................................................................................................. 4
16

Civ. L.R. 3-15 ................................................................................................ 1, 4
17

18

19

20

21

22

23

24

25

26

27                                            -3-

Case No. C08-0019-MJJ                     28 U.S.C. § 144 MOTION TO DISQUALIFY

28

1 Pursuant to 28 U.S.C. § 144, 28 U.S.C. § 455 and Civ. L.R. 3-15, Plaintiff Dongxiao Yue("Yue"

2 or "Plaintiff") requests that the presiding Judge of the case, Hon. Martin J. Jenkins, recuse himself

3 from the instant *Yue v. Chordiant Software, Inc.* case (C08-0019-MJJ, the "*Yue v. CSI* case") and

4 the *Yue v. Storage Technology Corporation* (C07-05850-MJJ, the "*Yue v SUN* case"), because of

5 the bias, prejudice and retaliation against Plaintiff. This Motion is supported by the March 18,

6 2008 Declaration of Dongxiao Yue ("Yue Decl.'), filed concurrently. The motion and declaration

7 is being filed on both the C07-05850-MJJ docket and C08-0019-MJJ docket.

8

9 Pursuant to Civil Local Rule 3-15, Plaintiff's requests that the Clerk refer this motion to a

10 randomly assigned judge for determination.

11 **FACTS**

12 The following facts are taken from the Declaration of Dongxiao Yue.

13

14 In June 2007, Yue wrote a blog article which criticized an order of a Magistrate Judge. On

15 August 28, 2007, immediately after talking to a magistrate judge, Netbula's former counsel told

16 Yue the stuff he wrote blew his case. She specifically told Yue what the magistrate judge told her:

17 Yue's blog article had offended Judge Jenkins. Netbula's former counsel also told Yue that she

18 got a hint that an adverse ruling against Netbula had already been in place. Yue Decl., at ¶ 3.

19 On August 31, 2007, Judge Jenkins signed an order that dismissed Netbula's copyright,

20 contract and fraud claims against Symantec defendants in the *Netbula v. Symantec* case. In his

21 order, Judge Jenkins ignored key evidence. Such omitted evidence included BindView's

22 disclosure letter to Symantec, which stated that BindView did not pay licenses fees and owed

23 Netbula license fees. Yue later filed a motion seeking to unseal part of this disclosure letter in the

24 name of "public interest." Yue Decl., at ¶ 4.

25

26

27 -4-

28 Case No. C08-0019-MJJ                    28 U.S.C. § 144 MOTION TO DISQUALIFY

On October 22, 2007, pursuant to FRCP 24(a) and the Copyright Act, acting *pro se*, Yue filed a motion to intervene and for copyright injunction in the *Netbula v. SUN* (C06-07391) case, alleging irreparable harm from defendants' ongoing infringement of the copyrights Yue personally owned, based on newly discovered evidence.

On October 23, 2007, SUN defendants filed a motion for summary judgment. However, their motion was based on a fabricated or phantom declaration – they had not been able to locate the declarant – Michael Melnick -- to review his declaration.

During this time, Defense counsel Laurence Pulgram sent numerous emails directly to Yue, discussing the substantive issues in the *Netbula v. SUN* (C06-07391-MJJ) case. In an October 25, 2007 email to Yue, Mr. Pulgram talked about Netbula's former counsel's motion to withdraw from the C06-07391-MJJ case, Netbula's motion to substitute party, Netbula's TRO and SUN's motion for summary judgment. In subsequent emails, Mr. Pulgram talked about issues such as Michael Melnick's declaration and Netbula's intended use of certain evidence, etc. Netbula's former counsel told Yue that defense counsel's direct communication to Yue on the *Netbula v. SUN* matter constituted willful violation of attorney ethics. Yue Decl., at ¶ 7.

Since Mr. Pulgram was freely communicating to Yue on the Netbula matter, on October 26, 2007, Yue sent the following email to Mr. Pulgram:

> Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,
> I am writing to seek a stipulation regarding Netbula's substitution of party as to the copyright claim filed in the Nebula v. StorageTek case. As the copyright owner of the relevant software and related claims, I am about to assert additional claims against StorageTek. This can be done via an amended complaint in the C06-07391-MJJ case, or I can file a new separate infringement action and move to relate/consolidate the new action to the current action.

-5-

Case No. C08-0019-MJJ                                    28 U.S.C. § 144 **MOTION TO DISQUALIFY**

1

2

> For judicial economy, I think it's far efficient for you to stipulate to the substitution of party by replacing Dongxiao Yue as the copyright plaintiff in the C06-07391-MJJ case.

3

4

> If you do not stipulate to the substitution, I will commence the new action next week.

5

6

Mr. Pulgram responded to the above email as follows.

7

8

> Mr. Yue,
> I will confer with my client and respond to you next week.
> Laurence Pulgram

9

10

Both Netbula and Yue fully informed Judge Jenkins about Yue's intention to file a

11

separate action the *Netbula v. SUN* complaint in court filings. See Document No. 91, p.4:10-18

12

(filed on October 30, 2007); Document No. 98, p.3:11-19 and Document No. 99, pp.4:23-5-18

13

(filed on November 5, 2007) of the *Netbula v. SUN* case. Yue also filed with the Court the emails

14

communications between Mr. Pulgram and Yue. Yue Decl., at ¶ 9.

15

16

Originally, Yue promised to Mr. Pulgram that he would file his action against

17

SUN/StorageTek in the first week of November 2007. Because of Mr. Pulgram's email about the

18

possibility of reaching a stipulation on the issue of additional claims and his legal advice, Yue

19

delayed the filing of Yue case against SUN/StorageTek.

20

21

On November 19, 2007, as Yue previously informed SUN/StorageTek and Judge Jenkins,

22

Yue filed a separate case against SUN, alleging 10 counts of infringement of three copyrights he

23

personally owned. The *Yue v. SUN* (Case No. C07-05850) case was assigned to another judge.

24

On October 26, 2007, SUN filed two "administrative" motions. One sought to vacate the

25

hearing of Yue's motion to intervene pursuant to FRCP 24(a) and for copyright injunction. The

26

27

-6-

28

Case No. C08-0019-MJJ                                    28 U.S.C. § 144 MOTION TO DISQUALIFY

1  other asked Judge Jenkins to consider the "fabricated" declaration. Yue filed oppositions to both

2  motions and asked the Court to disqualify Pulgram for his unprofessional conduct.

3      On October 31, 2007, Judge Jenkins held a telephonic hearing on defendants' "administrative

4  motions". Yue was not given any notice about this hearing and was not allowed to participate.

5  Following the hearing, on November 2, 2007, Judge Jenkins signed an order which stated the

6

7  following:

8      Defendants' Motion for Administrative Relief to Vacate Hearing on Non-
        Party Dongxiao Yue's Request for Injunctive Relief and Impoundment
9      [Docket Nos. 80-81] is hereby GRANTED. The Motion of Dongxiao Yue
        to Intervene and Join as Plaintiff; for Injunctive Relief; and for Copyright
10     Impoundment [Docket Nos. 68-72] will be taken off calendar.

11

12     Yue then mailed a request for a tape recording of the telephonic hearing and was told by the

13  clerk of the court that no court reporter was present and no audio recording was made.

14     On November 20, 2007, Netbula's former counsel and Yue went to the court for the hearings

15  scheduled that day. At the very beginning of the hearing, Judge Jenkins asked Yue: "Are you Mr.

16  Yue?" Yue said "Yes". Then Judge Jenkins told Yue that he "should cease and desist" from filing

17  papers before the court. Judge Jenkins further stated that even if Yue became a party in the

18  *Netbula v. SUN* case, "it still would not give [Yue] authority to do so, to file pleadings in the

19

20  matter." The following was the exchange afterwards (verbatim from the hearing transcript).

21

22     MR. YUE: WHAT'S THE COURT'S LEGAL RATIONALE FOR
        THAT?

23
        THE COURT: THAT IS THE RATIONALE, AND THAT'S THE
24     STATEMENT.

25     MR. YUE: FOLLOWING RULES OF CIVIL PROCEDURE –

26

27                                     -7-

28  Case No. C08-0019-MJJ                    28 U.S.C. § 144 MOTION TO DISQUALIFY

1    THE COURT: MR. YUE, I AM GOING TO HAVE YOU TAKEN OUT
     IF YOU DON'T BE QUIET.
2

3    Yue Decl., at ¶¶ 3-15.

4
     Also at the November 20, 2007 hearing, Judge Jenkins coached SUN's lawyer to attack Yue's
5
     ownership of the assigned copyrights. The following is from the transcript:
6

7
     THE COURT: BUT YOU DON'T ARGUE THAT THE ASSIGNMENT
8    IS NOT VALID, RIGHT?

9    MR. PULGRAM: EXCUSE ME?

10   THE COURT: YOU DON'T ARGUE THE ASSIGNMENT IS NOT
     VALID?
11

12   MR. PULGRAM: THERE IS SOME LAW TO THAT EFFECT, YOUR
     HONOR.
13
     THE COURT: BUT IT'S NOT BEFORE ME. I HAVEN'T SEEN THAT
14   IN YOUR PAPERS.

15   …
     THE COURT: THAT'S WHAT I AM SUGGESTING TO YOU. SO TO
16   DENY THE MOTION MEANS THAT HE'S NOT SUBSTITUTED IN
     AS A PARTY?
17

18   Judge Jenkins denied Netbula's request to substitute or join as a copyright plaintiff in the

19   Netbula v. SUN case, thus prevented Yue from protecting his copyrights in that case.

20   At the hearing of SUN's motion to intervene and modify BindView protective order, Judge
21
     Jenkins forbade Yue to argue about his opposition, and refused to hear my motions. The following
22
     is the exchange at the end of the hearing:
23

24   MR. YUE: YOUR HONOR, MAY I, FOR THE RECORD? AM I
     UNDERSTANDING CORRECTLY THAT MY MOTION TO
25   INTERVENE AND –

26   THE COURT: NOT ON TODAY.

27                                    -8-

1

2    MR. YUE: -- HOLDING COUNSEL IN CONTEMPT --

3    THE COURT: LET ME SUGGEST, IT'S NOT ON TODAY BECAUSE
     YOU CAN'T MAKE SUCH A MOTION YET. SO IT'S NOT ON
4    TODAY.

5    MR. YUE: I WAS MOVING AS A THIRD PARTY, JUST AS SUN
     DEFENSE COUNSEL.
6

7    THE COURT: RIGHT.

8    MR. YUE: BUT I WAS A PRO SE.

9    THE COURT: IT WASN'T ON TODAY.

10
     MR. YUE: WAS THE REASON VACATING MY MOTION
11   BECAUSE I AM A PRO SE LITIGANT?

12   THE COURT: NO, IT JUST WASN'T -- IT DIDN'T HIT MY
     CALENDAR TODAY. THAT'S IT.
13

14

15       Also on November 20, 2007, Judge Jenkins and SUN made it clear that the *Netbula v. SUN*

16   case **only** deals with **one** copyright that was alleged in the complaint (quoting transcript):

17       THE COURT: IS THIS THE ONLY COPYRIGHT AT ISSUE --

18       MR. PULGRAM: YES.
19

20       Thus, the intellectual properties in the *Yue v. SUN* case were never part of the *Netbula v. SUN*

21   case. In fact, they were explicitly precluded from the *Netbula v. SUN* case.

22       On December 14, 2007, the hearing SUN's motion for summary judgment in the *Netbula v.*

23   *SUN* case was held before Judge Jenkins. At the end of the hearing, SUN's attorney made an oral

24   request to delay answering Yue's lawsuit in the *Yue v. SUN* case, which was presided over by a

25   different judge. Judge Jenkins immediately granted SUN's motion and asked the parties to

26

27                                        -9-

28   Case No. C08-0019-MJJ                          28 U.S.C. § 144 **MOTION TO DISQUALIFY**

1  stipulate to a new date. When Yue, the *pro se* plaintiff in that case, attempted to raise objections,

2  Judge Jenkins forbade Yue to speak. Later, when Judge Jenkins came back into the court and

3  learnt that Yue refused to stipulate to a change of date, he said that he would just order that SUN's

4  motion to be granted.

5

6  In November 2007, Yue filed a complaint against Judge Jenkins at the Ninth Circuit,

7  alleging, *inter alia*, that Judge Jenkins retaliated against Yue due to the blog article Yue wrote and

8  persisted in his retaliation. Yue's complaint described in detail the events surrounding the blog and

9  how I came to know that there was retaliation. Yue complained about Judge Jenkins's failure to

10  recuse himself from the *Netbula v. SUN* case. Yue also complained about the not-to-file order.

11  Yue further complained that Judge Jenkins ignored Mr. Laurence Pulgram's unethical conduct.

12

13  Copies of Yue's complaint against Judge Jenkins were promptly sent to Judge Jenkins and

14  Judge Walker.

15  In the exhibits to his complaint, Yue attached a letter to then Chief Circuit Judge

16  Schroeder. In that letter, Yue indicated that, the person who was responsible for Netbula's loss of

17  uncollected license revenue in the *Netbula v. Symantec* case should be held liable. Yue Decl., at ¶¶

18  23-24.

19

20  On December 17, 2007, Yue sent a letter to Judge Jenkins, stating that the circumstances and

21  apparent bias and require that Judge Jenkins disqualify himself from the cases Yue is a party.

22  On February 8, 2008, Judge Jenkins entered an Order denying request for disqualification.

23  This Order stated the following in the "FACTUAL BACKGROUND" portion:

24

25  > The Court set a dispositive motions deadline in the 2006 case of
   > November 27, 2007. Accordingly, in October 2007 Defendants filed a

26  > motion for summary judgment to be heard on that day. Around the same

27  -10-

28

1    time, the parties filed a flurry of documents with the Court. As is relevant
2    here, Plaintiff sought an order substituting Yue for Plaintiff Netbula,
     Plaintiff's counsel sought to withdraw as counsel of record and Yue filed
3    his own motion and briefing regarding various matters.

4    In an October 31, 2007 telephonic conference in which Plaintiff was
     represented by counsel, the Court, inter alia, rescheduled the Motion for
5    Summary Judgment hearing to December 13, 2007, vacated the hearing
     noticed by non-party Yue, left Plaintiff's motion to substitute parties on
6    calendar for November 20, 2007 and continued Plaintiff's counsel's
7    motion to withdraw as counsel until after the Court's resolution of the
     summary judgment motion. Defendants prepared an order reflecting the
8    Court's rulings and the Court signed the order.

9    On November 20, 2007, the Court held a hearing on Plaintiff's motion to
     substitute parties. The Court denied the motion on the record and, when
10   Yue attempted to intervene in the proceedings, reminded Yue that he was
11   not yet a party to the action and could not file documents, calendar
     hearings or speak in court without leave of the Court.
12
     Unbeknownst to the Court, one day prior, Yue, proceeding *pro se*, filed a
13   separate action (the "2007 case") against StorageTek and Sun. In the
     2007 case Plaintiff alleges ten claims of copyright infringement. (See
14   Amended Complaint, Docket No. 9.) The 2007 case was originally
     assigned to Judge Illston who, on December 3, 2007, issued an Order of
15   Referral for the Court to determine if the 2006 and 2007 cases were
16   related.

17   In the ANALYSIS portion of the February 8, 2008 order, Judge Jenkins stated:

18   Yue alleges that his postings on an internet blog were known by the
19   Court and influenced the Court's ultimate rulings on this matter. Yue's
     allegations consist solely of conclusions and are not sufficiently definite
20   and particular to convince a reasonable person that bias exists. See Sykes,
     7 F.3d at 1338. There is also no factual support for this assertion in the
21   record or in the Court's own experience.
22   ...
     During the November 20, 2007 hearing, the Court instructed Yue that he
23   could not file motions, notice hearing dates, or speak in court unless he
     had leave of court or until he was given permission to represent himself.
24   During the December 14, 2007 hearing, the Court again admonished Yue
     for attempting to speak without leave of Court. Insofar as Yue's rights as
25   a Plaintiff in the 2007 case were concerned, the Court granted Yue leave
     to participate appropriately.
26

27                                      -11-

1

2    In the November 20, 2007 hearing, Netbula's attorney, Vonnah M. Brillet, had the following

3    exchange with Judge Jenkins (quoting from transcript):

4        MS. BRILLET: YOUR HONOR, MR. YUE IS NOT TRYING TO
         ASSERT THE RIGHTS OF NETBULA.
5

6        THE COURT: I RECOGNIZE THAT.

7    At the December 14, 2007 hearing of the *Netbula v. SUN* case, Judge Jenkins stated the

8    following about the *Yue v. SUN* case (p.65:3-7 of the transcript):

9
         Now, there is a related case, and it does strike me that it is related.
10       And this may be -- it's not completely overlapping with the present
         claim.
11

12   On January 18, 2008, in the *Netbula v. SUN* case, Judge Jenkins granted SUN's motion for

13   summary judgment on the copyright claim. In his order, Judge Jenkins ignored crucial facts,

14   including but not limited to SUN defendants' admissions that they exceeded the license and the

15   license agreement would be terminated upon SUN's acquisition of StorageTek.
16

17   On January 29, 2008, SUN filed a motion to dismiss the *Yue v. SUN* case on the ground that

18   that case is duplicative of the *Netbula v. SUN* case.  On March 4, 2008, Judge Jenkins dismissed

19   the *Yue v. SUN* case and entered final judgment against Yue without a hearing. The final judgment

20   was entered before the all the defendants were served. Against his previous statement that the *Yue*

21   *v. SUN* case "is not completely overlapping" with the *Netbula v. SUN* claim, Judge Jenkins simply

22   repeated defense counsel Mr. Pulgram's argument that the *Yue v. SUN* case is duplicative of the

23   *Netbula v. SUN* case, even though Yue had been precluded from participating in the *Netbula v.*

24   *SUN* case to protect his personal rights. In the dismissal order, Judge Jenkins states:
25

26

27                                              -12-

28   Case No. C08-0019-MJJ                              **28 U.S.C. § 144 MOTION TO DISQUALIFY**

Yue-Sun presents the same claims as Netbula-Sun and is effectively Plaintiff's attempt to re-litigate issues that have already been presented, and determined, by the Court. In addition, given the tactics that Plaintiff has pursued, which have ranged from duplicative to nearly vexatious, the Court finds that dismissing the action with prejudice is appropriate.

On March 17, 2008, Yue sent the following email to defense counsel:

I received your letter in the mail, and have the following comments.

1) Your Communications to me about the Netbula v. SUN case

The substantive discussions about the Netbula v. SUN case (C06-07391-MJJ) initiated by Mr. Pulgram are well documented.  Mr. Pulgram discussed with me about Mr. Brillet's motion to withdraw, StorageTek's motion for summary judgment, Netbula's use of certain evidence in the litigation, Netbula's motion to substitute party, Michael Melnick's declaration, etc etc. These communications concern the specific issues in the Netbula v. SUN matter, where Netbula was represented by Ms. Brillet at the time.

After Mr. Pulgram already sent me those email communications, I was told by Netbula's then counsel that Mr. Pulgram willfully engaged in direct communication with a represented party, a serious ethical violation (my mentioning of communication from Netbula's counsel is limited and does not waive any privileges, including but not limited to work-product). However, relying on Mr. Pulgram's communications, I believed that Mr. Pulgram would eventually agree to my full participation in the Netbula v. SUN case to assert my copyrights. Because of that, I delayed the filing of the Yue v. SUN case. Originally, I promised to file the Yue v. SUN lawsuit in the first week of November 2007, but because of Mr. Pulgram's communications (including his legal advice), I filed the Yue v. SUN case on November 19, 2007.

2) Communications to me about my pro se activities

The Court recognized in the November 20, 2007 hearing that I wasn't asserting the rights of Netbula.

MS. BRILLET: YOUR HONOR, MR. YUE IS NOT TRYING TO ASSERT THE RIGHTS OF NETBULA.

THE COURT: I RECOGNIZE THAT.

-13-

My pro se actions were about my personally owned copyrights, which were not part of the Netbula v. SUN case, as evidenced by the following exchange at the November 20, 2007 hearing.

THE COURT: IS THIS THE ONLY COPYRIGHT AT ISSUE –

MR. PULGRAM: YES.

However, Mr. Pulgram then took the position that I and my personally owned copyrights were fully represented by Ms. Brillet in the Netbula v. SUN case. In his words, Netbula and I are privies on all matters. Of course, I will dispute that because I was precluded from the Netbula v. SUN case. But at least from Mr. Pulgram view, Netbula and I are the same, therefore, even in the pro se matters, Mr. Pulgram stated that my interest was represented by Ms. Brillet in the Netbula v. SUN matter.

In addition, ABA rules state that a lawyer should not offer legal advice to an unrepresented party. It makes sense, because you are my opponents' attorney, not my attorney.

3) Fenwick & West, LLP's role in the Netbula v. Distinct trademark lawsuit

In the Netbula v. Distinct case, Netbula accused Distinct of trademark infringement. One of the allegations was that Distinct embedded the JavaRPC name in Distinct's web pages. An attorney at Fenwick & West acted as an early neutral evaluator in that case. Netbula submitted confidential settlement documents to that Fenwick attorney. I also recall talking to that Fenwick attorney about JavaRPC, in confidence. Now, on behalf of SUN, you counter-claimed against me for trademark infringement on the ground that I used the JavaRPC name. I think Fenwick should disqualify itself from the trademark case because it has previously received confidential information on related matters.

**LEGAL STANDARD**

**1.  Procedure for Recusal Under 28 U.S.C. § 455**

The commentary of Civil Local Rule 3-15 states the following:

Recusal under 28 U.S.C. § 455 is normally undertaken by a Judge *sua sponte*. However, counsel may bring the issue to a Judge's attention by formal motion or raise it informally at a Case Management Conference

-14-

**or by a letter to the Judge**, with a copy to the other parties in the case. This rule does not preclude a Judge from referring matters arising under 28 U.S.C. § 455 to the Clerk so that another Judge can determine disqualification.

No motion is required to precipitate a Judge's recusal under 28 U.S.C. § 455. See *Davis v. Board of Sch. Comm'rs of Mobile County*, 517 F.2d 1044, 1051 (5th Cir. 1975).

### 2. Procedure for Recusal Under 28 U.S.C. § 144

Civil Local Rule 3-15 states the following

> Whenever an affidavit of bias or prejudice directed at a Judge of this Court is filed pursuant to 28 U.S.C. § 144, and the Judge has determined not to recuse him or herself and found that the affidavit is neither legally insufficient nor interposed for delay, the Judge shall refer the request for disqualification to the Clerk for random assignment to another Judge.

### 3. Substantive Standards for Recusal

A judge must recuse himself if a reasonable person would believe that he is unable to be impartial. *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993). This is an objective inquiry regarding whether there is an appearance of bias, not whether there is bias in fact. *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991). The standard for recusal based on personal bias and prejudice under §§ 144 and 455 is the same: " '[W]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.' " *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986)

The alleged bias must result from an extra-judicial source or the judge's remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 554 (1994).

-15-

Case No. C08-0019-MJJ                    28 U.S.C. § 144 **MOTION TO DISQUALIFY**

1    In evaluating the supporting affidavit, "the judge must assume that the factual averments . . .

2    are true, even if he knows them to be false." *United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th

3    Cir. 1985).

4                                      **ARGUMENT**

5    **1.  Extra-judicial sources and level of antagonism**

6

7        Yue's declaration alleged that a magistrate judge stated that the blog Yue wrote offended

8    Judge Jenkins and resulted in adverse ruling against Yue's company in the *Netbula v. Symantec*

9    case. Yue further alleged that the details of the retaliation were described in a complaint against

10   Judge Jenkins which Yue filed at the Ninth Circuit, and Judge Jenkins had received a copy of this

11   complaint.

12       For the purpose of this motion, one must assume that the story told by Netbula's counsel to be

13   true. It would be highly improbable that she would make up such a story about a judge. Also,

14   Judge Jenkins's attitude towards Yue was consistent with the alleged personal animus. On

15   November 20, 2007, Judge Jenkins did not know Yue. He asked "[a]re you Mr. Yue?" When Yue

16   attempted to make an argument, Judge Jenkins said: "I am going to have you taken out if you

17

18   don't be quiet." Yue Decl., at ¶¶3-15.

19       Judge Jenkins wrote in his February 8, 2008 order:

20
           During the November 20, 2007 hearing, the Court instructed Yue that he
21         could not file motions, notice hearing dates, or speak in court unless he
22         had leave of court or until he was given permission to represent himself.

23   Yue Decl., at ¶¶22-27.

24       "The framers of our Constitution thought self-representation in civil suits was **a basic**

25   **right that belongs to a free people.**" *Iannaccone v. Law*, 142 F.3d 553 (2d Cir. 1998) (emphasis

26

27                                       -16-

28

1  added). Yue wasn't acting improperly at the hearing. So, why was Judge Jenkins so angry at Yue

2  as to summarily deny his basic *pro se* right without affording any due process? If we ignore the

3  extra-judicial blog for the moment, all that Yue had done up to the time was filing a Motion to

4  Intervene pursuant to FRCP 24(a) and responding to SUN defendants' administrative motions.

5  The Court is a place of reason, and Yue followed all the procedural rules to protect his personal

6  rights. Yue was just another litigant trying to get help from the law to resolve some civil dispute. It

7  would be inconceivable that Judge Jenkins threatened to have Yue taken out for merely filing

8  some briefs (much fewer than what defendants filed) and saying "[f]ollowing rules of civil

9  procedure –".

10  Moreover, Judge Jenkins's prejudicial attitude towards Yue was not single incident, it

11  forms a persistent pattern. When SUN asked for extension in the *Yue v. SUN* case, Judge Jenkins

12  forbade Yue, the *pro se* plaintiff to speak. Yue Decl., at ¶21.

13  If one compares the procedural facts in Yue's declaration and the description of the same

14  Judge Jenkins wrote in his February 8, 2008 order, Judge Jenkins put the blame on Yue, by stating

15  that Judge Jenkins ordered Yue not to file documents and speak "when Yue attempted to intervene

16  in the proceedings" in the November 20, 2007 hearing. Yue Decl., at ¶27. The transcript of the

17  proceeding shows the sequence of events to be different. Judge Jenkins ordered that Yue could not

18  file anything upfront. Yue wasn't saying anything then. Afterwards, Judge Jenkins asked Yue if he

19  was Yue, and then Yue attempted to make an argument about his *pro se* rights. Yue Decl., at ¶15.

20  Another extra-judicial source is Yue's complaint against Judge Jenkins at the Ninth

21  Circuit. After Judge Jenkins received Yue's complaint against him, his retaliation intensified,

22  including dismissing the *Yue v. SUN* action outright.

-17-

**2. The favoritism towards opposing counsel**

Judge Jenkins ignored the alleged unethical conduct by defense counsel, including basing their motion on a phantom declaration and making direct communications to Yue on Netbula matter. Yue Decl., at ¶¶ 8-12, 23. Judge Jenkins also refused to hear Yue's motion to hold defense counsel in violation of the BindView protective order. The reason he gave was: "It didn't hit my calendar today. That's it." Yue Decl., at ¶19. However, five months later, Yue's motion is still not on the calendar.

Judge Jenkins granted Mr. Pulgram's motion to vacate the hearing of Yue's motion *ex parte*. Yue Decl., at ¶13.

Judge Jenkins coached Mr. Pulgram, suggesting Mr. Pulgram to make an argument against Yue so Yue is not substituted in as a party. Yue Decl., at ¶17.

In dismissing the Yue v. SUN case with prejudice, Judge Jenkins stated that "Yue-Sun presents the same claims as Netbula-Sun... the tactics that Plaintiff has pursued.. have ranged from duplicative to nearly vexatious." Such language is from defense counsel, Mr. Laurence Pulgram, who directly communicated directly with Yue on the issue of whether Yue should file a separate case or join as plaintiff in the *Netbula v. SUN* matter. All Yue did was trying to protect his personal rights based on 10 counts of copyright infringement, and he had informed the court and SUN about the claims and he suggested that it would be more economical to have him join as plaintiff in the *Netbula v. SUN* case. Previously, Judge Jenkins stated that the *Yue v. SUN* case is "is not completely overlapping" with the *Netbula v. SUN* claim and he also recognized that Yue was not asserting the rights of Netbula.

**3. Judge Jenkins has an interest in the outcome of the instant case**

-18-

1    Yue filed a complaint against Judge Jenkins alleging that he failed to investigate Mr. Laurence

2    Pulgram's alleged unethical conduct. In the instant action, Yue filed a motion to disqualify Mr.

3    Pulgram due to his unethical conduct. Thus, Judge Jenkins has an interest to rule in favor of Mr.

4    Pulgram and find him not in violation of the rules of ethics, so that Yue's complaint against Judge

5    Jenkins appears to be without merit and ignoring Mr. Pulgram's conduct can be justified.

6

7    **4.  Judge Jenkins has an interest in ruling against Yue on his copyrights**

8    As indicated in Yue's letter to the former Chief Judge of the Ninth Circuit, of which Judge

9    Jenkins received a copy, the person responsible for Netbula's loss of revenue in the *Netbula v.*

10   *Symantec* case should be held accountable for such losses. Yue's current understanding is that

11   Judge Jenkins ruled against Netbula due to the blog article Yue wrote. Judge Jenkins thus has an

12   incentive to rule against Yue on all of Yue's copyrights, validity of the copyrights, validity of

13   assignments and the copyright claims.

14

15   **5.  Timeliness of the instant motion**

16   This case was initially assigned to another judge. Judge Jenkins took over the case on February

17   12, 2008 by relating it to the *Yue v. SUN* case. Yue was out of the country from February 10 to

18   February 27, 2008. He worked on this motion after he came back and filed it more than 14 days

19   before the hearing of parties' pending substantive motions.

20

21

22                                    **CONCLUSION**

23   For the foregoing reasons, Plaintiff respectfully requests that Judge Jenkins recuse from all

24   the cases in which Yue is a pro se plaintiff.

25   Dated: March 18, 2008

26

27                                        -19-

28   Case No. C08-0019-MJJ                    28 U.S.C. § 144 **MOTION TO DISQUALIFY**

1

2    DONGXIAO YUE (*Pro Se*)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    -20-

28   Case No. C08-0019-MJJ                    28 U.S.C. § 144 MOTION TO DISQUALIFY