1  LAURENCE F. PULGRAM (CSB NO. 115163)
   *lpulgram@fenwick.com*
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   *jwakefield@fenwick.com*
3  ALBERT L. SIEBER (CSB NO. 233482)
   *asieber@fenwick.com*
4  LIWEN A. MAH (CSB NO. 239033)
   *lmah@fenwick.com*
5  FENWICK & WEST LLP
   555 California Street, Suite 1200
6  San Francisco, CA  94104
   Telephone: (415) 875-2300
7  Facsimile:  (415) 281-1350

8  Attorneys for Defendants
   CHORDIANT SOFTWARE, INC.,
9  DEREK P. WITTE, STEVEN R. SPRINGSTEEL,
   and specially appearing for OLIVER WILSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONGXIAO YUE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CHORDIANT SOFTWARE, INC., a Delaware corporation; DEREK P. WITTE, an individual; STEVEN R. SPRINGSTEEL, an individual; and OLIVER WILSON, an individual,<br><br>　　　　Defendants. | Case No. C-08-00019-MJJ<br><br>**OPPOSITION TO MOTION FOR DISQUALIFICATION**<br><br>Date:　　　　TBD<br>Time:　　　　TBD<br>Courtroom:　TBD<br>Judge:　　　　TBD |

OPPOSITION TO MOTION FOR DISQUALIFICATION　　　　　　　　　　　　　　　CASE NO. C-08-00019-MJJ

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................................. 2

    A. Plaintiff's Copyright Lawsuits ............................................................................... 2

    B. Yue's *Pro Se* Activities In *STK I* and *BindView* ................................................... 3

    C. The Communications At Issue ............................................................................... 4

    D. Plaintiff's History of Harassing Tactics ................................................................. 6

III. ARGUMENT ...................................................................................................................... 8

    A. Legal Standard for Disqualification ....................................................................... 8

    B. Fenwick Was Permitted—And Indeed, Required—To Communicate With Plaintiff In Matters As To Which He was Not Represented .................................. 9

    C. Although Not Required, the Communications In Connection With *STK I* Had the Consent of Netbula's Counsel ................................................................. 10

    D. Assuming (Contrary to Fact) That the Communications Had Been Improper, They Would Not Warrant Disqualification ......................................... 12

IV. CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cont'l Ins. Co. v. Superior Court*,
   32 Cal. App. 4th 94 (1995) .................................................................................................. 13

*Gregori v. Bank of America*,
   207 Cal. App. 3d 291 (1989) ............................................................................................. 8, 12

*In re Marvel*,
   251 B.R. 869 (Bankr. N.D. Cal. 2000),
   *aff'd*, 265 B.R. 605 (N.D. Cal. 2001) ..................................................................................... 8

*La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court*,
   121 Cal. App. 4th 773 (2004) ............................................................................................... 11

*Marcum v. Channel Lumber Co.*,
   Case No. CV-94-2637-SC, 1995 U.S. Dist. LEXIS 3799
   (N.D. Cal. Mar. 27 1995) ..................................................................................................... 12

*Mills Land & Water Co. v. Golden West Refining Co.*,
   186 Cal. App. 3d 116 (1986) *(superseded by statute)* ...................................................... 11, 12

*Netbula, LLC v. BindView Development Corporation, et al.*,
   Case Number C06-00711-MJJ (the "*BindView*" action) ............................................... passim

*Netbula, LLC v. Greenwich Capital Markets, Inc.*,
   Case Number C06-07143-MJJ ............................................................................................... 2

*Netbula, LLC v. Storage Technology Corporation,
   Sun Microsystems, Inc., et al.*,
   Case Number C06-07391-MJJ (the "*STK I*" action) ..................................................... passim

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*,
   760 F.2d 1045 (9th Cir.1985) .................................................................................................. 8

*Visa U.S.A., Inc. v. First Data Corp.*,
   241 F. Supp. 2d 1100 (N.D. Cal. 2003) ............................................................................... 8, 9

*Yue v. Storage Technology Corporation, Sun Microsystems, Inc. et al.*,
   Case Number C07-05850 MJJ (the "*STK II*" action) .................................................... passim

**STATUTES**

28 U.S.C. § 144 ............................................................................................................................. 8

**RULES**

California Rules of Professional Conduct 2-100 .................................................................. passim

California Rules of Professional Conduct 2-100(A) ................................................................... 11

California Rules of Professional Conduct 7-103 (repealed 1989) ............................................... 11

Civil Local Rule 6-3(a)(2) .............................................................................................................. 5

Civil Local Rule 11-4 .................................................................................................................... 9

Federal Rule of Civil Procedure 11 ........................................................................................... 6, 7

1   Chordiant Software, Inc. ("Chordiant") respectfully submits its Opposition to Plaintiff
2   Dongxiao Yue's ("Yue" or "Plaintiff") Motion to Disqualify Defense Counsel Fenwick & West
3   LLP ("Fenwick").

## I. INTRODUCTION

Plaintiff Dongxiao Yue, whose conduct has already been recognized by the Court as "nearly vexatious," now brings an utterly frivolous motion to disqualify Defendants' counsel for communicating with him directly, even though he is a *pro se* litigant. Plaintiff wrongly contends that these communications violated "relevant rules of professional conduct." But the "relevant rule"—Rule 2-100 of the California Rules of Professional Conduct—prohibits only communications with represented parties concerning the subject matter of their representation, and without the consent of the party's counsel. The e-mail communications at issue occurred either (i) in this action, in which Plaintiff purports to appear without counsel and in his individual capacity, or (ii) in connection with other cases brought by Plaintiff's company, Netbula LLC against Storage Technology Corp. and Sun Microsystems, Inc., in which Plaintiff also participated or attempted to participate in his individual capacity, unrepresented by counsel. Moreover, in the *Storage Technology* cases, counsel for Netbula received the e-mail communications in real time, and not only raised no objection, but facilitated and encouraged direct communications between Fenwick and Plaintiff about his efforts to participate *pro se* as an individual. Thus, setting aside the fact that communications concerning separate lawsuits do not form a basis for disqualification in this lawsuit, there simply has been no prohibited communications with Plaintiff—in this case or any others. Plaintiff knows this, having previously complained about these communications to the California State Bar—which investigated his allegations and promptly closed its file.

Even assuming (contrary to fact) that certain communications were prohibited, Plaintiff has failed to make any coherent claim of prejudice or continuing effect in this lawsuit. Indeed, Plaintiff's only claim of prejudice—that he was somehow duped into believing he would be allowed to pursue Netbula's copyright claims *pro se* in the first *Storage Technology* case—is belied by the very communications attached to his declaration. In all events, the alleged

OPPOSITION TO MOTION FOR DISQUALIFICATION    -1-    CASE NO. C-08-00019-MJJ

1  "misconduct" has no continuing effect in the *STK I* or *II* cases, let alone this separate lawsuit
2  against Chordiant.

3  Regrettably, this motion is just the latest in a long string of filings by Plaintiff and his
4  company aimed at needlessly multiplying the proceedings and increasing expenses. Plaintiff's
5  latest maneuver, aimed at gaining a tactical advantage by stripping Defendants of their chosen
6  counsel that has been successful in defeating his multiple lawsuits, should be rejected.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Copyright Lawsuits.

Plaintiff Dongxiao Yue and the software company he owns, Netbula LLC, have filed a series of lawsuits in this District alleging copyright infringement and seeking tens of millions of dollars from Netbula's customers. *Netbula, LLC v. BindView Development Corporation et al.*, Case Number C06-00711-MJJ (the "*BindView*" action) was followed by *Netbula, LLC v. Greenwich Capital Markets, Inc.*, Case Number C06-07143-MJJ. This was followed by a third filing, *Netbula, LLC v. Storage Technology Corporation, Sun Microsystems, Inc., et al.*, Case Number C06-07391-MJJ (the "*STK I*" action), a fourth case, *Yue v. Storage Technology Corporation, Sun Microsystems, Inc. et al.,* Case Number C07-05850 MJJ (the "*STK II*" action), and, most recently, the present lawsuit against Chordiant.

Fenwick has served as counsel for the defendants in four of these five actions. Fenwick successfully moved for summary judgment on Netbula's copyright infringement claims in cases brought against Symantec Corporation, BindView Development Corporation, Eric J. Pulaski (CEO of BindView), Storage Technology Corporation, Darden Restaurants, EMC Corporation and Sun Microsystems, Inc. *BindView* Docket No. 288; *STK I* Docket No. 138. Fenwick also successfully moved to dismiss with prejudice a second copyright infringement claim brought by Plaintiff against Sun, its CEO, and several Sun employees, including an in-house attorney. *STK II* Docket No. 51. Judgment in that case was entered in Defendants' favor on March 4, 2008. *STK II* Docket No. 52.

### B. Yue's *Pro Se* Activities In *STK I* and *BindView*.

Yue's present motion is based on communications occurring in connection with the *STK I* case. Although Netbula was represented by counsel in that case, Yue participated or attempted to participate in his individual capacity and without counsel, both in *STK I* and the related *BindView* case. Declaration of Jedediah Wakefield in Support of Opposition to Motion to Disqualify Defense Counsel ("Wakefield Decl.") ¶¶ 5-10. For example:

On October 9, 2007, Yue filed, appearing *pro se*, a motion to intervene in his individual capacity in the *BindView* case, ostensibly to "enforce" a protective order and preclude use of materials Netbula produced in that case in the subsequent *STK I* case. Even though Yue had not been previously a party to the *BindView* litigation, Yue brought that motion individually and without representation by counsel [*BindView* Docket No. 307];

On October 22, 2007, Yue filed, in his individual capacity and appearing *pro se*, a motion to intervene in *STK I,* seeking a preliminary injunction and impoundment of Sun's property [*STK I* Docket No. 68];

On October 30, 2007, in *STK I*, Yue filed, in his individual capacity and appearing *pro se*, an Opposition to Defendants' Motion for Administrative Relief for consideration of a declaration that had been filed about eight hours late [*STK I* Docket No. 90]. Prior to that, from October 25 through October 30, 2007, Yue had threatened (again in his individual capacity) to file a motion to strike, a motion for sanctions, and an "emergency motion for an integrity hearing," relating to Defendants' summary judgment motion [Wakefield Decl. ¶¶ 16-17, 21 & Exs. 6-7, 10];

On November 5, 2007, Yue attempted to substitute himself, *pro se*, as "counsel" for himself as an individual cross-defendant, in lieu of counsel Vonnah M. Brillet, who had previously appeared for Yue individually in the *STK I* case [*STK I* Docket No. 95];

On November 19, 2007, Yue, in his individual capacity and appearing *pro se*, filed the separate *STK II* action, in which Yue claimed to own personally (independent from Netbula) certain copyrights Yue wished to enforce [*STK II* Docket No. 1]; and

Prior to that filing, Yue had been threatening, *pro se* and in his individual capacity, to bring such claims since October 2007 [*e.g.*, Yue Decl. Ex. B; Wakefield Decl. ¶¶ 13& Ex. 5].

OPPOSITION TO MOTION FOR DISQUALIFICATION -3- CASE NO. C-08-00019-MJJ

C.     **The Communications At Issue.**

In support of his motion, Yue attaches three e-mail communications. The first two, Exhibits A and B to Yue's declaration, were sent after Yue began his efforts to substitute himself as Plaintiff for Netbula in *STK I*. Wakefield Decl. ¶¶ 5-10. From the time that Plaintiff began appearing in his individual capacity and *pro se*, Fenwick had several e-mail communications with him. While Netbula was represented by counsel, Plaintiff as an individual was not, and there needed to be some communication with him while he was representing himself. *Id.* Thus, these communications concerned matters in which Plaintiff was unrepresented.

Moreover, Defendants confirmed with both Plaintiff and Vonnah M. Brillet, Netbula's counsel at the time, that Plaintiff was not represented. After receiving notice that Yue had filed a motion to intervene and enforce a protective order in the *BindView* case, Defendants' counsel wrote to her in an October 16, 2007 e-mail to request service of the papers, and noting that direct communication with Yue would be needed if Yue were attempting to represent himself: "If Mr. Yue is now attempting to represent himself as an individual in his effort to intervene, unrepresented by counsel, then *we may need to speak with him directly*. Please provide your instructions in this regard." Wakefield Decl. ¶ 11 & Ex. 3 (emphasis added). Ms. Brillet did not respond. Later, however, after Plaintiff e-mailed Fenwick on October 26, 2007, threatening to file a new lawsuit as a *pro se* plaintiff, Fenwick replied, copying Ms. Brillet, and confirming Plaintiff's status as an unrepresented party:

> I am responding to you individually, and copying Netbula's counsel, because I understand that you are threatening to file a new action in your individual capacity, in which you are, and intend to remain, unrepresented by counsel. If I am incorrect in these assumptions, I request that you and/or Ms. Brillet advise me.

Wakefield Decl. ¶ 20 & Ex. 9. Neither Ms. Brillet nor Plaintiff advised otherwise. Wakefield Decl. ¶ 20. Quite the opposite: Ms. Brillet—who received instantaneous copies of the e-mails in question—not only failed to object to any of the communications, but encouraged them, going so far as to arrange for a direct telephone conference between Yue and opposing counsel. *Id.* ¶ 14. Thus, these communications were not only with an *unrepresented* party, but had the *consent* of Netbula's counsel for good measure.

OPPOSITION TO MOTION FOR DISQUALIFICATION -4- CASE NO. C-08-00019-MJJ

1   Even a cursory examination of Exhibits A and B to Plaintiff's Motion confirms this.
2   Plaintiff's Exhibit A is an October 25, 2007 e-mail concerning Yue's *pro se* motion seeking to
3   intervene as an individual and asking for a preliminary injunction and impoundment. Defendants
4   believed that his motion had not been properly served, was untimely, and should be taken off
5   calendar. Pursuant to Civil L.R. 6-3(a)(2), Sun was required to request a stipulation from Plaintiff
6   before asking the court to take his motion off calendar. Accordingly, Fenwick requested such a
7   stipulation, with copies to Ms. Brillet, before filing Defendants' motion. *See* Yue Decl. Ex. A.
8   Fenwick also made clear at the time that Defendants opposed Plaintiff's request to intervene and
9   substitute as a party.[1] *Id.*

10   Plaintiff's assertion that Exhibit B represents an improper communication with a
11   represented party is even more perplexing. Prior to that e-mail, on October 26, 2007, Yue
12   (unsolicited by Fenwick) had e-mailed Fenwick to argue that Defendants should have cited
13   certain extrinsic evidence that he thought was relevant in their summary judgment motion in the
14   *STK I* case. Wakefield Decl. ¶ 17 & Ex. 7.[2]  That day, Fenwick responded directly to Ms. Brillet,
15   asking that she advise Yue to refrain from such communications. *Id.* After Yue kept
16   communicating on these subjects, Fenwick sent the October 31, 2007 e-mail shown in Yue
17   Declaration Exhibit B to Ms. Brillet, with a *copy* to Yue, asking again that Brillet instruct Yue not
18   to communicate with Fenwick in matters other than those in which he was acting *pro se*. Thus,
19   far from representing a prohibited communication, Exhibit B shows Defendants' responsible
20   efforts to respond to Yue's *pro se* individual activities while avoiding communicating with him
21   regarding the substantive merits of the summary judgment motion.

22   The third e-mail attached to Plaintiff's motion was sent in connection with the *Chordiant*
23   case—in which Plaintiff is and has always been *pro se*. On January 15, 2008, well before the
24   e-mail shown in Plaintiff's Exhibit C was transmitted, Defendants' counsel first communicated
25   with Yue concerning this action, and confirmed that Yue was not represented: "I understand that

---

[1] Ms. Brillet never responded. Yue refused the stipulation, and Sun filed its motion. Wakefield Decl. ¶ 15. The Court granted Sun's motion to take his motion off calendar on October 31, 2007.
[2] As discussed below, Ms. Brillet was copied on this e-mail.

OPPOSITION TO MOTION FOR DISQUALIFICATION -5- CASE NO. C-08-00019-MJJ

you are not presently represented by counsel in this lawsuit, but that Ms. Rivkin may begin to represent you in the future. If this changes, please let me know and I will communicate with her." Plaintiff responded by confirming that he was not represented, and specifically instructed counsel not to communicate about the *Chordiant* case with Netbula's counsel in the *STK I* case: "I have not made any definitive arrangement with Ms. Rivkin regarding the *Yue v. Chordiant* case. *Please do not include her in our communications regarding the Yue v. Chordiant matter*." Wakefield Decl. ¶¶ 3-4 & Exs. 1-2 (emphasis added).

Plaintiff does not contend that he was ever represented in the *Chordiant* action, but raises the bizarre complaint Fenwick somehow gave him "legal advice." Yet the communication in Plaintiff's Exhibit C—a cover e-mail accompanying service of a Rule 11 sanctions motion against Plaintiff—was a request on behalf of Defendants that Plaintiff withdraw a frivolous complaint, a warning of the severe consequences of his failure to do so, *and a plea that he obtain advice from qualified counsel*. Such direct communications with an unrepresented party can hardly be confused with rendering legal advice, violate no ethical rule, and are entirely appropriate.

### D. **Plaintiff's History of Harassing Tactics.**

Regrettably, this is not the first time the Court and various defendants have been burdened by Plaintiff's unreasonable conduct (either in his individual capacity or through Netbula) in copyright cases in this District. For example:

On December 14, 2007, after ordering the *STK I* and *STK II* cases related, the Court ordered that no responsive pleadings would be due in *STK I* until the impact of the summary judgment motion in *STK I* was known. The Court specifically admonished Plaintiff that no default would be entered in this case. Plaintiff willfully defied that order, filing a motion for default judgment against Defendants Sun and StorageTek. *See STK I* Docket Nos. 13-14. The Court rejected Plaintiff's motion, as well as Plaintiff's attempted excuses for his conduct, finding that "Plaintiff clearly understood the Court's order" not to take a default, by his motion had "multiplied the proceedings in this case unnecessarily" and that his motion itself was "untimely and unnecessary." *STK II* Docket No. 41 [Order Denying Motion for Default Judgment at 4:11-12, 4:23-24].

OPPOSITION TO MOTION FOR DISQUALIFICATION -6- CASE NO. C-08-00019-MJJ

1    In *BindView*, Netbula—at Plaintiff's direction—moved for Rule 11 sanctions against Fenwick. The motion was so lacking in merit that Magistrate Judge Chen not only denied it, but also awarded *Defendants* in that case $20,000 in attorneys' fees for having to respond to it. *See BindView* Docket Nos. 103, 128, 193.

In *STK I*, nearly a year after Netbula's unsuccessful TRO Application, Docket No. 18 [Reporter's Transcript of Proceedings Held on December 5, 2006], Plaintiff individually filed a "Motion to Intervene and Join as Plaintiff, for Injunctive Relief, and for Copyright Impoundment," asking again for preliminary relief, a year into the lawsuit, while the motion to substitute him as a party for the copyright claims was still pending. *STK I* Docket No. 68. This procedurally improper motion was subsequently ordered off-calendar by the Court. *STK I* Docket No. 94.

Also in *STK I*, Plaintiff filed an opposition to Defendants' motion to modify the protective order entered in the *BindView* case to avoid duplicative discovery and allow the use of relevant materials in *STK I*—despite clear authority encouraging such modifications. *See Netbula-BindView* Docket No. 303-308. When the Court entered its order allowing such modification, *see Netbula-BindView* Docket No. 326, Plaintiff appealed—only to have that appeal dismissed *sua sponte* by the Ninth Circuit for lack of jurisdiction after the record was compiled. *See Chordiant* Docket No. 27 [Request for Judicial Notice Ex. B].

Plaintiff petitioned to the Ninth Circuit for an emergency stay of the summary judgment hearing in *STK I* and requested assignment to a new judge, claiming that Judge Jenkins was biased. *Id.* Ex. B. After the writ petition was denied, Plaintiff further petitioned for a "reasoned decision" (ostensibly to prepare for his Petition to the United States Supreme Court)—to which the Ninth Circuit responded with an order denying that request, and ordering that he not file any other papers in that matter. *Id.*

Plaintiff filed a frivolous complaint against Fenwick with the State Bar, which was summarily rejected. *See STK II* Docket No. 36 [Declaration of Albert L. Sieber in Support of Motion to Dismiss ¶ 6 & Ex. E].

Plaintiff has complained to other judges of this Court, the Ninth Circuit, and Congress

OPPOSITION TO MOTION FOR DISQUALIFICATION    -7-    CASE NO. C-08-00019-MJJ

about the Court's alleged bias. *STK I* Docket No. 129 [Letter Brief by Dongxiao Yue Regarding Motion for Summary Judgment and Relating Cases], *STK II* Docket No. 11 (same). Judge Jenkins, treating Plaintiff's complaints as a request for disqualification under 28 U.S.C. § 144, denied Plaintiff's request, finding that "[e]ven if Yue's letter sufficed to raise issues of the Court's bias and prejudice, Yue's contentions are not substantiated or meritorious." *STK I* Docket No. 143. Nevertheless, Plaintiff has now filed new motions to disqualify Judge Jenkins in this case and *STK II*, based on a rehashing of the same baseless arguments. *Chordiant* Docket No. 37; *STK II* Docket No. 58.

In dismissing Yue's complaint in *STK II*, the Court noted that Plaintiff's conduct "nearly vexatious." *See* Order Granting Motion to Dismiss at 7:10. Undeterred, as always, by such admonitions, Plaintiff pressed ahead, filing the current baseless motion for disqualification.

### III.   ARGUMENT

**A.   Legal Standard for Disqualification.**

Motions to disqualify counsel are strongly disfavored. *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003) (quoting *Gregori v. Bank of America,* 207 Cal. App. 3d 291, 300-301 (1989), for the proposition that "[m]otions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent"); *In re Marvel,* 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000) ("A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity. They are often tactically motivated; they tend to derail the efficient progress of litigation."), *aff'd*, 265 B.R. 605 (N.D. Cal. 2001). Accordingly, "such requests 'should be subjected to particularly strict judicial scrutiny.'" *Visa U.S.A.*, 241 F. Supp. 2d at 1104 (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.,* 760 F.2d 1045, 1050 (9th Cir.1985)).

In reviewing a motion to disqualify counsel, the district court must make "a reasoned judgment and comply with the legal principles and policies appropriate to the particular matter at issue." *Gregori*, 207 Cal. App. 3d at 300 (internal quotation marks and alterations omitted). The district court is permitted to resolve disputed factual issues in deciding a disqualification motion and must make findings supported by substantial evidence. *Visa U.S.A.*, 241 F. Supp. 2d at 1104.

OPPOSITION TO MOTION FOR DISQUALIFICATION    -8-    CASE NO. C-08-00019-MJJ

1  **B.     Fenwick Was Permitted—And Indeed, Required—To Communicate With Plaintiff In Matters As To Which He was Not Represented.**

The Northern District of California has adopted the California Rules of Professional Conduct ("CRPC") at Civ. L.R. 11-4, and attorneys practicing in this court are required to adhere to those standards, as articulated in the rules and court decisions interpreting them. *Visa USA*, 241 F. Supp. 2d at 1103; *see* Civ. L.R. 11-4, Commentary. In pertinent part, CRPC 2-100 provides:

> While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.

Here, Yue complains that Defendants' counsel should not have communicated with him in connection with the *STK I* matter, since he was the principal of Netbula. But direct communication with Yue were entirely appropriate, in view of his *pro se* activities in both the *BindView* case and the *STK I* action. As detailed above, while Netbula was represented in *STK I*, Yue—in his individual capacity and without counsel—had, *inter alia*, sought to intervene; filed a motion for preliminary injunction and "copyright impoundment;" filed a motion in a related case to intervene and "enforce" a protective order; directly requested a stipulation allowing him to substitute as a party; threatened to move to strike Defendants' pleadings, seek sanctions, and file an "emergency motion for an integrity hearing;" filed an opposition to Defendants' Motion for Administrative Relief (to prevent consideration of a declaration); and threatened to (and eventually did) file a separate action. Thus, while Netbula was represented by Ms. Brillet, Yue as an individual *pro se* litigant was not, and there needed to be some communication with him while he was representing himself. As CRPC 2-100 does not bar counsel's direct communications with an unrepresented party, the communications here were not prohibited.

Moreover, as discussed above, and as evidenced by the e-mails attached to Plaintiff's Motion, in instances in which Fenwick communicated with Plaintiff concerning Plaintiff's efforts to appear in his individual capacity and *pro se* in the *STK I* case, Fenwick simultaneously sent copies of e-mails to Netbula's counsel. Yue Decl. Ex. A; Wakefield Decl. ¶¶ 13, 15, 20 & Exs. 4,

OPPOSITION TO MOTION FOR DISQUALIFICATION          -9-          CASE NO. C-08-00019-MJJ

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1. 9. Fenwick specifically confirmed that Yue was not represented in claims and arguments he was attempting to make in his individual capacity. *Id.* ¶ 11, 20 & Exs. 3, 9. Given that Yue insisted on pursuing his individual appearances *pro se*, there was nothing improper about communications with him.

Plaintiff's complaint concerning communications in the *Chordiant* case are equally without merit. As noted above, Plaintiff has never had counsel, and Netbula has never been a party, in the *Chordiant* case. As for Plaintiff's complaint that he received "legal advice"—it is not entirely clear what he hopes to argue. It appears that Plaintiff has seized on the following language appearing in the comments to CRPC 2-100:

> Rule 2-100 also addresses the situation in which member A is contacted by an opposing party who is represented and, because of dissatisfaction with that party's counsel, seeks A's *independent advice*. Since A is employed by the opposition, the member cannot give *independent advice*.

*See* comments to CRPC 2-100 (emphasis added). This comment has no applicability here. First, as a comment to Rule 2-100, it only pertains only to communications with *represented parties*—something Plaintiff has never been in the *Chordiant* case. Second, none of the communications between Fenwick and Plaintiff in this case could conceivably be construed as delivering "independent legal advice." Fenwick, at all times, has made clear that it represents Defendants and is defending them against Plaintiff's claims. Wakefield Decl. ¶ 3 & Ex. 1 ("This firm represents Chordiant Software."). The notion that Fenwick was delivering "independent legal advice" to Yue—when threatening on behalf of Defendants to seek severe sanctions against him—is preposterous.

C.   **Although Not Required, the Communications In Connection With *STK I* Had the Consent of Netbula's Counsel.**

Even if Yue had not been inundating Defendants with filings and communications as an unrepresented litigant, the communications pertaining to *STK I* would not run afoul of Rule 2-100 for another reason—they had the consent of Netbula's counsel at the time.

CRPC 2-100 permits communications with a represented party concerning the subject matter of the representation with the "consent of the other lawyer." Former California Rule of

1 Professional Conduct 7-103 required the "express consent" of the opposing attorney, but in

2 enacting Rule 2-100, the California State Bar removed the "express consent" requirement,

3 changing the Rule's language to require only "consent." *Compare* Cal. R. Prof'l Conduct 2-

4 100(A) *with* Former Cal. R. Prof'l Conduct 7-103 (repealed 1989).

5 Here, Ms. Brillet's consent to direct communications with Yue is evident. As discussed

6 above, after it had become clear that Yue was proceeding in his individual capacity and without

7 counsel, Fenwick wrote to Yue, copying Ms. Brillet, and confirmed that Yue was not represented:

8 "I understand that you are threatening to file a new action in your individual capacity, in which

9 you are, and intend to remain, unrepresented by counsel. If I am incorrect in these assumptions,

10 *I request that you and/or Ms. Brillet advise me*." Wakefield Decl. ¶ 20 & Ex. 9. Ms. Brillet did

11 not correct Fenwick's assumptions or raise any objection.

12 Thereafter, although she was copied on numerous communications between Fenwick and

13 Yue, she never objected, complained or raised the slightest concern to Defendants. *See* Yue Decl.

14 Ex. A; Wakefield Decl. ¶¶ 13, 15, 20 & Exs. 4, 9. On the contrary, she actively encouraged and

15 facilitated further direct communications during a December 6, 2007 telephone conference that

16 she attended. *Id.* ¶ 14.

17 In *Mills Land & Water Co. v. Golden West Refining Co.*, 186 Cal. App. 3d 116 (1986)*),

18 superseded by statute as stated in La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior

19 Court*, 121 Cal. App. 4th 773 (2004), the court, explaining the rationale behind Rule 2-100,

20 observed:

21 > If a party's counsel is present when an opposing attorney
> communicates with a party, counsel can easily correct any element
22 > of error in the communication or correct the effect of the
> communication by calling attention to counteracting elements
23 > which may exist.

24 *Id.* at 130 (internal quotation marks omitted). In essence, Netbula's counsel was present for all of

25 the electronic communications with Yue in connection with the *STK I* case, and she was

26 physically present and on the call during the parties' telephone conference. If she did not consent

27 to the communications and wished to object, or wished to clarify or correct anything said by

28 Plaintiff, she had every opportunity to intervene and do so. Since she instead actively encouraged

1  direct communications, there was no violation of CRPC 2-100. Under the circumstances,
2  granting disqualification would encourage counsel to sit by idly during repeated direct
3  communications with their clients, only to turn around later to seek disqualification for improper
4  tactical purposes.

### D. Assuming (Contrary to Fact) That the Communications Had Been Improper, They Would Not Warrant Disqualification.

As discussed above, Plaintiff's Motion fails for the simple reason that there has been no violation of any ethics rules. However, assuming *arguendo* that a violation had occurred, a violation of CRPC 2-100 would not serve as grounds for disqualification unless the misconduct would "have a continuing effect on the judicial proceedings before the court." *Marcum v. Channel Lumber Co.*, Case No. CV-94-2637-SC, 1995 U.S. Dist. LEXIS 3799, at *4 (N.D. Cal. Mar. 27 1995). If, on the other hand, the court's purpose is to punish a transgression which has no substantial continuing effect on the judicial proceedings to occur in the future, disqualification is not proper. *Id.* at *4-*5. "'Only conduct that *will* have a continuing effect, not *might* have a continuing effect, justifies disqualification. Disqualification must be *necessary*.'" *Id.* (quoting *Mills Land*, 186 Cal. App. 3d at 134 (emphases in original)); *see also Gregori,* 207 Cal. App. 3d at 308-09 (noting that purpose of a disqualification order must be prophylactic, not punitive, and "[d]isqualification is inappropriate . . . simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings.").

In *Marcum*, a case arising out of an employment dispute and breach of a related settlement agreement, Plaintiff's attorney was alleged to have initiated and engaged in a conversation with an individual who was both a named defendant and president of defendant Channel Lumber. *Id.* at *1-*2. The court, assuming that defendants could prove a violation of Rule 2-100, nevertheless denied Defendants' motion for disqualification. *Id.* at *2. The court found that defendants had not proven that the attorney's alleged misconduct "will have a continuing effect on the judicial proceedings before the court." *Id.* The court noted that the affidavit describing the communication revealed that the substance of the conversation was not prejudicial: "Nothing was discussed which could not have been learned through interrogatories, depositions, etc." *Id.* at *5.

OPPOSITION TO MOTION FOR DISQUALIFICATION -12- CASE NO. C-08-00019-MJJ

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 Even though the lawsuit had been discussed, and defendant had "stated his position in the case regarding his justification for firing plaintiff" the court found that "[n]othing in the conversation revealed information which would confer an unfair advantage to the plaintiff." *Id*.; *see also Cont'l Ins. Co. v. Superior Court*, 32 Cal. App. 4th 94, 116-17 (1995) ("ultimate purpose" of rule against communications with represented parties "is to preserve the confidentiality of attorney-client communications").

Here, Plaintiff makes no showing that anything privileged or remotely prejudicial was disclosed during his communications with Fenwick. His three sentence declaration is completely devoid of facts from which the court could find a continuing adverse effect in this lawsuit. And the six lines of his brief ostensibly showing prejudice are conclusory, unreasonable on their face, and unsupported by the evidence. Plaintiff does not claim—nor can he—that any factual information not otherwise available to Defendants was revealed, or that any attorney-client confidences were sought or disclosed. Rather, he essentially argues that because counsel talked to him directly, he thought he would be free to personally litigate against StorageTek in the *STK I* case. "Mr. Pulgram's direct communications to Yue on numerous substantive issues in the *Netbula v. StorageTek* case led Yue to believe that StorageTek would deal with Netbula directly via its principal, instead of through counsel." *See* Motion at 3:9-15.

The Court need read no further than the exhibits to Yue's motion to see the folly of this position. *See* Yue Declaration, Ex. A ("It is not appropriate to require Defendants to respond to such a major request for substantive relief -- for a preliminary injunction -- until after the propriety of your participation in this action is first determined. . . . [A]s you no doubt anticipated, we oppose your request to intervene and your request to substitute in as a party."; *id.* Ex. B ("Please advise Dr. Yue to stop contacting us directly about matters regarding which he is not individually a party."). And of course, Plaintiff offers no explanation for how his supposed belief that *StorageTek* would "deal with" him directly has anything to do with this case against *Chordiant*.

In sum, Plaintiff's motion fails to show that the alleged misconduct will have a continuing effect on the proceedings against Chordiant. His motion must be denied.

OPPOSITION TO MOTION FOR DISQUALIFICATION -13- CASE NO. C-08-00019-MJJ

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Disqualification of Defense Counsel.

Dated: April 1, 2008

Respectfully submitted,

FENWICK & WEST LLP

By: /s/ Jedediah Wakefield
Jedediah Wakefield

Attorneys for Defendants
CHORDIANT SOFTWARE, INC.,
DEREK P. WITTE, STEVEN R. SPRINGSTEEL
and specially appearing for OLIVER WILSON

26257/00401/LIT/1282081.2

OPPOSITION TO MOTION FOR DISQUALIFICATION -14- CASE NO. C-08-00019-MJJ