1   DONGXIAO YUE
    2777 ALVARADO ST., SUITE C
2   SAN LEANDRO, CA 94577
    Telephone:    (510) 396-0012
3   Facsimile:    (510) 291-2237
    E-Mail:       ydx@netbula.com
4
5   *Pro Se*

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10  DONGXIAO YUE,                          Case Nos. C07-05850-JW
                                                     C08-0019-JW (related case)
11                      Plaintiff,
                                           **PLAINTIFF'S CONSOLIDATED REPLY**
12          v.                             **IN SUPPORT OF MOTION TO**
                                           **DISQUALIFY DEFENSE COUNSEL**
13                                         **FENWICK & WEST, LLP**

14  Storage Technology Corporation, et al.,
                                           [Civil Local Rule 11-4, 11-6]
15
                        Defendants.        Date: June 9, 2008
16                                         Time: 9:00 AM
                                           Dept: 8, 4th Floor
17  -------------------------------------  Judge: Honorable James Ware

18  DONGXIAO YUE,

19                      Plaintiff,

20          v.

21  Chordiant Software, Inc., et al.,

22

23

24

25

26
                                      -1-
27
    Case Nos. C07-05850-JW, C08-0019-JW       CONSOLIDATED REPLY ISO MOTION TO
28                                                  DISQUALIFY DEFENSE COUNSEL

FILED

APR 1 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 3

BACKGROUND .................................................................................................. 3

ARGUMENT 5

    I.    Fenwick must be disqualified because it received related information from Yue in confidence ................................................................................. 5

        1.    The *Yue v. SUN* case and the *Netbula v. Distinct* case are substantially factually related ................................................. 5

        2.    An unverifiable claim of screening cannot relieve Fenwick from its ethical obligations of confidentiality and loyalty......................... 6

        3.    Defense counsel's excuse of delay by Plaintiff is unavailing...................... 7

    II.    Mr. Pulgram Communicated Directly to Yue on Netbula Matters Represented by Attorney Ms. Vonnah M. Brillet Without Her Authorization ........................................................................................................... 8

    III.    Mr. Pulgram Should be Disqualified for Offering Legal Advices to an Unrepresented Party ..................................................................... 10

CONCLUSION ................................................................................................. 13

<u>Cases</u>

*Crane v. State Bar*,
    30 Cal.3d 117 (1981)...................................................................... 10

*Hitachi, Ltd. v. Tatung Co.*,
    419 F. Supp.2d 1158 (N.D.Cal. 2006) ........................................... 6

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
    No. C 07-03752 JSW (N.D.Cal. 10-29-2007)............................... 8

*Molski v. Mandarin Touch Restaurant*,
    359 F. Supp.2d 924 (C.D.Cal. 2005)............................................. 12

*River West, Inc. v. Nickel*,
    188 Cal. App. 3d 1297, 1311 *(1987)*............................................ 8

Case Nos. C07-05850-JW, C08-0019-JW               CONSOLIDATED REPLY ISO MOTION TO DISQUALIFY DEFENSE COUNSEL

**INTRODUCTION**

In this consolidated Reply Brief in support of Motion to Disqualify Defense Counsel in the above captioned cases, Plaintiff, Dongxiao Yue ("Yue"), further shows that defense counsel Fenwick & West, LLP ("Fenwick") must be disqualified on the following grounds:

1)    A Fenwick attorney, Claude Stern, acted as an Early Neutral in a prior case involving PowerRPC and JavaRPC disputes and he presumably shared the confidences with other Fenwick attorneys, including Fenwick partners Connie Ellerbach and Jedediah Wakefield;

2)    A Fenwick attorney, Laurence Pulgram, communicated directly with Yue regarding substantive issues of the *Netbula v. SUN* case without authorization of Netbula's former counsel;

3)    Laurence Pulgram offered legal advices to Yue, in cases where Yue is an unrepresented party.

This Reply Brief is supported by the Declaration of Ms. Vonnah M. Brillet -- Netbula, LLC's former counsel-- ("Brillet Decl.") executed on April 15, 2008 and the Declaration of Dongxiao Yue ("Yue Decl.") executed on April 17, 2008.

**BACKGROUND**

Yue developed the PowerRPC software since 1994. In July 1996, he founded Netbula, LLC to market the PowerRPC software. The first version of PowerRPC was published in September 1996. Yue always owned the copyright of the PowerRPC work created before Netbula was founded.

In November 2002, in the course of a lawsuit involving RPC products, Netbula and its competitor Distinct Corporation ("Distinct") had an Early Neutral Evaluation ("ENE") session at

-3-

CONSOLIDATED REPLY ISO MOTION TO
DISQUALIFY DEFENSE COUNSEL

1 | the office of Fenwick & West, LLP. In the ENE session, Yue talked to Claude Stern, the Fenwick
2 | attorney, about PowerRPC and JavaRPC, in confidence.  Yue Decl., at ¶¶ 1-3.

3 |     In 2003, Connie L. Ellerbach, a partner at Fenwick, sent Yue a certified letter about Netbula's
4 | use of the JavaRPC product name, alleging potential infringement of SUN's Java mark. Yue Decl,
5 | at ¶6.
6
7 |     In January 2006, Netbula filed a copyright infringement action against Symantec Corporation
8 | ("Symantec") et al (Case No. C06-0711, the "Symantec case"), alleging the infringement of
9 | PowerRPC.

10 |    In December 2006, Netbula filed another copyright action against Storage Technology
11 | Corporation ("StorageTek"), Sun Microsystems, Inc. ("SUN") et al. (Case No. C07-07391, the
12 | "Netbula v. SUN case") alleging infringement of PowerRPC.
13
14 |    SUN later counter-claimed Yue personally for infringing the Java mark and unfair competition.
15 | The Symantec defendants and SUN defendants are represented by Fenwick.

16 |    However, Yue did not realize the connection between Claude Stern, Connie L. Ellerbach and
17 | the Symantec and SUN litigation team until sometime in July 2007, after Fenwick attorneys
18 | showed surprising level of knowledge about the Netbula v. Distinct dispute in deposing Yue as a
19 | witness in the Symantec case. Yue Decl., at ¶¶ 7-14

20 |    On October 22, 2007, pursuant to FRCP 24(a), acting pro se, Yue filed a motion to intervene
21 | and join as a party in the Netbula v. SUN (C06-07391) case.
22
23 |    During this time, Defense counsel Laurence Pulgram sent numerous emails directly to Yue,
24 | discussing the substantive issues in the Netbula v. SUN (C06-07391-MJJ) case. Mr. Pulgram also
25 | communicated with Yue on Yue's then prospective lawsuit against SUN. Mr. Pulgram "advised"
26
27
28

-4-

CONSOLIDATED REPLY ISO MOTION TO DISQUALIFY DEFENSE COUNSEL

1    Yue on various legal issues in the *Yue v. SUN* case and *Yue v. Chordiant Software, Inc.* case. Yue

2    Decl., at ¶¶ 18-19.

3                                               **ARGUMENT**

4    **I.       Fenwick must be disqualified because it received related information from Yue in**

5    **         confidence**

6    **         1.   The *Yue v. SUN* case and the *Netbula v. Distinct* case are substantially factually**

7    **              related**

        First, the *Netbula v. Distinct* case (the "*Distinct* case") was about PowerRPC and JavaRPC

8    marks and related claims and counterclaims. The *Distinct* case was closely related to the market

9    and value of PowerRPC and JavaRPC, the licensing of these technologies and the RPC software

10   market in general. A key question in the *Netbula v. Distinct* case was the value of PowerRPC.

11   According to defense counsel, the instant cases also involve "value of the copyrighted work" (i.e.,

12   
13   PowerRPC) and "pricing history" which is "crucial evidence as to the market value or reasonable

14   royalty for the software at issue." Docket No. 22 of the *Yue v. SUN* case, p.4:3-26.

15        Second, the *Netbula v. Distinct* case also involved copyright dispute, as shown in the following

16   document request in the related *Netbula v. Symantec* case. Yue Decl., at ¶¶ 11-12.

17

18   **DOCUMENT REQUEST NO. 22**

19        All DOCUMENTS CONCERNING alleged copyright infringement by NETBULA,

20   including but not limited to DOCUMENTS CONCERNING accusations by DISTINCT that
     NETBULA was engaged in copyright infringement, as set forth in Paragraph 13 of Defendant

21   Distinct Corporation's Supplemental Counterclaims, *Netbula, LLC v. Distinct Corp.*, Case No. C-

22   02-1253-JL (N.D. Cal.).

23   Dated: October 12, 2006              FENWICK & WEST LLP

24

25                                        By: _____
                                              Jedediah Wakefield
26

27                                              -5-

1   On March 9, 2007, Mr. Wakefield wrote following about the request above:

2       ...Netbula has produced a single document, a letter sent by counsel for
        **Distinct Corporation ("Distinct") alleging that PowerRPC infringed**
3       **Distinct's copyright** and demanding that Netbula confirm that it will
        stop distributing its product.
4

5   Exhibit A attached to the Declaration of Dongxiao Yue (emphasis added).

6       Third, in the *Netbula v. Symantec* case, Mr. Wakefield deposed Yue at great length about

7   copyright and trademark dispute between Netbula and Distinct, involving both PowerRPC and

8   JavaRPC. Yue Decl., at ¶¶ 13-16.

9       These facts show that the instant cases are closely related to the *Netbula v. Distinct* dispute.

10  **2. An unverifiable claim of screening cannot relieve Fenwick from its ethical obligations of**
11  **confidentiality and loyalty**

12

13      Defense counsel relies on the case of *County of Los Angeles*, 223 F.3d at 995-996 for the

14  proposition that Fenwick should not be disqualified because the information Fenwick obtained in

15  the ENE session was "screened." However, similar arguments were considered but rejected by this

16  judicial district in the case of *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp.2d 1158 (N.D.Cal. 2006).

17      In *Hitachi*, the law firm implemented an ethical wall to insulate a lawyer "**prior to** entering an
18  appearance" in that case by even setting up a separate library. *Id.* at 1160. Noting that "[m]otions
19  to disqualify counsel are decided under state law[1]," Judge Breyer found that *County of Los*
20  *Angeles* "[has] not altered the established rule of vicarious disqualification." *Id.* at 1162.
21

22      The established law in California rejects ethical walls and neither
        *Speedee Oil* nor *County of Los Angeles* reverse *Klien, Henriksen, or*
23      *Flatt*... district courts have not universally rushed to adopt the more
        flexible approach foretold in *County of Los Angeles*.
24

25  _____
    [1] 419 F. Supp.2d. at 1160.
26

27                                        -6-

CONSOLIDATED REPLY ISO MOTION TO
28                                                              DISQUALIFY DEFENSE COUNSEL

*Id.* at 1164. "Even if ethical walls were permissible the court would still disqualify [law firm]". *Id.*

In addition, Mr. Claude Stern acquired the confidences in 2002. Fenwick could not have possibly foreseen the current PowerRPC copyright litigations back in the 2002 - 2005 period and could not have possibly implemented "ethical walls" since then.

Mr. Wakefield had been working closely with Claude Stern since 2001[2]. Connie L. Ellerbach has been a partner of Fenwick since at least December 2002[3]. Since there were no ethical walls among Mr. Stern, Ms. Ellerbach and Mr. Wakefield back then, there was nothing in 2002-2003 to rebut the presumption of shared confidences among Mr. Wakefield, Ms. Ellerbach and Claude Stern -- even assuming the presumption is rebuttable. Therefore, Mr. Wakefield and Ms. Ellerbach[4] must be disqualified, and as a result Fenwick must be vicariously disqualified.

## 3. Defense counsel's excuse of delay by Plaintiff is unavailing

Plaintiff only made the connection between Claude Stern, Connie Ellerbach and Fenwick after he was deposed by Mr. Wakefield about the *Netbula v. Distinct* dispute in June 2007.

Fenwick should have followed ethical standards and disqualified itself from the very beginning of the cases. Instead, it presumably took advantage of the confidences it obtained in the ENE session and obtained vast amount of additional discovery on the *Netbula - Distinct* dispute. In July 2007, Yue wrote about the ENE session in a declaration, bringing the issue to the attention of Fenwick attorneys. Fenwick did not disqualify itself either. Yue Decl., at ¶¶ 4-17.

---

[2] See, e.g., http://www.fenwick.com/pressroom/5.1.1.asp?mid=118&loc=SD (An intellectual property case which was led by partner Claude Stern and backed by associates Jed Wakefield.), last accessed on April 14, 2008.

[3] See http://www.fenwick.com/pressroom/5.1.1.asp?mid=35&loc=FN last accessed on April 14, 2008.

[4] For the same reason, anyone was in Fenwick in November 2002 and did not leave Fenwick must be disqualified.

-7-

CONSOLIDATED REPLY ISO MOTION TO
DISQUALIFY DEFENSE COUNSEL

1   Moreover, "'mere delay' in making a disqualification motion is not dispositive. The delay

2   must be *extreme* in terms of time *and* consequence." *River West, Inc. v. Nickel,* 188 Cal. App. 3d

3   1297, 1311 *(1987)* (emphasis added). In the case of *Levi Strauss & Co. v. Abercrombie & Fitch*

4   *Trading Co. No. C 07-03752 JSW* (N.D.Cal. 10-29-2007), Judge White disqualified the counsel

5   after 20 months into the case, because "even if the Court assumes that the clock should have

6   started in January 2006, it concludes that [the law firm] has not established the type of extreme

7   prejudice that would warrant denying [opposing party's disqualification] motion." *Id.* at page 8.

8

9   Since Plaintiff only became aware of the disqualifying grounds in July 2007 or later, there

10  is little delay in bringing the motions for disqualification. Also, both the *Yue v. SUN* case and *Yue*

11  *v. Chordiant Software, Inc.* cases are less than six months old. No discovery has been conducted in

12  either case. There is no extreme consequence if Fenwick is disqualified.

13  **II.    Mr. Pulgram Communicated Directly to Yue on Netbula Matters Represented by**

14  **Attorney Ms. Vonnah M. Brillet Without Her Authorization[5]**

15  Uninvited, Mr. Pulgram sent a lengthy email to Yue on October 25, 2007, which stated in part:

16      I would also note that, as you no doubt anticipated, we oppose ... your
        request to substitute in as a party. We also oppose Ms. Brillet's request to
17      withdraw as counsel prior to determination of the long-scheduled
        summary judgment motion that is to be heard on November 27 pursuant
18      to the Court's scheduling order... we do not believe that a purported
        assignment of rights to you personally, a year into the litigation, changes
19      those result. Ms. Brillet remains counsel of record, and her opposition to
        the summary judgment motion on behalf of Netbula is due in the ordinary
20      course.
21

22

23  Although Mr. Pulgram incorrectly characterized Netbula's motion to substitute party pursuant

24  to FRCP 25(c ) as Yue's request, such an error does not change the fact that he was

25  _____

26  [5] Mr. Pulgram's emails to Yue are included in Exhibit B to the Declaration of Yue.

27                                          -8-

28  Case Nos. C07-05850-JW, C08-0019-JW          CONSOLIDATED REPLY ISO MOTION TO
                                                  DISQUALIFY DEFENSE COUNSEL

1   communicating to Yue about Netbula's FRCP 25(c) motion. The rest of the email was plainly

2   about Netbula's case, which was represented by Ms. Brillet.

3          On the same day, Mr. Pulgram sent the following email to Yue about SUN's summary

4   judgment motion in the *Netbula v. SUN* case.

5
          Dear Mr. Yue:
6          Your claim that a single declaration, filed a few hours after midnight,
           precludes consideration of the summary judgment motion that was timely
7          filed, and that you had been aware was coming for eight months, is
           untenable. The "25 pages" of materials in the declaration consisted of two
8          pages of text, the two underlying contracts already of record in this action,
           two emails produced to Netbula long ago, and blank page separators. I
9          cannot imagine that you would claim prejudice, but if you do, I would be
           happy to afford you nine additional hours to submit a declaration. Sun
10         will not withdraw its motion.
11         Laurence Pulgram

12

13         Since Mr. Pulgram was freely communicating to Yue on the Netbula matter, on October 26,

14  2007, Yue sent an email to Mr. Pulgram about filing a new action based on the copyrights Yue

15  personally owned. Mr. Pulgram responded to the above email as follows.

16
           Mr. Yue,
17         I will confer with my client and respond to you next week.
           Laurence Pulgram
18

19         On October 31, 2007, Mr. Pulgram sent the following email to Ms. Brillet and Yue.

20         We do not intend to address Dr. Yue with respect to such matters, as
           Netbula is represented by counsel.
21         However, Dr. Yue's reference below to a December 16, 2005 letter from
           Sun threatens, for a second time, to breach the express agreement of
22         confidentiality that Sun required before the settlement discussions of
           which it is a part. His reference to his desire to use extrinsic evidence to
23         interpret the license agreements has also previously been addressed. This
           suggests that you may not have transmitted to him the attached prior
24         response, as we requested.
25

26                                              -9-
27
    ──────────────────────────────────────────────────────────────
28  Case Nos. C07-05850-JW, C08-0019-JW        CONSOLIDATED REPLY ISO MOTION TO
                                                DISQUALIFY DEFENSE COUNSEL

The message above shows that Mr. Pulgram knowingly communicated to Yue about the *Netbula v. SUN* case. He says he should not communicate to Yue, nevertheless, he sends the email directly to Yue, in an attempt to suppress certain evidence in Netbula's case.

Ms. Brillet never authorized or consent to such direct communications. In fact, Ms. Brillet stated such direct communications were willful violation of attorney ethics. Yue Decl., at ¶20. Defense counsel alleged that Ms. Brillet actively encouraged the direct communications on December 6, 2007[6]. This allegation is soundly refuted by Ms. Brillet. See, Brillet Decl., at¶¶ 1-5. On December 6, 2007, Yue spoke with Mr. Wakefield about the *pro se* Petition for Writ of Mandamus Yue filed in the Ninth Circuit[7]. In addition, all the email communications quoted above were made before December 6, 2007.

Mr. Pulgram initiated the direct communications with Yue on substantive matter represented by Ms. Brillet, and he persisted on making such direct communications even after Ms. Brillet questioned him about such communications. Under such circumstances, Mr. Pulgram should be disqualified or otherwise sanctioned. See, e.g., *Crane v. State Bar*, 30 Cal.3d 117 (1981) (attorney was suspended because of letter sent by his staff to a represented party).

**III.    Mr. Pulgram Should be Disqualified for Offering Legal Advices to an Unrepresented Party**

Mr. Pulgram sent numerous legal advices on cases in which Yue is a *pro se* plaintiff or litigant. For instance, on October 29, 2007, he wrote to Yue:

---

[6] Plaintiff noted that in his declaration, Mr. Wakefield placed the December 6, 2007 event before October 22, 2007 and omitted the date. See Wakefield Declaration at ¶ 15.
[7] Mr. Wakefield filed a declaration about this conversation on the docket of the *Netbula v. SUN* case. See, Declaration of Jedediah Wakefield dated December 10, 2007, Docket No. 127 of the C06-7391-JW case, p.2:15-23.

-10-

CONSOLIDATED REPLY ISO MOTION TO
                                                        DISQUALIFY DEFENSE COUNSEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First, we do not believe that you are an appropriate plaintiff to enforce Netbula's copyrights. Our position in this regard will be fully spelled out in our filing on Tuesday opposing your request to be substituted as a plaintiff in the Sun action. (We have cited a couple of cases in the MAR filed on Friday, but that is just to advise the court of the issue, not to argue it in full). To the extent that you are not an appropriate plaintiff in the existing action by Netbula against Sun, you would be equally inappropriate in any new action that you may intend to file as Netbula's assignee.

Second, in the event that the Court disagrees with Sun's position in this regard and concludes that you could be an appropriate plaintiff, in that situation it would be highly inappropriate for you to commence a separate lawsuit about the same subject. You have already attempted to substitute in the Sun action, and to intervene there. Commencing a separate lawsuit would unnecessarily proliferate litigation, at least if the claims that you wish to raise are of a subject matter and causes of action duplicative of the existing action. Sun cannot imagine just what claims it is that you wish to add, and therefore cannot tell you whether or not they must be joined in the present lawsuit (assuming that you are entitled individually to raise such claims at all, which we believe we are not). Therefore, please advise what those purportedly new claims would be, so I can respond to them. Indeed, it is customary, before requesting a party's consent to amendment of claims, to provide a copy of the proposed amendments.

Third, before you commence any threatened new action, it is incumbent upon you to wait until Judge Jenkins has ruled on your pending requests for intervention and substitution. It is wholly inappropriate in such circumstances to commence yet another action after having presented the currently pending motions to Judge Jenkins. Further, any effort to seek a TRO or other preliminary relief in a second action would be entirely inappropriate, given not only the ruling on the TRO by Judge Zimmerman, but also the fact that you have personally already requested preliminary relief in your now pending motion to intervene in the existing Sun case.

We therefore suggest that you consider the consequences very seriously before filing such inappropriate pleadings--and obtain the advice of qualified counsel before you do so. Magistrate Judge Chen's ruling should have demonstrated that filing unwarranted motions is a serious matter and has very real consequences.

-11-

CONSOLIDATED REPLY ISO MOTION TO DISQUALIFY DEFENSE COUNSEL

> I realize, of course, that I cannot keep you from filing with the Court whatever it is that you choose to file. It only costs a few hundred dollars to commence a lawsuit that could cost thousands to defend, and which Sun would seek to recover from you personally thereafter. I therefore reiterate the importance of your obtaining counsel as to all the consequences before you act.

The email above again contained many issues that were represented by Ms. Brillet – such as Netbula's motion to substitute party and SUN's opposition.

On Yue's effort to protect his personally owned copyrights, Mr. Pulgram's message mirrors the letter in *Molski v. Mandarin Touch Restaurant*, 359 F. Supp.2d 924 (C.D.Cal. 2005) in many aspects. Even the threat of attorneys' fees is similar. In *Molski*, the attorneys advised the unrepresented defendant that it would be very expensive to retain attorneys to defend the prospect lawsuit. Here, Mr. Pulgram advised Yue that SUN will spend a lot of attorneys' fees and seek them from Yue.

Mr. Pulgram's conduct, coupled with his advice to Judge Martin J. Jenkins to exclude Yue from the October 31, 2007 hearing of SUN's administrative motion to vacate the hearing of Yue's motion to intervene and join as a party in the *Netbula v. SUN* case, was highly prejudicial.

Plaintiff will give another example of Mr. Pulgram's legal advice to Yue in matters where Yue is an unrepresented party.

Judge Jenkins stated in one of his orders:

> During the November 20, 2007 hearing, the Court instructed Yue that he could not file motions, notice hearing dates, or speak in court unless he had leave of court or until he was given permission to represent himself.[8]

---

[8] During the December 14, 2007 hearing, Yue attempted to object to SUN's oral motion for the instant *Yue v. SUN* case, which was then presided over by Judge Illston.

-12-

Case Nos. C07-05850-JW, C08-0019-JW    CONSOLIDATED REPLY ISO MOTION TO DISQUALIFY DEFENSE COUNSEL

1    Given the existence of such an order[9], on December 5, 2007, Mr. Pulgram sent Yue an email,

2    asking Yue to file a motion in the *Netbula v. SUN* case. Mr. Pulgram wrote:

3              Judge Jenkins' order that Dr. Yue not file papers... I do not know why it
              would be assumed, without more, that this order precludes filings that
4              specifically relate to claims as to which Dr. Yue actually is a party.

5

6    As the hearing transcript shows, Judge Jenkins recognized that Yue was not trying to assert

7    the rights of Netbula. But Judge Jenkins made it clear that Yue was not "given permission to

8    represent himself." Remarkably, Mr. Pulgram re-interpreted Judge Jenkins's order for Yue. Mr.

9    Pulgram's invitation for Yue to file a motion on the *Netbula v. SUN* docket was asking Yue to

10   violate an explicit court order, which may result in contempt proceedings against Yue. Mr.

11   Pulgram's misleading legal advice to Yue was highly prejudicial.

12

13   Due to page limit, Plaintiff is unable to analyze all the communications to Yue from Mr.

14   Pulgram on substantive matters represented by Netbula's former counsel Vonnah M. Brillet, and

15   Mr. Pulgram's legal advice to Yue where he is an unrepresented party. Plaintiff can provide

16   additional supporting documents if the Court requires him to do so.

17

18                                        **CONCLUSION**

19

20   Plaintiff has been severely prejudiced by defense counsel's breach of confidence and trust,

21   direct communications on matters represented by counsel and "legal advice" on matters where

22   Plaintiff was unrepresented. Plaintiff respectfully asks the Court to disqualify defense counsel

23   from the instant cases and the related cases.

24

25   _____

[9] At the November 20, 2007 hearing, Judge Jenkins did not indicate that Yue could request leave of court to
file motions.

26

27                                          -13-

28   Case Nos. C07-05850-JW, C08-0019-JW          CONSOLIDATED REPLY ISO MOTION TO
                                                  DISQUALIFY DEFENSE COUNSEL

1

2

Respectfully submitted,

3

4    Dated: April 17, 2008

5

6                                              DONGXIAO YUE (*Pro Se*)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                  -14-

27                                              CONSOLIDATED REPLY ISO MOTION TO
     Case Nos. C07-05850-JW, C08-0019-JW         DISQUALIFY DEFENSE COUNSEL
28