IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Dongxiao Yue, | NO. C 08-00019 JW |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING PLAINTIFF'S MOTION TO DISQUALIFY** |
| v. | |
| Chordiant Software, Inc., et al., | |
| Defendants. | |

## I. INTRODUCTION

Dr. Dongxiao Yue ("Plaintiff" or "Dr. Yue"), in *pro per*, brings this action against Chordiant Software, Inc. ("CSI"), Derek Witte, Steven Springsteel, and Oliver Wilson (collectively, "Defendants"), alleging seven counts of copyright infringement.

Presently before the Court are the parties' various motions. The Court conducted a hearing on June 30, 2008. Based on the papers submitted to date and oral argument at the hearing, the Court GRANTS Defendants' Motions and DENIES Plaintiff's Motion.

## II. BACKGROUND

In a Complaint filed on January 2, 2008, Plaintiff alleges as follows:

> Plaintiff is an individual residing in Alameda County, California, and is the sole owner of the copyrights at issue.[1] Plaintiff is the founder, president and sole employee of

---

[1] (Complaint for Compensatory Damages, Disgorgement, Injunctive Relief, and Attorneys' Fees ¶ 6, hereafter, "Complaint," Docket Item No. 1.)

Netbula, LLC ("Netbula").[2] CSI is a Delaware corporation with its principal place of business in Cupertino, California. (Complaint ¶ 7.) Defendant Wilson is the program manager for the "Marketing Director Product Suite" for CSI. (Id. ¶ 8.)[3] Defendant Witte is the Vice President, General Counsel and Secretary of CSI. (Id.) Defendant Springsteel is the Chairman, President and CEO of CSI. (Id.)

From 1994 to 1996, Plaintiff developed remote procedure software technology that enables a program on a local computer to execute a command on a remote computer over a network and to return data to the local computer. (Id. ¶ 10.) The software was developed for UNIX, Microsoft Windows NT and Windows 95 platforms. (Id.)

In July 1996, Plaintiff founded Netbula, a Delaware Limited Liability Company, to market and sell the software under the name "PowerRPC." (Id. ¶ 11.) Plaintiff retained ownership in all copyrights developed prior to his creation of Netbula; none of these copyrights were registered with the Copyright Office ("Unregistered Copyrights"). (Id. ¶ 12.) All derivative copyrights in works developed by Plaintiff subsequent to the founding of Netbula were properly registered with the Copyright Office ("Registered Copyrights") and assigned to Netbula. (Id.)

On September 26, 2007, Netbula executed a written copyright assignment, transferring all rights to the Registered Copyrights for Power RPC software created before January 1, 2007 back to Plaintiff. (Id. ¶ 13.) The copyright assignment also assigned all past and future claims of infringement of the Registered Copyrights to Plaintiff. (Id.)

//

---

[2] (Plaintiff's Opposition to Defendants' Motion to Dismiss and Strike, Docket Item No. 31, hereafter, "Opposition" at 6; Complaint, Ex. B.)

[3] Plaintiff does not allege Wilson's state of residence in his Complaint. However, other Court filings indicate that Wilson lives and works in New Hampshire.

2

In 2004, Chordiant Software International ("Chordiant UK"), a company operating in United Kingdom, purchased one SDK license and 1,000 runtime licenses[4] for PowerRPC from Netbula. (Id. ¶ 19.) Defendant Wilson is an employee of CSI in California – not Chordiant UK. Sometime in 2007, Wilson contacted Netbula. (Id. ¶ 22.) Plaintiff was not aware of CSI's existence until this communication. (Id. ¶ 21.) From April 2007 to August 2007, Plaintiff (acting in his capacity as a member and officer of Netbula) and Wilson conversed through a series of emails. (Id. ¶¶ 22-24.) Through these communications, Plaintiff learned that PowerRPC was used in CSI's Chordiant Marketing Director ("CMD"). (Id. ¶ 23.) Wilson also indicated he had developed software for Windows Vista using PowerRPC. (Id. ¶ 22.) In the ensuing months, Plaintiff made several more inquiries, some of which involved Defendants Witte and Springsteel. (Id. ¶¶ 22-30.) Based on these conversations and online research, it became apparent that CSI was using PowerRPC in a way which required licenses that CSI did not have. (Id. ¶ 23.)

On the basis of the allegations outlined above, Plaintiff asserts seven counts of Copyright Infringment against Defendants. (Id. ¶¶ 41-80.)[5]

Presently before the Court are the following motions:[6]

(1)  Defendant Oliver Wilson's Motion to Dismiss (hereafter, "Wilson Motion," Docket Item No. 20);

---

[4] These licenses were allegedly limited for use with Windows NT, Windows 2000, Windows XP and Windows Server 2004 systems.

[5] Prior to the current litigation and the assignment of Netbula's copyrights to Plaintiff, Netbula brought a series of copyright infringement suits. In 2006, Netbula brought suit against Bindview Development Corp., Greenwich Capital Markets, Inc., and Storage Technology Corp. and Sun Microsystems, Inc. (Netbula, LLC v. Bindview Dev. Corp., C 06-00711; Netbula, LLC v. Greenwich Capital Mar., Inc., C 06-01743; Netbula, LLC v. Storage Tech., C 06-07391.) In 2007, Dr. Yue, acting in *pro per*, sued Storage Technology and Sun Microsystems. (Yue v. Storage Tech., C 07-05850.) However, in that case Dr. Yue was ordered to substitute counsel and did not proceed *pro se*.

[6] Also pending on the Docket is Plaintiff's Motion for Disqualification of Assigned Judge. (Docket Item No. 37.) This motion was made while the case was pending before Judge Martin J. Jenkins in the San Francisco Division. In light of the reassignment of the case to Judge James Ware, the Court DENIES Plaintiff's motion as moot.

3

(2) Defendants' Motion to Dismiss and Strike (hereafter, "CSI Motion," Docket Item No. 29); and

(3) Plaintiff's Motion for Attorney Disqualification (hereafter, "Disqualify Motion," Docket Item No. 32).

### III.  STANDARDS

**A.  Personal Jurisdiction**

Motions to dismiss for lack of personal jurisdiction are brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Although the defendant ordinarily files such a motion, it is the plaintiff that bears the burden of proof as to the necessary jurisdictional facts.  Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984).  However, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists if the defendant files a motion to dismiss as an initial response.  Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  To make a *prima facie* showing, the plaintiff need only demonstrate facts that, if true, would support jurisdiction over the defendant.  Data Disc, 557 F.2d at 1285.  The plaintiff must make a *prima facie* showing as to each defendant.  Rush v. Savchuk, 444 U.S. 320, 332 (1980).

A federal district court may exercise personal jurisdiction to the same extent as a state court of the state in which the district court sits.  Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 108 (1987).  Since California courts extend jurisdiction to the very limits of the federal Constitution, federal courts in California need only determine whether the exercise of jurisdiction would comport with due process.  See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986).

Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Later cases have clarified that the minimum contacts must be "purposeful acts."  Burger King v. Rudzewicz, 471 U.S. 462, 474 (1985).  A long-arm statute may, consistent with constitutional due process, allow assertion of personal jurisdiction over individuals in a corporation if a court finds those individuals to have sufficient minimum contacts with the forum state.  See

1   Davis v. Metro Prods., Inc., 885 F.2d 515, 522 (9th Cir. 1989).  However, a finding that the court

2   has personal jurisdiction over a corporation does not automatically give the court personal

3   jurisdiction over its employees.  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 (1984).

4   **B.     Failure to State a Claim**

5      Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against

6   a defendant for failure to state a claim upon which relief may be granted against that defendant.

7   Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient

8   facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

9   (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984).

10  For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the

11  complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v.

12  City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved

13  in favor of the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

14     However, mere conclusions couched in factual allegations are not sufficient to state a cause

15  of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845

16  F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief

17  that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974

18  (2007).  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect

19  by amendment.  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

20  **IV.  DISCUSSION**

21  **A.     Defendant Wilson's Motion to Dismiss for Lack of Personal Jurisdiction**

22     Defendant Wilson moves to dismiss for lack of personal jurisdiction on the ground that

23  Plaintiff has not adequately established his contacts with the forum.  (Wilson Motion at 1.)  Since

24  Plaintiff does not contend the Court has general jurisdiction over Defendant Wilson, the Court limits

25  its consideration to the issue of whether it may exercise specific personal jurisdiction over him.

*United States District Court*
*For the Northern District of California*

(Plaintiff's Opposition to Defendant Wilson's Motion to Dismiss, hereafter, "Opposition," Docket Item No. 30.)

When a defendant's contacts are not sufficiently systematic and continuous for a court to assert general jurisdiction, the Ninth Circuit uses the following test to evaluate a defendant's contacts for purposes of determining whether specific jurisdiction applies:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 805 (9th Cir. 2004).  "A claim for copyright infringement sounds in tort, and therefore a purposeful direction analysis is appropriate." Goldberg v. Cameron, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007).  To analyze purposeful direction, a three part "effects test" is used, which requires that the defendant must have (1) committed an intentional act (2) expressly aimed at the forum state (3) causing harm that the defendant knows is likely to be suffered in the forum state.  Schwarzenegger, 374 F.3d at 805.  Cf. Goldberg, 482 F. Supp. 2d 1136 (applying the effects test to a copyright case).

Since Defendant Wilson is alleged to have infringed Plaintiff's copyrights, Plaintiff's action sounds in tort and the effects test is appropriate.  Under the effects test, the Court considers whether Defendant has purposefully directed his actions at California.  With respect to Wilson, Plaintiff alleges as follows:

> Wilson communicated with Plaintiff over email regarding CSI's use of Power RPC in its products.  (Complaint ¶¶ 22-24.)  Based on these communications Plaintiff learned that Defendants were responsible for the sale of infringing products and services into California.  (Id. ¶ 4.)  Defendants targeted their harmful acts toward Plaintiff, who resides in California.  (Id.)

Thus, the facts alleged as constituting Wilson's personal participation in the alleged copyright infringement are (1) a series of emails between him and the Plaintiff and (2) his development of software using PowerRPC.

6

1    Even if these acts constitute "intentional acts" for purposes of the effects test, it is unclear
2 whether they are expressly aimed at the forum state. Under the effects test, it is not enough to show
3 that Plaintiff happens to reside in the forum state and was injured there. Plaintiff must also
4 demonstrate that Wilson both *expressly aimed* his intentional acts at the forum state and *knew* the
5 harm he caused is likely to be suffered in the forum state. Plaintiff has made a conclusory assertion
6 that Wilson targeted his actions against Plaintiff. Plaintiff fails to allege that Wilson ever contacted
7 Plaintiff (other than in response to emails), that Wilson visited Plaintiff in California or elsewhere,
8 or that Wilson had any reason to know that Plaintiff was located in California.

9    Since it is inappropriate to attribute the acts of a company to its employee to establish
10 personal jurisdiction over the employee, the Court declines to include the sale of products or
11 services by CSI, which allegedly incorporate PowerRPC, in its analysis. See Keeton, 465 U.S. at
12 781. Accordingly, the Court finds it does not have personal jurisdiction over Defendant Wilson.
13 The Court GRANTS Defendant Wilson's motion to dismiss for lack of personal jurisdiction.

14 **B.    Defendants' Motion to Dismiss**

15    Defendants move to dismiss on the grounds that (1) Plaintiff lacks standing to assert
16 copyright claims regarding copyrights owned by Netbula and subsequently transferred to Plaintiff,
17 and (2) Plaintiff may not proceed in federal court solely on the basis of alleged infringement of
18 copyrights which are unregistered. (CSI Motion at 9.) The Court proceeds to consider each issue in
19 turn.

20    **1.    Plaintiff's Standing to Pursue Netbula's Claims**

21    At issue is whether Plaintiff is the real party in interest.

22    An action must be prosecuted in the name of the real party in interest. See Fed. R. Civ. P.
23 17(a), 19. "The basic purpose of the rule requiring that every action be prosecuted by the real party
24 in interest is to protect a defendant from subsequent similar actions by one not a party to the initial
25 action." Pacific Coast Agr. Export Ass'n v. Sunkist Growers, Inc., 526 F.2d 1196, 1208 (9th Cir.
26 1975).

28    7

In determining whether Dr. Yue is the real party in interest in this case, the Court considers whether it will recognize the assignment of the Registered Copyrights and all past, present and future rights from Netbula to Dr. Yue. As previously noted, Plaintiff is the founder, president and sole employee of Netbula. (Complaint, Ex. B.) On September 26, 2007, Netbula executed a copyright assignment which assigned all "rights, ownership, title, and interest" of the Registered Copyrights to Plaintiff. (Complaint ¶ 13, Ex. B.) Plaintiff filed his Complaint in *pro per* on January 2, 2008.

Plaintiff's position as the sole principle and employee of Netbula makes it difficult for the Court to distinguish his interests from Netbula's. The assignment of the Registered Copyrights on September 26, 2007, took place during Netbula's litigation with Storage Technology Corp.. (See Netbula v. Storage Tech. Corp., Case No. 06-07391-MJJ ("STK I").) In that case, Dr. Yue attempted to substitute himself as *pro se* counsel representing Netbula, an action which the Court did not permit. (STK I, Docket Item No. 56.) Just after the assignment, Dr. Yue filed a separate action *pro se* against the same defendants named in the STK I case. (See Yue v. Storage Tech. Corp., Case No. 07-05850-JW ("STK II").) In the Court's Order Granting Defendants' Motion to Dismiss the STK II action, the Court found that "the rights of Netbula and Yue are deeply intertwined," and that Dr. Yue could not represent Netbula *pro se*. (STK II Dismissal, Docket Item No. 5 at 6.)

Generally, "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. A corporation, however, may only appear in federal court through licensed counsel. Civ. L.R. 3-9(b); Rowland v. California Men's Colony, 506 U.S. 194 (1993); Schueneman v. 1st Credit of Am., LLC., 2007 WL 1969708, at *7 (N.D. Cal. 2007). A corporation may not be represented by an unlicensed lay-person, regardless of how close the association with the corporation is. Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985).

*Pro se* intervention by a corporation's president and sole shareholder with interests identical to the corporation's is an impermissible end run around § 1654 and the requirement that corporations

8

be represented by licensed counsel. U.S. v. High Country Broad. Co., Inc. 3 F.3d 1244 (9th Cir. 1993). Similarly, assignment of a corporation's claim to its president and sole shareholder so that he may proceed *pro se* on behalf of the corporation is impermissible. Palazzo, 764 F.2d 1381; Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20 (2d Cir. 1983); Cf. High Country, 3 F.3d 1244.

> To allow the lay individual to appear *pro se* . . . would be allowing him to flout a well-established and purposeful public policy by means of a procedural device. The lay individual chose to accept the advantages of incorporation and must now bear the burdens of that incorporation; thus, he must have an attorney present the corporation's legal claims.

Jones, 722 F.2d at 22.[7]

Here, despite naming different Defendants in this case, Plaintiff interests remain identical to those of Netbula's. This is apparent from the fact that Netbula was "founded . . . to market PowerRPC software" and that a central defense in this dispute is that Netbula license agreements with Chordiant UK negate any possible copyright infringement by Defendants. Essentially, Netbula is the real party in interest in this case, and the assignment of the Registered Copyrights from Netbula to Plaintiff does nothing more than circumvent the long standing rule that a corporation must be represented by an attorney. In choosing to incorporate Netbula as an LLC, Plaintiff achieved certain benefits provided by the corporate form. Plaintiff, now having chosen that form, may not circumvent the requirement that a corporation must be represented by counsel when it suits him. Therefore, the Court finds that Plaintiff cannot bring the claims based on the Registered Copyrights which Netbula assigned to him without having Netbula substituted in as the Plaintiff with appropriate representation by counsel.

Accordingly, the Court GRANTS Defendants' motion to dismiss for failure to state a claim. The Court will grant Netbula leave to file an Amended Complaint alleging the claims for infringement of the Registered Copyrights.

---

[7] The Second Circuit dismissed this action but gave the plaintiff 45 days to retain counsel. Id. at 23.

9

### 2. The Court's Jurisdiction over Plaintiff's Unregistered Copyright Claims

Plaintiff contends that even if he cannot proceed on the basis of his Registered Copyrights, he has standing to proceed solely based on his Unregistered Copyrights.

"[N]o action for infringement of [a] copyright . . . shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411. The Ninth Circuit has found that "[registration of a copyright] is a prerequisite for suit" although "[it] is not a prerequisite to a valid copyright." S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 (9th Cir. 1989). Thus, "[o]nce a court has jurisdiction over an action for [registered] copyright infringement under [§ 411], the court may grant injunctive relief to restrain infringement of any copyright, whether registered or unregistered." Perfect 10, Inc. v. Amazon.com, Inc., 487 F.3d 701, 710 n.1 (9th Cir. 2007).[8]

Here, the Court has already found that Plaintiff may not proceed with the Registered Copyrights in *pro se*. Without a claim involving a registered copyright, the Court lacks jurisdiction to hear claims regarding any of Plaintiff's copyrights which are not registered. Accordingly, the Court finds that Plaintiff cannot bring the claims based on the Unregistered Copyrights without first substituting in Netbula to the proceed on the Claims based on Registered Copyrights and retaining counsel to represent the company with respect to those claims.

### D. Plaintiff's Motion to Disqualify Counsel

Plaintiff moves to disqualify the Fenwick and West ("Fenwick") firm due to an attorney at the firm's role in an Early Neutral Evaluation ("ENE") of Netbula, LLC v. Distinct Corp. (the "Distinct Case"). (Disqualify Motion at 1.)[9]

---

[8] Prior to Copyright Act of 1976, a plaintiff could proceed with an infringement lawsuit for unregistered copyrights even though the copyright application had been filed after the original complaint but before an amended pleading. Roth Greeting Cards v. United Card Co., 429 F.2d 1106 (9th Cir. 1970) (interpreting the Copyright Act of 1909).

[9] Plaintiff also moves to disqualify Attorney Laurence Pulgram individually for alleged conduct that violates rules of the Court and professional ethics. With respect to Pulgram, Plaintiff fails to identify any conduct which potentially violates the California Rules of Professional Conduct. Therefore, the motion to disqualify Pulgram is DENIED.

Ruling on a motion to disqualify counsel is a "discretionary exercise of the trial court's inherent powers." Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co., 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Civil Local Rule 11-4 provides that every attorney before the Northern District must "comply with the standards of professional conduct required of members of the State Bar of California." When two cases involve different parties or different incidents, and the earlier case was mediated by a member a law firm, disqualification of the mediator and his law firm is appropriate "only if the two cases are 'substantially factually related.'" In re County of Los Angeles, 223 F.3d 990, 994 (9th Cir. 2000) (citing Poly Software Int'l, Inc. v. Su, 880 F. Supp. 1487, 1494 (D. Utah 1995)). Circumstances which effectively "quarantine a tainted lawyer" may preserve the confidences of the parties sufficient to avoid disqualification. County of Los Angeles, 223 F.3d at 996.

In this case, Plaintiff contends that Claude Stern, a former Fenwick attorney, served as a neutral evaluator for Netbula's 2002 ENE[10] session in Netbula, LLC v. Distinct Corp. (Disqualify Motion at 3.) The parties do not dispute that Stern served in this capacity. In dispute is whether Stern's service taints Fenwick such that no lawyer from the firm may represent a party with adverse interests to Dr. Yue.

An issue for consideration is whether the Distinct Case and this case are substantially factually related. In Netbula, LLC v. Distinct Corp., Netbula, Dr. Yue's company, sued Distinct Corp. for trademark infringement. (Disqualify Motion at 3.) In this case, Dr. Yue sues Defendants for copyright infringement. (See Complaint.) While both suits involve issues related to PowerRPC, the plaintiffs and defendants in each are different. Dr. Yue may be in privity with Netbula, but he is not alleged to have owned Netbula's copyrights until September 26, 2007–five years after the Distinct Case was filed. (Complaint ¶ 13.)

The Court also considers the circumstances which have attenuated any risk of a breach of confidence to other Fenwick attorneys stemming from Stern's exposure in the Distinct Case. Stern's

---

[10] An ENE is a confidential session where parties make compact presentations of their case. The evaluator is an "experienced neutral lawyer with subject matter expertise." ADR Local R. 5-1.

role as an early neutral evaluator in Netbula, LLC v. Distinct Corp. required him to treat all information from the ENE as confidential and not use the information "for any purpose . . . in any pending or future proceeding in this court." ADR Local R. 5-12(a).  Moreover, Stern left Fenwick in June 2003–seven months after the ENE–and testified that any documents from the ENE have been destroyed. (Deposition of Claude Stern ¶ 6, Docket Item No. 57.)  Stern's departure and disposal of documents operate as an ethical barrier between Stern and Fenwick, which has been in place since 2003.[11]

Accordingly, the Court DENIES Plaintiff's Motion to Disqualify Fenwick from representing Defendants.

## V. CONCLUSION

The Court GRANTS Defendant Wilson's Motion to Dismiss for Lack of Personal Jurisdiction.  Since Plaintiff had an opportunity in his opposition to demonstrate whether he can cure the defects in his Complaint regarding Defendant Wilson's contacts with California, but failed to do so, the Court finds that leave to amend would be futile.  Therefore, the Complaint against Defendant Wilson is DISMISSED with prejudice.

Due to Plaintiff Dr. Yue's lack of standing to prosecute the claims for infringement of the Registered Copyrights, the Court GRANTS Defendants' Motion to Dismiss for Failure to State a Claim.  The Court grants leave to Netbula to file, within 45 days of the date of this Order, an Amended Complaint alleging the claims for infringement of the Registered Copyrights.  Dr. Yue may join in that action as a co-plaintiff to allege claims for infringement of his Unregistered Copyrights.  However, as discussed above, Netbula must be represented by counsel.

The Court DENIES Plaintiff's Motion to Disqualify Defense Counsel.

---

[11] In a separate Order, the Court denied Plaintiff's motion to take the deposition of Claude Stern.  The parties informed the Court that Plaintiff nevertheless gave notice he intends to proceed with the deposition. (Docket Item Nos. 125, 130.)  In light of Plaintiff's attempt to proceed with the deposition, Defendants or Stern may file a motion before Magistrate Judge Elizabeth D. Laporte for a protective order or to quash or modify the subpoena as appropriate. Fed. R. Civ. P. 26(c), 45(c)(3)(A); see Unigene Laboratories, Inc. v. Apotex, Inc., 2007 WL 2972931, at *2 (N.D. Cal. 2007).

12

The parties shall appear for a Further Case Management Conference presently set for **September 15, 2008 at 10 a.m.** On or before **September 5, 2008**, the parties shall meet and confer and file a Joint Case Management Statement.

Dated: July 24, 2008

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Albert L. Sieber asieber@fenwick.com
Jedediah Wakefield jwakefield@fenwick.com
Laurence F. Pulgram lpulgram@fenwick.com
Liwen Arius Mah lmah@fenwick.com

Dr. Dongxiao Yue
2777 Alvarado Street, Suite C
San Leandro, CA 94577


**Dated: July 24, 2008**                                        **Richard W. Wieking, Clerk**

                                                                **By:  /s/ JW Chambers                    **
                                                                    **Elizabeth Garcia**
                                                                    **Courtroom Deputy**