1  LAURENCE F. PULGRAM (CSB NO. 115163)
   *lpulgram@fenwick.com*
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   *jwakefield@fenwick.com*
3  MARY E. MILIONIS (CSB NO. 238827)
   *mmilionis@fenwick.com*
4  LIWEN A. MAH (CSB NO. 239033)
   *lmah@fenwick.com*
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94104
   Telephone: (415) 875-2300
7  Facsimile:  (415) 281-1350

8  Attorneys for Defendants
   CHORDIANT SOFTWARE, INC.,
9  DEREK P. WITTE, and STEVEN R. SPRINGSTEEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NETBULA, LLC and DONGXIAO YUE,<br><br>Plaintiffs,<br><br>v.<br><br>CHORDIANT SOFTWARE, INC., a Delaware corporation; DEREK P. WITTE, an individual; and STEVEN R. SPRINGSTEEL, an individual,<br><br>Defendants. | Case No.  5:08-cv-00019-JW (HRL)<br><br>**CHORDIANT SOFTWARE, INC.'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY ADJUDICATION**<br><br>Date: December 14, 2009<br>Time: 9:00 a.m.<br>Location: Courtroom 8, 4th Floor<br>Judge: The Honorable James Ware |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

INTRODUCTION ................................................................................................................ 1

STATEMENT OF THE FACTS .............................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I. LEGAL STANDARDS FOR SUMMARY ADJUDICATION ........................................... 4

II. NETBULA'S LICENSE AGREEMENTS PERMIT DISTRIBUTION BY RESELLERS ................................................................................................................ 5

III. CHORDIANT IS A RESELLER OF CMD FOR CHORDIANT INTERNATIONAL .................................................................................................... 7

IV. DEFENDANTS ARE ENTITLED TO SUMMARY ADJUDICATION THAT AS A RESELLER OF CMD, CHORDIANT IS ENTITLED TO DISTRIBUTE NETBULA'S RUNTIME COMPONENTS ALONG WITH CMD TO THE SAME EXTENT AS CHORDIANT INTERNATIONAL ................................................. 8

CONCLUSION ................................................................................................................... 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................... 5

*Bourne v. Walt Disney Co.*,
    68 F.3d 621 (2nd Cir. 1995) ......................................................................................... 7

*First Nat'l Ins. Co. v. FDIC*,
    977 F. Supp. 1051 (S.D. Cal. 1997) .............................................................................. 5

*Green Book Int'l Corp. v. Inunity Corp.*,
    2 F. Supp. 2d 112 (D. Mass. 1998) ............................................................................... 6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................................................... 5

*Netbula, LLC v. Bindview Dev. Corp.*,
    516 F. Supp. 2d 1137 (N.D. Cal. 2007) ........................................................................ 7

*Vintage Verendah Inc. v. Mastercraft Int'l. Inc.*,
    2006 U.S. Dist. LEXIS 91718 (E.D. Ark. Dec. 15, 2006) ............................................ 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 .................................................................................................................. 1

Fed. R. Civ. P. 56(b) ............................................................................................................. 5

Fed. R. Civ. P. 56(c) ............................................................................................................. 4

Fed. R. Civ. P. 56(d) ............................................................................................................. 5

Fed. R. Civ. P. 56(d)(1) ........................................................................................................ 5

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on December 14, 2009, in courtroom 8 of the United States District Court, Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California, at 9:00 a.m. or as soon thereafter as this matter may be heard, Defendants Chordiant Software, Inc. ("Chordiant") and Derek P. Witte ("Witte") will and hereby do move pursuant to Fed. R. Civ. P. 56 for summary adjudication that because Prime Response, Ltd. and its successor Chordiant Software International, Ltd. had the right to distribute their software with Netbula's runtime components under their distribution licenses granted by Netbula, LLC, such distribution rights are equally possessed by Chordiant as a reseller.

This motion is based upon this Notice and Memorandum of Points and Authorities, the Declarations of Jedediah Wakefield and Keith Kitchen, the records on file in this action, and on such oral argument as the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In Defendants' first summary judgment motion in this case, this Court found that there existed issues of fact as to scope of the licenses granted by Netbula. One thing, however, became abundantly clear through the briefing for that motion: there is absolutely no dispute that Netbula has, at the very least, granted to Chordiant Software International, Ltd. ("Chordiant International") and its predecessor Prime Response, Ltd. licenses to develop software using Netbula's Software Development Kit ("SDK"), and to distribute their software along with Netbula's ONC RPC software runtime components. Plaintiffs have repeatedly admitted as much and this Court has agreed. It is also undisputed that Prime Response and Chordiant International used Netbula's SDK in the development of Chordiant Marketing Director ("CMD"), which was distributed with Netbula's supporting runtime components—just as the license permitted.

Chordiant International owns title to CMD. CMD, and its predecessor in name, Prime@Vantage, were initially developed by the U.K. entity, Prime Response, Ltd. (now known as Chordiant International) and the ownership of CMD in that entity has remained to this day. Over the years, Chordiant International has distributed CMD through resellers, including its

1 parent, Defendant Chordiant Software, Inc.

2 Following from these undisputed facts, Defendants seek summary adjudication that Chordiant, as Chordiant International's reseller, had the right to distribute CMD to the full extent of any right that either Prime Response, Ltd. or its successor Chordiant International had to distribute CMD along with Netbula's runtime components. Issuance of summary adjudication on this issue will resolve one of the principal issues in this action, eliminating any need to try the status of Chordiant as licensee, and leaving any trial to the scope of the license and damages.

## **STATEMENT OF THE FACTS**

As mentioned above, one result of the previous summary judgment motion brought by Defendants in this matter is a set of undisputed facts relating to Netbula's licensing of the Netbula ONC RPC product to Chordiant International (previously named Prime Response, Ltd.).

For background, Netbula's ONC RPC is an implementation of remote procedure call technology, a technology developed and standardized by Sun Microsystems, which essentially allows one computer to remotely give instruction to another computer—for example allowing a "client" to communicate and give instructions to a "server." *See* Dkt. No. 138 at 2-3; Declaration of Oliver Wilson in Support of Motion for Summary Judgment ("Wilson Decl."), Dkt. No. 106 ¶ 6. Netbula's ONC RPC product consists of two separately licensed components: a software development kit ("SDK") and separate runtime files. Dkt. No. 138 ¶¶ 18, 20-21; Wilson Decl. ¶ 8. The SDK is designed to be used by computer programmers to develop applications making use of Remote Procedure Call technology. Dkt. No. 138 ¶ 18; Wilson Decl. ¶ 8. Once those programs are developed, the runtime files are designed for distribution to end-users along with the developer's programs. *Id*. Netbula separately grants (1) development licenses for use of the SDK in developing software applications and (2) distribution licenses, to distribute the supporting runtime files to end-users with the licensee's application. Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment or Summary Adjudication, Dkt. No. 120 ¶¶ 10-11.

In January of 2000, Prime Response, Ltd. (now Chordiant International) paid Netbula $895 for a development license (a license for use of the SDK) and $5995 for a license to

distribute Netbula's runtime files with Chordiant International's products. Wakefield Decl. Ex. 7 (invoice from Netbula to Prime Response, Ltd.). Using the SDK, Prime Response, Ltd. developed Prime@Vantage – a software product designed to allow companies to effectively plan, design, execute, and analyze sophisticated advertising and marketing campaigns. Wilson Decl. ¶¶ 6, 12.

Subsequently, in 2001, Defendant Chordiant Software, Inc. acquired Prime Response, Inc. (the parent corporation of Prime Response, Ltd.) through a reverse triangular merger. Wilson Decl. ¶ 4, Exs. A, B. Following that merger, Prime Response, Ltd., which was formerly a subsidiary of Prime Response, Inc., persisted as a subsidiary of Chordiant Software, Inc. Chordiant changed the name of Prime Response, Ltd., to Chordiant Software International, Ltd. (referred to above "Chordiant International"). *Id.* ¶ 5. Following the name change from Prime Response, Ltd., Chordiant International rebranded the Prime@Vantage product as Chordiant Marketing Director ("CMD"). Declaration of Keith Kitchen in Support of Defendants' Motions for Summary Judgment ("Kitchen Decl.") ¶ 19. Chordiant International owns the intellectual property and title in that product, by virtue of the original creation of Prime@Vantage by Prime Response, Ltd in the U.K. *Id.* Chordiant International entered into written reseller agreements, first in 2002, and later in 2005, authorizing Chordiant to resell the CMD software. *Id.* ¶ 20, Ex. I. Chordiant International entered into similar reseller agreements with other affiliates (*e.g.*, German, Spanish, etc.) for their distribution of CMD. *Id.* CMD is the accused product in this case.

In 2004 Netbula granted an "upgrade" license. Plaintiffs claim this 2004 license was granted to Chordiant International. *See* Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment or Summary Adjudication, Dkt. No. 120 at 12-14 (acknowledging the existence of a license "upgrade" grant to Chordiant International based on the previous license to Prime Response, Ltd.); Wakefield Decl. Ex. 9 at 405:23-406:20 (Dr. Yue reiterating Plaintiffs' position that only Chordiant International was licensed under 2004 upgrade

CHORDIANT'S NOTICE OF MOTION, AND MPA ISO OF SUMMARY ADJUDICATION    -3-    CASE NO. 5:08-CV-00019 JW (HRL)

purchase).[1] Following the purchase of this upgrade, Netbula sent Chordiant International a CD containing the updated software. Wakefield Decl. Ex. 10 (copy of CD cover). This CD contained, among its many files, a blank template licensing agreement. Wilson Decl. ¶ 23; Wakefield Decl. Exs. 2 (file list of the 2004 CD), 11 (printout of 2004 License).

The 2004 License template provided on the CD included a section entitled "Netbula ONC RPC and POWERRPC Distribution License." Wakefield Decl. Ex. 11. That section purports to specify the terms under which distribution of Netbula's runtime files can be distributed by its licensees. *Id.* Dr. Yue has testified that this was in fact a part of the standard license template. *Id.* Ex. 9 at 416:20-417:8. Specifically, that section provides for a right to distribute Netbula's software components along with the licensee's product to the licensee's "resellers, business partners and customers." *Id.* Ex. 11. Further, Plaintiffs concede that this provision did not differentiate between resellers who were affiliates of the licensee, or those who were not—that is, that a parent or related entity could act as a reseller to the same extent as any other entity. *See id.* Ex. 9 at 416:20-417:20 (Dr. Yue admitting that this provision did not restrict who could be a reseller).

In sum, it is undisputed that Chordiant International (first under the name Prime Response, Ltd. and then as Chordiant International) purchased licenses to distribute its product along with ONC RPC runtime files, and that Netbula did not restrict the use of resellers to facilitate such distribution.

## ARGUMENT

### I. LEGAL STANDARDS FOR SUMMARY ADJUDICATION

Summary judgment is appropriate where there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is

---

[1] Defendant Chordiant has contended, and still does contend, that the licenses granted by Netbula were always intended to cover, and did in fact extend to, Chordiant Software, Inc. as direct licensee, as well as Chordiant International. This Court found a question of fact as to that issue on the prior summary judgment motion. This motion assumes *arguendo* that Chordiant International was the intended licensee of Netbula, but argues that regardless of that fact, Chordiant Software, Inc. is nonetheless insulated from Plaintiffs' claims to the same extent as Chordiant International by virtue of it status as an authorized reseller—an issue not previously presented.

CHORDIANT'S NOTICE OF MOTION, AND MPA ISO OF SUMMARY ADJUDICATION  -4-  CASE NO. 5:08-CV-00019 JW (HRL)

1  "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could
2  find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the
3  suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).
4  Once the movant meets its initial burden of showing there is no genuine issue of material fact, the
5  non-movant has the burden of producing competent evidence and cannot rely on mere allegations
6  or denials in the pleadings. *Id* at 247-48, 256-57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith
7  Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Where the record taken as a whole could not lead a
8  rational trier of fact to find for the non moving party, there is no 'genuine issue for trial.'" *Id.* at
9  587.

Additionally, Rule 56(b) explicitly provides that "[a] party against whom relief is sought may move at any time . . . for summary judgment on all or *part* of the claim." Fed. R. Civ. P. 56(b) (emphasis added). Rule 56(d) explicitly directs that "[i]f summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." Further, after considering the evidence and interrogating the attorneys, "[t]he Court should then issue an order specifying what facts . . . are not genuinely at issue. The facts so specified must be treated as established in the action." Fed. R. Civ. P. 56(d)(1). As such, where individual issues can rightfully be adjudicated without trial, courts are directed to make such rulings even where it would not dispose of an entire claim. *See, e.g., First Nat'l Ins. Co. v. FDIC*, 977 F. Supp. 1051, 1055 (S.D. Cal. 1997). In the present case, the undisputed facts establish that, all rights that Prime Response, Ltd. and its successor Chordiant Software International, Ltd. had to distribute Netbula's runtime components under their distribution licenses granted by Netbula, LLC are equally possessed by Chordiant as a reseller.

## II. NETBULA'S LICENSE AGREEMENTS PERMIT DISTRIBUTION BY RESELLERS

As stated above there is simply no dispute that Netbula granted Chordiant International (first under the name Prime Response, Ltd. and then as Chordiant International) licenses to distribute Netbula runtime files as part of CMD (or any Chordiant International product).

Further, while no signed license agreements apparently exist with respect to these

CHORDIANT'S NOTICE OF MOTION, AND MPA ISO OF SUMMARY ADJUDICATION  -5-  CASE NO. 5:08-CV-00019 JW (HRL)

licenses, all of the evidence presented in this case makes it absolutely clear that Netbula has never restricted its licensees' ability to distribute its runtime software through resellers, not with respect to the 2000 license granted to Prime Response, Ltd. nor the 2004 license granted to Chordiant International. In fact, as mentioned above, the standard license form used by Netbula in 2004, and provided to Chordiant International, explicitly provided that Netbula's licensees had the right to distribute Netbula's runtime components along with their products to "resellers, business partners and customers." Wakefield Decl. Ex. 11. During his deposition in this case, Dr. Yue acknowledged that this provision was part of his standard license template during 2004. *Id*. Ex. 9 at 416:20-417:20. Further, Dr. Yue acknowledged that he had no intention that there be any restriction on what entities or people could act so act as resellers. *Id*. Thus, there is no evidence supporting an argument that affiliated companies could not be used as resellers.

Given that the only evidence addressing a right to distribute through resellers explicitly provides that such a right exists, assuming a prohibition on distribution through resellers, on either license, would be inexplicable. Moreover, such an assumption would be contrary to both reason and established law. There can be no material difference to Netbula, or any licensor for that matter, if software developed by an authorized licensee is distributed to the end-user, directly, or through an intermediary. Ultimately, the exact same software is still being distributed to the exact same end-user. Certainly, that someone else touches the software on the way to the end-user is not material. Rather, the only rational conclusion, and the one confirmed in the 2004 form, is that where a licensee is granted the right to distribute software, they are necessarily granted the subsidiary right to distribute that software through resellers if they so choose, or directly if they wish. Any contrary conclusion would fundamentally contradict that standard operating procedure in the software industry, where manufacturers generally distribute their products to customers by way of resellers.

Moreover, where no explicit restriction is placed on the distribution of software via resellers, such distribution is presumptively allowed. *See Green Book Int'l Corp. v. Inunity Corp.*, 2 F. Supp. 2d 112, 116 (D. Mass. 1998) (rejecting the argument that a right to "distribute" software to a licensee's "users" might turn on whether "users" referred to a licensee's customers,

1  or those customers' end-users and further noting that such a distinction "hardly seems to
2  matter."). Indeed, it would have made no sense for Netbula to restrict distributions, since Netbula
3  claims that it has always been paid based on the number of copies distributed. *See* Dkt. No. 138
4  at 5-7; Declaration of Dongxiao Yue In Opposition to Defendants' Motion For Summary
5  Judgment or Summary Adjudication, Dkt. No. 120 ¶¶ 7, 21-22.

6  Additionally, in light of the fact that there is no dispute regarding the existence of licenses
7  granted to Chordiant International and its predecessor in name, Prime Response, Ltd., it is
8  Netbula's burden to prove the existence of any restriction such as on the use of resellers. *See*
9  *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1151-52 (N.D. Cal. 2007)
10 ("Copyright disputes involving only the scope of the alleged infringer's license present the court
11 with a question that essentially is one of contract: whether the parties' license agreement
12 encompasses the defendant's activities.") (*citing Bourne v. Walt Disney Co.*, 68 F.3d 621, 631
13 (2nd Cir. 1995)). In *Bindview*, Netbula could not meet its "initial hurdle" of proving the terms of
14 the license restrictions it wished to enforce because it could produce no executed agreement. 516
15 F. Supp. 2d at 1151-52; *see also Vintage Verendah Inc. v. Mastercraft Int'l. Inc.*, 2006 U.S. Dist.
16 LEXIS 91718 (E.D. Ark. Dec. 15, 2006) (dismissing copyright claim where documents outlining
17 license were not in evidence). Here, Netbula cannot provide any evidence of a restriction on the
18 use of resellers.

19 Given this, and the fact that all the evidence presented clearly demonstrates that Netbula
20 never intended to restrict its licensees' ability to distribute its products through resellers, as a
21 matter of law no such restriction can be read into these licenses. Consequently, Defendants are
22 entitled to summary adjudication that the license agreements covering Prime Response, Ltd. and
23 Chordiant International permit distribution by resellers.

24 **III.    CHORDIANT IS A RESELLER OF CMD FOR CHORDIANT INTERNATIONAL**

25 There is no dispute that Chordiant Software, Inc. has at all times acted as a reseller of
26 CMD for Chordiant International, the successor to Prime Response, Ltd. *See* Kitchen Decl. ¶ 20.
27 As mentioned above, Prime Response, Ltd. originally developed the Prime@Vantage product
28 which was later rebranded as CMD. *Id*. ¶ 19. Subsequently, after Chordiant Software, Inc.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CHORDIANT'S NOTICE OF MOTION, AND
MPA ISO OF SUMMARY ADJUDICATION         -7-         CASE NO. 5:08-CV-00019 JW (HRL)

1   acquired Prime Response, Inc. through a reverse triangular merger, Prime Response, Ltd. was
2   renamed Chordiant Software International, Ltd. and took on the role of Chordiant's European
3   headquarters. *Id*. After the merger, the renamed Chordiant Software International, Ltd.
4   continued developing Prime@Vantage, now rebranded as CMD, and continued to own that
5   software. *Id*. Significantly, as within the various Chordiant entities, Chordiant International
6   holds ownership of the intellectual property in that product to this day. *Id*.

7   Consistent with Chordiant International's ownership of the CMD product, Chordiant
8   International has, since the early days of its distribution of the CMD product, entered into a series
9   of reseller agreements with other Chordiant entities, including Defendant Chordiant Software,
10  Inc. *Id*. ¶ 20, Ex. I. These agreements establish that Chordiant's role with respect to distribution
11  of the Chordiant International's products, including CMD, is as a "reselling affiliate" to Chordiant
12  International. *See id*. Ex. I at CHRD0032603, CHRD0032724, § 2 (providing for the
13  appointment of Chordiant as a "reselling affiliate" to Chordiant International); Kitchen Decl. ¶
14  20. Further, these agreements confirm Chordiant International's continuing ownership of the
15  products distributed by its reselling affiliates. *See id*. Ex. I at CHRD0032607, CHRD0032728, §
16  8.1 (providing the Chordiant International retains all "right, title and interest" in the software
17  provided to reselling affiliates); Kitchen Decl. ¶ 19.

18  These Reseller Agreements long predate the filing of this case or any other dispute
19  between Chordiant and Netbula (which first arose in 2007). They were entered in 2002 and 2005
20  *See id.* Ex. I. Similar agreements were entered by Chordiant International and other Chordiant
21  affiliates that resold CMD—affiliates that still have no pending claim with Netbula. *Id.* These
22  contracts' reflection of the relationship of Chordiant and Chordiant International are beyond
23  peradventure, thereby dispelling any question of fact.

24  **IV.    DEFENDANTS ARE ENTITLED TO SUMMARY ADJUDICATION THAT AS A
25          RESELLER OF CMD, CHORDIANT IS ENTITILED TO DISTRIBUTE
            NETBULA'S RUNTIME COMPONENTS ALONG WITH CMD TO THE SAME
26          EXTENT AS CHORDIANT INTERNATIONAL**

27  All of the above leads to one inexorable, undisputable conclusion. Because no party can
28  dispute that, at least, Prime Response, Ltd. and Chordiant International were licensed to distribute

Netbula's ONC RPC runtime files, and no party can dispute that these licenses allowed for the use of resellers, then Chordiant, as a legitimate reseller of CMD, had the same right to distribute these runtime files as Prime Response, Ltd. and Chordiant, respectively. Consequently, Defendants request summary adjudication, and a statement that it be deemed established for the purpose of this action, that all rights that either Prime Response, Ltd. or its successor Chordiant International had to distribute CMD with Netbula's runtime components under their respective licenses are equally possessed by Chordiant as a reseller.

## CONCLUSION

For the foregoing reasons, the Court should enter summary adjudication that any right that either Prime Response, Ltd. or its successor Chordiant Software International, Ltd. had to distribute CMD with Netbula's runtime components under their respective licenses is equally possessed by Chordiant Software, Inc. as a reseller.

Dated: November 9, 2009         FENWICK & WEST LLP


                                By:   /s/ Jedediah Wakefield
                                        Jedediah Wakefield

                                Attorneys for Defendants
                                CHORDIANT SOFTWARE, INC., DEREK P.
                                WITTE, and STEVEN R. SPRINGSTEEL