IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Dongxiao Yue, et al., | NO. C 08-00019 JW |
| Plaintiffs, v. | **ORDER RE: VARIOUS MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO EXCLUDE EXPERT TESTIMONY** |
| Chordiant Software, Inc., et al., | |
| Defendants. | |

Presently before the Court are various motions by the parties.[1] The Court conducted a hearing on December 21, 2009. The parties seek summary judgment on numerous grounds, and seek to exclude the testimony of several expert witnesses.[2]

As a preliminary matter, since the parties have filed some of the evidence supporting and opposing the Motions under seal, this Order only summarizes the sealed evidence and provides

---

[1] (Defendants' Motion to Exclude Testimony or Opinions from Plaintiffs' Technical Expert Richard G. Cooper, hereafter, "Motion Re Dr. Cooper," Docket Item No. 212; Plaintiffs' Motion to Exclude Testimony and Report of Philip Faillace, hereafter, "Motion Re Dr. Faillace," Docket Item No. 224; Defendants' Motion to Exclude Testimony of Scott Hampton, hereafter, "Motion Re Mr. Hampton," Docket Item No. 236, filed under seal; Plaintiffs' Motion for Partial Summary Judgment, hereafter, "Plaintiffs' Motion," Docket Item No. 229; Defendant Derek P. Witte's Motion for Summary Judgment, hereafter, "Witte's Motion," Docket Item No. 239; Defendant Chordiant Software, Inc.'s Motion for Summary Judgment, hereafter, "Chordiant's Motion," Docket Item No. 240; Defendants' Motion for Summary Judgment as to Statutory Damages and Plaintiffs' Attorneys' Fees, hereafter, "Defendants' Motion," Docket Item No. 241.)

[2] For a detailed discussion of the facts and procedural history of this case, see the Court's previous Orders of March 20, 2009 and July 9, 2009. (Docket Item Nos. 121, 142.)

general citations to the sealed evidence, but does not reveal their contents to protect the parties' confidential information.

**A. <u>Standards</u>**

    **1. Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ." <u>Id.</u> at 323. The non-moving party "may not reply merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. <u>See, e.g.</u>, <u>Masson v. New Yorker Magazine, Inc.</u>, 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. <u>T.W. Elec. Serv. v. Pac. Elec. Contractors</u>, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. <u>Anderson</u>, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986).

    **2. Exclusion of Expert Testimony**

Federal Rule of Evidence 702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education." The threshold for qualification is low, a

1 minimal foundation of knowledge, skill, and experience suffices. Hangarter v. Provident Life &
2 Accident Ins. Co., 373 F.3d 998, 1015-16 (9th Cir. 2004); see also Thomas v. Newton Int'l Enters.,
3 42 F.3d 1266, 1269 (9th Cir. 1994). When faced with a proffer of expert testimony, a district court
4 must determine whether the testimony is both reliable and relevant. Daubert v. Merrell Dow
5 Pharms., Inc., 509 U.S. 579, 589 (1993) ("Daubert I"). The court has broad discretion in assessing
6 both requirements. See United States v. Alatorre, 222 F.3d 1098, 1100 (9th Cir. 2000).

The reliability requirement ensures "that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). The offering party must show by a preponderance of the evidence (1) that the expert is qualified to render the opinion and (2) that the opinion offered has adequate support. Daubert I, 509 U.S. at 588-90. Expert testimony is not admissible if it is speculative. See Gen. Elec. v. Joiner, 522 U.S. 136, 146 (1997). To satisfy the relevance requirement, the proffered expert testimony must assist the trier of fact in understanding or determining a fact in issue. Daubert I, 509 U.S. at 591. In assessing relevance, the court must look to the governing substantive legal standard. See Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1320 (9th Cir. 1995) ("Daubert II").

**B.     Plaintiffs' Motion for Summary Judgment of Copyright Infringement**

Plaintiffs move for summary judgment of copyright infringement as to two pieces of Netbula software—the Netbula JRPC and the Netbula JRPC Software Developer's Kit ("SDK")—covered by registered copyrights TX 6-460-693 ("'693 Copyright") and TX 6-317-654 ("'654 Copyright"). (See Plaintiffs' Motion at 3-4.)

"Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . ." 17 U.S.C. § 102. Copyright infringement requires that the party asserting infringement show (1) ownership of a valid copyright, and (2) copying of elements of the work that are original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991); Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996). The Copyright Act addresses validity as follows:

> In any judicial proceedings the certificate of a *registration made before or within five years after first publication* of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.

17 U.S.C. § 410(c) (emphasis added). Originality requires that "the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist, 499 U.S. at 345. Whether a work is sufficiently original to warrant copyright protection is a question of fact. Dezendorf v. Twentieth Century-Fox Film Corp., 99 F.2d 850, 850 (9th Cir. 1938); Creeks U.S.A. Corp. v. Roger Gimbel Accessories, No. CV88-2748 (CBM), 1989 WL 168063, at *4 (C.D. Cal. Nov. 14, 1989).

Here, Plaintiffs submitted copies of the certificates of registration for the two copyrights at issue.[3] The '693 Copyright was registered on November 20, 2006. (Id., Ex. 4.) The '654 Copyright was registered on January 9, 2006. (Id., Ex. 5.) Both registration certificates state a first publication date of November 15, 1999, which is more than five years prior to either registration date. (Id., Exs. 4, 5.) Thus, the '693 and '654 Copyrights are not entitled to a statutory presumption of validity.

In light of the absence of a statutory presumption of validity, Plaintiffs have not met their burden to prove that the copyrights at issue are valid—*i.e.*, that the software at issue is sufficiently original to warrant copyright protection. In particular, although Plaintiffs represented that the software code was "written" entirely by Plaintiffs and was "100 percent Netbula," Plaintiffs have not met their burden to show that the software code that they wrote was in fact independently conceived by Plaintiffs as opposed to copied from other works.[4] Under this evidence, the Court finds a triable issue of fact as to the validity of the '693 and '654 Copyrights. Furthermore, the Court also finds a triable issue of fact as to whether Defendant Chordiant Software was licensed to use the software.[5]

---

[3] (See Declaration of Dongxiao Yue in Support of Plaintiffs' Motion for Summary Judgment or Summary Adjudication, Exs. 4, 5, hereafter, "Yue Decl.," Docket Item No. 230.)

[4] (See Declaration of Dongxiao Yue in Support of Plaintiffs' Reply Brief for the Motion for Summary Judgment or Summary Adjudication ¶¶ 8-12, Docket Item No. 303.)

[5] (See Yue Decl., Exs. 10, 28; Declaration of Liwen Mah in Support of Defendants' Opposition to Motion Partial Summary Judgment, Exs. 2, 10-12, Docket Item No. 265; Declaration of Saleem Abdelsayed in Support of Defendants' Opposition to Motion for Partial Summary

4

Thus, the Court finds that summary judgment as to infringement of the '693 and '654 Copyrights is not appropriate at this time.

Accordingly, the Court DENIES Plaintiffs' Motion.[6]

**C.    Defendants' Motions for Summary Judgment**

**1.    Defendants' Motion Re Statutory Damages and Attorney Fees**

Defendants move for summary judgment that Plaintiffs are not entitled to statutory damages and attorney fees as a matter of law because the alleged infringement commenced before Plaintiffs registered their copyrights. (Defendants' Motion at 1.)

To recover statutory damages or attorney fees in an action for copyright infringement, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work. Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 699 (9th Cir. 2008) (citing 17 U.S.C. 412(2)). "[T]he first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." Id. at 701. Under section 412(2), "a plaintiff may not recover an award of statutory damages and attorney's fees for infringements that commenced after registration if the *same defendant* commenced an infringement of the *same work* prior to registration." Mason v. Montgomery Data, Inc., 967 F.2d 135, 144 (5th Cir. 1992) (emphasis added); see also Bouchat v. Bon-Ton Dep't Stores, Inc., 506 F.3d 315, 331 (4th Cir. 2007); Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158-59 (2d Cir. 2007); Johnson v. Jones, 149 F.3d 494, 505-06 (6th Cir. 1998).

Here, the copyrights at issue were registered several years after the date of first publication of the copyrighted works. (See Fourth Amended Complaint, Exs. A-E, hereafter, "FAC," Docket

---

Judgment ¶¶ 10-20, Docket Item No. 266.)

[6] In light of the Court's denial of Plaintiffs' Motion, the Court DENIES as moot Defendants' Motion for Administrative Relief for Leave to File Defendants' Supplemental Opposition to Plaintiffs' Motion for Partial Summary Judgment. (See Docket Item No. 324.)

5

Item No. 138.) Thus, statutory damages and attorney fees will be available to Plaintiffs only if the copyrighted works were registered prior to commencement of the infringement.[7]

As a preliminary matter, Plaintiffs have conceded that they are not entitled to statutory damages or attorney fees with respect to infringement of any copyrights covering the ONC RPC software.[8] As to the JRPC software—the other copyrighted software alleged to have been infringed—Defendants distributed that software as part of their Chordiant Marketing Director ("CMD") product from 2001 to late 2007.[9] The earliest of Plaintiffs' copyrights was registered on October 18, 2005. (FAC, Ex. A.) Thus, infringement of the JRPC software copyrights commenced several years before any of the copyrights were registered.

Plaintiffs, however, contend that two new and distinct types of infringement of the '654 Copyright (relating to the JRPC software) began on October 30, 2006, after the January 9, 2006 registration date of the '654 Copyright, consequently entitling Plaintiffs to statutory damages and attorney fees for those new and distinct acts of infringement. (See Opposition to Defendants' Motion at 2-3; Yue Decl. Re Damages ¶¶ 6-13.) Specifically, Plaintiffs contend that Defendants began incorporating the "orpc.jar" file—a part of the JRPC software that had been distributed by Defendants since 2001 as part of CMD—into a newly released program distributed with CMD and

---

[7] The Court notes that one of the copyright registration certificates does not state a date of first publication. (See FAC, Ex. C.) However, this ambiguity is immaterial to the Court's analysis, since, as explained below, Defendants' alleged infringement commenced long before Plaintiffs registered their copyrights.

[8] (See Plaintiffs' Opposition Motion for Summary Judgment as to Statutory Damages and Plaintiffs' Attorneys' Fees at 1, hereafter, "Opposition to Defendants' Motion," Docket Item No. 289.) The Court notes that Plaintiffs' Opposition was not timely filed. Plaintiffs' counsel represented that he overlooked Defendants' Motion due to a "flurry of e-filing activity" on the day Defendants' Motion was filed. (See Declaration of Antonio L. Cortes Supporting Motion to Consider Late-Filed Brief ¶¶ 3-4, Docket Item No. 292.) The Court finds that Defendants will not be prejudiced by the Court's consideration of the untimely Opposition. The Court therefore GRANTS Plaintiffs' Motion to Consider Late-Filed Opposition Brief. (Docket Item No. 291.)

[9] (See Declaration of Dr. Philip Faillace in Support of Defendants' Reply Brief Regarding Statutory Damages and Plaintiffs' Attorneys' Fees ¶ 5, hereafter, "Faillace Decl.," Docket Item No. 314; Declaration of Dongxiao Yue in Opposition to Defendants' Motion for Summary Judgment on Statutory Damages and Attorneys' Fees ¶¶ 6-13, hereafter, "Yue Decl. Re Damages," Docket Item No. 290.)

6

that Defendants also caused the orpc.jar file to be copied into a new file directory among the CMD program files. (See Opposition to Defendants' Motion at 2-3; Yue Decl. Re Damages ¶¶ 6-13.) However, as Defendants point out, these acts were not materially different from the alleged infringement that had occurred from 2001 to 2006—*i.e.*, the unauthorized distribution of the same orpc.jar file as part of CMD. These "new" acts therefore do not warrant a separate date of commencement for the purposes of analyzing statutory damages and attorney fees. Thus, the Court finds that all of the alleged infringement commenced before Plaintiffs registered their copyrights.

Accordingly, the Court GRANTS Defendants' Motion and strikes Plaintiffs' request for statutory damages and attorney fees for the claim of copyrights infringement.

### 2. Defendant Chordiant's Motion Re Reseller Status

Defendant Chordiant Software, Inc. moves for summary judgment that "any right that either Prime Response, Ltd. or its successor Chordiant Software International, Ltd. had to distribute CMD with Netbula's runtime components under their respective licenses is equally possessed by Chordiant Software, Inc. as a reseller." ([Proposed] Order Granting Chordiant Software Inc.'s Motion for Summary Adjudication, Docket Item No. 240-1.)

Here, the parties do not dispute that a "license.txt" file was included on CDs that Plaintiffs mailed to Prime Response, Ltd. in 2000 and to Chordiant Software International, Inc. ("Chordiant International") in 2004.[10] The license.txt files contained licensing terms, but were not executed by the parties and left certain terms, such as price, blank. In particular, the license.txt files both state that the licensed software ("including runtime DLLs") is not for distribution "to any machine outside of your organization" without a "distribution license agreement from Netbula." (Yue Decl. Opp. Chordiant's Motion, Ex. 5; Wakefield Decl., Ex. 11.) The licenses also include sections stating the scope of such a distribution license. (See id.) The parties dispute whether they are bound by the

---

[10] (See Declaration of Dongxiao Yue in Opposition to Chordiant Software, Inc.'s Motion for Summary Judgment or Summary Adjudication, Ex. 5, hereafter, "Yue Decl. Opp. Chordiant's Motion," Docket Item No. 274; Declaration of Jedediah Wakefield in Support of Defendants' Motions for Summary Judgment, Ex. 11, hereafter, "Wakefield Decl.," Docket Item No. 242, partially filed under seal.)

7

license.txt files, and consequently, whether Chordiant International could distribute certain of Plaintiffs' software to Defendant Chordiant for resale as a component within Chordiant Marketing Director.

As the Court previously recognized, the evidence submitted by the parties includes invoices corresponding to the 2000 purchase and the 2004 purchase. (See Order Denying Defendants' Motion for Summary Judgment, Docket Item No. 142.) The invoice from 2000 shows that Prime Response Ltd. paid for an "ONC RPC Limited Distribution License (1000 machines)." (Yue Decl. Opp Chordiant's Motion, Ex. 4.) Similarly, the invoice from 2004 shows that Chordiant Software International, Inc. paid for "1000 ONC RPC WIN32 Client runtime upgrade." (Yue Decl., Ex. 16.) Under these undisputed facts, the Court finds that Plaintiffs granted to Chordiant International licenses under the terms of the license files included on the CDs in 2000 and 2004.

The issue becomes whether those licenses give Defendant Chordiant the right to *distribute* the purchased software. The license in 2000 (which the invoice shows Prime Response Ltd. paid for an "ONC RPC Limited Distribution License (1000 machines)"), under a section entitled "Netbula ONC RPC and PowerRPC Distribution License," states in relevant part:

> Netbula grants to [sic] a non-exclusive, perpetual, irrevocable license to distribute the Netbula RPC Supporting Programs and components set forth [in] Exhibit B (the 'Supporting Programs') along with your product.

(Yue Decl. Opp. Chordiant's Motion, Ex. 5.) Exhibit B to the 2000 license lists the following files: orpc.jar, Pmapsvc, Pwrpc32.dll, Portmap.exe, and Pmapsvc.exe. (Id.) Similarly, the license in 2004 (which the invoice shows that Chordiant International paid for "1000 ONC RPC WIN32 Client runtime upgrade"), under a section entitled "Netbula ONC RPC and PowerRPC Distribution License," states in relevant part:

> Netbula grants to YOUR_COMPANY, a non-exclusive, perpetual, worldwide, irrevocable license to copy, sublicense, transfer, demonstrate and distribute the Netbula RPC Supporting Programs and components . . . set forth [in] Exhibit B (the 'Supporting Programs') along with YOUR_COMPANY's product to YOUR_COMPANY's resellers, business partners and customers.

(Yue Decl., Ex. 16.) Exhibit B to the 2004 license lists the following files: Pwrpc32.dll, Portmap.exe, and Pmapsvc.exe. (Id.)

8

Upon review of the invoices and the language of the licenses, the Court finds that Chordiant International (as the successor to Prime Response Ltd.) had the right to distribute the files listed in the licenses to Defendant Chordiant. Furthermore, nothing in the language of the licenses as to distribution would prevent Defendant Chordiant from acting as a reseller of the listed files. Thus, the Court finds that the licenses allow Defendant Chordiant to act as a reseller of the listed files (as part of Chordiant Marketing Director) to the same extent that Chordiant International could sell or distribute the files.

Accordingly, the Court GRANTS Defendant Chordiant's Motion Re Reseller Status and declares that Chordiant has the same reseller rights as Chordiant International.

### 3. Defendant Derek Witte's Motion Re Vicarious Copyright Infringement

Defendant Derek Witte moves for summary judgment that Plaintiffs cannot prove their claim of vicarious copyright infringement against him on the ground that he lacked a direct and obvious financial benefit from the allegedly infringing activity of Defendant Chordiant Software, Inc. (Witte's Motion at 1.) Plaintiffs contend that they need further discovery before they can present a complete set of facts as to Defendant Witte's financial benefits resulting from the infringement, and they move pursuant to Federal Rule of Civil Procedure 56(f)(2) that the Court provisionally deny Defendant Witte's Motion so that Plaintiffs may conduct further discovery.[11] Plaintiffs further "seek a ruling that the [Fourth Amended Complaint] alleges *contributory* infringement without need for amendment." (Id. at 5 (emphasis added).)

#### 1. Federal Rule of Civil Procedure 56(f)(2)

As a preliminary matter, the Court addresses Plaintiffs' request that the Court provisionally deny Defendant Witte's Motion under Rule 56(f)(2) and allow further discovery.

Rule 56(f) provides:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1)

---

[11] (Plaintiffs' Opposition to Derek Witte's Motion for Summary Judgment at 1-3, hereafter, "Opposition Re Witte," Docket Item No. 275.)

9

deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

"To prevail under this Rule, parties opposing a motion for summary judgment must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists. The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (internal citations and quotations omitted). Courts deny Rule 56(f) requests where the movant has failed to diligently pursue previous opportunities for discovery. See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1026-27 (9th Cir. 2006).

Upon review of Plaintiffs' contentions as to discovery involving Defendant Witte, the Court finds that Plaintiffs have not shown that they lacked adequate opportunities to request relevant documents and information, or take a deposition of Defendant Witte.[12] At the very least, Plaintiffs knew of the importance of discovering information showing a direct financial benefit between Defendant Witte and the infringement as of the Court's March 20, 2009 Order dismissing claims against Defendant Witte, with leave to amend, for failure to show a direct financial benefit. (See Docket Item No. 121.) Additionally, the October 30, 2009 discovery deadline was set by the Court in May 2009 as a continuation of the then-existing discovery deadline. (See Docket Item No. 137.) Aware of the October 30, 2009 deadline, Plaintiffs agreed to postpone the deposition of Defendant Witte until after the close of discovery, and then were not available to take Defendant Witte's deposition on the two dates offered by Defendants after the close of discovery.[13] Under these facts, Plaintiffs have not shown that they lacked an adequate opportunity to take discovery as to Defendant

---

[12] The Court notes that on November 18, 2009, Magistrate Judge Lloyd denied a motion by Plaintiffs to compel discovery of Defendant Witte, including documents covering bonuses, stock options, and other financial benefits to which Defendant Witte was entitled while employed by Defendant Chordiant—mooting Plaintiffs' contention here that they need more time to obtain such information. (See Docket Item No. 260.)

[13] (See Declaration of Antonio L. Cortes Supporting Opposition to Derek Witte's Motion for Summary Judgment ¶ 4, hereafter, "Cortes Decl.," Docket Item No. 276.)

10

Witte. Furthermore, Plaintiffs have not proffered sufficient facts to show that any additional evidence that they seek as relevant to their Opposition to Defendant Witte's Motion actually exists. Thus, Plaintiffs have not made the required showing entitling them to relief under Rule 56(f). See Blough, 574 F.3d at 1091 n.5.

Accordingly, the Court DENIES Plaintiffs' request that the Court allow further discovery pursuant to Rule 56(f).

### 2. Merits of Plaintiffs' Claim for Vicarious Copyright Infringement

Having determined that Plaintiffs are not entitled to further discovery before the Court can rule on Defendant Witte's Motion, the Court turns to analyze the merits of the Motion.

To prove a claim of vicarious copyright infringement, "a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1173 (9th Cir. 2007). "Control" refers to the defendant's "right and ability to supervise the direct infringer," specifically, "a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." Id.

The essential aspect of the "direct financial benefit" inquiry is whether there is "a causal relationship between the infringing activity and any financial benefit a defendant reaps," irrespective of the magnitude of the benefit. Ellison v. Robertson, 357 F.3d 1072, 1079 (9th Cir. 2004). There must be an *obvious and direct* financial interest in the exploitation of copyrighted materials. Adobe Sys. Inc. v. Canus Prod., Inc., 173 F. Supp. 2d 1044, 1052 (C.D. Cal. 2001). The mere fact that a defendant is an officer and shareholder of an infringing corporation is "too attenuated" to show a "'direct' financial interest in the exploitation of copyrighted materials." Softel, Inc. v. Dragon Med. and Scientific Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997).

Similarly, a shareholder who receives compensation from an infringing corporation that is unrelated to infringing activity has a financial interest that is "too far removed from the alleged infringement to be considered a 'direct' financial interest." UMG Records, Inc. v. Veoh Networks Inc., No. 07 C 5744, 2009 WL 334022, at *6 (C.D. Cal. Feb. 2, 2009); Societe Civile Succession

Richard Guino v. Int'l Found. for Anticancer Drug Discovery, No. 06 C 01540, 2006 U.S. Dist. LEXIS 80768, at *19 (D. Ariz. Nov. 3, 2006). However, where a defendant is a high ranking executive with majority ownership, or receives payments directly related to the infringing activity, he can be held vicariously liable. See Thoroughbred Software Int'l v. Dice Corp., 439 F. Supp. 2d 758, 769 (E.D. Mich. 2006); Symantec Corp. v. CD Micro, Inc., 286 F. Supp. 2d 1265, 1275 (D. Or. 2003); Playboy Enters. v. Starware Publ'g Corp., 900 F. Supp. 438, 441 (S.D. Fla. 1995).

Here, Plaintiffs allege that Defendant Witte received a direct financial benefit from the infringing activity "[t]hrough Chordiant's Executive Bonus Plan ('EBP'), and through contracts to pay [Witte] bonuses based on the contract value of sales booked for CMD and related products and services . . . . The greater the sales of the infringing CMD product, the greater the financial gain realized by . . . Mr. Witte under the EBP." (FAC ¶ 46.)

However, upon review of the parties submissions of evidence as to a direct financial benefit, the Court finds that the bonus plan under which Defendant Witte was paid is not directly and obviously connected to the alleged infringing activity. In particular, Defendant Witte was paid an annual salary and a bonus that was computed as a percentage of the salary and was based on a comparison of the company's fiscal goals for the year versus the company's overall actual performance for that year. (See Kitchen Decl. ¶¶ 7-13, Exs. B-E.) Neither the bonus nor the fiscal goals against which it was measured were based on any expenses or profits specifically attributable to CMD; rather, they were based on the company's overall performance. (Id. ¶ 8.) Furthermore, Defendant Witte was never paid any profits or commissions for bookings or sales of CMD or any particular product. (Id. ¶ 7.) Finally, Defendant Witte has never held a majority of Defendant Chordiant's outstanding stock. (Id.) Thus, based on the evidence, the Court finds that Plaintiffs are not able to prove their claim for vicarious copyright infringement against Defendant Witte.[14]

---

[14] To the extent that Plaintiffs contend in their Opposition that their allegations sufficiently state a claim for *contributory* copyright infringement, the Court finds this contention inapposite to Defendant Witte's Motion directed at Plaintiffs' claim for *vicarious* infringement. (See Opposition Re Witte at 3-5.) Plaintiffs have not alleged a cause of action against Defendant Witte for contributory copyright infringement and there is no legal basis for the Court to construe their current

Accordingly, the Court GRANTS Defendant Witte's Motion.

**D.** **Motions to Exclude Expert Testimony**

### 1. Dr. Richard G. Cooper

Defendants move "to exclude any testimony or other evidence from Plaintiffs' technical expert, Richard Cooper" on the ground that Plaintiffs failed to provide an opening or rebuttal report from Dr. Cooper. (Motion Re Dr. Cooper at 1.) To date, Plaintiffs have not filed an Opposition to this Motion.

Federal Rule of Civil Procedure 26(a)(2) requires that disclosure of an expert witness include an expert report containing "a complete statement of all opinions the witness will express and the basis and reasons for them."

Upon review of Defendants' submissions, the Court finds good cause to exclude any testimony or evidence offered by Dr. Cooper. In particular, Dr. Cooper has provided no substantive report in this case. The only report filed by Dr. Cooper was a rebuttal report that, rather than providing an opinion, stated as follows:

> I conclude that there has been insufficient time for me to review and analyze the material in this case as appropriate for forming responsible opinions. I reserve the right to submit amended reports which further define the issues in this case, and which describe my opinions on relevant technical issues and issues of common practice in the field.[15]

Expert discovery is closed and yet, Dr. Cooper has not filed any further amended report. The Court finds that Defendants would be significantly prejudiced were Dr. Cooper to now submit a substantive report. Moreover, Plaintiffs offered any justification why they should now be allowed to submit a report by Dr. Cooper at this stage of the case. Thus, the Court finds good cause to exclude any testimony or evidence offered by Dr. Cooper.

Accordingly, the Court GRANTS Defendants' Motion to exclude Dr. Cooper as an expert for Plaintiffs.

---

Complaint to allege as such. (See FAC at 10-13.)

[15] (Declaration of Jedediah Wakefield in Support of Defendants' Motion to Exclude Testimony or Opinions from Plaintiffs' Technical Expert Richard G. Cooper, Ex. 1, Docket Item No. 213.)

13

### 2. Scott Hampton and Dr. Philip Faillace

Defendants move to exclude certain testimony of Plaintiffs' accounting expert, Scott Hampton, on the ground that certain of Mr. Hampton's opinions are not based on sufficient knowledge, expertise, or analysis. (Motion Re Mr. Hampton at 1.) Similarly, Plaintiffs move to exclude certain testimony of Defendants' licensing expert, Dr. Philip Faillace, on the ground that certain of Dr. Faillace's opinions are not based on sufficient knowledge, expertise, or analysis. (Motion Re Dr. Faillace at 1.)

Upon review of the parties' submissions, the Court finds that neither side has shown that the other's expert fails to meet the relatively low threshold of Federal Rule of Evidence 702. Rather, the parties' contentions as to weaknesses of each others' experts are more appropriately the subject of cross-examination at trial. To the extent that the parties express concern about the other's expert offering opinions at trial not previously offered in their expert reports, the Court will not permit expert witnesses to offer opinions at trial not previously disclosed in their reports. Thus, the Court finds that exclusion of the testimony of Mr. Hampton and Dr. Faillace is not appropriate at this time.

Accordingly, the Court DENIES Defendants' Motion Re Mr. Hampton and DENIES Plaintiffs' Motion Re Dr. Faillace without prejudice to making specific objections at trial.

### E. Conclusion

In sum, the Court orders as follows:

(1) The Court DENIES Plaintiffs' Motion for Partial Summary Judgment.

(2) The Court GRANTS Defendants' Motion for Summary Judgment as to Statutory Damages and Plaintiffs' Attorneys' Fees and strikes Plaintiffs' request for statutory damages and attorney fees for the claim of copyrights infringement.

(3) The Court GRANTS Defendant Chordiant's Motion Re Reseller Status and declares that Chordiant has the same reseller rights as Chordiant International.

(4) The Court GRANTS Defendant Witte's Motion.

(5) The Court GRANTS Defendants' Motion Re Dr. Cooper.

(6) The Court DENIES Defendants' Motion Re Mr. Hampton.

(7) The Court DENIES Plaintiffs' Motion Re Dr. Faillace.

Dated: December 21, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Albert L. Sieber asieber@fenwick.com
Antonio Luis Cortes corteslaw@comcast.net
Jedediah Wakefield jwakefield@fenwick.com
Laurence F. Pulgram lpulgram@fenwick.com
Liwen Arius Mah lmah@fenwick.com
Mary Elizabeth Milionis Mmilionis@Fenwick.com

**Dated: December 21, 2009**          **Richard W. Wieking, Clerk**

                                             **By:    /s/ JW Chambers**
                                                   **Elizabeth Garcia**
                                                   **Courtroom Deputy**