LAURENCE F. PULGRAM (CSB NO. 115163)
*lpulgram@fenwick.com*
JEDEDIAH WAKEFIELD (CSB NO. 178058)
*jwakefield@fenwick.com*
MARY E. MILIONIS (CSB NO. 238827)
*mmilionis@fenwick.com*
LIWEN A. MAH (CSB NO. 239033)
*lmah@fenwick.com*
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

Attorneys for Defendant
CHORDIANT SOFTWARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NETBULA, LLC and DONGXIAO YUE, <br><br> Plaintiffs, <br><br> v. <br><br> CHORDIANT SOFTWARE, INC., a Delaware corporation, <br><br> Defendant. | Case No.  5:08-cv-00019-JW (HRL) <br><br> **CHORDIANT'S OBJECTIONS AND REVISIONS TO THE COURT'S MAY 6TH PROPOSED CLOSING INSTRUCTIONS** <br><br> Trial Date: April 27, 2010 <br> Time: 9:00 a.m. <br> Courtroom: 8, 4th Floor <br> Judge: The Honorable James Ware |

Pursuant to the Court's instructions of May 6, 2010, Defendant Chordiant Software, Inc. ("Chordiant" or "Defendant") hereby objects and proposes revisions to the Court's Closing Instructions, Draft 3, dated May 6, 2010.  Chordiant has previously supplied text and line insertions for most, but not all, of its proposed changes through email to the Court and counsel on the morning of May 7, 2010 (a copy of which is attached as Exhibit A).  A copy of the Court's previously proposed Draft 3 is attached for convenience as Exhibit B.  New changes are identified as such below.

## CHORDIANT'S OBJECTIONS AND PROPOSED REVISIONS

**1.   Court's Proposed Instructions at 3:20-21[1] (*see also* Ex. A at 3-4):** Modified to reflect that the Netbula assigned Windows product copyrights to Dr. Yue and not the reverse:

> and Netbula LLC.  You have heard evidence that ~~Dr. Yue~~Netbula[2] assigned some of the copyrights in this case to ~~Netbula~~Yue.  In the instructions, I will use the word

**2.   Court's Proposed Instructions at 4:12 (*see also* Ex. A at 4):** Insertion to reflect that the Copyright Act does not govern infringing acts outside the United States:[3]

> the copyright, infringes the copyright.  The Copyright Act only applies to infringing acts that occurred within the United States.

**3.   Court's Proposed Instructions at 6:3 (*see also* Ex. A at 6):** Insertion to reflect that, due to Plaintiffs' failure to register the works at issue within 5 years of the work's

---

[1] Line and page references are to the Court's Closing Instructions, Draft 3, dated May 6, 2010, a copy of which is attached hereto as Exhibit B.
[2] The revised Closing Instruction language is excerpted from Chordiant's Revised Instructions.  *See* Exhibit A.  Strikethroughs indicate words or phrases Chordiant asserts should be deleted, while double-underlined words or phrases indicate language that should be added.
[3] *See Subafilms, Ltd. v. MGM-Pathe Comm'ns, Co.*, 24 F.3d 1088, 1091 (9th Cir. 1994) (en banc); *see also Microsoft v. AT&T*, 550 U.S. 437 (2007) (no extraterritorial patent infringement).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

creation, they are not entitled to a presumption of copyright validity:[4]

    that it is valid~~.~~, but registration is not alone determinative.

**4.**     **Court's Proposed Instructions at 6:15 (*see also* Ex. A at 6):** Insertion to reflect that, in the case of derivative works, the author's copyright only extends to the newly created portions and not to the underlying, pre-existing work.[5]

    works owned by others that is incorporated with the prior owner's permission:

    However, Plaintiffs' copyrights extend only to the material contributed by Plaintiffs, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.

**5.**     **New Change: Court's Proposed Instructions at 6:19 (not previously reflected in Ex. A at 7):** Deletion of words "of others": as copyright law does not provide protection for any ideas or discoveries, whether by others or by the Plaintiffs.

    processes, systems, methods of operation, concepts, principles or discoveries ~~of others~~. Only that part of the works comprised of original works of authorship fixed in

**6.**     **Court's Proposed Instructions at 6:19 (*see also* Ex. B. at 7):** Insertion to comport with Ninth Circuit Model Instructions[6] and explain that copyright protection, as compared to other intellectual property rights, does not extend to ideas but only to the particular expression of that idea:

    discoveries ~~of others~~. ~~Only that part of the works~~ In order to protect any ideas in the work from being copied, the author must secure some other form of legal protection, because ideas cannot be copyrighted. The copyright is not violated

---

[4] *See* Dkt. No. 353 at 4 (Order Re: Various Motions for Summary Judgment and Motions to Exclude Testimony—holding no statutory presumption based on registrations in this action more than five years after first publication date); 17 U.S.C. § 410(c); *see also Religious Tech. Ctr. v. Netcom On-Line Commun. Sers.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995) (finding no statutory presumption from registration more than five years after first publication).
[5] Inserted text quotes 17 U.S.C. § 103(b) regarding the scope of copyright for derivative works.
[6] Inserted text quotes Ninth Circuit Manual of Model Jury Instructions (Civil) No. 17.3.

CHORDIANT'S OBJECTIONS TO COURT'S MAY 6TH PROPOSED CLOSING INSTR.      2      CASE NO. 5:08-CV-00019-JW (HRL)

1     when someone uses an idea from a copyrighted work, as long as the particular

2     expression of that idea in the work is not copied.  Only that part of the work

3

4   **7.**    **Court's Proposed Instructions at 7:4-6 (*see also* Ex. A at 7):**  Insertion to

5 clarify that a license can extend to cover a computer program and deletion to clarify and

6 to avoid misimpression that use alone, after "it" is copied, necessarily results in a license.

7     created orally or in writing and ~~with~~can cover a computer program.  ~~A license is~~

8     ~~created if the computer program is used after it is copied.~~ If the owner grants to

9

10   **8.**    **Court's Proposed Instructions at 7:17 (*see also* Ex. A at 8):** Insertion to reflect

11 CACI 305, providing (i) that a valid license may be express or implied; (ii) that an implied

12 license can be created by the parties' conduct and their relationship to each other; (iii)

13 that there need not be explicit spoken or written words to create an implied license;[7] and

14 per the Court's prior ruling on summary judgment (iv) that the relevant intent of the

15 licensor for determining the existence of an implied license is objective, not subjective:[8]

16     A license may be granted expressly, either orally or in writing, or may be

17     implied by the conduct of the parties. In deciding whether a license was created,

18     you should consider the conduct and relationship of the parties as well as all the

19     circumstances of the case.  Licenses can be created by the conduct of the parties,

20     without spoken or written words. Licenses created by conduct are just as valid as

21     contracts formed with words.  Conduct will create a license if the conduct of both

22     parties is intentional and each knows, or has reason to know, that the other party

23     will interpret the conduct as an agreement to enter into a  license.  You should

24     determine the licensor's objective, not subjective, intent as manifested by the

25     parties' conduct.

26

---

[7] The first four sentences in this insert quote Judicial Council of California Civil Jury Instructions, CACI 305 (modified to replace "contract" with "license").
[8] The proposed language quotes from on this rule Order Denying Summary Judgment, Dkt. 142 p. 9.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  **9.     Court's Proposed Instructions at 7:17 (after preceding insertion) (*see also*
2  Ex. A at 8-9):** Inserted language to instruct on the rules of interpretation of contracts
3  including (i) how the terms of a contract are to be interpreted;[9] (ii) that in determining
4  what a license means to the parties the jury may consider their actions prior to the
5  dispute;[10] and (iii) if any uncertainty remains as to the meaning of a term the term should
6  be interpreted most strongly against the party causing the uncertainty:[11]

> In determining the meaning of a contract, the words of a license are to be understood in their ordinary and popular sense.  However, words used by the parties in a technical sense are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense.  In deciding what a license meant to the parties, you may consider how the parties acted after the license was created but before any disagreement between the parties arose.  If, after considering the evidence in light of these rules of interpretation there remains uncertainty as to the meaning of a license, the language of a license should be interpreted most strongly against the party who caused the uncertainty to exist.

**10.    Court's Proposed Instructions at 7:18 (*see also* Ex. A at 9):** Insertion and deletion in this section title to reflect that Defendant only contends it has license rights to Netbula's Windows Software Development Kit versus the Netbula Java Software Development Kit.

The Netbula <s>Software</s>Windows Development <s>Kit Licence</s>License

**11.    Court's Proposed Instructions at 7:22-23 (*see also* Ex. A at 9):** Deletion to reflect that Dr. Yue's motivations prior to 1994 are disputed and have not been decided

---

[9] Proposed language from California Civil Code §§ 1644 and 1645.
[10] Proposed language from Judicial Council of California Civil Jury Instructions, CACI 318 (modified to replace "contract" with "license").
[11] Proposed language from California Civil Code § 1654.

1  by the Court.
2  evidence that ~~Dr. Yue thought that the RPC programs then available had~~
3  ~~limitations. In~~in 1994, Dr. Yue started working on his own version of an RPC

5  **12.  Court's Proposed Instructions at 8:5-6 (*see also* Ex. A at 9), 8:12 (*see also***
6  **Ex. A at 10), and 10:24-25 (*see also* Ex. A at 14):**  Insertion to reflect that the 2000
7  License by its terms granted rights for one developer to use the Netbula Windows
8  Software Development Kit on one computer.[12]
9  Proposed Instructions at 8:5-6:
10  used <u>by one developer</u> on one computer to develop a product that would include
11  Proposed Instructions at 8:12:
12  Development Kit for Windows <u>for one developer</u> on one computer and to install up
13  Proposed Instructions at 10:24-25:
14  Development Kit for Windows ~~on~~<u>for</u> more than <u>one developer on</u> one machine or

16  **13.  Court's Proposed Instructions at 9:12-16 (*see also* Ex. A at 11):**  Insertion to
17  accommodate Defendant's ratification affirmative defense;[13] and to reflect that use of the
18  Netbula Software Development Kit for Windows to develop software, versus other
19  noninfringing uses of the software, would constitute copyright infringement:
20  Although it was the ultimate parent, Defendant Chordiant Software, Inc.,
21  was not a licensee.  <u>However, Defendant contends that, by entering into an</u>
22  <u>agreement to provide "back support" and a license upgrade in 2004, Plaintiffs</u>
23  <u>ratified that Chordiant Software, Inc. was entitled to the rights provided by the</u>
24  <u>2000 License with Prime Response Ltd.   Ratification is a retroactive confirmation</u>

---

[12] *See* Trial Exhibit 15 at 1 ("Development License: 1 developer" and that "each user can only use the software on one computer").

[13] *See* Cal. Civ. Code §§ 1588, 1589. A contract voidable solely for want of due consent may be ratified by a subsequent consent or by acceptance of its benefits. *Smith v. Glo-Fire Co.*, 94 Cal. App. 2d 154, 160 (1949) (by accepting delivery of the contracted goods the corporation impliedly ratified a contract entered into before the corporation was formed); *see also Saret-Cook v. Gilbert Kelly, Crowley & Jennett*, 74 Cal. App. 4th 1211, 1226 (1999).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   of rights by the giving of a subsequent consent.  It provides a defense if Plaintiffs
2   had knowledge of all the material facts and if it was reasonable for Defendant to
3   infer that Plaintiffs intended Defendant to have such rights.
4         If you find that by entering into a license upgrade in 2004, Plaintiffs ratified
5   Defendant's rights under the 2000 License, then there is no infringement prior to
6   the 2004 Upgrade and no damages may be awarded.  If you do not find that
7   Defendant's rights under that license were ratified and you find that between 2000
8   and 2004, Chordiant Software Inc., used the Netbula Software Development Kit for
9   Windows to develop software, since it was not a licensee, that use
10  ~~constituted~~would constitute an infringement of Plaintiffs' copyright, and you would
11  then proceed to consider whether to award any damages for such use.  On your
12  verdict form you will find a place for you to indicate your findings with respect to
13  this matter.
14
15  **14.     Court's Proposed Instructions at 9:17 (*see also* Ex. A at 11):**  It is not clear to
16  Chordiant whether this paragraph is intended to apply only to pre-2004 Upgrade
17  distributions or also to post-2004 Upgrade distributions.  If the former, Chordiant
18  requests inserting the language below into the heading to clarify that this section applies
19  only to the distribution rights under the 2000 License.  If the latter, Chordiant believes
20  that it may be clearer to the jury to provide instructions about the Distribution License
21  after the discussion of the 2004 Upgrade, so that the two discussions of the
22  Development License are consecutive:
23        **The Netbula Distribution License for Windows—Pre-Upgrade**
24
25  **15.     Court's Proposed Instructions at 9:23-10:6 (*see also* Ex. A at 12):**
26  Instructions modified to accommodate (i) that Plaintiff has the burden of proof that the
27
28

scope of the acknowledged license was exceeded;[14] (ii) the effect of Defendant's ratification defense;[15] and (iii) to distinguish between a breach of contract due to excessive use under license versus copyright infringement, and resulting respective damages:[16]

> ~~if Defendant proves~~unless (1) Plaintiffs prove by a preponderance of the evidence that any software that ~~it~~Defendant installed that contained the Netbula Distributable Files for Windows~~: 1. Was~~ was developed by a party other than Chordiant Software International Ltd.~~,~~ under the 2000 license~~; and 2. The installations did not exceed the 1000 computer cap.~~, and (2) Defendants fail to prove by a preponderance of the evidence that Plaintiffs ratified that conduct.
>
> If you find ~~that Defendant has failed to prove these elements~~for Plaintiffs on each of these two issues, you should determine damages for copyright infringement.  However, if you do not find for Plaintiffs on these issues, you would then proceed to consider whether to award contract damages to Plaintiffs for breach of the license agreement~~.~~ for any distributions in excess of 1000.  On your

**16.    Court's Proposed Instructions at 10:11-13 (*see also* Ex. A at 13):** Instruction modified to reflect that the payor is not necessarily the only party licensed under an express license; and that the jury may find Defendant had an implied license:

> Chordiant Software Inc., claims as an affirmative defense that it ~~purchased a licensed~~was included in an express or implied license to ~~itself~~ use the Netbula

---

[14] Insertion and deletion reflect that, once the existence of the license is proven by Defendant, the burden lies with Plaintiff to prove that the use of the works exceeded the scope of the license agreement. *See Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995), *cert. denied*, 116 S. Ct. 1890 (1996) (once license is established, burden on licensor to prove terms of license and breach); *S.O.S, Inc. v. Payday, Inc.,* 886 F. 2d 1081 (9th Cir. 1989) (to prevail on its claim of copyright infringement, S.O.S. must prove (1) ownership of copyright in the payroll programs, and (2) "copying" of protectible expression by Payday beyond the scope of Payday's license); *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1151 (N.D. Cal. 2007) (same); *Netbula, LLC v. Storage Tech. Corp.*, No. C06-07391 MJJ, 2008 U.S. Dist. LEXIS 4119, at *10-13 (N.D. Cal. Jan. 17, 2008).
[15] Insertion to reflect that if the jury finds that Plaintiffs ratified Defendant's rights under the 2000 License, then Defendant's use of the SDK would be licensed and non-infringing.
[16] Deletion of requirement that Defendant not exceed the 1000 unit cap follows from fact that exceeding that cap as a reseller is merely a breach of contract, not copyright infringement.

1  Software Development Kit for Windows ~~for 1000 installations in 2004.~~in 2004

2  when Netbula sold "back support" and an Upgrade.  Plaintiffs contend, however,

3

4  **17.   Court's Proposed Instructions at 10:15 (*see also* Ex. A at 13):**  Insertion to

5  reflect that more than one corporation may be included within one license, an issue

6  critical to juror comprehension given instruction that corporations are separate entities:

7      use the license.  It is possible for more than one corporation to be included within

8      one license.  In order for you to find in favor of Defendant on this affirmative

9

10  **18.   Court's Proposed Instructions at 10:17-21 (*see also* Ex. A at 13):**  Insertion

11  and deletion to reflect (i) that, regardless of whether Chordiant Software International,

12  Ltd., paid for the 2004 Upgrade, Chordiant Software, Inc. may nevertheless be included

13  in the Upgrade, as indicated in the issuance of the CD to "Chordiant Software"; (ii) that

14  an implied license can be created by the parties' conduct; and (iii) to reflect that

15  Defendant is not obligated to prove compliance with license terms in order to avoid

16  copyright liability, as breach of contract would not give rise to copyright claims but

17  instead to contract damages:[17]

18      one license.  In order for you to find in favor of Defendant on this affirmative

19      defense, ~~the~~ Defendant must prove by a preponderance of the evidence that~~:1.  In~~

20      ~~2004, Plaintiffs sold to~~ in 2004 or by conduct thereafter, Defendant Chordiant

21      Software Inc., ~~a license to use the Netbula Software Development Kit for Windows~~

22      ~~as upgraded;~~was included in the Upgrade.

23      ~~2.  That Defendant has performed all obligations on its part to be performed~~

24      ~~under the 2004 license.~~

25      If you find that Defendant has proved that ~~Plaintiffs sold to~~ Defendant was

26      included in a license  to Netbula Software Development Kit for Windows in or

27      after 2004, you would then decide if Defendant used Netbula Software

28  [17]  *See Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 122-1123 (9th Cir. 1999).

CHORDIANT'S OBJECTIONS TO COURT'S MAY 6TH PROPOSED CLOSING INSTR.    8    CASE NO. 5:08-CV-00019-JW (HRL)

1    Development Kit for Windows ~~on~~for more than one developer on one machine or

2    installed the Netbula Distributable Files for Windows in more than 1000

3    computers. If so, that would constitute a breach of the license agreement and you

4

5    **19.     Court's Proposed Instructions at 10:22-23 (*see also* Ex. A at 13), 11:3-4 (*see**

6    *also* Ex. A at 14) and 11:14 (*see also* Ex. A at 14):**  Insertion and deletion to reflect

7    that, regardless of whether Chordiant Software International, Ltd., paid for the 2004

8    Upgrade, Chordiant may nevertheless be included in the Upgrade or obtain an implied

9    license by conduct thereafter:

10   Proposed Instructions at 10:22-23:

11   If you find that Defendant has proved that ~~Plaintiffs sold to~~ Defendant was

12   included in a license to Netbula Software Development Kit for Windows in or

13   after 2004, you would then decide if Defendant used Netbula Software

14   Proposed Instructions at 11:3-4:

15   If you find that Defendant has not proved that it ~~purchased~~was included in a

16   license in or after 2004, any use that it made of the Netbula Software Development

17   Proposed Instructions at 11:14:

18   Windows without having ~~purchased~~rights under a license; or

19

20   **20.     Court's Proposed Instructions at 11:1-2 (*see also* Ex. A at 14):**  Insertion and

21   deletion to clarify that, if Defendant was included in the 2004 Upgrade License,

22   distributions in excess of the 1,000 cap would amount only to contract damages for

23   distributions in excess of that limitation:

24   If you find that Defendant has proved that ~~Plaintiffs sold to~~ Defendant was

25   included in a license to Netbula Software Development Kit for Windows in or

26   after 2004, you would then decide if Defendant used Netbula Software

27   Development Kit for Windows ~~on~~for more than one developer on one machine or

28   installed the Netbula Distributable Files for Windows in more than 1000

CHORDIANT'S OBJECTIONS TO COURT'S
MAY 6TH PROPOSED CLOSING INSTR.          9          CASE NO. 5:08-CV-00019-JW (HRL)

computers.  If so, that would constitute a breach of the license agreement and you would then decide how much, if any, to award in <ins>contract</ins> damages for breach of <del>the 2004 license agreement</del><ins>those limitations</ins>.

**21.    Court's Proposed Instructions at 11:16 (*see also* Ex. A at 14):** Insertion to clarify that if the Defendant, as either a reseller or as a licensee under the Distribution Licenses,  was authorized to make customer installations of products containing Netbula's Distributable Files for Windows, then copyright damages may not be imposed:

>   (2) Installed a product on the computer of a customer of Defendant that was developed by Defendant, itself <ins>without rights under a license</ins>, that contained Netbula Distributable Files for Windows; or

**22.    Court's Proposed Instructions at 11:18-19 (*see also* Ex. A at 14):** Insertion and deletion to remove the characterization of use "as a framework for manufacturing," as this is unnecessary and overstates, compared to description of "use in manufacturing":

>   (3) that Defendant used the Netbula JAVA Software Development Kit <del>as a framework for</del><ins>in</ins> manufacturing Chordiant Marketing Director; or

**23.    Court's Proposed Instructions at 11:25 (*see also* Ex. A at 15):** Insertion to reflect the undisputed principle, settled under Ninth Circuit law, that actual damages are to be measured in accordance with the "fair market value" of the actual use made of the allegedly infringed work:[18]

>   Actual damages means <ins>the fair market value of the actual use of the work,</ins>

---

[18] Inserted language of "fair market value" quotes from Joint Proposed Jury Instruction No. 29, which is also the Ninth Circuit Manual of Model Jury Instructions (Civil) No. 17.23.   *See* Dkt. No. 376 at 33.  Defendant and its expert relied on this agreed, and correct, joint instruction during trial. *See also Jarvis*, 486 F. 3d 526, 534 (9th Cir. 2007)("the market value approach is an objective, not a subjective approach"), citing *On Davis v. The Gap, Inc.*, 246 F. 3d 152, 166 (2d Cir. 2001) ("The question is not what the owner would have charged, but rather what is the fair market value.")

1   which is measured as the amount a willing buyer would have been reasonably

**24.     Court's Proposed Instructions at 12:3 (*see also* Ex. A at 15):** Insertion to reflect that the determination of fair market value is not limited to the prices Plaintiff actually charged to their other customers, but also the prices charged for comparable products.[19]

      1. How much ~~has~~have the Plaintiffs and other sellers charged licensees for similar rights; and,

**25.     Court's Proposed Instructions at 12:3 (*see also* Ex. A at 15):** Deletion to reflect that the success of an infringing product, as opposed to the volume of use at the objective fair market value of the use of the work, is not a proper factor in the determination of actual damages component of copyright remedies:[20]

      ~~3. How important is the infringement to the success of Defendant's product;~~

**26.     Court's Proposed Instructions at 12:7-10 (*see also* Ex. A at 15):** Insertions and deletions to clarify that the determination of fair market value, for an unlimited license or otherwise, is an objective inquiry: "the question is not what the owner would have charged, but rather what is the fair market value":[21]

      gave those third parties unlimited rights to the copyrighted work, you ~~should~~may take that into consideration in determining how much ~~the~~an owner of the copyrighted work would reasonably be willing to sell for, and how much a

---

[19] *See* Ninth Circuit Manual of Model Jury Instructions (Civil) No. 17.23; *see also Bruce v. Weekly World News*, 310 F.3d 25, 29 (1st Cir. Mass. 2002) ("proof of industry practice inarguably is crucial to the estimation of actual damages."); *see also Jarvis v. K2, Inc.*, 486 F. 3d 526, 535 (9th Cir. 2007), citing *On Davis v. The Gap, Inc.*, 246 F. 3d 152, 166 (2d Cir. 2001) ("The question is not what the owner would have charged, but rather what is the fair market value.")

[20] The relevant period for determining the fair market value of the work is at the time of the infringement. *Jarvis*, 486 F. 3d at 535.

[21] Jarvis, 485 F.3d 534 (citations omitted); *see also id* ("market value approach is an objective, not a subjective, analysis")  *Jarvis*, 486 F.3d at 534.

CHORDIANT'S OBJECTIONS TO COURT'S MAY 6TH PROPOSED CLOSING INSTR.     11     CASE NO. 5:08-CV-00019-JW (HRL)

**27.    Court's Proposed Instructions at 12:13-14 (*see also* Ex. A at 15):** Deletion to reflect that it is Plaintiffs' burden to prove damages.[22]  Defendant is not aware of any contrary authority where, as here, the absence of records is not a result of any improper action on the part of Defendant.

>   reasonable estimate based on the best available information ~~and resolving any doubt against the infringer~~.

**28.    Court's Proposed Instructions at 12:22 (*see also* Ex. A at 16):** Insertion to reflect that complete lack of evidence of revenue associated with infringement from sale of any other product than Chrodiant Marketing Director:

>   Defendant's gross revenue <ins>from Chordiant Marketing Director</ins>.

**29.    Court's Proposed Instructions at 13:21-23 (*see also* Ex. A at 17):** Insertion and deletion to reflect that Defendant, bearing the burden of proof on the primary issues of the license defense, deductible expenses and allocation of profits, should make the first closing argument:[23]

>   Counsel for the ~~Plaintiff~~<ins>Defendant</ins> will make a closing argument, followed by the closing argument by counsel for the ~~Defendants~~<ins>Plaintiffs</ins>.
>
>   If ~~Plaintiff~~<ins>Defendant</ins>'s counsel does not use all the allotted time, counsel for the ~~Plaintiff~~<ins>Defendant</ins> will be permitted a brief rebuttal argument and then I will

---

[22] *See* Ninth Circuit Manual of Model Jury Instructions (Civil) No. 5.1 (Damages – Proof).

[23] Where the defendant, like Chordiant, bears the primary burden of proof it is appropriate for it to make the initial closing argument (and, if time allows, a rebuttal) to the jury. Chordiant believes that it should be permitted to proceed last on closing argument. *See Moylan v. Meadow Club, Inc.,* 979 F2d 1246, 1251 (7th Cir. 1992) (defendant permitted to argue first as "[i]t is customary for the party bearing the burden of proof to open and close the argument"); *Montwood Corp. v. Hot Springs Theme Park Corp.*, 766 F.2d 359, 364 (8th Cir. 1985) (allowing defendant to argue first and last in closing arguments proper where the defendant had the burden of proof).

Dated: May 9, 2010

FENWICK & WEST LLP

By: */s/ Laurence F. Pulgram*
        Laurence F. Pulgram

Attorneys for Defendant
CHORDIANT SOFTWARE, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CHORDIANT'S OBJECTIONS TO COURT'S
MAY 6TH PROPOSED CLOSING INSTR.

13

CASE NO. 5:08-CV-00019-JW (HRL)